**FILED**

SEP 2 6 2003

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

JOAN BERENSON, individually and on behalf )
of all others similarly situated, )
1617 35TH Street, NW )
Washington, D.C. 20007, )
)
and )
)
DAVID BERENSON, individually and on behalf )
of all others similarly situated, )
1617 35TH Street, NW )
Washington, D.C. 20007, )
)
          Plaintiffs )
)
v. )
)
NATIONAL FINANCIAL SERVICES, LLC, )
a Delaware Limited Liability Company, )
82 Devonshire Street )
Boston, Massachusetts 02109 )
SERVE:    Jay Freedman, Resident Agent )
          82 Devonshire Street )
          Boston, Massachusetts 02109 )
)
and )
)
FIDELITY BROKERAGE SERVICES, LLC )
a Delaware Limited Liability Company, )
82 Devonshire Street )
Boston, Massachusetts 02109 )
SERVE:    CT CORPORATION SYSTEM, )
          Registered Agent )
          1025 Vermont Avenue, NW )
          Washington, D.C. 20005 )
)
and )
)
DOES 1-50, inclusive, )
)
          Defendants )

CASE NUMBER  1:03CV02004

JUDGE: Reggie B. Walton

DECK TYPE: General Civil

DATE STAMP: 09/26/2003

JURY ACTION

**Class Action**

**Jury Trial Demanded**

## CLASS COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
**(Violation of Electronic Funds Transfer Act; Intentional Misrepresentation;
Negligent Misrepresentation; Breach of Fiduciary Duty; Breach of Contract;
Violation of Massachusetts Truth-in-Savings Law; Violation of the Massachusetts
Consumer Protection Act; and Violation of the District of Columbia
Consumer Protection Procedures Act)**

Plaintiffs, Joan Berenson and David Berenson, individually and on behalf of all others similarly situated, sue Defendants, National Financial Services, LLC ("NFS") and Fidelity Brokerage Services, LLC ("FBS"), as follows:

## I.    Introduction, Parties and Jurisdiction

1.    This is a class action (brought on behalf of each Plaintiff and on behalf of all those similarly situated) by consumers who, as subscribers to an electronic bill payment service owned and operated by Defendants, lost the use of certain monies and were not paid interest on those monies as they should have been. As such, Plaintiffs incurred fees, charges and/or penalties that were not fully and faithfully disclosed, as required under the Electronic Funds Transfer Act, codified at 15 U.S.C. § 1693 *et seq.* ("EFTA"); the Massachusetts Consumer Protection Laws, codified at Massachusetts General Laws Annotated, Ch. 93A, Sections 1 *et seq.* ("CPL"); the Massachusetts Truth-in-Savings Law, codified at Massachusetts General Laws Annotated, Ch. 140E, Sections 1 *et seq.* ("TiSL"); and/or the District of Columbia Consumer Protection Procedures Act, codified at D.C. Code Sections 28-3901 *et seq.* ("DCCPPA"). Defendants also violated certain common law principles, which violations include misrepresentation, breaches of fiduciary duty and breaches of contract. Plaintiffs seek to vindicate their respective rights (and the rights of all others similarly situated) to be free from such violations.

2.    Plaintiff, Joan Berenson, is a natural person residing at 1617 35th Street, N.W., Washington, D.C. 20007. At all times relevant, Mrs. Berenson was, and is, a "consumer" as that term is defined under the EFTA and the DCCPPA, and was, and is, a "person," as that term is defined under the CPL and TiSL. At all times relevant, Mrs. Berenson, together with her husband (Plaintiff David Berenson), as joint tenants with rights of survivorship, maintained an "account" at Defendants NFS and FBS, as "account" is defined under the EFTA and TiSL. Mrs. Berenson subscribed to the electronic bill payment services ("EBPS") of "Fidelity Investments" known as "BillPay," which service constitutes a "consumer service" under the CPL and the DCCPPA.

3.    Plaintiff, David Berenson, is a natural person residing at 1617 35th Street, N.W., Washington, D.C. 20007. At all times relevant, Mr. Berenson was, and is, a "consumer" as that term is defined under the EFTA and the DCCPPA, and was, and is, a "person," as that term is defined under the CPL and TiSL. At all times relevant, Mr. Berenson, together with his wife (Plaintiff Joan Berenson), as joint tenants with rights of survivorship, maintained an "account" at Defendants NFS and FBS, as "account" is defined under the EFTA and TiSL. Mr. Berenson subscribed to the electronic bill payment services of "Fidelity Investments" known as "BillPay," which service constitutes a "consumer service" under the CPL and the DCCPPA.

4.    Defendant NFS is a Delaware limited liability company with a principal place of business at 82 Devonshire Street, Boston, Massachusetts 02109. It is believed to maintain a place of business in the District of Columbia at 1900 K Street, N.W., Suite 110, Washington, D.C. At all times relevant, NFS was a "financial institution" as that term is defined under the EFTA and TiSL, a "person" as that term is defined under the CPL, and a "merchant" as that term is defined under the DCCPPA.

5.    Defendant FBS is a Delaware limited liability company with a principal place of business at 82 Devonshire Street, Boston, Massachusetts 02109. It maintains a place of business in the District of Columbia at 1900 K Street, N.W., Suite 110, Washington, D.C. At all times relevant, FBS was a "financial institution" as that term is defined under the EFTA and TiSL, a "person" as that term is defined under the CPL, and a "merchant" as that term is defined under the DCCPPA.

6.    Defendants NFS and FBS hold themselves out as being a part of the "Fidelity Investments" umbrella of companies that generally provide investment and banking services. Fidelity Investments markets itself as an experienced world-wide leader in the investment industry, with more than fifty years of "tradition" and "experience" at the "forefront" of the investing business and in the banking business. Fidelity Investments represents that its customers "retain complete control over their money" ("It's your money. You should be able to manage it on your terms-online, by phone, at a branch or with your wireless device."). *See Fidelity Investments' internet website, "www.fidelity.com" and internet pages accessible from that website, including "www.personal.fidelity.com/global/mediacenter/pdf/portfrvw.pdf."* "Fidelity Investments" may sometimes hereinafter be referred to as "Fidelity" and, as the term is used herein, includes Defendants NFS and FBS.

7.    "Fidelity Investments" is a registered trademark owned by FMR Corporation, the parent corporation of the Defendants, which has its corporate headquarters (its principal place of business) at the same Boston, Massachusetts address as Defendants' corporate headquarters and principal places of business. Fidelity Investments, including NFS and FBS, is an international provider of financial services and investment resources. Once known primarily as a mutual fund company, Fidelity Investments claims to have "adapted and evolved over the years to meet the

4

changing needs of its customers." In addition to more than three hundred mutual funds, Fidelity Investments also offers banking, discount brokerage services, retirement services, estate planning and wealth management services, securities execution and clearance, life insurance products and more. Fidelity Investments, including each of the Defendants, offers services to consumers for personal, family and household matters, including certain electronic bill payment services through which Fidelity's customers may, *inter alia*, pay bills electronically (*i.e.*, BillPay).

8.    a.    Plaintiffs do not know the true names or capacities, whether individual, partnership, corporate or otherwise, of Defendants sued herein as DOES 1-50, inclusive, and for that reason, said Defendants are sued under fictitious names. Plaintiffs will seek leave of Court, as appropriate, to amend this Complaint to allege the true names and capacities when ascertained. Plaintiffs are informed and believe, and thereupon allege, that each of the fictitious Defendants was responsible in some manner for the acts and omissions alleged herein and proximately caused Plaintiffs, and those members of the group similarly situated, to be subject to the unlawful and/or unfair and/or fraudulent banking practices complained of herein.

b.    At all times relevant, each Defendant, including DOES 1-50, inclusive, participated in the doing of the acts hereinafter alleged to have been done by named Defendants, and furthermore, Defendants and each of them, were agents, servants, and employees of each and every one of the other Defendants, as well as the agents of all Defendants, and at all times herein mentioned, were acting within the course and scope of said agency and employment.

c.    At all times relevant, Defendants and each of them were members of, and engaged in a partnership, joint venture, common enterprise, and partnership, and acted within the course and scope of, and in pursuance of said joint venture, partnership and common enterprise.

d.    At all times relevant, the acts and omissions of Defendants, and each of them, concurred and contributed to the various acts and omissions of each and every one of the other Defendants in proximately causing the complaints, injuries and damages alleged herein.

e.    At all times relevant, Defendants, and each of them, approved of, condoned and/or otherwise ratified each and every one of the acts or omissions of each and every one of the other Defendants in proximately causing the complaints, injuries and damages alleged herein.

9.    Jurisdiction over this matter is conferred upon this Court by 28 U.S.C. §§ 1331 and/or 1337.  Supplemental jurisdiction over Plaintiffs' state law claims is conferred by 28 U.S.C. § 1367.

## II.    The Electronic Funds Transfer Act

10.    The purpose of the EFTA is, as Congress declared, "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693.  The EFTA is specifically designed to provide private rights to individual consumers given the unique characteristics of electronic fund transfer systems.

11.    The EFTA applies to "electronic fund transfers" that authorize a financial institution to debit or credit a consumer's account.  As defined under the EFTA, an "electronic fund transfer" is "any transfer of funds that is initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit an account."  15 U.S.C. § 1693a(6).

12.    The types of transfers which are included within the definition of "electronic fund transfer" set forth in paragraph 11 above include, without limitation, direct deposits or withdrawals of funds, transfers initiated by telephone, and transfers resulting from debit card

6

transactions, whether or not initiated through an electronic terminal. This definition includes not only transfers initiated by means of an access device, such as a debit card, but also transfers which do not involve a card at all, such as direct deposits. 15 U.S.C. § 1693a. Fidelity Investments' BillPay service utilizes "electronic fund transfers" and therefore is subject to the proscriptions of the EFTA.

13.    Under the EFTA, a financial institution must make certain initial disclosures to a consumer at the time the consumer contracts for an electronic fund transfer service or before the first electronic fund transfer is made involving the consumer's account. If the agreement for electronic transfers is directly between the consumer and the financial institution at which the consumer holds the account, the disclosures must be given "in close proximity to the event requiring disclosure," for example, when the consumer contracts for a new service. The disclosures must be "clear and readily understandable, in writing, and in a form the consumer may keep." To that end, the initial disclosures must, *inter alia*, set forth the fees and charges imposed by the financial institution for making electronic fund transfers or the right to make them. 15 U.S.C.A. § 1693c and implementing Federal Reserve Board Regulations.

**III.    The Massachusetts Consumer Protection Law and Truth-in-Savings Law**

14.    The Massachusetts' Consumer Protection Law provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." CPL at § 2(a).

15.    "Trade" and "commerce," as defined under the CPL, includes the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, and any other article, commodity or thing of value wherever

situate, and includes any trade or commerce directly or indirectly affecting the people of the Commonwealth of Massachusetts. CPL at § 1(b).

16.     Fidelity Investments' BillPay constitutes "trade" and "commerce" under the CPL and Defendants are, therefore, subject to the proscriptions of the CPL.

17.     The TiSL requires that before an account is opened, a financial institution must disclose certain information on accounts to a consumer in a written statement which the consumer may retain. Among the information required to be disclosed is the annual rate of interest, the effective annual yield, the method of determining the balance on which the interest is paid, and any fees, charges or penalties. TiSL, Section 2.

18.     A violation of TiSL is also a violation of the CPL. TiSL, Section 3.

**IV.     Facts Regarding Plaintiffs Joan and David Berenson**

19.     At all times relevant, Plaintiffs were, and remain, subscribers to Fidelity Investments' BillPay service and established and maintained, and continue to maintain, a personal, interest-bearing account with the Defendant financial institutions for personal, family or household purposes, which purposes include, without limitation, subscribing to the Fidelity BillPay service.

20.     At all times relevant, Plaintiffs subscribed to the Fidelity BillPay service. Plaintiffs instructed Defendants to make numerous electronic transfers from their personal account under the BillPay service, some on a recurring basis and some on a one-time basis, to a variety of Plaintiffs' creditors and others to whom they sought to electronically transfer certain funds.

21.     However, Plaintiffs believe and therefore aver that, for each electronic transfer either of them authorized Defendants to make on their respective behalf and which the

Defendants actually made on behalf of one or both Plaintiffs, while the designated funds were immediately debited from Plaintiffs' account, said funds were not immediately paid to the designated transferee(s) and Plaintiffs were not credited with any interest on the subject funds during the period between which the funds were debited from Plaintiffs' account and the time when such funds were actually credited to the designated transferee(s).

22.    Plaintiffs believe and therefore aver that Defendants intentionally employed policies and practices that were designed to enable the Defendants to kite or otherwise improperly earn interest on the use of Plaintiffs' funds, and/or to avoid paying interest to Plaintiffs, under the Fidelity BillPay service, all without disclosure.  For example, Plaintiffs now believe that Defendants debited Plaintiffs' account for the amount of each payment and immediately transferred those funds to an account or accounts that Defendants maintained for purposes of the Fidelity BillPay service.  However, Plaintiffs believe and therefore aver that Defendants did not immediately transfer the funds to the credit of the transferee designated by one or both of the Plaintiffs, but instead routinely utilized procedures that were designed to enable Defendants to improperly earn interest on the funds.

23.    To the extent that Defendants held Plaintiffs' funds in an account maintained by Defendants for purpose of the Fidelity BillPay service, such action created a constructive trust, and thus Defendants became trustees of Plaintiff's funds and thereby owed a fiduciary duty of care and loyalty to Plaintiffs to utilize and maintain the subject funds for Plaintiffs and in Plaintiffs' best interests.  This fiduciary duty includes a duty of care and loyalty to transfer the subject funds to Plaintiffs' designated transferee(s) as quickly as is commercially practicable, including the transfer by electronic transfer where possible; a duty of loyalty not to self-deal and earn interest at the expense of Plaintiffs; and a duty to fully and faithfully disclose to Plaintiffs

that the subject monies would not be used in a manner inconsistent with established banking practices regarding checking accounts and automated clearinghouse transactions.

24.    Plaintiffs believe and therefore aver that Defendants breached their fiduciary duty to Plaintiffs by (i) not transferring the subject monies to Plaintiffs' designees as quickly and in a commercially practicable fashion as required; (ii) by kiting or otherwise improperly earning interest on the use of Plaintiffs' funds; (iii) and/or by not paying interest to Plaintiffs on the subject funds during the period between which the funds were debited from Plaintiffs' account and the time when such funds were actually credited to Plaintiffs' designated transferee(s). Plaintiffs suffered actual damage and harm as a result of Defendants' practices of earning, but not otherwise paying interest on the subject funds during the period between which the funds were debited from Plaintiffs' account and the time when such funds were actually credited to Plaintiffs' designated transferee(s).  Plaintiffs not only lost interest during the period of time their money was in "limbo," but Defendants treated such monies as if all right, title and legal ownership of the monies belonged to Defendants rather than to Plaintiffs and thereby usurped the ownership right to the monies.

25.    Plaintiffs were unaware of Defendants' practices of earning, but not otherwise paying interest on the subject funds during the period between which the funds were debited from Plaintiffs' account and the time when such funds were actually credited to Plaintiffs' designated transferee(s).  Plaintiffs were misled by Defendants into believing that Plaintiffs' monies belonged to Plaintiffs', not Defendants, until such time as the monies were credited to their designated transferee(s).  Plaintiffs were further misled into believing that they would earn interest on their monies in accordance with customary banking practices associated with the establishment and use of checking accounts.

10

26.    Plaintiffs' lost interest is tantamount to, and constitutes, undisclosed fees, charges and/or penalties for their use of the Defendants' BillPay EBPS.

27.    Defendants' BillPay EBPS is apparently governed by two agreements that were authored by the Defendants. The first such "agreement" is a general set of terms and conditions that, in theory, is supposed to be supplied to Defendants' customers upon the opening of any Fidelity account or the adding of a service to an existing account. It is a pamphlet styled, "The Fidelity Account Supplemental Information" (the "SI"). The SI includes separate agreements for various Fidelity programs and services as well as an overall customer account agreement contained within its first five pages (the pages of the SI are not numbered).

28.    Section 7 of SI provides, in pertinent part (emphasis added):

> BILL PAYMENT. I hereby understand that FBS is the provider of the Fidelity BillPay service. I hereby understand that and/or agree to: (1) authorize FBS to post bill payment transactions originating from the Fidelity BillPay service to my Fidelity Account; (2) my request to add Fidelity BillPay to my Fidelity Account is subject to review and acceptance by the provider of the service; (3) the Fidelity BillPay service is subject to the Fidelity BillPay Service Agreement; (4) any use of the Fidelity BillPay service confirms my agreement to the Fidelity BillPay Service Agreement; (5) I may terminate the Fidelity BillPay service at any time by calling or writing the customer service phone number or address provided in the Fidelity BillPay Service Agreement; and (6) I hereby authorize the provider of the service to honor any instructions entered through the Internet using my Social Security number and personal identification number. I understand first-time Fidelity BillPay customers will receive the first three months at no charge. I further understand that thereafter, Fidelity BillPay customers who maintain $30,000 or more in certain retail assets at Fidelity (limitations apply, visit Fidelity.com or call for details) will not be charged a monthly BillPay fee. Customers who do not maintain this asset minimum will be charged $6.95 per month. Account reviews will occur monthly at month end to determine the fee level for the next month.

29.    Other than the vague reference set forth in the SI to a "Fidelity BillPay Service Agreement," there is no information set forth in the SI that provides any notice to a Fidelity customer that the customer's use of the BillPay service would or even could result in (i) the loss of use of a customer's monies for any period of time; (ii) the non-payment of interest on certain monies that are made a part of the BillPay service for any period of time; and/or (iii) a loss of ownership rights to monies that are made part of the BillPay service for any period of time.

30.    The second alleged agreement that purports to govern the Fidelity BillPay service is styled, "Fidelity BillPay Service Agreement" (the "SA"). The SA, although referenced in Section 7(4) of the SI, is not directly provided to Defendants' customers. Fidelity's customers do not receive a hardcopy of the SA. It is, apparently, only available via computer access to Fidelity's internet website. Defendants did not provide Plaintiffs with a hardcopy of the SA and did not inform Plaintiffs that the SA was available on Defendants' internet website.

31.    Section 11 of the SA provides, in pertinent part:

> 11. Delivery of Payments. After we debit your Fidelity Account for the amount of a payment, we will remit your payment to the Payee by mailing the Payee a check drawn on an account we maintain for this purpose, by electronic funds transfer, or by other means. Because of the time it takes to transmit a payment, a Payee generally will not receive payment on the Transaction Date regardless of whether the payment is a Same Day payment, a Future Payment, or a Recurring Payment.

32.    Section 18 of the SA also purports to provide the Defendants' disclosure of the customer's fees, charges and/or penalties for use of the Fidelity BillPay service or the right to use the Fidelity BillPay service. There is no disclosure that a customer's use of the Fidelity BillPay service would cause the customer to lose interest during the period between which the funds are debited from a customer's account and the time when such funds are actually credited to the customer's designated transferee(s). To that end, Section 18 specifically provides:

18. Fees. You agree to pay a monthly fee for the Service. The monthly fee is based on the level of assets you hold at Fidelity. Fidelity Account customers who maintain $30,000 or more in assets in certain Fidelity accounts will not be charged a monthly BillPay fee. All other BillPay customers will get the first three months at no charge, thereafter, the monthly fee is $6.95. Should a fee be imposed at a later date, Fidelity will notify you in writing of such fee and the date it becomes effective. You agree to allow Fidelity to debit your Fidelity Account for such fees, if charged. Your Internet Service Provider or other telecommunications provider ("ISP") may impose its own fee or charges.

33.    Pursuant to Section 17 of the SI, Massachusetts law governs the enforcement and

interpretation of the SI and apparently of the entire BillPay EBPS. Section 17 provides, in part,

as follows:

17. *Modification and Miscellaneous.* This Agreement and its enforcement shall be governed by the laws of the Commonwealth of Massachusetts, except with respect to conflicts of law; shall cover individually and collectively all accounts that I may open or reopen with Fidelity; and shall inure to the benefit of Fidelity's successors and assigns, whether by merger, consolidation, or otherwise. If a court of competent jurisdiction shall deem any provision unenforceable, that provision will be enforced to the maximum extent permissible, and the remaining provisions will remain in full force and effect.

Thus, Defendants intended that any and all disputes arising out of the Fidelity BillPay EBPS

(including any disputes involving these Plaintiffs and the Class members herein) would be

subject to the laws of the Commonwealth of Massachusetts.

34.    Similarly, Section 27 of the SA provides that Massachusetts law governs the

enforcement and interpretation of the SA and apparently of the entire Fidelity BillPay EBPS. It

provides as follows:

27. Governing Law. This Agreement shall be governed by the laws of the Commonwealth of Massachusetts and the United States of America.

13

Again, this reflects the intention of Fidelity Investments, including the Defendants, to bind all subscribers to the Fidelity BillPay EBPS (including these Plaintiffs and the Class members herein), and any and all disputes arising out of the Fidelity BillPay EBPS, to the laws of the Commonwealth of Massachusetts.

35.    a.    Plaintiffs believe and therefore aver that Defendants failed to pay interest to Plaintiffs on the subject funds during the period between which the funds were debited from Plaintiffs' account and the time when such funds were actually credited to the designated transferee(s) on every one of Plaintiffs' transactions that were made under the Fidelity BillPay EPBS and that said failures to pay interest therefore constitutes hidden fees, charges and/or penalties directly imposed upon, and incurred by, Plaintiffs as part of the BillPay service on every one of their BillPay transactions.

b.    Plaintiffs believe and therefore aver that Defendants failed to pay interest to all of the Class members on their funds during the period between which their funds were debited from their respective accounts and the time when such funds were actually credited to their designated transferee(s) on every one of their transactions that were made under the Fidelity BillPay EBPS and that said failures to pay interest therefore constitutes hidden fees, charges and/or penalties directly imposed upon, and incurred by, the Class members as part of the BillPay system on every one of their BillPay transactions.

36.    Plaintiffs believe and therefore aver that Defendants' failure to pay interest on the subject funds during the period between which the funds are debited from a customer's account and the time when such funds were actually credited to the designated transferee(s) on every transaction that is part of the Fidelity BillPay EBPS are not fully, faithfully and properly disclosed to Fidelity BillPay customers, and were not fully, faithfully and properly disclosed to

Plaintiffs or the Class members herein. It was the intent and understanding of the Plaintiffs (and the Class members herein) that the subject funds, and interest thereon, would belong either to the Plaintiffs or the Plaintiffs' designated transferee(s). There was no intent that the ownership of the funds, and interest thereon, would belong to the Defendants.

37. Plaintiffs believe and therefore aver that Defendants' failure to pay interest on the subject funds during the period between which the funds are debited from a customer's account and the time when such funds were actually credited to designated transferee(s) on every transaction that is part of the Fidelity BillPay EBPS was, and is, for the sole purpose of enabling Defendants to kite or otherwise improperly earn interest on the use of the customer's funds, and/or to avoid paying interest to the customer, under the Fidelity BillPay service, all without disclosure.

38. Defendants knowingly and willingly misled their customers, including Plaintiffs and the Class members herein, by failing to inform them that they would not be credited with any interest on the subject funds during the period between which the funds were debited from a customer's account and the time when such funds were actually credited to the designated transferee(s), as would be the case in a regular checking account under standard banking practices.

39. Plaintiffs believe and therefore aver that Defendants' decisions and actions to implement, and the actual implementation and execution of, the aforementioned policies and practices occurred in the Commonwealth of Massachusetts at Defendants' headquarters and, therefore, it is averred that Defendants' actions occurred in Massachusetts. Those decisions and actions have had considerable adverse effect upon and have caused considerable damage and harm to the interests of the citizens of the Commonwealth of Massachusetts, as well as to the

citizens of the District of Columbia and elsewhere, who subscribed to and used the Fidelity BillPay EBPS. The ramifications of Defendants' decisions and actions have had a broad ranging effect into every locale and jurisdiction in which Defendants have an office or a customer utilizing the Fidelity BillPay EBPS.

40.    Plaintiffs believe and therefore aver that Defendants' failure to pay interest to Plaintiffs on the funds subject to the BillPay EBPS transactions during the period between which the funds were debited from a customer's account and the time when such funds were actually credited to the customer's designated transferee(s) on every transaction that is part of the Fidelity BillPay EBPS makes the BillPay system cost substantially more to a consumer than a third-party EBPS which competes with Fidelity.

41.    Defendants advertise their BillPay EBPS, but fail to inform their potential and/or actual customers that the Defendants would not pay interest on the funds subject to the BillPay EBPS transactions during the period between which the funds are debited from a customer's account and the time when such funds are actually credited to the customer's designated transferee(s). As a result, such advertising is false and misleading and/or has a tendency to mislead.

42.    Similarly, the advertising and other information provided to BillPay customers, actual or potential, constitutes deceptive pricing practices.

43.    Moreover, Defendants charge for services at higher rates than the disclosed, published or advertised price.

44.    Plaintiffs, and the Class members, would have otherwise acted differently had they known the truth about Defendants' BillPay EBPS.

45.    Plaintiffs contacted Defendants in an attempt to resolve this matter, but to no avail. More than thirty days before filing this lawsuit, Plaintiffs sent Defendants a "30 Day Demand Letter" describing Plaintiffs' complaint, the harm they suffered as a result of the Defendants' practices and how they wanted their complaint resolved.

46.    Defendants failed to respond with a written offer of settlement or a rejection of the Plaintiffs' claim.

47.    Defendants did not provisionally re-credit Plaintiffs' account within ten (10) days after receiving notification, and either did not conduct a good faith investigation or did not have a reasonable basis for believing the Plaintiffs' account was not in error. Plaintiffs therefore believe and aver that Defendants did not provisionally re-credit the accounts of the Class members after receiving notification, and either did not conduct a good faith investigation or did not have a reasonable basis for believing the Class members' accounts were not in error.

48.    Indeed, Defendants knowingly and willfully concluded that the Plaintiffs' account was not in error when Defendants had no reasonable basis for that determination.

**V.    Class Action Allegations**

49.    Each Plaintiff brings this action on behalf of herself or himself and on behalf of the following class pursuant to Federal Rule 23 (the "Class"):

> all persons who subscribed to and used the Fidelity BillPay EBPS during the six year period preceding the filing of this action (the "Class Period").

Excluded from the Class are the Defendants and all officers and directors of the Defendants.

50.    The members of the Class are so numerous that joinder of all members is impracticable. At present, the actual number of class members is unknown. However, it is believed there are thousands of class members in the District of Columbia, Massachusetts, and in

all other jurisdictions in which Class members and Defendants transact business utilizing the Fidelity BillPay EBPS, including foreign jurisdictions. The actual size of the Class can only be determined from the records of the Defendants.

51.     Plaintiffs are members of the Class and their claims are typical of the claims of the members of the Class because all members of the Class subscribed to the Fidelity BillPay EBPS during the Class Period and sustained damages arising out of Defendants' wrongful conduct in violation of the statutory and common laws alleged herein. That is, the losses to the Plaintiffs were caused by the same course of conduct that give rise to the claims of other members of the Class. Thus, Plaintiffs are competent to represent the Class in that, among other things, they are aggrieved members of the group of subscribers to and users of the Fidelity BillPay EBPS.

52.     Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have no interests antagonistic to or in conflict with other members of the Class. Plaintiffs have retained experienced counsel who are qualified to conduct class action litigation and who are competent and able to assert and protect the interests of the Class.

53.     Common questions of law and fact predominate over questions which may affect only individual members of the Class because Defendants have acted or refused to act on grounds generally applicable to the Class. Such common questions include, but are not limited to:

(a)     The acts and practices of Defendants described above; and

(b)     The fraudulent and illegal nature of the Defendants' acts and practices;

(c)     The applicability of the EFTA, the TiSL, the CPL and/or the DCCPPA to the activities of the Defendants.

54.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy: the Class is readily definable, and can be easily identified by examination of Defendants' records; joinder of all Class members is impracticable; prosecution of this case as a class action will eliminate the possibility of repetitious litigation and will provide redress for claims which otherwise may be too small to support the expense of individual, complex litigation against the Defendants; there are no problems which would make this case difficult to manage as a class action. Thus, it is desirable for all concerned to concentrate this litigation in this particular forum.

55.     A class action is also appropriate and permissible under the circumstances of this case because the prosecution of separate actions by individual members of the Class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the Defendants and (B) adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications.

56.     In addition, Defendants have acted on grounds generally applicable to the Class, such that final declaratory and injunctive relief is appropriate with respect to the Class as a whole. In particular, Plaintiffs seek injunctive relief preventing Defendants from failing to pay interest on BillPay EBPS transactions and from advertising the BillPay service without a full and faithful disclosure of all of the terms of the service, including all of the terms relating to Defendants' use of an account or accounts that they maintain for purposes of the service and failure to pay designated transferees as would be the case in a regular checking account under standard banking practices, and restitution of all monies that should have been paid to the

Plaintiffs and the Class members herein, as well as declaratory relief regarding the illegality of

Defendants' practices.

## VI.    Causes of Action

**Count I**
**(Violation of EFTA)**

57.    Paragraphs 1 through 56 are realleged.

58.    Each Plaintiff and each Class member is a natural person and a "consumer" within

the meaning of the EFTA.

59.    Each of the Defendants is a "financial institution" within the meaning of the

EFTA.

60.    Each member of the Class maintained an "account," as defined under the EFTA,

at one or both of the Defendant financial institutions.

61.    The Plaintiffs, and members of the Class, did not learn from Defendants the fact

that Defendants did not intend to, and did not, pay interest on account funds used within the

Fidelity BillPay EBPS, as described above, and suffered damage and harm as a result.

62.    Defendants are liable for treble damages because they did not provisionally re-

credit Plaintiff's account within ten (10) days after receiving notification from Plaintiffs, and

either did not conduct a good faith investigation or did not have a reasonable basis for believing

that the Plaintiffs' account was not in error.  Defendants are also liable for treble damages

because they knowingly and willfully concluded that Plaintiffs' account was not in error when

they had no reasonable basis for that determination.  On information and belief, Defendants have

not provisionally re-credited any of the Class members' accounts and either did not conduct a

good faith investigation or did not have a reasonable basis for believing the Class members'

accounts were not in error.  Defendants are also liable for treble damages to the Class members

20

because they knowingly and willfully concluded that the Class members' accounts were not in error when they had no reasonable basis for that determination.

  63. Defendants are each liable for the sum of:

    (1) actual damages sustained by each Plaintiff and Class member;

    (2) statutory damages in an individual case of not less than $100 nor greater than $1000, or in a class action such amount as the court may determine, with a maximum of the lesser of $500,000 or one percent of the defendant's net worth; and

    (3) the costs of the lawsuit together with reasonable attorney fees.

  WHEREFORE, Plaintiffs, Joan Berenson and David Berenson, individually and on behalf of the Class members herein, respectfully request this Court to enter (A) an order certifying the Class as set forth herein and designating Plaintiffs as Class representatives and their counsel as Class counsel; (B) a judgment in favor of Plaintiffs and the Class members against the Defendants, including DOES 1-50, inclusive, jointly and severally, declaring the Defendants' conduct to be in violation of law as set forth herein and permanently enjoining Defendants from such conduct; (C) a judgment in favor of Plaintiffs and the Class members against the Defendants, including DOES 1-50, inclusive, jointly and severally, awarding Plaintiffs and all other members of the Class compensation for damages they have sustained as a result of Defendants' unlawful conduct as set forth herein and consisting of all actual damages suffered as a result of the illegal acts set forth herein, plus statutory damages in an such amount as the Court may determine, with a maximum, for each Defendant, of the lesser of $500,000 or one percent of the Defendant's net worth, and requests that such statutory damages be trebled as a result of each Defendants' failure and refusal to correct and re-credit the deficiencies alleged herein despite notice thereof and demand therefore, pre-judgment interest thereon at the applicable rate from the date of each violation until the date of judgment, together with

attorneys' fees, expert witness fees, and the costs of this lawsuit, plus such other and further

relief as this Court deems appropriate.

### Count II
### (Intentional Misrepresentation—Concealment or Non-Disclosure)

64.    Paragraphs 1 through 63 are realleged.

65.    Defendants had a duty to disclose to Plaintiffs and to the Class members that

Defendants would not pay interest on the Fidelity BillPay EBPS transactions, as described

above, namely that Defendants would not  pay interest on the funds subject to the BillPay EBPS

transactions during the period between which the funds were debited from Plaintiffs' and the

Class members' accounts and the time when such funds were actually credited to the their

designated transferee(s).

66.    Defendants failed to disclose a material fact to Plaintiffs and to the Class

members, with the intent to deceive, *i.e.*, Defendants knew that Plaintiffs and the Class members

would act in a different manner had they known of the existence of the undisclosed fact (that

Defendants would not pay interest on the BillPay EBPS transactions, as described above,

namely, that Defendants would not pay interest on the funds subject to the BillPay EBPS

transactions during the period between which the funds were debited from Plaintiffs' and the

Class members' accounts and the time when such funds were actually credited to their

designated transferee(s)).

67.    Plaintiffs and the Class members acted in justifiable reliance upon the

concealment.

68.    Plaintiffs and the Class members suffered damage and harm as a direct and

proximate result of the concealment.

WHEREFORE, Plaintiffs, Joan Berenson and David Berenson, individually and on behalf of the Class members herein, respectfully request this Court to enter (A) an order certifying the Class as set forth herein and designating Plaintiffs as Class representatives and their counsel as Class counsel; (B) a judgment in favor of Plaintiffs and the Class members against Defendants, including DOES 1-50, inclusive, jointly and severally, declaring the Defendants' conduct to be in violation of law as set forth herein and permanently enjoining Defendants from such conduct; (C) a judgment in favor of Plaintiffs and the Class members against the Defendants, including DOES 1-50, inclusive, jointly and severally, awarding to Plaintiffs and all Class members compensation for damages they each sustained as a result of Defendants' unlawful conduct as set forth herein, namely, for all sums due as restitution for all damages suffered, in an amount to be determined at trial but not less than an amount equal to all damages actually suffered, plus interest thereon, punitive damages in an amount to be determined at trial, attorneys' fees, expert witness fees, and costs in bringing the case, plus such other and further relief as this Court deems appropriate.

### Count III
#### (Negligent Misrepresentation—Concealment or Non-Disclosure)

69.      Paragraphs 1 through 63 are realleged.

70.      Defendants had a duty to disclose to Plaintiffs and the Class members herein that Defendants would not pay interest on the funds subject to the BillPay EBPS transactions during the period between which the funds were debited from Plaintiffs' and the Class members accounts and the time when such funds were actually credited to their designated transferee(s).

71.      Defendants negligently failed to disclose a material fact to Plaintiffs and to the Class members herein, namely, that Defendants would not pay interest on the BillPay EBPS transactions when they knew or should have known that Plaintiffs and the Class members herein

would act in a different manner had they known of the existence of the undisclosed fact (that

Defendants would not pay interest on the funds subject to the BillPay EBPS transactions during

the period between which the funds were debited from Plaintiffs' and the Class members'

accounts and the time when such funds were actually credited to their designated transferee(s)).

72.    Plaintiffs and the Class members acted in justifiable reliance upon the
concealment.

73.    Plaintiffs and the Class members suffered damage and harm as a direct and
proximate result of the concealment.

WHEREFORE, Plaintiffs, Joan Berenson and David Berenson, individually and on

behalf of the Class members herein, respectfully request this Court to enter (A) an order

certifying the Class as set forth herein and designating Plaintiffs as Class representatives and

their counsel as Class counsel; (B) a judgment in favor of Plaintiffs and the Class members

against Defendants, including DOES 1-50, inclusive, jointly and severally, declaring the

Defendants' conduct to be in violation of law as set forth herein and permanently enjoining

Defendants from such conduct; (C) a judgment in favor of Plaintiffs and the Class members

against the Defendants, including DOES 1-50, inclusive, jointly and severally, awarding to

Plaintiffs and all Class members compensation for damages they each sustained as a result of

Defendants' unlawful conduct as set forth herein, namely, for all sums due them as restitution for

all damages suffered, in an amount to be determined at trial but not less than an amount equal to

all damages actually suffered, plus interest thereon, punitive damages in an amount to be

determined at trial, attorneys' fees, expert witness fees, and costs in bringing the case, plus such

other and further relief as this Court deems appropriate.

**Count IV**
**(Breach of Fiduciary Duty)**

74.    Paragraphs 1 through 73 are realleged.

75.    To the extent that Defendants held any funds of Plaintiffs and/or the Class

members in an account or accounts maintained by Defendants for purpose of the Fidelity BillPay

service, a constructive trust was formed and thus Defendants became trustees of the funds of the

Plaintiffs and the Class members and thereby owed a fiduciary duty of care and loyalty to

Plaintiffs and to the Class members to utilize and maintain the subject funds for, and in the best

interests of, the Plaintiffs and the Class members. This fiduciary duty includes a duty of care and

loyalty to transfer the subject funds to the designated transferee(s) of Plaintiffs and the Class

members as quickly as is commercially practicable, including the transfer by electronic transfer

where possible; a duty of loyalty not to self-deal and earn interest at the expense of Plaintiffs and

the Class members; and a duty to fully and faithfully disclose to Plaintiffs and the Class members

that the subject monies would not be used in a manner inconsistent with established banking

practices regarding checking accounts and automated clearinghouse transactions.

76.    Defendants breached their fiduciary duty to Plaintiffs and the Class members by

(i) not transferring the subject monies to the designated transferees of Plaintiffs and the Class

members as quickly as possible and in a commercially practicable fashion as required; (ii) by

kiting or otherwise improperly earning interest on the use of the funds of Plaintiffs and the Class

members; (iii) and/or by not paying interest to Plaintiffs and the Class members on the subject

funds during the period between which the funds were debited from the accounts of Plaintiffs

and the Class members and the time when such funds were actually credited to the designated

transferee(s) of Plaintiffs and the Class members.

77.    Plaintiffs and the Class members suffered actual damage and harm as a direct and

proximate result of Defendants' practices as set forth in paragraph 75 and elsewhere in this

Complaint. Plaintiffs and the Class members not only lost interest during the period of time their monies were in "limbo," but Defendants treated such monies as if all right, title and legal ownership of the monies belonged to Defendants, rather than to Plaintiffs and the Class members, and thereby usurped the ownership right to the monies.

WHEREFORE, Plaintiffs, Joan Berenson and David Berenson, individually and on behalf of the Class members herein, respectfully request this Court to enter (A) an order certifying the Class as set forth herein and designating Plaintiffs as Class representatives and their counsel as Class counsel; (B) a judgment in favor of Plaintiff and the Class members against Defendants, including DOES 1-50, inclusive, jointly and severally, declaring the Defendants' conduct to in violation of law as set forth herein and permanently enjoining Defendants from such conduct; (C) a judgment against the Defendants, including DOES 1-50, inclusive, jointly and severally, awarding to Plaintiffs and all Class members compensation for damages they sustained as a result of Defendants' unlawful conduct as set forth herein, namely, for all sums due them as restitution for all damages suffered, in an amount to be determined at trial but not less than an amount equal to all damages actually suffered, plus interest thereon, punitive damages in an amount to be determined at trial, attorneys' fees, expert witness fees, and costs in bringing the case, plus such other and further relief as this Court deems appropriate.

### Count IV
### (Breach of Contract)

78.    Paragraphs 1 through 77 are realleged.

79.    There exists a contract between Plaintiffs and Defendants, and between the Class members and Defendants, which governs the terms of the Fidelity BillPay service.

80.    Pursuant to the contract, Defendants were required to pay interest to Plaintiffs and the Class members on monies that were on deposit or otherwise being maintained at the

Defendant institutions until such time as the monies were actually credited to a payee designated by Plaintiffs and the Class members and were required to transfer any and all of the funds of Plaintiffs and the Class members to the designated transferee(s) of Plaintiffs and the Class members as quickly as is commercially practicable, including the transfer by electronic transfer where possible.

81.     Defendants breached the parties' contract by failing to transfer the subject funds to the designated transferee(s) of Plaintiffs and the Class members as quickly as is commercially practicable, including the transfer by electronic transfer where possible and by not paying interest on the subject funds during the period between which the funds were debited from the accounts of Plaintiffs and the Class members and the time when such funds were actually credited to their respective designated transferee(s).

82.     Plaintiffs and the Class members suffered actual damage and harm as a direct and proximate result of Defendants' breaches of contract in an amount that can only be determined from the records of Defendants.

WHEREFORE, Plaintiffs, Joan Berenson and David Berenson, individually and on behalf of the Class members herein, respectfully request this Court to enter (A) an order certifying the Class as set forth herein and designating Plaintiffs as Class representatives and their counsel as Class counsel; (B) a judgment in favor of Plaintiffs and the Class members against Defendants, including DOES 1-50, inclusive, jointly and severally, declaring the Defendants' conduct to in violation of law as set forth herein and permanently enjoining Defendants from such conduct; (C) a judgment in favor of Plaintiffs and the Class members against the Defendants, jointly and severally, awarding to Plaintiff and all Class members compensation for damages they sustained as a result of Defendants' breaches of contract,

namely, for all sums due them as restitution for all damages suffered, in an amount to be

determined at trial but not less than an amount equal to all damages actually suffered, plus pre

judgment interest thereon, attorneys' fees and costs in bringing the case, plus such other and

further relief as this Court deems appropriate.

### Count V
### (Violation of the Massachusetts Truth-in-Savings Law)

83.    Paragraphs 1 through 82 are realleged.

84.    Defendants failed to provide all of the required information on the subject

accounts to Plaintiffs and to the Class members, before they opened their accounts with

Defendants, in a written statement which the Plaintiffs and the Class members could retain.

85.    Plaintiffs and the Class members suffered actual damage and harm as a direct and

proximate result of Defendants' actions.

86.    Defendants violated the Massachusetts Truth-in-Savings Law and, therefore,

violated the Massachusetts Consumer Protection Act as well.

WHEREFORE, Plaintiffs, Joan Berenson and David Berenson, individually and on

behalf of the Class members herein, respectfully request this Court to enter (A) an order

certifying the Class as set forth herein and designating Plaintiffs as Class representatives and

their counsel as Class counsel; (B) a judgment in favor of Plaintiffs and the Class members

against Defendants, including DOES 1-50, inclusive, jointly and severally, declaring the

Defendants' conduct to be in violation of law as set forth herein and permanently enjoining

Defendants from such conduct; (C) a judgment in favor of Plaintiffs and the Class members

against the Defendants, including DOES 1-50, inclusive, jointly and severally, awarding to

Plaintiffs and all Class members compensation for damages they sustained as a result of

Defendants' unlawful conduct as set forth herein, namely, for all damages actually suffered in an

amount to be determined at trial, or statutory damages of $25.00 for each transaction, whichever is greater, plus interest thereon, and to double or treble the amount awarded because of the Defendants' willful and knowing conduct, together with attorneys' fees, expert witness fees, and costs in bringing the case, plus such other and further relief as this Court deems appropriate.

### Count VI
### (Violation of the Massachusetts Consumer Protection Act)

87.    Paragraphs 1 through 86 are realleged.

88.    All of Plaintiff's transactions (and those of the Class members) as a part of Defendants' BillPay EBPS were "consumer transactions" as defined under the CPL.

89.    The Defendants engaged and conspired to engage in deceptive and fraudulent practices under the CPL by, *inter alia*, misrepresenting to the Plaintiffs and to Class members, or failing to inform the Plaintiffs or Class members, that Defendants would not pay interest on transactions that were part of the BillPay EBPS, as described above. This conduct constitutes unfair methods of competition and unfair or deceptive acts or practices in the conduct of any "trade" or "commerce" that are declared unlawful under the CPL.

90.    This wrongful behavior was conducted intentionally, for the sole benefit of Defendants, with malice and with reckless disregard for Plaintiffs' and the Class member's statutory and common law rights.

WHEREFORE, Plaintiffs, Joan Berenson and David Berenson, individually and on behalf of the Class members herein, respectfully request this Court to enter (A) an order certifying the Class as set forth herein and designating Plaintiffs as Class representatives and their counsel as Class counsel; (B) a judgment in favor of Plaintiffs and the Class members against Defendants, including DOES 1-50, inclusive, jointly and severally, declaring the Defendants' conduct to be in violation of law as set forth herein and permanently enjoining

Defendants from such conduct; (C) a judgment in favor of Plaintiffs and the Class members against the Defendants, including DOES 1-50, inclusive, jointly and severally, awarding to Plaintiffs and all Class members compensation for damages they sustained as a result of Defendants' unlawful conduct as set forth herein, namely, for all damages actually suffered in an amount to be determined at trial, or statutory damages of $25.00 for each transaction, whichever is greater, plus interest thereon, and to double or treble the amount awarded because of the Defendants' willful and knowing conduct, together with attorneys' fees, expert witness fees, and costs in bringing the case, plus such other and further relief as this Court deems appropriate.

**Count VII**
**(Violation of the District of Columbia**
**Consumer Procedures Protection Act)**

91.    Paragraphs 1 through 90 are realleged.

92.    To the extent that Massachusetts law (and particularly, the CPL) is found not to apply to Plaintiffs' claims and the claims of the Class members, Plaintiffs bring this claim under the District of Columbia Consumer Procedures Protection Act. All of Plaintiffs' transactions as a part of Defendants' BillPay EBPS were "consumer transactions" as defined under the DCCPPA.

93.    The Defendants engaged and conspired to engage in deceptive and fraudulent practices under the DCCPPA by, *inter alia*, misrepresenting to the named Plaintiffs and to Class members, or failing to inform the named Plaintiffs and the Class members, that Defendants would not pay interest on transactions that were part of the Fidelity BillPay EBPS, as described above, namely, that Defendants would not pay interest on the funds subject to the BillPay EBPS transactions during the period between which the funds were debited from Plaintiff's and the Class members' accounts and the time when such funds were actually received by their

designated transferee(s). As a result, the Defendants violated Sections 28-3909(a), (d), (e) and (f) of the DCCPPA.

94.    This wrongful behavior was conducted intentionally, for the sole benefit of Defendants, with malice and with reckless disregard for Plaintiff's and the Class member's statutory and common law rights.

WHEREFORE, Plaintiffs, Joan Berenson and David Berenson, individually and on behalf of the Class members herein, respectfully request this Court to enter (A) an order certifying the Class as set forth herein and designating Plaintiffs as Class representatives and their counsel as Class counsel; (B) a judgment in favor of Plaintiffs and the Class members against Defendants, including DOES 1-50, jointly and severally, declaring the Defendants' conduct to be in violation of law as set forth herein and permanently enjoining Defendants from such conduct; (C) a judgment in favor of Plaintiffs and the Class members against the Defendants, including DOES 1-50, inclusive, jointly and severally, awarding to Plaintiffs and all other members of the Class compensation for damages they have sustained as a result of Defendants' unlawful conduct as set forth herein, as restitution for all damages suffered, in an amount to be determined at trial but not less than an amount equal to all damages actually suffered, or statutory damages of $1,500.00 for each transaction, whichever is greater, plus interest thereon, and to treble the amount awarded because of the Defendants' willful and knowing conduct, together with punitive damages in an amount to be determined at trial, attorneys' fees, expert witness fees, and costs in bringing the case, plus such other and further relief as this Court deems appropriate.

**Jury Demand**

Plaintiffs request that their claims, and the claims of all Class members, be tried before a jury.

Dated:  September 24, 2003                    Respectfully submitted,

                                              _Douglas A. Rubel_ ✓
                                              Douglas A. Rubel [DC 416676] ✓
                                              Kenneth L. McWilliams [DC 462723]
                                              Johanson Berenson LLP
                                              1146 Walker Road, Suite C
                                              Great Falls, Virginia 22066

                                              Attorneys for Plaintiffs

32