IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOAN BERENSON and DAVID BERENSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL FINANCIAL SERVICES, LLC, FIDELITY BROKERAGE SERVICES, LLC, and DOES 1-50, inclusive,<br><br>Defendants. | Civil Action No. 1:03 CV 02004 (RBW) |

**AFFIDAVIT OF DANIEL STICKNEY**

1.     I make this affidavit voluntarily and on the basis of personal knowledge or upon review of the business records of National Financial Services LLC and Fidelity Brokerage Services LLC, which records are made and maintained in the ordinary course of business by persons with knowledge at or near the time of the events recorded therein.

2.     I am a Director of Risk Management for Fidelity Brokerage Services LLC. In this capacity, I am responsible for reviewing certain customer disputes, collection matters, and check forgery issues. As Director of Risk Management, I am also familiar with the records of Fidelity Brokerage Services LLC and National Financial Services LLC.

3.     National Financial Services LLC ("NFS") and Fidelity Brokerage Services LLC ("FBS") are limited liability companies organized under the laws of the State of Delaware, each with a principal place of business in Boston, Massachusetts.

4.     NFS and FBS are subsidiaries of FMR Corp. and part of the Fidelity Investments family of companies.

5. NFS and FBS are each a registered broker and dealer under the Securities Exchange Act and a member of the New York Stock Exchange and various other national and regional stock exchanges.

6. Neither NFS nor FBS is chartered by the Commonwealth of Massachusetts as a savings bank, cooperative bank, credit union or trust company; nor are they supervised by the Massachusetts Commissioner of Banks.

7. Neither NFS nor FBS is chartered under federal law as a national bank, savings association, or credit union.

8. Joan and David Berenson jointly opened a brokerage account with Fidelity in 1991. A true and accurate copy of the application that the Berensons completed and the Customer Agreement from 1991 is attached as Exhibit A.

9. The Berensons maintain nine separate retail brokerage accounts with Fidelity including accounts in the name of two businesses, Berenson and Company International and Thunderbird Realty Ventures. The Berensons are classified as "premium" customers based on the asset level in their accounts.

10. The Berensons have been joint subscribers to Fidelity's bill payment service since 1993. A true and accurate copy of the Berensons' June 14, 1993 application for the bill payment service is attached as Exhibit B.

11. From 1991 to May 2001, the Berensons' Core Account, from which bill payment transactions were debited, was the Fidelity Daily Income Trust, a mutual fund. In May 2001, the Berensons began using the Fidelity Cash Reserves Money Market Fund, another mutual fund, as their Core Account. A Core Account is a money market mutual fund or cash account used by the customer, among other things, to purchase securities and to satisfy debits, such as bill payments.

- 3 -

When the Berensons' money market mutual funds were debited to pay bills as they had requested, mutual fund shares in their Core Account were redeemed to the extent necessary to satisfy the debit.

I declare under the penalty of perjury that the foregoing is true and accurate.

Signed this 6th day of November, 2003.

Gregory J. Remmes
My commission expires
July 2, 2004

Daniel Stickney

16/372166.5

# FIDELITY ULTRA SERVICE ACCOUNT
## NEW ACCOUNT APPLICATION

T06798729G
X37-068900
8/26/91

### Please print your full name

Account Holder: DAVID A BERENSON
Joint Account Holder (if any): JOAN B BERENSON

☐ Individual  ☒ Joint Tenants  ☐ Custodian (UGMA/UTMA)  ☐ Estate*  ☐ Trust*  ☐ Fiduciary*

For corporate accounts, contact a Fidelity USA Representative to receive a Business USA Application.  0002

### Joint Accounts:
(CHECK ONE) ☐ Joint tenants with rights of survivorship   ☐ Tenants in common
If no designation is made, the account will be registered as joint tenants with rights of survivorship.
If interests are not to be equal, designate the percentage of interest of each tenant.

Name: _____
Name: _____

AUG 26 91

Account Holder                    Birth Date: Only as necessary
Social Security or Tax ID Number: 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

Joint Account Holder              Birth Date: Only as necessary
Social Security or Tax ID Number: Only as necessary

Citizenship ☒ U.S.  ☐ Resident Alien  ☐ Non-Resident Alien
Country _____
Passport No. _____
(Non-Resident Alien only. Non-Resident Alien must provide W-8).

Citizenship ☐ U.S.  ☐ Resident Alien  ☐ Non-Resident Alien
Country _____
Passport No. _____
(Non-Resident Alien only. Non-Resident Alien must provide W-8).

### Mailing address

☐ Please check this box if joint account holder's legal address differs from primary account holder. If joint account holder's legal address is different from primary account holder, please write additional address on the back page of this application.

Home Phone _____    Business Phone _____

Number/Street: 1617 35th St. N.W.
City: Washington D.C. 20007     State ____  ZIP ____

Number/Street: _____
City: _____    State ____  ZIP ____

### Bank reference

Bank Name: MANUFACTURERS HANOVER
Bank Address Street: 1460 Broadway    City: New York    ZIP: 10036
Name on Account: DAVID A. & JOAN B. BERENSON    Bank Acct. No.: 1290535663G5    State: NY

☐ Please check this box if you are interested in transferring money by bank wire and/or EFT (Electronic Funds Transfer) between your bank and your Fidelity USA Account. Please staple a voided check from the bank account to this application and complete the information below. Note that wire/EFT instructions will be honored provided that at least one common name appears on the bank account and Fidelity USA registration. Bank must be a member of Automated Clearing House (ACH).

☐ Current  ☐ New   Bank Transit Routing Number from Your Check: 021000306

X37-068-90

Exhibit A

## Employment information

**Account Holder**
Employer: Allied[?]
Type of business: ☒ Self employed
Address: 1691 35th St SW, Wyoming[?]
Position/Title: Owner

**Joint Account Holder**
[illegible]
Type of business: ☒ Self employed
Address: [illegible] 35 [illegible]
Position/Title: [illegible]

## Financial information

**Account Holder**
Approximate annual income from all sources
Check Account Holder's income:
☐ Under $20,000
☐ $20,000 to $50,000  ☐ $50,000 to $100,000  ☒ Over $100,000
Federal Tax Bracket: [illegible] ☒ [illegible] 21%

Estimated Net Worth: [illegible]
☐ Under $30,000  ☐ $30,000-$50,000  ☐ $50,000-$100,000  ☐ $100,000-$500,000  ☒ $500,000+
☐ Under $15,000 [illegible]

**Joint Account Holder**
[similar fields, illegible]
☒ Over $100,000

## Choose between taxable or tax exempt yields on your account balance

[illegible checkbox options]

## How to open your account

[illegible instructions]

### Please read and sign below

This Agreement and its enforcement shall be governed by the laws of the Commonwealth of Massachusetts; shall cover individually and collectively all accounts which the undersigned may open or reopen with Fidelity; and shall inure to the benefit of Fidelity's successors, whether by merger, consolidation or otherwise, and assigns and Fidelity may transfer the account of the undersigned to your successors and assigns, and this Agreement shall be binding upon the heirs, executors, administrators, successors and assigns of the undersigned.

### AFTER YOU HAVE READ THE CUSTOMER AGREEMENT, PLEASE SIGN BELOW.

To: Fidelity Brokerage Services, Inc. and National Financial Services Corporation

I ACKNOWLEDGE THAT I HAVE READ, UNDERSTOOD AND AGREE TO THE TERMS SET FORTH IN THE CUSTOMER AGREEMENT AND REQUEST THAT YOU ACCEPT ONE OR MORE ACCOUNTS IN MY NAME. I am at least 18 years of age and of full legal age in the state in which I reside. I understand you will supply my name to issuers of any securities held in my account so I might receive any important information regarding them, unless I notify you in writing not to do so. All decisions relating to my investment or trading activity shall be made by me or my duly authorized representative. I certify under penalties of perjury that (1) I have provided the correct Social Security or Taxpayer Identification Number; (2) the IRS has never notified me that I am subject to 20 percent backup withholding, or has notified me I am no longer subject to such. (NOTE: If part 2 does not apply, please strike out before signing.) I understand that telephone calls to Fidelity may be recorded and consent to such recording.

Tax Withholding Information: As required by federal law, I (we) certify under penalties of perjury (1) that the Social Security or Taxpayer Identification Number provided herein is correct and (please check only if appropriate):

☐ Yes, the IRS has notified me (us) that I (we) are subject to 20% backup withholding. (20% of all dividend payments, interest payments and proceeds will be automatically withheld.)

☐ Yes, the IRS has notified me (us) that I (we) are no longer subject to such backup withholding. (20% backup withholding will not be withheld.)

☐ If you do not wish to have the ability to margin your securities, check this box.

I represent that I have read the terms and conditions concerning this account and agree to be bound by such terms and conditions as currently in effect and as may be amended from time to time.

Lending Authority (for margin accounts only). YOU ARE HEREBY AUTHORIZED TO LEND SEPARATELY, OR WITH THE PROPERTY OF OTHERS, EITHER TO YOURSELVES OR TO OTHERS, ANY PROPERTY YOU MAY BE CARRYING FOR ME ON MARGIN. THIS AUTHORIZATION APPLIES TO ALL MY ACCOUNTS YOU CARRY AND SHALL REMAIN IN FORCE UNTIL YOU RECEIVE WRITTEN NOTICE OF REVOCATION AT YOUR MAIN OFFICE IN BOSTON, MA.

This account is governed by a pre-dispute arbitration clause which is found in the Customer Agreement in paragraph 18. I acknowledge receipt of the pre-dispute arbitration clause.

X _David A. Berenson_    5/26/9_    _[Joint signature]_    8-26-91
Signature             Date         Joint Tenant's Signature (if any)    Date
                                   In the case of a joint account, both tenants must sign.

All accounts are carried with our subsidiary National Financial Services Corporation, member of the New York Stock Exchange, other principal exchanges and SIPC.

### Signature Card

Important: Please complete signature card in order to enjoy unlimited checkwriting.



# Customer Agreement

**Please Read This Agreement in Its Entirety Before Signing the Application.**

1. This Agreement between me and Fidelity Brokerage Services, Inc. ("FBSI"), and National Financial Services Corporation (NFSC) (collectively "you") sets forth the terms and conditions governing the Fidelity Ultra Service Account program to which I am making application.

    This Account offers integrated financial services linked with an eligible money market fund (Transaction Fund), at my option and as selected by me: (1) an account provided by Shawmut Bank of Boston, N.A. ("Shawmut"), which provides checking services; (2) an account with a card-issuing bank which provides MasterCard® and Visa® card services; (3) a Fidelity Brokerage Services, Inc. securities account (the "Securities Account"); (4) electronic funds transfer services, including bill-payment services, electronic fund share purchases and redemptions.

2. **Transaction Fund.** Amounts contributed and received will be invested in an income earning account or in the money market fund of my choice from among: Fidelity Daily Income Trust, Fidelity Tax-Exempt Money Market Trust, Fidelity Massachusetts Tax-Free Fund: Money Market Portfolio, Fidelity California Tax-Free Fund: Money Market Portfolio, Fidelity New York Tax-Free Fund: Money Market Portfolio, Fidelity New Jersey Tax-Free Money Market Portfolio, or any other fund Fidelity USA makes available and is selected by me (the "Transaction Fund"), subject to prior payment by you and on my behalf of any outstanding margin loan balances, card overdrafts or other debit items arising from card usage, or authorized payments of Securities Account settlements. Any free credit balances in the Securities Account (i.e., any cash that may be transferred out of the Securities Account without giving rise to interest charges), in excess of $250, will be automatically invested on a daily basis in my Transaction Fund. Amounts of less than $250 will automatically be invested weekly. Any Fund I am able to later choose as my Transaction Fund will also be subject to these provisions.

    Investments by check may be promptly credited to my Transaction Fund on a daily or weekly basis in accordance with the above minimums for the automatic investments, and will earn dividends of the Transaction Fund as described in that Fund's Prospectus, prior to final collection of such checks. I understand that access to the redemption proceeds of Transaction Fund shares purchased with monies so advanced may be withheld for up to 7 days, **20 days for foreign checks**, to assure that such checks have been collected. Such withholding may result in dishonor of checks or rejection of card transactions or other debit items if monies are not otherwise available to me within the Fidelity Ultra Service Account.

    Shares of the Transaction Fund will be redeemed at their net asset value, and I agree that such shares shall be automatically redeemed to satisfy debit balances in the Securities Account, card or check usage, electronic funds transfers, overdrafts, and other authorized debit items. If I so elect and upon my telephoned instructions, monies representing the redemption of Transaction Fund shares may be transferred to a bank account designated by me. Such monies shall be submitted, at your election, via the Federal Reserve Wire System or an automated clearinghouse system. Except as otherwise limited by federal or state law, I hereby ratify any such actions and agree that neither you nor a fund's transfer agent will be liable for any loss, liability, cost, or expense (i) so long as they have acted in accordance with the procedures set forth herein or in the applicable fund Prospectus, or (ii) for acting upon instructions with respect to money transfers given by any person if believed to be genuine, provided monies are transferred to the bank account designated by me.

    Additionally, I hereby ratify any instructions given on this account and any account of another Fidelity fund into or from which I exchange and agree that neither you, nor the Fund's transfer agent will be liable for any loss, cost or expense for acting upon such instructions (by telephone or writing) believed by them to be genuine and in accordance with the procedures described in the fund Prospectus. I understand that it is my responsibility to read the Prospectus of any other Fidelity fund into which I exchange. Written instructions should be signed by both tenants.

    I understand that I will be charged a $5.00 administrative service fee by you for each month in which I maintain my Fidelity USA Account, that you may change the amount of such fee, that the Transaction Fund will assume various charges in connection with the Fidelity USA Account, and that Fidelity Management & Research Company will receive a fee for serving as investment adviser to the Transaction Fund. I further understand that for any special services which are not part of your regular Fidelity USA Account and which are requested by me and performed by you, I will pay your customary service charges. **I have received and read a copy of the Prospectus of the Transaction Fund selected by me, containing a more complete description of it and its operations.**

3. **Check/Card Services.** I understand that by choosing the check feature, I may write checks on the checking account with Shawmut, which is governed by the rules of the bank and the provisions of the Massachusetts Uniform Commercial Code, and that you may charge me for any special expenses incurred on this checking account including a $15.00 charge for checks returned for insufficient funds (and stop payment requests), and that these charges are subject to change.

    The cards may be used to purchase merchandise or services and to receive cash advances. For these transactions, the issuing bank will notify you of card charges monthly and you will promptly make payment on my behalf to the extent funds are available within my Fidelity USA Account.

    Should sufficient funds not be available in the Account when payment is due, then checks will be dishonored, and card charges may be dishonored or the issuing bank may advance the balance and will impose interest at a rate to be fixed by the bank, for the time the card account is overdrawn, in accordance with the Fidelity USA Bank Card Customer Agreement. Any overdraft, including interest, will be due and payable to the issuing bank immediately, and I agree to pay by submitting monies to my Fidelity USA Account. In addition, I understand such overdraft will be satisfied from any subsequent amounts which become available within my Fidelity USA Account, including increased margin loan value in my Securities Account if the margin option has been selected by me.

    I understand that I will be provided with the card(s) to be used in connection with the Fidelity USA Account only if the issuing bank accepts my request. By receiving, signing, accepting or using the card(s), I agree to the terms of the card agreement that the issuing bank will send me if approved. I agree to pay the annual card fee after acceptance.

4. **Payment of Items.** I understand that all debit items, such as checks, card charges, Securities Account purchases and electronic funds transfers, will be accumulated daily (or monthly in the case of card charges), and that you will promptly pay each on my behalf to the extent that sufficient funds can be provided; first, from amounts contributed by me or on my behalf and available that day, or, from the proceeds of redemption of Transaction Fund shares owned by me, which you are authorized to redeem to pay such items; and second, should these sources prove insufficient, and I have selected the margin option, from margin loans made by FBSI within the available margin loan value of my Securities Account. Any such amount will be a loan by FBSI or its subsidiary National Financial Services Corporation ("NFSC") to me and will be secured by the securities in my Securities Account. If FBSI extends credit to me, interest will be charged from the day it makes payment on my behalf at the same rate FBSI generally charges for margin loans.

    I understand that if funds in my Fidelity USA Account are insufficient to pay any item, subject to the issuing bank electing to advance funds on my behalf as described above in connection with card charges, such items will not be honored. Should any item be honored when sufficient funds are not available, or should a liability arise within my Fidelity USA Account and, after request of me for payment such item remains unpaid, shares of any investment company in which I have an interest and for which Fidelity Management & Research Company serves as investment adviser shall be subject to a general lien for the discharge of my obligations to you. In such event, you may without further demand or notice, which are expressly waived, redeem any such investment company shares to satisfy my obligation to you.

5. **Electronic Funds Transfer.** I may elect any or all of the following electronic funds transfer services: (i) telephone purchase and redemption (wire redemption authorization will also include payment via electronic funds transfer) of Fund shares to be settled through my designated bank account; (ii) telephone authorization of bill payments to preestablished merchants or other accounts to be settled through the Fidelity USA Account; and (iii) direct transmission to my Fidelity USA Account of payments to be made to me by others on a preestablished, periodic basis. The terms and conditions for each service are set forth in a separate agreement, to which I will separately consent if I desire that service.

6. **Periodic Reports.** Each month I will receive a transaction statement detailing: all purchases of merchandise, services and cash advances made with the card; redemption checks; securities bought or sold in my Securities Account, whether on margin or on a fully-paid basis; margin loans and repayments and interest charges, if any; the number of fund shares that were purchased or redeemed for me; and electronic funds transfers and monthly fees assessed.

    I understand that I should promptly and carefully review the monthly transaction statement and notify you of any errors, and that information contained on Securities Account confirmations shall be conclusive if I do not object within 5 business days.

7. **Minimum Account Balances and Termination of Fidelity USA Account.** I may terminate this subscription to the Fidelity USA Account, including the Securities Account, at any time. I understand that the minimum balance to be maintained in my Fidelity USA Account is either $10,000 in my Transaction Fund or $25,000 in a combination of the Money Market Fund, Securities and/or other Fidelity Accounts, and that FBSI reserves the right to transfer funds from the Transaction Fund into an interest bearing or non-interest bearing account if such minimum balance requirements are not met.

    I will remain responsible for any charges to my Securities or Card Accounts and other liabilities, whether arising before or after termination. You may terminate my Fidelity USA Account or my Securities Account, at any time at your discretion. If my Fidelity USA Account is terminated either by me or you, I will promptly return all unused checks and cards to you. I understand that failure to return such checks and cards may result in a delay in complying with my instructions as to the disposition of assets in my Fidelity USA Account.

8. **Nature of Services Provided.** Upon acceptance of my application(s), I understand Fidelity Brokerage Services, Inc. ("FBSI" or "you") will maintain an account for me and, as my broker, buy or sell securities according to my instructions. All decisions relating to my investment or trading activity shall be made by me or my duly authorized representative. Any information I give FBSI on this account agreement will be subject to verification, and I authorize you to obtain a credit report about me at any time. Upon written request, FBSI will provide the name and address of the credit reporting agency used. FBSI also may tape record conversations with me in order to verify data concerning any transactions I request, and I consent to such recording. I also understand that my account(s) is carried by National Financial Services Corporation (NFSC), a subsidiary of FBSI and that all terms of this agreement also apply between me and NFSC.

9. **Applicable Rules and Regulations.** All transactions through FBSI are subject to the constitution, rules, regulations, customs and usages of the exchange, market or clearing house where executed, as well as to any applicable federal or state laws, rules and regulations.

USA-ca 591 1

10. **Joint Accounts.** If this is a joint account, "I" refers to all account holders, and each of the account holders agrees that any account holder has authority on behalf of the joint account to: (1) buy, sell (including short sales) and otherwise deal in stocks, bonds, options and other securities on margin or otherwise; (2) receive demands, notices, confirmations, reports, statements of account and communications of every kind on behalf of the joint account; (3) receive money, securities and property of every kind and dispose of the same on behalf of the joint account; (4) make agreements relating to any of the foregoing matters and to terminate, modify or waive any of the provisions of the agreement on behalf of the joint account; (5) to deal with FBSI as fully and completely as if he (she) alone were interested in this account and without notice to the other account participants; (6) all obligations and liabilities arising under this account are joint and several and may be enforced by FBSI against any or all account holders. FBSI is authorized to follow the instructions of any joint account holder in every respect and to deliver any or all monies, securities or other property to any joint account holder upon the instructions of any joint account holder, or to any other person upon such instructions, even if such delivery or payment is to that joint account holder personally and not to the other(s). FBSI will be under no obligation to inquire into the purpose or propriety of such delivery or payment and is not bound to inquire into the disposition or application of such delivery or payment. This authority remains in force until written notice to the contrary is addressed to FBSI and delivered to its main office in Boston. FBSI, in its sole discretion and for its sole protection, may require the written consent of all account holders prior to acting upon the instruction of any account holder.

11. **Security Interest.** As security for any indebtedness or obligation incurred on any account I may ever maintain with Fidelity, I grant FBSI a security interest in any and all securities or property held now or later in any of my accounts. At its sole discretion without prior notice and for its sole protection, FBSI may sell or transfer money, securities or rights to any portion of any account to satisfy a margin deficiency or other obligation. Shares of any Investment Company in which I have an interest and for which Fidelity Management & Research Company serves as investment adviser also are subject to a general lien for the discharge of my obligation to FBSI, and FBSI may redeem any such shares to satisfy my obligation without further notice or demand.

12. **Settlement of Transactions.** In the absence of a specific demand, all transactions in any of my accounts are to be paid for, securities delivered or required margin deposited, no later than 2 pm Eastern Standard Time on the settlement date. Fidelity reserves the right to cancel or liquidate at my risk any transaction not timely settled. Margin calls are due on or before the date indicated regardless of the settlement date of the transactions.

13. **Liability for Costs of Collection.** I agree to reimburse FBSI for all reasonable costs and expenses incurred in the collection of any debit balance or unpaid deficiency in any of my accounts, including, but not limited to, attorney's fees.

14. **Receipt of Communications.** Communications by mail, messenger, telegraph or otherwise, sent to me at the address of record listed on the application, or any other address I may give FBSI in writing, are presumed to be delivered to and received by me whether actually received or not. Information contained on transaction reports and account statements is conclusive unless I object in writing within five (5) and ten (10) days, respectively, after transmitted to me.

15. **Extraordinary Events.** FBSI is not liable for any losses caused directly or indirectly by government restrictions, exchange or market rulings, suspension of trading or other conditions beyond its control, including, but not limited to, extreme market volatility or trading volumes.

16. **Choice of Marketplace.** In the absence of specific instructions from me, when securities may be traded in more than one marketplace, FBSI may use its discretion in selecting the market in which to place my order.

17. **Purchase of Precious Metals.** If I direct FBSI to purchase precious metals for me, I understand: a.) The Securities Investor Protection Corporation (SIPC) does not provide protection for precious metals, but if stored through FBSI, they are insured by the depository at market value; b.) Precious metals are not marginable; c.) Precious metal investments can involve substantial risk due to rapid and abrupt price changes and, therefore, FBSI cannot guarantee an advantageous purchase or liquidation price; d.) If I take delivery of my metals, I am subject to delivery charges and applicable sales and use taxes.

18. **PRE-DISPUTE ARBITRATION AGREEMENT.** THIS ACCOUNT IS SUBJECT TO THE ARBITRATION RULES OF THE NEW YORK STOCK EXCHANGE, INC. OR NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. ARBITRATION IS USED TO RESOLVE A DISPUTE BETWEEN TWO PARTIES. BECAUSE CONTROVERSIES INVOLVING BROKERAGE FIRMS OFTEN INVOLVE COMPLICATED ISSUES, ARBITRATION FORUMS WERE CONCEIVED BY THE SECURITIES AND EXCHANGE COMMISSION, THE NEW YORK STOCK EXCHANGE, INC. AND THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. TO PROVIDE AN ALTERNATIVE DISPUTE RESOLUTION MECHANISM FOR INVESTORS WHICH IS USUALLY MORE EFFICIENT AND LESS COSTLY THAN COURT LITIGATION. I AM AWARE OF THE FOLLOWING:
   (a) ARBITRATION IS FINAL AND BINDING ON THE PARTIES.
   (b) THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.
   (c) PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.
   (d) THE ARBITRATORS' AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED.
   (e) THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

I AGREE THAT ALL CONTROVERSIES THAT MAY ARISE BETWEEN US CONCERNING ANY ORDER OR TRANSACTION, OR THE CONTINUATION, PERFORMANCE OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN US, WHETHER ENTERED INTO BEFORE, ON. OR AFTER THE DATE THIS ACCOUNT IS OPENED, SHALL BE DETERMINED BY ARBITRATION BEFORE A PANEL OF INDEPENDENT ARBITRATORS SET UP BY EITHER THE NEW YORK STOCK EXCHANGE, INC. OR NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. AS I MAY DESIGNATE. IF I DO NOT NOTIFY YOU IN WRITING OF MY DESIGNATION WITHIN FIVE (5) DAYS AFTER I RECEIVE FROM YOU A WRITTEN DEMAND FOR ARBITRATION, THEN I AUTHORIZE YOU TO MAKE SUCH DESIGNATION ON MY BEHALF. I UNDERSTAND THAT JUDGEMENT UPON ANY ARBITRATION AWARD MAY BE ENTERED IN ANY COURT OF COMPETENT JURISDICTION.



**Fidelity Investments**
Ultra Service Account

Fidelity Service Co.
P.O. Box 2300
Boston, MA 02107-2300

## Bill Payment Application

B.807-FORM-1092

Fidelity's Bill Payment service enables you to arrange for payment of your bills directly from your Fidelity Ultra Service Account. You may choose to make automatic monthly payments of a fixed dollar amount or you may call to make payments of variable amounts (minimum $10) anytime.

Use this form to add bill payment to your Ultra Service Account. There is a $25 set-up charge and a $5 monthly fee. Both charges are automatically deducted from your Ultra Service Account.

We will contact each payee and establish the service normally within 10 days from the time we receive your application. Please make other arrangements for payments due before you receive confirmation from us that the service is active.

Please complete all sections. If you have any questions, please call us anytime at 800-544-6565.

### 1 CUSTOMER INFORMATION

Owner's Name: DAVID A BERENSON
Social Security Number: 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
Joint Owner's Name (if any): JOAN B BERENSON
Daytime Telephone Number: 202-663-9521
Account Number: X3.7-068900
1617 35th ST NW
WASHINGTON DC 20007
Evening Telephone Number: 202-342-0360

001.306

### 2 BILL PAYMENT INFORMATION

Please provide us with complete information for each payee you designate. Include the names and addresses, your account numbers with the payees (normally found at the top of your bills), and the types of payments (telephone bill, mortgage payment, etc.). See the example below. We cannot make life insurance payments.

If you would like to make automatic monthly payments to any payee, tell us the amount to pay each month and the dates of the first and last payments. The payment dates you choose should be 7 to 10 business days prior to the bill's due date to allow sufficient time for processing and mailing your payment. We cannot make automatic payments on a quarterly, semiannual, or annual basis.

We can make payments to a specific individual using their bank account (i.e., monthly checks to your son or daughter in college). Please see the other side.

You can use your checkwriting expense codes with the bill payment service. For example, if "37" is your designated expense code for "Home Improvements" on your checking summary, you should also use "37" as the expense code for any home improvement related bill payments through this service.

| Payee Name | Payee Address | City | State | Zip Code | Account Number | Type of Payment | First Payment Date | Monthly Amount | Expense Code |
|---|---|---|---|---|---|---|---|---|---|
| JOHN INVESTOR | 123 MAIN STREET | BOSTON | MA | 02134 | 123456789 | MORTGAGE | 12-01-92 | $1530 85 | 05 |
| YMCA | 1711 RHODE ISLAND AVE NW | WASHINGTON | DC | 20036 | 2318 MEMBER NO. | MEMBERSHIP | 07-26-93 | $87.90   665155 (1) | |
| Chevy Chase | P O BOX 17000 | BALTIMORE | MD | 21203 | 117505-8 | MORTGAGE | 07-19-93 | $6950.14  685899 (2) | |
| BARHITE + HOLZINGER | 71 PONDFIELD ROAD | BRONXVILLE | NY | 10708 | | | 07-19-93 | $292.13  187910 (3) | |

(Please turn over to complete the other side.)

| Payee Name | Type of Payment | Expense Code |
|---|---|---|
| SALLIE MAE | STUDENT LOAN | |
| Payee Address: P O BOX 52233 | Complete the following for automatic payments: First Payment Date (mm-dd-yy) | |
| City: PHOENIX  State: AZ  Zip Code: 85072 | 07-19-93 | (4) |
| Account Number: 116 58 2292 1 | Monthly Amount: $176124  C16640. | |
| JOHNSON & HIGGINS | HEALTH INS | |
| Payee Address: P O BOX 2239 | Complete the following for automatic payments: First Payment Date (mm-dd-yy) | |
| City: BEDFORD PARK  State: IL  Zip Code: 60499 | 07-19-93 | (5) |
| Account Number: 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 | Monthly Amount: $13770  514931 | |

To make payments to an individual, please complete the following

**3 AUTHORIZATION** — All account owners must sign below. As a convenience to me (us), I (we) hereby authorize and request Fidelity Brokerage Services, Inc. to debit my (our) account for amounts to be paid to it for its use in making payments or initiating credit entries to accounts I (we) have authorized you to pay in my (our) behalf.
I (we) have read, understand and hereby accept the terms and conditions stated in the Bill Payment Agreement and Service Disclosure.

Signature of Owner: *David A. Berenson*  Date: 6/14/93
Signature of Joint Owner: *Jan B. Berenson*  Date: 6/14/93

Fidelity Brokerage Services, Inc. Member NYSE, SIPC    Fidelity Use Only