IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOAN BERENSON and DAVID BERENSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL FINANCIAL SERVICES, LLC, FIDELITY BROKERAGE SERVICES, LLC, and DOES 1-50, inclusive,<br><br>Defendants. | Civil Action No. 1:03 CV 02004 (RBW) |

**AFFIDAVIT OF CAMILLE ZASLAU**

1.  I make this affidavit voluntarily and on the basis of personal knowledge or upon review of the business records of National Financial Services LLC and Fidelity Brokerage Services LLC, which records are made and maintained in the ordinary course of business by persons with knowledge at or near the time of the events recorded therein.

2.  I am a Director in the Treasury Department of National Financial Services LLC. In this capacity, I am familiar with the operations of the Fidelity BillPay service.

3.  By 1986, Fidelity had established a bill payment service for its brokerage customers whereby a customer could order by telephone payments to creditors and other entities by debiting the customer's Core Account, an account designated by the customer for margin and other transactions. The service is a convenience to investors that permits them to direct Fidelity to automatically make recurring payments (such as mortgage obligations or utility bills) or even one-time payments on their behalf.

4.  Fidelity's bill payment service works on a "good funds" business model. Specifically, in accordance with the Service Agreement, Fidelity debits payments from a

- 2 -

customer's account on the date the customer specifies for the payment to be initiated in order to ensure that the customer has adequate funds in his or her account to make the payment. Otherwise, Fidelity would assume the risk that a customer might withdraw funds in between requesting a payment and the payment reaching the payee.

5. Over time, Fidelity implemented additional methods to access the bill payment service, first via personal computer and modem and then via an Internet web site.

6. Currently, Fidelity customers who have registered for the BillPay service are able to make payments to creditors and other entities using Fidelity's Internet website. Fidelity also permits customers to request assistance of telephone customer service representatives to modify BillPay information.

7. Fidelity and its vendor, CheckFree Corp., operate an automated process system that manages the BillPay service.

8. On either a recurring or non-recurring basis, the customer enters the necessary information on Fidelity's web site including the payee and the amount of the payment.

9. In accordance with Fidelity's written instructions, the customer also chooses a defined "Transaction Date."

10. On the Transaction Date selected by the customer, Fidelity's automated system (i) informs CheckFree that a payment is to be made; (ii) checks the customer's Core Account to ensure that the customer has adequate funds; and (iii) debits the customer's Core Account for the amount of the transaction. If the Core Account is a money market mutual fund, as it is for plaintiffs Joan and David Berenson, shares are redeemed in a sufficient amount to fund the debit. If the Core Account does not contain sufficient funds to support the bill payment, the customer's request is rejected.

11. At approximately 1:00 a.m. on the following morning, CheckFree determines whether the payee will accept payment electronically or by check.

12. If payment is to be made electronically, CheckFree initiates the electronic payment that same day and settles with the payee thereafter. If payment is to be made by check, then CheckFree mails the payment the same day.

13. In the event that CheckFree cannot process the payment, Fidelity investigates the payment issue. If the issue cannot be resolved after 24 hours, there is no payment and Fidelity credits back the customer's Core Account.

14. The process described in the preceding five paragraphs is depicted in a graphic flow-chart attached as Exhibit A.

15. Because customers' Fidelity Core Accounts are debited as of the Transaction Date, CheckFree must then determine whether the payment instruction it has received is valid, and Fidelity must in turn supply CheckFree with the appropriate funds to make payments, it is not practicable to commence payment to the designated payees before the next day.

16. Fidelity guarantees its customers that the payee will be credited with payment within five business days; however, generally payees receive payments in a much shorter time. The five day cushion is needed to ensure that payments that are mailed reach their destination and the payee deposits the payment.

17. A customer who prefers to earn "interest" (or additional dividend income in the case of Core Accounts that are money market mutual funds) up until the time a payee actually receives payment may do so without using the BillPay service simply by writing checks on his or her Fidelity account. In that case, however, the customer must write and mail checks him- or

- 4 -

herself and assume the risk that the check will bounce if the account contains insufficient funds at the time of presentation.

    I declare under the penalty of perjury that the foregoing is true and accurate.

Signed this 6th day of November, 2003.

                                                          *Camille Zaslau*

16/372318.2

