IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOAN BERENSON and DAVID BERENSON, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>NATIONAL FINANCIAL SERVICES LLC, FIDELITY BROKERAGE SERVICES LLC, and DOES 1-50, inclusive,<br><br>        Defendants. | Civil Action No. 1:03 CV 02004 (RBW) |

## **DEFENDANTS' MOTION TO TRANSFER VENUE**

Pursuant to 28 U.S.C. § 1404(a), defendants National Financial Services LLC and Fidelity Brokerage Services LLC (together, "Fidelity") respectfully move to transfer venue in this case to the United States District Court for the District of Massachusetts. In support of their motion, the defendants have submitted an accompanying memorandum of law and the Affidavit of Colleen Hankins.

Counsel have conferred as required by Local Rule 7(m) but have been unable to reach agreement regarding the issues raised in this motion. The plaintiffs oppose transfer.

Respectfully submitted,


NATIONAL FINANCIAL SERVICES LLC
FIDELITY BROKERAGE SERVICES LLC
By their attorneys,


/s/ Lawrence H. Martin
Lawrence H. Martin (D.C. Bar No. 476639)
FOLEY HOAG LLP
1747 Pennsylvania Ave., N.W.
Washington, D.C. 20006-4604
(202) 223-1200

Nicholas C. Theodorou (Pro Hac Vice)
John A. Shope (Pro Hac Vice)
Kevin C. Conroy (Pro Hac Vice)
William W. Fick (Pro Hac Vice)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

DATED:  November 13, 2003


17/504995.2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOAN BERENSON and DAVID BERENSON, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>NATIONAL FINANCIAL SERVICES LLC, FIDELITY BROKERAGE SERVICES LLC, and DOES 1-50, inclusive,<br><br>        Defendants. | Civil Action No. 1:03 CV 02004 (RBW) |

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANTS' MOTION TO TRANSFER VENUE

Pursuant to 28 U.S.C. § 1404(a), defendants National Financial Services LLC and

Fidelity Brokerage Services LLC (collectively "Fidelity") have moved to transfer venue in this

proposed consumer class action to the United States District Court for the District of

Massachusetts.   The Court should order the requested transfer because the center of gravity in

this case lies squarely in Massachusetts by nearly every relevant measure that federal courts have

recognized, and there is no consideration in favor of continuing the case in this District. The

largest group of putative class members are residents of Massachusetts rather than other states,

the defendants' business, witnesses, and documents are centered in Massachusetts, and the

plaintiffs allege that Massachusetts statutory and common law govern their claims.

**Background**[1]

Plaintiffs Joan and David Berenson bring this proposed nationwide consumer class action on behalf of "all persons who subscribed to and used the Fidelity BillPay EBPS during the six year period preceding the filing of this action."  Cmplt. ¶ 49.  The Berensons allege that Fidelity failed to disclose that its electronic bill payment service would not credit them with "interest" on their Fidelity mutual fund account during the period of "float" between the time that amounts were debited from their account and the time that the payee ultimately was credited with the payment.  They contend that Fidelity thus violated the federal Electronic Funds Transfer Act, the Massachusetts Truth in Savings Law, the Massachusetts Consumer and Business Protection Act, and, alternatively if Massachusetts law is not applied, the District of Columbia Consumer Protection Procedures Act.  In addition, the plaintiffs assert common law claims of intentional and negligent misrepresentation, breach of fiduciary duty, and breach of contract.

**Argument**

The federal change of venue statue provides, in pertinent part:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).   As the moving party, Fidelity "bears the burden of establishing that the transfer of this action to another federal district is proper."  McClamrock v. Eli Lilly & Co., 267 F. Supp. 2d 33, 36 (D.D.C. 2003) (Walton, J.).   In deciding a motion under § 1404(a), the Court first must determine "whether the

---

[1]  The defendants have submitted a more extensive Statement of Undisputed Facts in support of their separate motion to dismiss and for summary judgment, filed on November 7, 2003.  If this Court decides to transfer the case, the motion to dismiss and for summary judgment could be ruled upon by the transferee judge in the District of Massachusetts as a matter of judicial economy, since it requires resolution of questions of Massachusetts law.

action could have been brought in the proposed transferee district." In re: Vitamins Antitrust Litigation, 263 F. Supp. 2d  67, 68 (D.D.C. 2003).   Once that threshold requirement is met, the transfer decision "becomes a discretionary matter to be decided on a case-by-case basis, balancing a number of case-specific factors to determine whether convenience and justice support such a transfer." Id.  (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239 (1988)).   This Court has grouped these factors into "private interests of the parties" and "public interests of the court." McClamrock, 267 F. Supp. 2d at 37.   Here, venue is clearly proper in the District of Massachusetts and nearly all relevant considerations weigh in favor of transfer.

## I.     VENUE IS PROPER IN THE DISTRICT OF MASSACHUSETTS.

Pursuant to 28 U.S.C. § 1391, venue "in a civil action wherein jurisdiction is not founded solely on diversity of citizenship" is proper in a "judicial district where any defendant resides, if all defendants reside in the same state . . . [or] a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . . ." 28 U.S.C. § 1391(b).   In this case, Fidelity has its principal place of business in Boston, Massachusetts and the underlying decisions about implementation of and disclosures concerning the BillPay system were made by Fidelity personnel in Boston.   See Affidavit of Colleen Hankins ("Hankins Aff."), ¶¶ 6-7.   There is no question that this action properly could have been filed in the District of Massachusetts.

## II.    PRIVATE INTERESTS OF THE PARTIES FAVOR TRANSFER TO THE DISTRICT OF MASSACHUSETTS.

"Private" interests that the Court may consider in evaluating a venue transfer motion include:

(1) the plaintiff's choice of forum, unless the balance of
convenience is strongly in favor of the defendants; (2) the
defendants' choice of forum; (3) whether the claim arose
elsewhere; (4) the convenience of the parties; (5) the convenience
of the witnesses of the plaintiff and defendant, but only to the
extent that the witnesses may actually be unavailable for trial in
one of the fora; and (6) the ease of access to sources of proof.

McClamrock, 267 F. Supp. 2d at 37 (quoting Trout Unlimited v. United States Dep't of

Agriculture, 944 F. Supp. 13, 16 (D.D.C. 1996)).

While ordinarily "the plaintiff's choice of forum is given substantial deference," id. at 36,

"because plaintiff alleges a class action, plaintiff's home forum is irrelevant."   Georgouses v.

NaTec Resources, Inc., 963 F. Supp. 728, 730-31 (N.D. Ill. 1997) (transferring shareholder class

action from Illinois to Texas because, inter alia, "while a large number of class members [1,900

out of 5,670] allegedly reside in Illinois, there is nothing in the record that shows the remaining

class members are not more conveniently located to the court in Houston than Chicago.").  See

also International Show Car Ass'n v. American Soc. of Composers, Authors, & Publishers, 806

F. Supp. 1308, 1312 (E.D. Mich. 1992) ("[W]here . . . the 'class' is nationwide, the deference

usually accorded to the plaintiff's choice of venue is less important than in the traditional transfer

of venue cases."); Bolton v. Tesoro Petroleum Corp., 549 F. Supp. 1312, 1313-14 (E.D. Pa.

1982) (collecting cases for the proposition that "[i]t has been consistently held . . . that the weight

accorded to plaintiff's choice of forum is considerably reduced in class and derivative actions,

where each of many potential plaintiffs may claim the right to have the action heard in his home

forum, and where the nominal plaintiff's role in the litigation is likely to be quite minimal.");

Helfant v. Louisiana & Southern Life Ins. Co., 82 F.R.D. 53, 58 (E.D.N.Y. 1979) ("In a

purported stockholder class action . . . the existence of hundreds of potential plaintiffs

considerably weakens plaintiff's claim that his home forum is the most appropriate."); Shulof v.

Westinghouse Elec. Corp., 402 F. Supp. 1262, 1263 (S.D.N.Y. 1975) ("Where there are hundreds of potential plaintiffs . . . all of whom could with equal show of right to into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.") (quoting Koster v. Lumberman's Mutual Co., 330 U.S. 518, 524, 67 S.Ct. 828, 832 (1947)). Thus, the fact that the Berensons are District of Columbia residents and chose to bring the lawsuit here is of little import.[2]

Indeed, Fidelity's records show that a plurality of putative class members are residents of the District of Massachusetts. While 15.36% of such accounts belong to Massachusetts residents -- the most in any state -- just 0.51% belong to District of Columbia residents. Hankins Aff., ¶ 4 and attached Exhibit A (spreadsheet of BillPay Client Statistics by State as of 10/24/03). Measured in dollars, Massachusetts residents have, so far this year, requested BillPay transactions by a factor of over thirty times greater than District of Columbia residents. Id., ¶ 5 & Ex. A. Thus, transfer to the District of Massachusetts actually would place this action in the forum most convenient to the largest state group of putative plaintiff class members.

All of the other relevant considerations support the defendants' choice of forum in the District of Massachusetts. Fidelity's overall management of the BillPay System, including relations with the BillPay vendor, CheckFree, as well as customer communications and

---

[2] The adequacy of the Berensons as class representatives is itself doubtful because they are apparently relatives of, and have shared addresses with, a partner in the law firm that brought this action and proposes to represent the plaintiff class. See, e.g., London v. Wal-Mart Stores, Inc., 340 F.3d 1246, 1254-55 (11th Cir. 2003) (rejecting class representative who had close business and personal relationship with class counsel). Further, any "inconvenience to plaintiff's counsel caused by the transfer of this action is not a factor that carries considerable weight in the Court's determination of whether or not to grant a motion to transfer pursuant to section 1404(a)." McClamrock, 267 F. Supp. 2d at 40. In any event, the plaintiffs' counsel, though listing an address in Great Falls, Virginia, are actually based in North Carolina, and therefore would have to travel to court even if the case were to remain in Washington, D.C.

agreements, is exercised from Boston, Massachusetts. <u>Id</u>., ¶ 7.   Since the corporate decisions underlying plaintiffs' claims were made in Boston, the claims "arose" there for purposes of venue analysis.   See <u>Georgouses</u>, 963 F. Supp. at 731 (noting that even though plaintiffs suffered injury in their place of residence, the "material events in question  . . . are the actions the defendants took that allegedly caused the economic damage.")  Key witnesses are likely to include Boston personnel Anne Warren Fagan, Director of Brokerage Services, Terry Green, Vice President FundsNetwork, and former marketing personnel John LoPresti and Donald Porzio.  Hankins Aff., ¶ 8. The BillPay program is managed from Boston and other relevant personnel will thus be based there.  <u>Id</u>., ¶ 7.  Likewise, most of the documentation related to the BillPay service is also likely to be found in Boston.  <u>Id</u>., ¶ 9.   While the technical operations of the BillPay service are conducted in New York, this is unlikely to be a central aspect of the case and in any event provides no support for venue in the District of Columbia.  <u>Id</u>., ¶ 10.

Against this factual backdrop, the court's analysis in <u>Georgouses</u> is instructive.  That case involved a shareholder class action brought in Illinois by an Illinois resident against Utah and Delaware corporations with principal places of business in Texas.  See <u>Georgouses</u>, 963 F. Supp. at 729.  As will doubtless be true here, the court noted that discovery "will focus primarily on defendants."  <u>Id</u>. at 731.   The court concluded that transfer to Texas was warranted because "the majority of  the relevant documentary evidence will be located in Houston, the majority of potential witnesses are in or around Houston, and two of the three individual defendants are residents of Houston."   <u>Id</u>.   The very same reasoning supports transfer of venue to the District of Massachusetts in this case.

III.    **PUBLIC INTERESTS FAVOR TRANSFER TO THE DISTRICT OF MASSACHUSETTS.**

The "public" interests that the Court may consider in evaluating a venue transfer motion

include:

> (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.

McClamrock, 267 F. Supp. 2d at 41 (quoting Trout Unlimited, 944 F. Supp. at 16).

Numerous issues in this case will be governed by Massachusetts law, which the judges in

the District of Massachusetts apply regularly in cases before them.  Two counts of the Complaint

expressly allege causes of action under Massachusetts statutes:  Count V asserts that Fidelity has

violated the Massachusetts Truth-in-Savings Law, Mass. Gen. Laws ch. 140E, § 1 *et seq*., and

Count VI asserts that Fidelity has violated the Massachusetts Consumer and Business Protection

Act, Mass. Gen. Laws ch. 93A, § 1 *et seq*.  In addition, the pertinent agreements that govern the

Berensons' relationship with Fidelity generally and the BillPay service both specifically provide

that they "shall be governed by the laws of the Commonwealth of Massachusetts."  Statement of

Undisputed Facts in support of Defendants' Motion to Dismiss and for Summary Judgment ¶¶

56, 60; Cmplt. ¶¶ 33, 34.[3]   The prevalence of Massachusetts law in this action clearly militates

in favor of transfer.  See McClamrock, 267 F. Supp. 2d at 41 (transferring case to North Carolina

---

[3] When deciding state-law claims under diversity or supplemental jurisdiction, federal courts employ the choice-of-law rules of the jurisdiction in which they sit.  See Ideal Electronic Sec. Co., Inc. v. International Fidelity Ins. Co., 129 F.3d 143, 148 (D.C. Cir. 1997).   The District of Columbia "has adopted the general rule 'that parties to a contract may specify the law they wish to govern . . . as long as there is some reasonable relationship with the state specified.'"  Ekstrom v. Value Health, Inc., 68 F.3d 1391, 1394 (D.C. Cir. 1995) (quoting Norris v. Norris, 419 A.2d 982, 984 (D.C. 1980)).  Since Fidelity is based in Boston, such a reasonable relationship exists here.

because, inter alia, "courts in that jurisdiction have the greatest familiarity with North Carolina law.").

The relative congestion of court calendars is not a compelling consideration in this case but also militates slightly in favor of transfer to the District of Massachusetts. According to the most recent federal Judicial Caseload Profile, while there are more "weighted filings" per judge in the District of Massachusetts than in the District of Columbia, the more important measure for the parties and the public -- average time from filing to trial for civil cases -- is 29 months in the District of Columbia compared with 25.5 months in the District of Massachusetts. See Federal Court Management Statistics, available at <http://www.uscourts.gov/cgi-bin/cmsd2002.pl> (visited on November 12, 2003) (printouts attached at Exhibit 1). See also McClamrock, 267 F. Supp. 2d at 42 n.2 (granting transfer because, inter alia, docket congestion in District of Columbia is greater than in Middle District of North Carolina); Ingram v. Eli Lilly & Co., 251 F. Supp. 2d 1, 6 (D.D.C. 2003) (Walton, J.) (focusing on "time to trial" metric but concluding that factor ultimately was inconsequential in specific case because mediator was experienced in subject matter of case and the Court could afford the parties a trial at any time).

Finally, there can be no doubt that Massachusetts has a strong interest both in regulating the activities of brokerages based within its borders such as Fidelity and in protecting the interests of resident consumers, who make up the plurality of BillPay customers and putative plaintiff class members. While the District of Columbia admittedly also has some interest in protecting its resident consumers, this interest pales in comparison to that of Massachusetts since only 0.51 % of putative class members are D.C. residents. Hankins Aff., ¶ 4.

## Conclusion

For the foregoing reasons, this case should be transferred to the United States District Court for the District of Massachusetts.

Respectfully submitted,

NATIONAL FINANCIAL SERVICES LLC
FIDELITY BROKERAGE SERVICES LLC

By their attorneys,

/s/ Lawrence H. Martin
Lawrence H. Martin (D.C. Bar No. 476639)
FOLEY HOAG LLP
1747 Pennsylvania Ave., N.W.
Washington, D.C. 20006-4604
(202) 223-1200

Nicholas C. Theodorou (Pro Hac Vice)
John A. Shope (Pro Hac Vice)
Kevin C. Conroy (Pro Hac Vice)
William W. Fick (Pro Hac Vice)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

DATED:  November 13, 2003

17/506458.5

EXHIBIT   1

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **DISTRICT OF COLUMBIA** | | 2002 | 2001 | 2000 | 1999 | 1998 | 1997 | Numerical Standing | |
| | | | | | | | | U.S. | Circuit |
| **OVERALL CASELOAD STATISTICS** | Filings* | 3,382 | 3,377 | 3,682 | 3,984 | 3,771 | 3,529 | | |
| | Terminations | 3,159 | 3,291 | 3,517 | 3,498 | 3,608 | 3,205 | | |
| | Pending | 4,338 | 4,151 | 4,069 | 3,921 | 3,587 | 3,427 | | |
| | % Change in Total Filings — Over Last Year | | | | .1 | | | 70 | - |
| | % Change in Total Filings — Over Earlier Years | | | -8.2 | -15.1 | -10.3 | -4.2 | 72 | - |
| | Number of Judgeships | 15 | 15 | 15 | 15 | 15 | 15 | | |
| | Vacant Judgeship Months** | 17.1 | 27.4 | 27.3 | 31.5 | 28.6 | 32.2 | | |
| **ACTIONS PER JUDGESHIP** | FILINGS — Total | 225 | 225 | 245 | 266 | 251 | 235 | 91 | - |
| | FILINGS — Civil | 179 | 197 | 224 | 238 | 224 | 200 | 86 | - |
| | FILINGS — Criminal Felony | 34 | 28 | 21 | 28 | 27 | 35 | 88 | - |
| | FILINGS — Supervised Release Hearings** | 12 | - | - | - | - | - | 59 | - |
| | Pending Cases | 289 | 277 | 271 | 261 | 239 | 228 | 76 | - |
| | Weighted Filings** | 266 | 258 | 246 | 258 | 265 | 259 | 89 | - |
| | Terminations | 211 | 219 | 234 | 233 | 241 | 214 | 92 | - |
| | Trials Completed | 12 | 12 | 11 | 12 | 13 | 17 | 78 | - |
| **MEDIAN TIMES (months)** | From Filing to Disposition — Criminal Felony | 9.6 | 7.7 | 7.2 | 7.3 | 6.9 | 6.4 | 73 | - |
| | From Filing to Disposition — Civil** | 10.5 | 9.8 | 9.9 | 8.7 | 7.9 | 7.8 | 71 | - |
| | From Filing to Trial** (Civil Only) | 29.0 | 24.0 | 24.0 | 24.0 | 18.0 | 17.3 | 75 | - |
| **OTHER** | Civil Cases Over 3 Years Old** — Number | 359 | 282 | 231 | 150 | 258 | 273 | | |
| | Civil Cases Over 3 Years Old** — Percentage | 11.1 | 8.6 | 6.9 | 4.6 | 8.7 | 9.5 | 84 | - |
| | Average Number of Felony Defendants Filed Per Case | 1.4 | 1.3 | 1.4 | 1.4 | 1.4 | 1.3 | | |
| | Jurors — Avg. Present for Jury Selection | 93.32 | 69.99 | 80.53 | 75.71 | 63.97 | 57.07 | | |
| | Jurors — Percent Not Selected or Challenged | 55.7 | 51.9 | 56.8 | 53.9 | 50.1 | 42.6 | | |

| 2002 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 2690 | 28 | 107 | 552 | 14 | 26 | 126 | 200 | 348 | 40 | 714 | 25 | 510 |
| Criminal* | 517 | 22 | 9 | 162 | 1 | 25 | 127 | ** | 8 | 92 | 9 | 11 | 51 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| MASSACHUSETTS | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|
| | | 2002 | 2001 | 2000 | 1999 | 1998 | 1997 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | 3,765 | 3,276 | 3,651 | 3,770 | 3,626 | 3,881 | U.S. | Circuit |
| | Terminations | 3,565 | 3,470 | 3,501 | 3,842 | 3,414 | 3,801 | | |
| | Pending | 4,300 | 4,126 | 4,275 | 4,117 | 4,231 | 3,946 | | |
| | % Change in Total Filings — Over Last Year | | | 14.9 | | | | 28 | 2 |
| | % Change in Total Filings — Over Earlier Years | | | 3.1 | -.1 | 3.8 | -3.0 | 69 | 3 |
| Number of Judgeships | | 13 | 13 | 13 | 13 | 13 | 13 | | |
| Vacant Judgeship Months** | | .0 | .0 | .0 | .0 | .0 | .0 | | |
| ACTIONS PER JUDGESHIP | FILINGS — Total | 289 | 252 | 281 | 290 | 279 | 299 | 82 | 2 |
| | FILINGS — Civil | 243 | 222 | 249 | 258 | 251 | 272 | 78 | 2 |
| | FILINGS — Criminal Felony | 38 | 30 | 32 | 32 | 28 | 27 | 84 | 5 |
| | FILINGS — Supervised Release Hearings** | 8 | - | - | - | - | - | 74 | 4 |
| | Pending Cases | 331 | 317 | 329 | 317 | 325 | 304 | 69 | 2 |
| | Weighted Filings** | 321 | 295 | 326 | 318 | 326 | 327 | 83 | 2 |
| | Terminations | 274 | 267 | 269 | 296 | 263 | 292 | 84 | 2 |
| | Trials Completed | 15 | 12 | 13 | 14 | 15 | 21 | 64 | 2 |
| MEDIAN TIMES (months) | From Filing to Disposition — Criminal Felony | 13.4 | 13.2 | 12.6 | 12.4 | 11.3 | 9.8 | 92 | 4 |
| | From Filing to Disposition — Civil** | 11.5 | 10.2 | 10.2 | 10.9 | 9.8 | 9.0 | 86 | 5 |
| | From Filing to Trial** (Civil Only) | 25.5 | 23.8 | 26.4 | 23.0 | 23.7 | 23.3 | 64 | 4 |
| OTHER | Civil Cases Over 3 Years Old** — Number | 229 | 275 | 260 | 160 | 264 | 202 | | |
| | Civil Cases Over 3 Years Old** — Percentage | 6.3 | 7.7 | 7.0 | 4.4 | 7.0 | 5.7 | 71 | 4 |
| | Average Number of Felony Defendants Filed Per Case | 1.6 | 1.6 | 1.5 | 1.7 | 1.7 | 1.8 | | |
| | Jurors — Avg. Present for Jury Selection | 46.26 | 51.51 | 44.40 | 41.94 | 39.13 | 33.39 | | |
| | Jurors — Percent Not Selected or Challenged | 23.2 | 26.2 | 14.8 | 15.2 | 14.2 | 13.5 | | |

| 2002 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 3164 | 78 | 11 | 361 | 35 | 148 | 230 | 536 | 502 | 201 | 501 | 33 | 528 |
| Criminal* | 496 | 44 | 9 | 69 | 2 | 32 | 118 | ** | 14 | 110 | 3 | 20 | 75 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."