IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOAN BERENSON and DAVID BERENSON, Individually and on behalf of all others similarly situated,<br><br>Plaintiff<br><br>v.<br><br>NATIONAL FINANCIAL SERVICES, LLC, et al.,<br><br>Defendants | :<br>:<br>:<br>:<br>:<br>:<br>:  1:03 CV 02004 RBW<br>:<br>:<br>:<br>:<br>: |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO TRANSFER VENUE**

Plaintiffs, Joan Berenson and David Berenson, individually and on behalf of all others similarly situated, oppose the motion of Defendants, National Financial Services, LLC ("NFS") and Fidelity Brokerage Services, LLC ("FBS") (collectively, "Fidelity") to transfer venue to the United States District Court for the District of Massachusetts (the "District of Massachusetts"), as follows:

**I.     INTRODUCTION**

This Court should not be swayed by Fidelity's sophistry. On the one hand, Fidelity, by filing a Motion to Dismiss and for Summary Judgment as to all Counts of the Complaint, contends that the Berensons' claims are inadequate as a matter of law, especially Plaintiffs' claim for violation of the Electronic Funds Transfer Act (Count I of the Complaint), upon which the jurisdiction of this Court is based. On the other hand, Fidelity contends that Plaintiffs' claims "could have been brought" in the District of Massachusetts and accordingly that court should make the determination as to whether Plaintiffs' claims are viable. This should not be permitted.

This Court should first determine the motion to dismiss and for summary judgment and then—if, for the reasons set forth in Plaintiffs' opposition to that motion, the motion is denied—confirm that the proper venue for this case is in this very Court, not in Massachusetts.[1]

As will be more fully demonstrated herein, Fidelity's instant Motion to Transfer Venue to the District of Massachusetts ("Motion") is misplaced.  Plaintiffs concede that this action *could* have been brought in Massachusetts, however, this only begins the analysis set down by 28 U.S.C. § 1404(a) and interpretive case law.  Indeed, Fidelity is, at best, disingenuous to assert that "…there is no consideration in favor of continuing the case in this District."  Memorandum in Support of Motion ("Memorandum") at p. 1.  Both the relevant "private interests of the parties" and the "public interests of the court"  favor maintaining venue in the District of Columbia, and Fidelity has failed to satisfy its burden to prove otherwise.  If Fidelity's contentions are to be given any consideration, the result would be that no party anywhere (whether in Hawaii, Nevada, Alabama or the District of Columbia), seeking to vindicate his or her rights via a class action mechanism under any of Fidelity's agreements (all of which appear to provide for the application of Massachusetts law), could obtain redress in any court other than in Massachusetts.  In support of this notion, Fidelity is attempting to retroactively insert a venue selection clause into Fidelity's customer agreements where none now exists.  This must not be permitted.  The doctrine of "forum non conveniens" does not require that an international corporation that conducts business in every state, and which presumably has registered to

---

[1]    Fidelity opines that "if this Court decides to transfer this case, the motion to dismiss and for summary judgment could be ruled upon by the transferee judge in the District of Massachusetts as a matter of judicial economy, since it requires resolution of questions of Massachusetts law."  Memorandum of Law in Support of Defendants' Motion to Transfer Venue ("Memorandum") at p. 2, n.1.  This, of course, is misleading.  The jurisdiction of this Court and of the District of Massachusetts is based upon the federal question presented by the Electronic Funds Transfer Act ("EFTA").  Were this Court to determine that Plaintiffs' EFTA claim should be dismissed, there would be no reason to reach a determination as to the remaining claims, nor any basis upon which to transfer this case to Massachusetts.  Plaintiffs would then have their right to choose the forum for their state law claims against Fidelity and this motion would be moot.  That is judicial economy.

conduct business in each of those states, suddenly be permitted to ignore the reality of its far-reaching business decisions.

## II.  LEGAL STANDARD

Not surprisingly, Fidelity has glossed over the strong preference given to Plaintiffs' choice of forum and attempted to shift the analysis to a premature class certification argument cloaked in § 1404(a) clothing.[2]  No class has yet been certified.  Plaintiffs submit that the correct legal standard to be applied is that a "[d]efendant, who must bear a heavy burden, as the plaintiff's choice of forum is due substantial deference and, unless the balance of convenience is strongly is favor of the defendants, should rarely be disturbed."  National Bank of Washington v. Gary Mallery, 669 F. Supp. 22, 29 (D.D.C. 1987) (quoting International Brotherhood of Painters and Allied Trades Union v. Best Painting and Sandblasting Co., Inc., 621 F. Supp. 906, 907 (D.D.C. 1985) (denying transfer under § 1404(a) in putative class action case)).[3]  "The plaintiff's choice of a forum is a paramount consideration in any determination of a transfer request."  Thayer/Patricof Education Funding v. Pryor Resources, Inc., 196 F. Supp. 2d 21, 31 (D.D.C. 2002) (quoting Sheraton Operating Corp. v. Just Corporate Travel, 984 F. Supp. 22, 35 (D.D.C. 1997) (denying transfer under § 1404(a)) ("Thayer").  "If the particular controversy has meaningful ties to the forum, and the plaintiff is a resident of that forum, the plaintiff's choice of

---

[2]  Fidelity's motion to dismiss and for summary judgment, *inter alia*, challenges the class status in the first instance.  However, such arguments should be reserved for the Rule 23 certification motion and should not be used here in an attempt to bootstrap arguments derived from data concerning a putative plaintiff class into a § 1440(a) motion to transfer venue.  *See* Quarles v. General Investment & Development, 260 F. Supp. 2d 1, 9-10 (D.D.C. 2003).

[3]  In the NBW case, the choice of law concerns did not require a change of venue.  The foreign venue's admitted interest in the proper conduct of business by a partnership operating within its borders did not override the District of Columbia's great interest in ensuring redress of wrongs committed within the District of Columbia and that financially harmed a District of Columbia corporation.  Id.  Here, the Berensons reside in the District of Columbia and the wrongs committed by Fidelity were, and had great effect, in the District of Columbia, to residents of the District of Columbia.

3

forum is given substantial deference." Id. (quoting The Wilderness Society v. Babbitt, 104 F. Supp. 2d 10, 12-13 (D.D.C. 2000)).

Here, the application of the proper legal standard militates strongly in favor of maintaining venue in this Court. Plaintiff's choice of forum is a "paramount consideration" in this Court's determination of Fidelity's transfer request. This controversy has "meaningful ties" to the District of Columbia because (i) the Berensons reside in the District of Columbia; (ii) the Berensons conducted BillPay business via telephone communications originating from the District of Columbia and via written communications originating from the District of Columbia; and (iii) the Berensons conducted business in Fidelity's office located on K Street in the District of Columbia.

Thus, the Berensons' choice of forum should be given substantial deference and such substantial deference must be accorded great weight when, as here, Fidelity's attacks fall far short of the legal standard required to grant transfer. Applying this Court's analysis as set forth in two recent cases, Ingram v. Eli Lilly & Co., 251 F. Supp. 2d 1 (D.D.C. 2003) and McClamrock v. Eli Lilly & Co., 267 F. Supp. 2d 33 (D.D.C. 2003), neither the "private interests of the parties" nor the "public interests of the court" weigh in favor of transfer.[4]

## III.    THE PRIVATE INTERESTS OF THE PARTIES DO NOT FAVOR TRANSFER

While Fidelity accurately recites this Court's private interests factors, it fails to adequately address such factors and instead mounts unpersuasive arguments, which will now be addressed in turn. "The private considerations that may be considered include: (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of defendants; (2) the

---

[4] Plaintiffs contend that the private interests of the parties, in and of themselves, do not favor transfer and, thus, this Court need not reach the public interest factors. Ingram, supra at 5. Nevertheless, Plaintiffs will address the public interest factors, which similarly do not favor transfer.

4

defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof." Ingram, supra at 4-5.

Here, the Berensons—residing in the District of Columbia, who interacted with Fidelity from the District of Columbia and through Fidelity's K Street branch office in the District of Columbia—properly chose this Court as their forum, and Fidelity has failed to show that the "balance of convenience" is strongly in favor of this case being tried in Massachusetts. Were this not a putative class action case, Fidelity would not be seeking a transfer and the case would be proceeding in arbitration in the District of Columbia (at which each of Fidelity's witnesses would be appearing voluntarily or by compulsory process).

Indeed, Fidelity's sole basis on which to attack the Berensons' choice of forum is that this case is styled as a class action; however, such reasoning is misplaced. Fidelity reaches out to the Northern District of Illinois to find a case wherein the court made the determination that because the plaintiff alleged a class action, plaintiff's choice of forum was largely "irrelevant." Memorandum at p. 4 (citing Georgouses v. NaTec Resources, Inc., 963 F. Supp. 728, 730-31 (N.D. Ill. 1997)). Plaintiffs respectfully submit that the analysis in that case is misplaced here. National Bank of Washington, supra; Ingram, supra. "Because class actions do not necessarily require the presence of a class member before the court for an adjudication of his/her rights and liabilities, venue restrictions are not determinative of the ability of the court to hear the action with respect to all members of the class." Quarles v. General Investment & Development, 260 F. Supp. 2d 1, 9-10 (D.D.C. 2003) (quoting United States v. Trucking Employers, Inc., 72 F.R.D. 98, 100 (D.D.C. 1976) (Bryant, J.)). The "non-party members" do not have to be "personally

before the Court, as long as the requirements of due process--in this context, primarily notice and representativeness of named class members--are afforded them." Id. (quoting Trucking Employers, Inc., supra at 99). "The relevant venue question in such circumstances is whether venue is proper *as among the parties who have in fact been brought personally before the court as named parties to the action,* the parties representing and in effect standing in for the absent class members." Id. (quoting Trucking Employers, Inc., supra at 100) (footnote and citations omitted) (emphasis added)).

     The Georgouses court granted a transfer of venue from Illinois to Texas on the primary basis of its determinations that (i) "while a large number of class members [--a "plurality" of 1900 out of 5670--] allegedly reside in Illinois, there is nothing in the record that shows the remaining class members are not more conveniently located to the court in Houston than Chicago" and (ii) as Fidelity fails to inform the Court, and of considerable importance, there were potential personal jurisdictional problems in Illinois with respect to specific individual defendants who could be "indispensable parties to the case." Georgouses, supra at 730-31. However, even assuming, *arguendo*, that the legal analysis is appropriate here, the facts of that case are distinguishable from the facts of this case and thus Georgouses does not support a transfer to Massachusetts.

     Here, courtesy of Fidelity's Memorandum, the record shows that nearly 85% of the putative class members live **outside** of Massachusetts and, from the purported state-by-state breakdown of Fidelity's BillPay customers, that the remaining class members are more conveniently located to the District of Columbia than to Massachusetts. *See* Memorandum at Affidavit of Colleen A. Hankins at Exhibit A (showing that 84.64% of BillPay customers (and thus putative plaintiffs) live outside of Massachusetts and, given the state-by-state breakdown,

are actually closer to the District of Columbia than to Massachusetts).[5] Fidelity asserts that the "records show a plurality of putative class members are residents of the District of Massachusetts." Memorandum at p. 5. This "fact" is meaningless as the Georgouses case makes clear (Illinois had a "plurality"). Indeed, no vote will be taken by putative class members as to where venue will lie. Even if such a vote were taken, the 84.64% of BillPay customers living outside of Massachusetts likely would not vote with Fidelity for Massachusetts as the "plurality" option.

Furthermore, because class status allows the Plaintiffs to represent the claims of the class, and because at this early stage of litigation the motion for class certification has not yet been filed, Fidelity's "plurality" argument further misses the mark. As this Court noted in Quarles, supra at 6: "[a]t this point, however, the actual composition of the ultimate class is unknown to the Court." So, too, here; absent discovery and the rigors of the Rule 23 motion, neither the Plaintiffs, Fidelity nor the Court can know the ultimate composition of the class. Thus, Fidelity's argument for a change in forum based on inferences from the number and situs of BillPay customers located in Massachusetts as compared to those residing throughout the United States and oversees is misplaced.

Fidelity also cites to a case where "the weight accorded to plaintiff's choice of forum is considerably reduced in class and derivative actions, where each of many potential plaintiffs may claim the right to have the action heard in his home forum, and where the nominal plaintiff's role in the litigation is likely to be minimal." Helfant v. Louisiana & Southern Life Ins. Co., 82 F.R.D. 53, 58 (E.D.N.Y. 1979). However, Fidelity does not attempt to show how the Berensons'

---

[5] Venue may not be transferred simply to shift the inconvenience from defendant to plaintiff. Georgouses, supra at 730.

roles in this litigation will be nominal or minimal. Rather, Fidelity correctly notes that Plaintiff David Berenson is "a former national partner of Ernst & Young, a frequent commentator for national business publications, and a member of the Bar and a CPA in various jurisdictions." Defendants' Memorandum in support of its Motion to Dismiss and for Summary Judgment at Statement of Uncontested Facts, ¶6 (many of the other facts are, however, contested). Indeed, the inference to be drawn from this, as the Berensons affirmatively assert, is that it took a sophisticated business person like David Berenson to uncover the self-dealing scheme that Fidelity has inflicted upon its BillPay customers. If Mr. Berenson was not aware of the true nature, impact and structure of the BillPay scheme, how could the other class members have been aware? David Berenson's role in this litigation will be anything but nominal or minimal. In Helfant, the critical fact was that the putative class plaintiff could not testify as to the transaction at issue. Id. Here, Mr. Berenson obviously can testify and will. Therefore, Helfant does not apply to the instant analysis. In short, private interest considerations 1 and 2 do not favor a transfer.[6]

Similarly, private interest consideration 3—whether the claim arose elsewhere—also militates strongly in favor of the Berensons and maintaining venue in this Court. Again, the Berensons reside in the District of Columbia; the Berensons conducted BillPay business via telephone communications originating from the District of Columbia and via written communications originating from the District of Columbia (at least one such written communication ended up in Kentucky, see Defendants' Memorandum in support of its Motion to

---

[6] Fidelity also contends that a factor to be considered under the Georgouses analysis is whether discovery will focus primarily upon the Defendants. Memorandum at p. 6. While discovery of the Defendants certainly will be necessary, it will not focus primarily upon them. Is Fidelity stipulating that it will not seek discovery of the Berensons? A primary focus of the Berensons' discovery will be inquiries into the notices given by other financial institutions—such as Navy Federal Credit Union, which does not usurp its customers ownership rights in its electronic bill payment service (Plaintiffs' Opposition to Defendants' Motion to Dismiss and for Summary Judgment at McWilliams Affidavit)—as well as CheckFree, which also apparently does not usurp ownership rights

8

Dismiss and for Summary Judgment at Affidavit of Daniel Stickney, Exhibit B); and the Berensons conducted business in Fidelity's office located in Washington, D.C. Whatever policy decisions Fidelity asserts were made in Boston were implemented in Washington, D.C. Whatever "overall management" of the BillPay system is exercised in Boston, the adverse effects were felt by the Berensons in Washington, D.C. And, while Fidelity contends that its relations with its BillPay vendor, CheckFree Corporation, occurred in Boston—CheckFree is headquartered outside Atlanta, Georgia—and the implementation of that relationship was in Washington, D.C. In short, Fidelity's illegal acts vis-à-vis the Berensons occurred in the District of Columbia. Accordingly, this factor too weighs against transfer.

Private considerations 4 (convenience of the parties) and 5 (convenience of the witnesses of the plaintiff and defendant, <u>but only to the extent that the witnesses may actually be unavailable for trial in one of the fora</u>) also favor maintaining venue in this Court. Again, under the authorities cited by Fidelity, venue may not be transferred simply to shift the inconvenience from a defendant to a plaintiff. <u>Georgouses</u>, <u>supra</u> at 730. The District of Columbia is a convenient forum for the Berensons. As compared to Massachusetts, it is also a more convenient forum for nearly all class members. *See* Memorandum at Affidavit of Colleen A. Hankins, Exhibit A. That Fidelity asserts that Massachusetts is a more convenient to it, its counsel and to a small minority of BillPay customers is of no moment.[7]

---

in the event that one contracts directly with CheckFree for electronic bill payment services.

[7] Fidelity incorrectly asserts that Plaintiffs' counsel is located in North Carolina and is somehow equally inconvenienced whether this case is heard in this Court or Massachusetts. Kenneth L. McWilliams, Esquire, one of Plaintiffs' co-counsel, resides in the Washington, D.C. metropolitan area and maintains his primary office in Great Falls, Virginia. While the inconvenience to Mr. McWilliams is not to be given "considerable" weight under <u>McClamrock</u>, it is nonetheless to be considered. He obviously does not have to "travel" to Court as this motion contemplates, although anyone who has spent anytime commuting in the DC area knows, "travel" is a relative term. Only Mr. Rubel resides in North Carolina. However, he is an active member of the Maryland and District of Columbia Bars and of this Court and regularly works from the Northern Virginia offices of Plaintiffs' counsel. Massachusetts is clearly an inconvenience for Plaintiffs' counsel.

Similarly, Fidelity does not assert that any of its witnesses "may actually be unavailable for trial" in the District of Columbia. To support its request for transfer under § 1404(a), a moving party must demonstrate (through affidavits or otherwise) what a non-resident witness will testify to, the importance of the testimony to the issues in the case, and whether that witness is willing to travel to a foreign jurisdiction. Thayer, supra at 33 (citations omitted) (party must specifically identify witnesses and general content of proposed testimony and that witnesses will refuse to appear if the trial is held in the District of Columbia.) This, Fidelity did not do. Accordingly, private interest factors 4 and 5 weigh against transfer.

Finally, private consideration 6 tests the ease of access to sources of proof. Fidelity merely asserts that "…**most** of the documentation related to the BillPay service and the allegations in the Complaint are **likely** to be found in Boston." Motion at Affidavit of Colleen A. Hankins ¶ 9 (emphasis supplied). However, qualifiers such as "most" and "likely" do not tell us anything about the ease of access to sources of proof. Fidelity does not present competent evidence as to the location of sources of proof. Indeed, there is a greater likelihood that the sources of proof are CheckFree in Georgia, Fidelity's operations in New York, Fidelity's facility in Kentucky and other financial institutions based outside of Massachusetts.

Moreover, in Thayer, this Court (Bates, J.) was not persuaded by a defendant's argument that because certain documents were located in Kansas, venue should be transferred there. "To begin with, the documents can easily be transported to Washington. In fact, many will be provided through discovery to lawyers here in Washington…" Thayer, supra at 36. "Moreover, the location of documents, given modern technology, is less important in determining the convenience of the parties." Id. "[T]he location of documents factor is neutral" because "in today's era of photocopying, fax machines and Federal Express, the documents could easily be

10

sent to New York." Id. (quoting Continental Airlines v. American Airlines, 805 F. Supp. 1392, 1397 (S.D. Tex. 1992)).

Here, given the plethora of Affidavits, agreements, documents and buck-slips already made a part of the record in this case, it is difficult to imagine that there are many sources of proof left in Boston to be produced. However, if so, discovery and the modern means articulated in Thayer can and will be used to produce the relevant documents to counsel in Washington D.C. during discovery, no matter where this litigation proceeds.

Accordingly, because none of the six private considerations articulated by this Court in Ingram and McClamrock favor transfer, this Court should deny Fidelity's Motion.

## IV.  THE PUBLIC INTERESTS OF THE COURT DO NOT FAVOR TRANSFER

As observed by this Court in Ingram, if the Court concludes "that the private interest factors do not support the transfer, … it is not required to weigh the public interest factors." Ingram, supra at 5. As set forth above, none of the private interest factors favor transfer, and thus this Court need not address public interest considerations. Nevertheless, because Fidelity sets forth arguments concerning public interests, Plaintiff's will address and refute those arguments.

"Public interest factors include: (1) the transferee Court's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." Id. (omitting citations).

First, Fidelity argues that "numerous issues will be governed by Massachusetts law." Memorandum at p. 7. This is only partially true. This case is before this Court based upon a federal question: the Electronic Funds Transfer Act. Fidelity does not argue (and correctly so) that this Court cannot apply the federal law applicable to this case. Moreover, "[f]ederal courts

11

today, however, are often called upon to apply state laws, especially on common legal issues such as breach of contract, misrepresentation, fraud, indemnification and punitive damages…" Thayer, supra at 36. "The fact that the law of another jurisdiction governs the outcome of the case is a factor accorded little weight on a motion to transfer, especially in an instance such as this where no complex questions of foreign law are involved." Id. Such is the case here.

The Massachusetts laws that are applicable in this case present no complex questions of foreign law. This Court can certainly apply the Massachusetts Consumer Protection Act, which, like the District of Columbia Consumer Procedures Protection Act, is based upon a uniform "UDAP" statute that has been similarly enacted throughout the country.[8] These laws are identical in purpose: to protect consumers from the kind of self-dealing scheme that Fidelity is inflicting upon its BillPay customers in Washington D.C., Massachusetts, Hawaii and elsewhere. This Court will have no difficulties in implementing the Massachusetts Consumer Protection Act should that be necessary. It is very similar to the D.C. Act and presents no unusual problems. Plaintiffs' common law claims for misrepresentation and breach of contract, if ultimately to be decided under Massachusetts law, contain no intricate legal issues that this Court is not equipped to deal with and are legal theories this Court routinely applies. Accordingly, this public interest factor does not favor transfer. Thayer, supra.

Fidelity next argues that "[t]he relative congestion of court calendars is not a compelling consideration in this case, but also militates slightly in favor of transfer to the District of Massachusetts." Memorandum at p. 8. It must be noted that Fidelity presented stale data in support of this contention. The Judicial Caseload profiles for the 12 month period ending June 30, 2003 for the District of Columbia and Massachusetts are attached hereto at Exhibit A. This

---

[8]   D.C. Code §§ 28-3901 et seq. The D.C. Consumer Protection Procedures Act is a generic law regulating unfair, deceptive, acts and practices and is commonly referred to as "UDAP."

information was provided by the Administrative Office of the United States Courts on December 1, 2003, showing a much different picture than the one advanced by Fidelity. Indeed, the median time to trial metric is currently 23 months in the District of Columbia as compared to 27.4 months in Massachusetts – an additional factor weighing against transfer. Moreover, while Fidelity cavalierly minimizes the impact of "weighted filings" per judge, Plaintiffs suspect that this is an important consideration to judges, and thus to the public interest as a whole. The weighted filings for judges in the District of Massachusetts is 322 compared to 278 in the District of Columbia, yet another factor weighing against transfer.

Finally, Fidelity again asserts its Massachusetts "plurality" concept to argue that Massachusetts somehow has a "stronger interest" than does the District of Columbia in deciding local controversies at home (as though a "stronger interest" were the applicable consideration). This assertion is unsupportable. The District of Columbia has a profound interest in deciding this controversy because the Berensons reside in the District of Columbia and, as noted above, Fidelity's illegal acts occurred in the District of Columbia. The District of Columbia courts do not passively pray that the courts of other jurisdictions will self-police its citizens and ensure that they do not cause harm to the citizens of the District. The courts of the District of Columbia are open for business to ensure that its citizens have a forum to redress the illegal acts of foreign corporations and individuals causing harm in the District of Columbia. This interest is not "outweighed" by the interests of Massachusetts. Thus, this public interest factor does not favor transfer.

**V.    CONCLUSION**

Fidelity has failed to meet its burden under all the relevant tests to show that transfer is favored. Indeed, the private interests of the parties weigh strongly against transfer. So, too, do

the public interests of the court. Accordingly, because no factor, private or public, weighs in favor of transfer, the instant Motion should be denied. Pursuant to Local Rule 7(f), Plaintiff's respectfully request an oral hearing on the matters set forth herein.

WHEREFORE, Plaintiffs, Joan Berenson and David Berenson, individually and on behalf of all others similarly situated, respectfully request this Court to deny Defendants' Motion to Transfer Venue and to permit this action to be litigated in this forum.


Dated: December 5, 2003                    Respectfully submitted,


//s//Kenneth L. McWilliams                 //s//Douglas A. Rubel
Kenneth L. McWilliams #462723              Douglas A. Rubel    #416676
Johanson Berenson LLP                      Johanson Berenson LLP
1146 Walker Road, Suite C                  201 Shannon Oaks Circle, Suite 200
Great Falls, Virginia  22066               Cary, North Carolina 27511
(703) 759-1055                             (919) 654-4544

Attorneys for Plaintiffs                   Attorneys for Plaintiffs