IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOAN BERENSON and DAVID BERENSON, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>                    v.<br><br>NATIONAL FINANCIAL SERVICES LLC, FIDELITY BROKERAGE SERVICES LLC, and DOES 1-50, inclusive,<br><br>                    Defendants. | Civil Action No. 1:03 CV 02004 (RBW) |

**DEFENDANTS' REPLY MEMORANDUM IN**
**SUPPORT OF THEIR MOTION TO TRANSFER VENUE**

      Defendants National Financial Services LLC and Fidelity Brokerage Services LLC (together, "Fidelity") submit this memorandum in reply to the opposition of plaintiffs Joan and David Berenson to Fidelity's motion to transfer venue to the District of Massachusetts.

**Introduction**

      The Berensons' opposition to Fidelity's motion to transfer venue is unconvincing because it fails to grapple squarely with decades of authority holding that a plaintiff's choice of forum carries little weight in a proposed class action and because the other relevant considerations -- most significantly, the law governing most of the plaintiffs' claims, the location of key documents and witnesses, and the domicile of a plurality of putative class members -- strongly militate in favor of transfer.

17/511017.3

**Argument**

I.  **THE PLAINTIFFS' MISCELLANEOUS INTRODUCTORY ARGUMENTS LACK MERIT.**

In the introduction to their opposing brief, the Berensons assert, without citation of any authority, that this Court should resolve Fidelity's pending motion to dismiss and for summary judgment prior to any transfer decision.  They reason that, if the Court were to dismiss their claim under the federal Electronic Funds Transfer Act ("EFTA"), there would be no federal jurisdiction to adjudicate the state law claims or to transfer the case to the District of Massachusetts.  Opposition ("Opp.") at 2 & n.1.  Not true.  First, while a federal court "<u>may</u>" decline to exercise supplemental jurisdiction over pendent state law claims after all federal claims are dismissed, it is not <u>required</u> to do so.  28 U.S.C. § 1367(c)(3) (emphasis added).  Second, principles of judicial economy favor permitting the transferee court adjudicate <u>all</u> of the substantive issues in the case, including claims that may confer federal question jurisdiction.  There is simply no reason why a dispositive determination of the Berensons' federal claim under the EFTA must or even should precede transfer.

The Berensons also assert that if Fidelity's transfer arguments prevail, "the result would be that no party anywhere . . . seeking to vindicate his or her rights via a class action mechanism under any of Fidelity's agreements . . . could obtain redress in any court other than in Massachusetts."  Opp. at 2.  This contention is nothing more than a chimera.  Fidelity does not deny that venue in the District of Columbia is <u>permissible</u> under 28 U.S.C. § 1391 and that the case <u>could</u> proceed in this court.  Rather, Fidelity simply argues that given the unique factual and legal circumstances of this case, the interests of justice favor a discretionary transfer to the District Massachusetts, where it also properly "<u>might</u> have been brought." 28 U.S.C. § 1404(a).

Finally, the Berensons contend, again without citation of any authority, that the common law doctrine of <u>forum non conveniens</u> does not require transfer. Opp. at 2. This argument is a straw man because Fidelity's motion is grounded in the federal venue transfer <u>statute</u>, under which "courts are to grant transfers more freely than they would order dismissal under <u>forum non conveniens</u>." Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 15 <u>Federal Practice and Procedure</u> § 3847 (collecting cases).

### II. THE PLAINTIFFS' CHOICE OF FORUM IS INSIGNIFICANT IN A PROPOSED PLAINTIFF CLASS ACTION.

To counter decades of law holding that a plaintiff's choice of forum warrants little consideration in a putative class action, <u>see</u> Defendants' Memorandum ("Mem.") at 4-5, the Berensons rely on just three cases, all of which are inapposite here.

The first case that the Berensons cite actually supports Fidelity's analysis. Opp. at 3. In <u>National Bank of Washington v. Mallery</u>, 669 F. Supp. 22 (D.D.C. 1987), the court faced a proposed <u>defendant</u> class action brought by an individual lender against a class of partners in an accounting firm. Not surprisingly, given a class of potentially dispersed defendants, <u>Mallery</u> held that the individual plaintiff's choice of forum was "due substantial deference." <u>Id</u>. at 29. <u>Mallery</u> obviously has no application to <u>plaintiff</u> class actions, where dispersed plaintiff class members dilute any interest of the named plaintiffs in their chosen forum. The parenthetical description of the holding in the Berensons' citation -- "denying transfer under § 1404(a) in putative class action case" (Opp. at 3) -- is disingenuous.

The next case upon which the Berensons rely also fails to support their position. In <u>Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Resources, Inc.</u>, 196 F. Supp. 2d 21 (D.D.C. 2002), which was <u>not</u> a class action, the court simply applied standard considerations under

§ 1404(a), including the presumption in favor of the plaintiff's chosen forum, to the facts before it.  Opp. at 3, 10-12.  Thayer thus adds little persuasive weight to arguments grounded in the particular circumstances of the Berensons' proposed class action against Fidelity.

Finally, the Berensons' reliance on Quarles v. General Investment & Development Co., 260 F. Supp. 2d  1 (D.D.C. 2003) (Walton, J.), is likewise misplaced because that case does not deal with the question of discretionary transfer under § 1404(a) at all.   In Quarles, this Court held that every named plaintiff in an employment discrimination class action must satisfy the stringent venue requirements of Title VII, codified at 42 U.S.C. § 2000e-5(f)(3).  See 260 F. Supp. 2d at 13.  This Court then deferred decision pursuant under 28 U.S.C. § 1406 on whether to dismiss or transfer named plaintiffs as to whom venue was improper until after a determination on class certification.  Quarles, 260 F. Supp. 2d at 14.  In that way, if class certification were granted, those plaintiffs who could not lay venue in this District could remain in the case as unnamed members of the class.  Id.  Neither the holding nor the underlying reasoning of Quarles provides any basis to reject or delay a motion to transfer this case pursuant to 28 U.S.C. § 1404(a).   Fidelity does not contend that venue is improper in the District of Columbia with regard to the Berensons or any proposed class members.[1]  Rather, Fidelity simply urges that venue is also proper in the District of Massachusetts, and that the interests of justice warrant transfer of the entire case.  Quarles says nothing to diminish the weight of authority discounting the significance of the plaintiff's choice of forum in a proposed class action.

---

[1] Indeed, in contrast to the Title VII venue provision at issue in Quarles, under the general venue statute, 28 U.S.C. § 1391, "[t]here is no requirement that all plaintiffs reside in the forum district."  Quarles, 260 F. Supp. 2d at 12 (citation omitted).

### III. THE PRIVATE INTERESTS OF THE PARTIES FAVOR TRANSFER.

The Berensons seek to minimize the various "private factors" that weigh in favor of transfer but, whatever the merit of their arguments, they cannot escape the fact that none of those factors warrant maintaining this action in the District of Columbia.

The plaintiffs attempt to counter the fact that a plurality of putative class members -- 15.36% -- reside in Massachusetts by taking a "glass half empty" approach and pointing out the obvious corollary: 84.64 % of putative class members reside outside Massachusetts. They then jump to the conclusion, without any logical analysis or support, that those class members "are more conveniently located to the District of Columbia than to Massachusetts." Opp. at 6. In fact, the geographic choice that Fidelity's motion poses presumably would have little impact on "convenience" for putative class members in the states with the largest putative class populations behind Massachusetts: California (11.81%), Texas (8.99%), and New York (7.01%). See Affidavit of Colleen Hankins, Ex. A. The fact remains that just 0.51% of putative class members reside in the District of Columbia, which provides scant basis to maintain the case in this Court.[2]

---

[2] Contrary to the Berensons' assertion, Georgouses v. Natec Resources, Inc., 963 F. Supp. 728 (N.D. Ill. 1997), does not stand for the proposition that the domicile of a plurality of class members is "meaningless." Opp. at 7. Rather, the court in Georgouses simply observed that the presence of 1,900 out of 5,670 putative class members in Illinois (not necessarily a plurality) did not weigh against transfer since the complaint alleged that other class members resided in Utah and Texas. Id. at 730. The court had every reason to suspect that even more class members, perhaps even a plurality, either resided in Texas or were at least "more conveniently located to the court in Houston than Chicago." Id. at 730-31. The Berensons' more general attack on Georgouses also misses the mark. Opp. at 6. While it is correct that the court in Georgouses cited a "potential personal jurisdictional problem" as an additional miscellaneous factor in favor of transfer, id. at 731, the absence of personal jurisdiction problems in this case does not weigh against transfer. There is no question that the defendants are subject to personal jurisdiction in the District of Massachusetts.

The Berensons also suggest that it would be premature to transfer the case prior to class discovery and certification because the actual composition of the ultimate class is unknown.  To the contrary, the geographic distribution of the particular class proposed by the Berensons -- BillPay users -- is readily identifiable with at least enough precision to weigh transfer factors.  See Affidavit of Colleen Hankins, ¶¶ 2-3.  The likelihood that class certification may be denied, moreover, provides no reason to delay a transfer decision to protect the Berensons' individual choice of forum because they would be compelled to arbitrate their individual claims and therefore would be unable to maintain the action in this (or any other) Court.  See Statement of Undisputed Facts ("SOF") in Support of Defendants Motion to Dismiss and for Summary Judgment, ¶ 61.

The Berensons also contend that their choice of forum is significant because David Berenson has special sophistication, experience, and expertise that ensure his "role in this litigation will be anything but nominal or minimal."  Opp. at 8.  Of course, the likelihood of class certification dims in equal and opposite proportion to the truth of this representation because it suggests Mr. Berenson's claims are not "typical" or "representative."  See Fed. R. Civ. P. 23.  The assertion furthermore contradicts the position that the Berensons take in their opposition to the defendants motion to dismiss and for summary judgment:  "[C]lass certification is appropriate and permissible [because] the same BillPay agreements apply to all class members the same law (Massachusetts) applies and the class members have suffered the same damages."  Opp. at 20 n.19.   Simply put, a core assumption of the class action mechanism is precisely that named plaintiffs are "nominal" and largely indistinguishable representatives of the broader class.

The Berensons next contend that the claims "arose" in the District of Columbia because Fidelity "implemented" its polices and procedures with respect to the Berensons in the District of

17/511017.3                                          - 6 -

Columbia. But this is not the law. While various class members may feel the effects of the defendants' behavior in their place of residence, "[t]he material events in question . . . are the actions the defendants took" at their primary place of business. Georgouses, 963 F. Supp. at 731. Even if the plaintiffs' analysis were correct (it is not), only 0.51% of class claims could be said to have "arisen" in the District of Columbia, as compared with more than 15% of claims in Massachusetts.

The balance of the Berensons' argument on "private interests" seeks to minimize the importance of the convenience of the parties, the convenience of other witnesses, and the ease of access to sources of proof. But even if certain factors are inapplicable or their weight is diminished, they provide no support for keeping the case in the District of Columbia. With regard to convenience of the parties, the Berensons do not dispute that discovery and proof will focus on the defendants. Fidelity's Boston-based personnel thus would bear the lion's share of the burdens imposed by discovery and trial. Conversely, the only burden of inconvenience in transferring the case would be borne by the plaintiffs' counsel, which is not a consideration. Fidelity does not dispute that convenience of third party witnesses is a neutral factor, because there are no indications that particular witnesses would actually be unavailable for trial in either forum. Similarly, Fidelity does not dispute that modern technology can diminish the significance of the location of documents and evidence. But to the extent this consideration has any weight, it tips in favor of transfer since most of the documentary proof is likely to be in Boston.[3]

---

[3] The Berensons try to make much of Fidelity's failure to use categorical language to describe the location of documents. While Fidelity cannot categorically exclude the possibility that certain discovery might be obtained elsewhere, it has represented in good faith that the corporate personnel and records relevant to the plaintiffs' claims are centered in Boston. The Berensons have made no showing that they would need discovery from the BillPay administrator, CheckFree, or any other entity outside of Boston, and in any event none of those sources of proof are in the District of Columbia.

**IV.     THE PUBLIC INTERESTS OF THE COURT FAVOR TRANSFER.**

The Berensons' attempt to whittle away the public interests that favor transfer is also unavailing. Obviously, by moving to transfer the case, Fidelity does not mean to cast any doubt on the ability of a court in the District of Columbia to apply the law of Massachusetts. Nevertheless, the cases on transfer reflect a common sense presumption that it will be easier -- and thus promote judicial economy -- for a federal court to apply the law of the jurisdiction in which it sits. And the Berensons cannot escape the fact that Massachusetts law governs many of the issues in this case.

The June 2003 court statistics that the Berensons apparently obtained by facsimile from the Administrative Office of U.S. Courts -- which still have not been released on the pubic website, see http://www.uscourts/gov/cgi-bin/cmsd2002.pl> (displaying September 2002 statistics) (visited on Dec. 9, 2003) -- simply confirm that court congestion is not a compelling consideration in this case. Opp. at 12-13 & Ex. A. The pendulum swing of a few months in the average "time to trial" does not have substantial impact on consideration of judicial economy. What the Berensons' statistics do reflect, with the "standing within U.S." column, is rough comparability. Of 94 district courts, Massachusetts is 69th and D.C. is 48th in "time to trial," while Massachusetts is 82nd and D.C. is 88th in "weighted filings per judge." Opp., Ex. A. These rankings show that both courts are relatively quite congested. The District of Columbia admittedly is somewhat less congested by these measures at the snapshot in time reflected in the Berensons' statistics (which themselves may now be out of date), but not to an extent that would warrant a denial of Fidelity's motion to transfer. See Foster v. Litton Industries, Inc., 431 F. Supp. 86, 88 (S.D.N.Y. 1977) (granting transfer motion despite more crowded docket in transferee court because "it is well-settled that the docket conditions of a District Court's

calendar are merely accorded some weight and are not decisive in the determination of a transfer motion").

Finally, the Berensons insist that the interest of the District of Columbia in protecting its consumers weighs against transfer. Opp. at 13. But this argument ignores the <u>dual</u> interest of Massachusetts -- in regulating brokerages based within its borders <u>in addition to</u> protecting resident consumers -- as well as the fact that 0.51% of BillPay users reside in D.C. while 15.36% reside in Massachusetts. In sum, there is no reason of convenience to hear this case in this District, but several good reasons to hear it in Massachusetts.

## Conclusion

For the reasons descried above, and for the reasons described in defendants' memorandum in support of their motion to transfer venue, Fidelity respectfully requests that the Court transfer this case to the United States District Court for the District of Massachusetts.

Respectfully submitted,

NATIONAL FINANCIAL SERVICES LLC
FIDELITY BROKERAGE SERVICES LLC

By their attorneys,


/s/ Lawrence H. Martin
Lawrence H. Martin (D.C. Bar No. 476639)
FOLEY HOAG LLP
1875 K Street, N.W., Suite 800
Washington, D.C. 20006-1238
(202) 223-1200

Nicholas C. Theodorou (Pro Hac Vice)
John A. Shope (Pro Hac Vice)
Kevin C. Conroy (Pro Hac Vice)
William W. Fick (Pro Hac Vice)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Dated:  December 12, 2003