IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JOAN BERENSON and DAVID
BERENSON, individually and on behalf of
all others similarly situated,

                Plaintiffs,

                v.

NATIONAL FINANCIAL SERVICES LLC,
FIDELITY BROKERAGE SERVICES LLC,
and DOES 1-50, inclusive,

                Defendants.

Civil Action No. 04 CV 11311 (WGY)

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE
CLASS ACTION ALLEGATIONS OR IN THE ALTERNATIVE TO COMPEL OR
STAY FOR FAILURE TO PROVIDE DISCOVERY**

    Defendants National Financial Services LLC and Fidelity Brokerage Services LLC (together, "Fidelity") submit this memorandum in support of their Motion to Strike Class Action Allegations or in the Alternative to Compel or Stay for Failure to Provide Discovery.

**I. INTRODUCTION**

    The plaintiffs in this proposed class action have failed to appear for their depositions, failed to serve answers or objections to interrogatories, and failed to serve a written response or produce any materials in response to document requests. Pursuant to Fed. R. Civ. P. 37(d), any one of these deficiencies would warrant sanctions up to and including dismissal with prejudice.[1] Given the aggressive schedule in this case, under which a motion for class certification must be

---

[1] Since no class has yet been certified in this case, a dismissal would have *res judicata* effect with respect to the named plaintiffs only. *See, e.g., Roman v. ESB, Inc.*, 550 F.2d 1343, 1355–56 (4th Cir. 1976); CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1789 (2d ed. 1986).

served on or before January 25, 2005, the defendants' inability to obtain discovery threatens to prejudice their defense severely.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs David and Joan Berenson allege in this proposed nationwide consumer class action that Fidelity failed to disclose that its bill payment service would not credit them with "interest" on their Fidelity money market mutual fund during the period of "float" between the time that amounts were debited from their account and the time that payees were ultimately credited with payments. In their complaint, originally filed in the United States District Court for the District of Columbia on or about September 26, 2003, the Berensons contended that Fidelity violated the federal Electronic Funds Transfer Act ("EFTA") (Count I), the Massachusetts Truth in Savings Law (Count V), the Massachusetts Consumer and Business Protection Act (Count VI), and the District of Columbia Consumer Protection Procedures Act (Count VII). In addition, the complaint asserted common law claims of intentional (Count II) and negligent (Count III) misrepresentation, breach of fiduciary duty (Count IV), and breach of Contract (Count IV).[2]

On November 8, 2003, Fidelity filed a Motion to Dismiss and for Summary Judgment, arguing that several counts were legally insufficient on their face and that all must fail because, as a matter of indisputable fact, Fidelity provided full disclosure in customer agreements, BillPay Service Agreements, fund prospectuses, and other documents both provided to investors in hard copy and available on the Fidelity website. Specifically, Fidelity repeatedly disclosed that it debits a customer's account on the date the transaction begins, that the customer stops earning interest or dividends as of the next day on the funds, and that the payee may not be credited until

---

[2] The plaintiffs erroneously numbered two separate counts as "Count IV".

as many as five days later due to such things as postal delays. (Fidelity undertakes to pay the customer's designated payees in good funds and, like other providers making that promise, does not assume the risk that sufficient funds might not have remained in the customer's account by the time the check to a payee is presented for settlement, as might occur with a conventional checking account.) Although the complaint alleged that the plaintiffs had not received these materials, *see* Cmplt. ¶¶ 28-30 (alleging that BillPay Service Agreement is not directly provided to Fidelity customers), in response to the motion for summary judgment, the plaintiffs have admitted that they did (and, indeed, that they relied upon an understanding of the disclosures that Fidelity contends is contrary to their plain language). *See* Plaintiffs' Opposition to Defendants' Motion to Dismiss and for Summary Judgment (dated November 28, 2003) at 4 (arguing that BillPay Service Agreement misled the Berensons).

On November 13, 2003, Fidelity filed a Motion to Transfer Venue to the District of Massachusetts. The District of Columbia court granted this motion on May 14, 2003, and ordered the case transferred to this district without ruling on Fidelity's Motion to Dismiss and for Summary Judgment. 319 F. Supp. 2d 1.

This Court held a hearing on the defendants' dispositive motion on October 13, 2004. The Court granted the motion to dismiss in part from the bench, dismissing Count V (Mass. Truth in Savings, for which there is no private right of action), Count VII (D.C. Consumer Protection, withdrawn by the plaintiffs), and Count IV (breach of contract, following counsel's inability at oral argument to identify any promise breached). The Court took under advisement possible dismissal of Count I (EFTA), which would eliminate the basis of federal jurisdiction, but denied facial dismissal of the other remaining counts. The Court also took under advisement the defendants' motion for summary judgment with respect to all of the remaining counts.

The matters taken under advisement, which would dispose of the case in its entirety if granted, remain pending at this time. Nevertheless, the Court ordered the parties to proceed with the Joint Scheduling Statement, which was filed on October 27, 2004. In that filing, the defendants proposed that discovery should be stayed until final resolution of their dispositive motion, since if granted the motion would make discovery unnecessary. The plaintiffs disagreed and proposed that discovery should begin immediately, with initial disclosures due on November 15, 2004. By order dated November 2, 2004, the Court adopted the plaintiffs' proposal except that briefing is to proceed in accordance with the local rules. Under this schedule, the plaintiffs' Motion for Class Certification is due to be filed no later than January 25, 2005, and a response is due fourteen (14) days later. Local R. Civ. P. 7.1(B)(2).

On November 15, 2004, both the plaintiffs and the defendants served their initial disclosures pursuant to Fed. R. Civ. P. 26. Affidavit of John A. Shope, Esq. ("Shope Aff.) ¶ 10. The same day, the defendants served their First Set of Interrogatories and their First Request for Production of Documents. Shope Aff. ¶ 11. Although the plaintiffs had refused to agree to a stay pending complete adjudication of the motion to dismiss and for summary judgment, the plaintiffs have not served any document requests or interrogatories to date. Shope Aff. ¶ 12.

On November 18, 2004, the defendants served the following three notices of deposition pursuant to Fed. R. Civ. P. 30:

| **Deponent** | **Deposition Date** |
|---|---|
| David Berenson (plaintiff): | December 29, 2004 |
| Joan Berenson (plaintiff): | December 30, 2004 |
| Daniel S. Berenson, Esq.<br>(son of plaintiffs, partner of Johanson Berenson LLP): | January 4, 2005 |

Shope Aff. ¶ 13.

The defendants served a notice for the deposition of Daniel S. Berenson, a/k/a D.S. Berenson, a partner of Johanson Berenson LLP, counsel of record for the plaintiffs, because his status as the son of the named plaintiffs calls into doubt their adequacy to represent the purported class. Especially following the Supreme Court's decision emphasizing that one purpose of the adequacy inquiry is to "uncover conflicts of interest between named parties and the class they seek to represent," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997), many courts have condemned such relationships outright due to the undue influence on matters such as attorneys' fees and the desirability of settlement. *See, e.g.*, *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253-55 (11th Cir. 2003); *Hale v. Citibank*, N.A., 198 F.R.D. 606, 607 (S.D.N.Y. 2001) (denying class certification where proposed class representative's husband was an attorney who had referred other cases to the same class counsel from whom he expected referral fees); *Stully v. Pool,* 63 F.R.D. 702, 704 (S.D.N.Y. 1974) (wife of member of class counsel's firm inadequate); CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1769.1 (2d ed. 1986) (collecting cases).

Other courts, however, have considered the particular facts of the relationship. *See, e.g.*, *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303 (D. Mass. 1987). In *Kirby*, decided before *Amchem*, Judge Wolf rejected the father of class counsel as a class representative because the particular "closeness of the father-son relationship and the active involvement and heavy reliance on the son create an unnecessary risk of conflict between the representative plaintiff and other class members." *Id*. at 310. The deposition of Daniel S. Berenson is thus intended to develop facts for opposing the plaintiffs' forthcoming motion for class certification, a point that has been explained to plaintiffs' counsel, Shope Aff. ¶ 14, and, indeed, noted in earlier briefs. *See* Defendants' Memorandum in Support of Their Motion to Dismiss and for Summary Judgment

(filed November 7, 2003) at 3 n.2; Memorandum of Law in Support of Defendants' Motion to Transfer Venue (filed November 13, 2003), at 5 n.2.

On Wednesday, December 8, 2004, one of Fidelity's counsel, John A. Shope, spoke by telephone with the plaintiffs' lead counsel of record, Douglas Rubel. During this call, Mr. Rubel stated that he had recently had some medical problems but he did not indicate that this would affect his ability to prosecute the case nor did he ask Mr. Shope to address matters to his co-counsel, Mr. McWilliams of his firm, or his local counsel, Susan Stenger of Perkins, Smith & Cohen. Shope Aff. ¶15. Mr. Shope expressed surprise that, given the plaintiffs' previous opposition to a stay, they had not served discovery requests. Mr. Rubel stated that he would do so shortly, but did not. *Id.* Mr. Rubel also stated that he wanted to reschedule the depositions of David and Joan Berenson (which he agreed would be in Boston) and raised the prospect that the defendants might have to issue a subpoena in order to depose his law partner, Daniel S. Berenson. Mr. Shope stated that in order to reschedule he would need dates certain, which Mr. Rubel could not then provide for any of the individuals. *Id.* Mr. Shope also asked Mr. Rubel to determine whether he would insist on a subpoena and, if so, whether he would accept service of a subpoena on behalf of his partner, Daniel S. Berenson, in order to schedule that deposition as well. Mr. Rubel promised to get back to Mr. Shope by Friday, December 10, 2004. *Id.* In fact, Mr. Rubel did not get back to Mr. Shope until the following week, when in a conversation on December 16, 2004, he still had not spoken to Daniel S. Berenson, could not say whether he would be produced, and was unable to schedule a date for his deposition. *Id.*

The plaintiffs did not respond to the defendants' First Set of Interrogatories or First Request for Production of Documents by the deadline of December 15, 2004, nor have they done so to date. Shope Aff. ¶¶ 16-17.

On December 15, 2004, Mr. Rubel left a voicemail message for Mr. Shope in which, for the first time, he requested an extension of time in which to respond to the defendants' discovery requests due that day. Shope Aff. ¶ 18. Mr. Shope was out of the office that day and counsel conferred by telephone on the following day, December 16, 2004. In that conversation, Mr. Rubel requested an extension of time to respond to the defendants' document requests an interrogatories until December 22, 2004. *Id.* Although Mr. Rubel also offered the dates of January 10 and 11 for the depositions of David and Joan Berenson, Mr. Rubel ultimately indicated that he still had not spoken to his partner, Daniel S. Berenson, about his deposition. *Id.* He further speculated that he might not have authority to accept a subpoena for him and other lawyers might need to attend his deposition. (While Mr. Shope believed that Court had the authority to order that Daniel S. Berenson be produced for deposition in Boston since he is as a practical matter under the plaintiffs' control, he was open to conducting it in his firm's Washington, D.C. office, near Daniel S. Berenson's office in Arlington, Virginia. *Id.*) Mr. Shope stated that, while he was open to brief extensions, the parties would need to resolve all of the discovery response and deposition dates at once, so there were no agreements. *Id.* Mr. Shope further indicated that depositions would be needed in the first half of January in order that transcripts be available for Fidelty's opposition to class certification, and that the plaintiffs' document production would have to precede the deposition dates with sufficient time for review. *Id.* Mr. Rubel stated that he would get back to Mr. Shope right away. He did not do so (and indeed, made no communication until January 7, 2005). Shope Aff. ¶20.

On December 28, 2004, Mr. Shope sent a letter to Mr. Rubel by facsimile and first class mail summarizing the history of the parties' discovery discussions to date. In the letter, Mr. Shope warned Mr. Rubel that if the plaintiffs did not produce documents, answer interrogatories,

and supply revised deposition dates for all three of the Berensons immediately, the defendants would move for sanctions, including dismissal. Shope Aff. ¶ 19 & Ex. F. The letter was sent by fax and mail, and transmission of the fax on December 28, 2004 to the fax number on Mr. Rubel's letterhead was electronically confirmed. *Id.*

Just as the defendants were, after some expense in preparation, about to file a motion for sanctions, Mr. Rubel called Mr. Shope for the first time in ten days after the letter on January 7, 2005. Mr. Shope advised him that, in order to avoid filing of the motion, the plaintiffs would have to produce all requested documents by the morning of Monday, January 10, 2005 (any objections having been waived and any time to litigate the validity of objections being unavailable), as well as produce the plaintiffs in Boston for deposition this week and produce Daniel S. Berenson for deposition in Washington, D.C. next week. Mr. Rubel, who refused to offer any reason for his delays, for the first time objected to producing the plaintiffs in Boston, asserted various objections to document requests, and stated that he would likely object to various questions at any deposition of D.S. Berenson, which he did not wish to be under the supervision of this court). Shope Aff. ¶¶ 21-22.

Late on the afternoon of January 7, 2005, the plaintiffs issued notices of deposition of three of Fidelity's affiants in support of the pending motion for summary judgment. Shope Aff. ¶ 23. Since the plaintiffs have made no document requests, the plaintiffs propose to depose the defendants' witnesses without reviewing the defendants' documents.

As of the present date (January 10, 2005):

- the plaintiffs have neither objected nor responded to Fidelity's interrogatories and document requests of November 15, 2004, nor have the plaintiffs produced any documents, nor requested any extension beyond December 22, 2004 to do so, nor received any extension whatsoever;

- plaintiff David Berenson did not appear for his deposition on December 29, 2004 nor has he unconditionally agreed to appear on any other date;

- plaintiff Joan Berenson did not appear for her deposition on December 30, 2004 nor has she unconditionally agreed to appear on any other date;

- Daniel S. Berenson, Esq. did not appear for his deposition on January 4, 2005 nor has he unconditionally agreed to appear on any other date.

Shope Aff. ¶¶ 24-27.

### III. THE PLAINTIFFS' FAILURE TO PROVIDE DISCOVERY WARRANTS SANCTIONS INCLUDING STRIKING CLASS ALLEGATIONS

Fed R. Civ. P. 37(d) enumerates three bases for sanctions. The court may take any action authorized under Rule 37(b)(2), including dismissal with prejudice, and *shall* assess expenses, including attorneys fees, if a party fails:

> (1) to appear before the officer who is to take the deposition, after being served with proper notice; or
>
> (2) to serve answers or objections to interrogatories submitted under Rule 33 after proper service of the interrogatories; or
>
> (3) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request.

Here, the plaintiffs win the trifecta: they have failed to appear for their depositions, failed to serve answers or objections to interrogatories, and failed to serve a written response or produce any materials in response to document requests.

The First Circuit has made it clear that district courts enjoy broad discretion to impose sanctions for failure to meet discovery deadlines, including dismissal with prejudice:

> We have made it plain that a litigant who ignores case-management deadlines does so at his peril. Consequently, when noncompliance occurs, the court may choose from a broad universe of possible sanctions . . . .

*Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 45-46 (1st Cir. 2002) (affirming dismissal with prejudice where plaintiff failed to timely comply with discovery obligations) (emphasis added; internal citations and quotations omitted). Notably, violation of a court discovery order is not a precondition to impose sanctions; disregard of obligations under the federal rules is itself sufficient basis for dismissal. *See Ortiz-Lopez v. Sociedad Espanola De Auxilio Mutuo Y Beneficiencia De Puerto Rico*, 248 F.3d 29, 37 (1st Cir. 2002) ("The district court was well within its discretion in concluding that plaintiffs' disregard for their obligations under the Federal Rules of Civil Procedure warranted the most severe sanction.").

At a minimum, because the defendants have been prejudiced in preparation of a response to a motion for class certification, the named plaintiffs' request for class status should be striken. *See Conran v. Great Atlantic & Pacific Tea Co.* 499 F. Supp. 727, 729 (E.D. Pa. 1980) ("Plaintiff has neither instituted discovery since commencing the action nor has he submitted to discovery depositions properly noticed. Accordingly, this court shall strike the class action allegations of the complaint…The complaint shall be treated hereinafter as an individual action."). *Cf. Philpot v. Philco-Ford Corp.*, 63 F.R.D. 672, 675 (E.D. Pa. 1974) (Higginbotham, J.) (dismissing case as to named plaintiffs for failure to respond to discovery).

Sanctions are warranted here because the plaintiffs' failure to fulfill discovery obligations in a timely way will severely prejudice Fidelity's ability to oppose the plaintiffs' motion for class certification, which is due to be filed no later than January 25, 2005. Shope Aff. ¶ 28. The plaintiffs' dilatory conduct would undermine the case management schedule — which the plaintiffs, themselves, proposed — completely. At the stage of determining whether to certify a class, the Court is not to rely merely on the pleadings but rather a review of the entire record. *See, e.g., Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000); *Moniz v.*

- 10 -

*Cross Land Mortgage Corp.*, 175 F.R.D. 1, 1 n.1 (D. Mass. 1997) (Young, J.) (extensive substantive record useful). While it is true that dismissal and like sanctions typically follow failure to comply with an order compelling discovery, in this case the conscious and continued disregard of deadlines despite repeated requests and warnings is egregious. The striking of the class allegations, moreover, would serve judicial economy because the better rule is that the relationship of the Berensons as parents of one of four partners in the firm proposing to serve as class counsel poses such a substantial conflict of interest that they are inadequate to represent the class *per se.*

The defendants have thus proposed three alternative or cumulative sets of sanctions for the Court's consideration, in addition to the required imposition of attorneys fees:

    a.    striking the class action allegations of the complaint; **and/or**

    b.    compelling the plaintiffs to fulfill their discovery obligations, including producing all documents and answering all interrogatories without objections, producing a detailed privilege log, and making all of the Berensons available for deposition in Boston[3] by dates certain and ordering that the defendants shall not be required to oppose the anticipated motion for class certification, which is due to be served no later than January 25, 2005, until a

---

[3] Until grasping for a bargaining chip, Shope Aff. ¶ 21, named plaintiffs David and Joan Berenson never put in doubt their obligation to come to Boston for deposition. *See, e.g., Jahr v. IU Int'l. Corp.*, 109 F.R.D. 429, 431 (M.D.N.C. 1986). While the defendants' counsel would have been willing to depose Daniel S. Berenson, son of plaintiffs, and partner of plaintiffs' counsel, in at their Washington, D.C. office in the first instance, given the limited time available the Court should order him to be produced for deposition in Boston if it decides to order this proposed set of sanctions. *See, e.g., Robbins v. Abrams*, 79 F.R.D. 600, 602 (S.D.N.Y. 1978) (holding that inherent equitable powers of court include holding party responsible for securing a witness' attendance at a deposition where the party knows exactly where the witness can be found and where the familial relationship involved makes it appropriate for the party to secure the presence of the witness); *Precision Flow Techs., Inc. v. CVD Equip. Corp.,* 198 F.R.D. 33, 36-38 (N.D.N.Y. 2000) (sanctioning party for failing to produce employees where notices served but subpoenas not demanded until after noticed deposition dates). Particularly since time is of the essence and familiarity with the subject matter is important, the objections that the plaintiffs apparently intend to make at any deposition of D.S. Berenson, Shope Aff. ¶ 21, should be adjudicated by this Court, not a court in another district enforcing a third-party subpoena.

>  minimum of fourteen (14) days after they have obtained transcripts from the depositions of David Berenson, Joan Berenson and Daniel S. Berenson; **and/or**
>
> c. <u>staying</u> this action pending the Court's final resolution of the defendants' potentially dispositive Motion to Dismiss and for Summary Judgment

The plaintiffs' failure to respond in a timely way to the defendants' interrogatories and document requests waives any valid objections they might have had. See Local R. Civ. P. 34.1(c)(1) ("Any ground not stated in an objection [to a request for production of documents] within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be deemed waived."); Local R. Civ. P. 33.1 (same with respect to interrogatories); *DeMary v. Yamaha Motor Corp.*, 125 F.R.D. 20 (D. Mass. 1989) (same).

## IV. CONCLUSION

For the all of the foregoing reasons, Fidelity's motion should be granted and the Court should order the requested relief.

>  Respectfully submitted,
>
>  NATIONAL FINANCIAL SERVICES LLC and
>  FIDELITY BROKERAGE SERVICES LLC
>
>  By their attorneys,
>
>  <u>        /s/ John A. Shope            </u>
>  Nicholas C. Theodorou (BBO No. 495730)
>  John A. Shope (BBO No. 562056)
>  William W. Fick (BBO No. 650562)
>  FOLEY HOAG LLP
>  155 Seaport Boulevard
>  Boston, MA 02210
>  (617) 832-1000

Dated: January 10, 2005