IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JOAN BERENSON and DAVID
BERENSON, individually and on behalf of
all others similarly situated,

Plaintiffs,

v.

NATIONAL FINANCIAL SERVICES LLC,
FIDELITY BROKERAGE SERVICES LLC,
and DOES 1-50, inclusive,

Defendants.

Civil Action No. 04 CV 11311 (WGY)

## AFFIDAVIT OF JOHN A. SHOPE, ESQ.

I, John A. Shope, depose and state as follows:

1. I am a partner of Foley Hoag LLP, counsel for defendants National Financial Services LLC and Fidelity Brokerage Services LLC (together, "Fidelity"), and I make the statements herein on the basis of personal knowledge.

2. I submit this Affidavit in support of the defendants' Motion to Strike Class Action Allegations or in the Alternative to Compel or Stay for Failure to Provide Discovery.

3. The plaintiffs filed the complaint in this proposed consumer class action on or about September 26, 2003, in the United States District Court for the District of Columbia. The plaintiffs are principally represented by the law firm of Johanson Berenson LLP. According to its website (www.johansonberenson.com) the firm has only four partners: David R. Johanson, D.S. Berenson (son of the named plaintiffs), Douglas A. Rubel (counsel of record in this action), and Rachel J. Markan. Again according to the website, there are two associates: Jason Scott and

Kenneth L. McWilliams (counsel of record in this case). (Mr. Rubel's notice of appearance in this case lists an address in Great Falls, Virginia, but according to his letterhead, Mr. Rubel is not admitted in Virginia and is based in the firm's office in Cary, North Carolina.) As discussed below, the plaintiffs' status as parents of a partner in the law firm proposing to represent the class poses ethical and pressing discovery issues in the case.

4. On November 7, 2003, the defendants filed a Motion to Dismiss and for Summary Judgment, which, as discussed below, remains under advisement.

5. On November 13, 2003, the defendants filed a Motion to Transfer Venue to the District of Massachusetts.

6. On May 14, 2004, the District Court for the District of Columbia ordered the case transferred to this District without ruling on the defendants' Motion to Dismiss and for Summary Judgment. 319 F. Supp. 2d 1. Upon the transfer to this District, Susan Stenger of the firm of Perkins, Smith & Cohen LLP entered an appearance and has served as local counsel.

7. On October 13, 2004, this Court held a hearing on the defendants' Motion to Dismiss and for Summary Judgment. The Court granted the motion in part, denied the motion in part, and took the rest under advisement. That portion taken under advisement would, if granted, dispose of the case in its entirety.

8. On October 27, 2004, the parties filed their Joint Statement pursuant to Local R. Civ. P. 16.1 and Fed. R. Civ. P. 26. The defendants proposed that discovery should be stayed until complete disposition of their Motion to Dismiss and for Summary Judgment, since if granted the motion would make discovery unnecessary. The plaintiffs disagreed and proposed that discovery should begin immediately, with initial disclosures due on November 15, 2004.

9.  By Order dated November 2, 2004, the Court adopted the plaintiffs' proposal except that briefing is to proceed in accordance with the local rules. Under this schedule, the plaintiffs' Motion for Class Certification is due to be filed no later than January 25, 2005, and, absent an extension, a response is due fourteen (14) days later.

10. On November 15, 2004, both the plaintiffs and the defendants served their initial disclosures pursuant to Fed. R. Civ. P. 26.

11. The same day, the defendants served their First Set of Interrogatories, a copy of which is attached hereto as Exhibit A, and their First Request for Production of Documents, a copy of which is attached hereto as Exhibit B.

12. Although the plaintiffs refused to agree to a stay pending complete adjudication of the pending motion to dismiss and for summary judgment, the plaintiffs have not served any interrogatories or requests for production of documents to date.

13. On November 18, 2004, the defendants served the following three notices of deposition pursuant to Fed. R. Civ. P. 30, true copies of which are attached hereto as Exhibits C, D, and E, respectively:

| **Deponent** | **Deposition Date** |
| --- | --- |
| David Berenson (plaintiff): | December 29, 2004 |
| Joan Berenson (plaintiff): | December 30, 2004 |
| Daniel S. Berenson, Esq. (son of plaintiffs, partner of Johanson Berenson LLP): | January 4, 2005 |

14. The defendants served a notice for the deposition of Daniel S. Berenson, a/k/a D.S. Berenson, a partner in the small firm proposing to serve as class counsel, because his status as the son of the named plaintiffs calls into doubt their adequacy to represent the purported class.

Following the Supreme Court's decision emphasizing that one purpose of the adequacy inquiry is to "uncover conflicts of interest between named parties and the class they seek to represent," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997), many courts have condemned such relationships outright due to the undue influence on matters such as attorneys' fees and the desirability of settlement. *See, e.g.*, *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253-55 (11th Cir. 2003); *Hale v. Citibank, N.A.*, 198 F.R.D. 606, 607 (S.D.N.Y.) (2001) (rejecting proposed class representative whose husband was an attorney who had referred other cases to class counsel with the expectation of a fee); *Stull v. Pool*, 63 F.R.D., 702, 704 (S.D.N.Y. 1974) (rejecting wife of member of class counsel's firm as an inadequate representative); CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1769.1 (2d ed. 1986) (collecting cases). Other courts, before *Amchem*, have at least considered the particular facts of the relationship. *See, e.g.*, *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303 (D. Mass. 1987). In *Kirby*, Judge Wolf rejected the father of class counsel as a class representative because the particular "closeness of the father-son relationship and the active involvement and heavy reliance on the son create an unnecessary risk of conflict between the representative plaintiff and other class members." *Id.* at 310. The deposition of Daniel S. Berenson is thus intended to develop facts for opposing the plaintiffs' forthcoming motion for class certification, a point that I have explained to opposing counsel, and that was noted in the defendants' initial briefs filed in November 2003.

15.   On Wednesday, December 8, 2004, I spoke by telephone with the plaintiffs' lead counsel of record, Douglas Rubel. Mr. Rubel stated that he had recently had some medical problems but he did not indicate that this would affect his ability to prosecute the case nor did he ask me to address matters to his co-counsel, Mr. McWilliams of his firm, or Susan Stenger of

- 4 -

Perkins, Smith & Cohen. I expressed surprise that, given the plaintiffs' previous opposition to a stay, they had not served discovery requests to that point. Mr. Rubel stated that he would do so shortly, but did not. Mr. Rubel also stated that he wanted to reschedule the depositions of David and Joan Berenson (which he agreed would be in Boston) and raised the prospect that the defendants might have to issue a subpoena in order to depose his law partner, Daniel S. Berenson. I stated that before I would agree to reschedule deposition dates, and I would need Mr. Rubel to give me dates certain, which he could not then provide for any of the individuals. I also asked Mr. Rubel to determine whether he would produce Daniel S. Berenson, or if a subpoena were required whether he would accept service, so that we could schedule that deposition as well. Mr. Rubel promised to get back to me by Friday, December 10, 2004. In fact, Mr. Rubel did not get back to me until the following week, when, in a conversation on December 16, 2004, he still could not say whether he had authority to produce Daniel S. Berenson for deposition or alternatively accept a subpoena.

16. The plaintiffs did not respond to the defendants' First Set of Interrogatories by the deadline of December 15, 2004, nor have they done so to date.

17. The plaintiffs did not respond to the defendants' First Request for Production of Documents by the deadline of December 15, 2004, nor have they done so to date.

18. On December 15, 2004, Mr. Rubel left a voicemail message for me in which, for the first time, he requested an extension of time in which to respond to the defendants' discovery requests. I was out of the office that day and we spoke by telephone on the following day, December 16, 2004. In that conversation, Mr. Rubel requested an extension of time to respond to the defendants' document requests and interrogatories to December 22, 2004. While Mr. Rubel also offered January 11 and 12 in Boston for the depositions of David and Joan Berenson,

Mr. Rubel ultimately indicated that he still had not spoken to his partner, Daniel S. Berenson, about his deposition. He further speculated that he therefore might not have authority to accept a subpoena for him and other lawyers might need to attend his deposition. I stated that, while I was open to brief extensions and to rescheduling, given the pressing schedule we would need to resolve all of the discovery response and deposition dates at once, and that there was therefore no agreed extension. I further indicated that depositions would be needed no later than the first half of January in order that transcripts be available for our opposition to class certification, and that the plaintiffs' document production would have to precede the deposition dates with sufficient time for review. As to the location of the deposition of Daniel S. Berenson, while I stated to Mr. Rubel that I believed that the Court had the authority to order him to be produced in Boston since as a practical matter he is under the plaintiffs' control, I was open to deposing him in my firm's Washington, D.C. office, which is near his office in Arlington, Virginia. Because the motion for class certification was looming, I expressed to Mr. Rubel my surprise that he still had not served requests for production or notices of deposition. He again said he would soon serve requests for production, but did not do so. Finally, Mr. Rubel expressed an interest in deposing the defendants' affiants in support of summary judgment after documents had been produced pursuant to what he said would be forthcoming requests. Mr. Rubel stated that he would get back to me right away on the foregoing issues. Again, he did not do so.

19. On December 28, 2004, I sent a letter to Mr. Rubel by facsimile and first class mail briefly summarizing the history of our discovery discussions to date. In the letter, I warned Mr. Rubel that if the plaintiffs did not produce documents, answer interrogatories, and supply revised deposition dates for all three of the Berensons immediately, the defendants would move for sanctions, including dismissal. A true copy of this letter is attached hereto as Exhibit F,

together with a copy of the confirmation of transmission to the fax number of Mr. Rubel's office listed on the letterhead he had used for his automatic disclosures and his correspondence this month. I received no response in any form until ten days later.

20. On January 7, 2005, as I was preparing to file a version of the present motion, prepared at some expense to the defendants, Mr. Rubel called me for the first time since our conversation on December 16, 2004. He asserted that he had received my letter of December 28, 2004 only two days earlier on January 5, 2005, a statement I do not consider credible given the confirmation of fax receipt attached hereto. To my repeated questions Mr. Rubel expressly refused to supply any reason, even one he might believe I would not accept, as to why had had failed to respond to our discovery requests and notices and subsequent telephone calls and correspondence. I advised him that I had prepared a motion to dismiss the suit or alternatively to compel, but that could avoid my filing the motion by sending me a letter confirming that he (i) would produce in hand to me by the morning of January 10, 2005 _all_ of the documents we had requested without asserting objections (since objections had been waived and we had in any event lost the time to litigate the viability of any objections in a meaningful way, as the opposition to class certification would require depositions and briefs before additional production might be ordered); (ii) that he produce the Berensons for deposition at the end of this week; and (iii) that he produce his partner, Daniel S. Berenson, for deposition (which I was still willing to conduct at my firm's office in Washington, D.C.). I advised Mr. Rubel to fax me a letter by 3:00 p.m. representing that he would comply with these conditions.

21. To my surprise, in the conversation on January 9, 2005, and for the first time, Mr. Rubel objected to producing the plaintiffs for deposition in Boston. I could not agree to conduct them elsewhere due to delay and the expense, which would include travel not only for myself but

also in-house counsel for the defendants who wished to attend, and the fact that plaintiffs, especially class action plaintiffs, are typically deposed in the forum of suit. Mr. Rubel also demanded the specific topics on which we would be deposing his law partner, Daniel S. Berenson, and indicated that he would likely be asserting objections to questions at the deposition.

22. At 3:00 p.m. on Friday, January 7, 2005, Mr. Rubel faxed me the letter attached as Exhibit G. The letter was inadequate in part because it purported to reserve objections to production on relevance grounds. For example, Mr. Rubel objected to producing evidence of the named plaintiffs other accounts even though they might offer bill payment services used or reviewed by the plaintiffs and thus confirming their understanding of when they expected their Fidelity accounts to be debited, when they expected payees to be credited with funds, and who would retain any interest from the intervening period. Mr. Rubel also objected to producing Fidelity account statements on the theory that Fidelity has them, ignoring the point that the plaintiffs' receipt and retention of disclosure notices from Fidelity is a key issue in the case. The letter was further inadequate because it indicated that Daniel S. Berenson would appear only pursuant to a subpoena, meaning that objections and instructions not to answer would have to be adjudicated in a different court.

23. Later on Friday, January 7, 2005 I faxed to Mr. Rubel a letter, attached as Exhibit H, explaining the inadequacy of his response and a second letter, attached as Exhibit I, noting that his earlier letter was ambiguous in that he had orally promised the <u>receipt</u> in Boston of documents on Monday, rather than <u>service</u> by him in North Carolina on Monday, and noting the need for a privilege log, especially in relation to any privilege claimed for communication to

which Daniel S. Berenson was a party. At the end of the day I received by hand from Ms. Stenger notices for depositions of three Fidelity employees next week.

24. It is now Monday, January 10, 2005 at 12:30 p.m. I have not received from the plaintiffs any documents responsive to our requests or answers to interrogatories or unconditional commitments to appear for depositions.

25. Plaintiff David Berenson did not appear for his deposition on December 29, 2004 or agree unconditionally to appear on any other date.

26. Plaintiff Joan Berenson did not appear for her deposition on December 30, 2004 or agree unconditionally to appear on any other date.

27. Daniel S. Berenson, Esq. did not appear for his deposition on January 4, 2005 or agree unconditionally to appear on any other date.

28. The plaintiffs' failure to fulfill their discovery obligations in a timely way will severely prejudice the defendants' ability to oppose the plaintiffs' motion for class certification, which is due to be filed no later than January 25, 2005.

Signed under penalty of perjury.

                                                    /s/ John A. Shope
                                                    John A. Shope

Dated: January 10, 2005