UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOAN BERENSON, individually and on behalf of all others similarly situated; and DAVID BERENSON, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br>v.<br><br>NATIONAL FINANCIAL SERVICES LLC; FIDELITY BROKERAGE SERVICES LLC; and DOES 1-50, inclusive,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)    04-CV-11311-WGY<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**

**I.    INTRODUCTION**

This is a class action (brought on behalf of each Plaintiff and on behalf of all those similarly situated) by consumers who subscribed to an electronic bill payment service ("EBPS") known as the Fidelity BillPay Service ("BillPay" or "BillPay Service"). Any consumer utilizing the BillPay Service (a "subscriber") prematurely lost the ownership and benefit of those monies that the subscriber designated be paid through the BillPay Service. Complaint ("Compl.") at ¶ 1.

Without proper notice to, or consent from, the BillPay Service subscribers, Defendants took the monies from the subscriber's account, placed the monies into a private Fidelity "limbo" account, and apparently then transferred the monies to a third-party vendor which third-party vendor was then supposed to pay the subscriber's intended payee. *Id*. During the period of time between which Defendants debited funds from the subscriber's account and when such funds were actually credited to the designated transferee(s) (the "limbo float"), Defendants took

ownership of the subscriber's monies and obtained the benefit of those monies. Yet, during the limbo float, the Defendants failed to pay interest or any other value to the BillPay subscribers for Defendants' use of the subscriber's monies. Moreover, Defendants failed to give any notice that the subscriber's monies would be given to an unknown third-party.

Plaintiffs allege that these actions constitute violations of the Electronic Funds Transfer Act, codified at 15 U.S.C. §§ 1693, *et seq.* ("EFTA"); the Massachusetts Consumer Protection Laws, Mass. Gen. Laws, Ch. 93A, §§ 1, *et seq.* ("Chapter 93A"), which law governs the contractual relationship between Defendants and Plaintiffs; and certain common law principles, including misrepresentation and breaches of fiduciary duty.

Plaintiffs move for class certification pursuant to Fed. R. Civ. P. 23. Plaintiffs propose that the following class be certified:

> All persons who subscribed to and used the Fidelity BillPay EBPS during the four year period preceding the filing of this action (the "Class Period").[1]

This case undoubtedly embodies the general rule articulated by the Supreme Court - and reflected in dozens of consumer protection class actions routinely certified - that "[p]redominance [of common issues] is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citation omitted).

---

[1] Excluded from the revised definition of the Class are defendants and their officers, directors, management, and employees, subsidiaries, or affiliates, and all governmental entities. *Id*.
  The Complaint sets forth a proposed six year time period because of Massachusetts' six year statute of limitations on breach of contract claims. Given, however, that Plaintiffs' breach of contract claim is no longer extant following the hearing on Defendants' motion to dismiss and for summary judgment, a four year period is appropriate because of the four year statute of limitations on the Plaintiffs' Chapter 93A claims. Plaintiffs will amend the Complaint should the Court deem that necessary.

2

**II.     FACTUAL BACKGROUND**[2]

At all times during the Class Period, Plaintiffs Joan Berenson and David Berenson maintained a personal interest-bearing account at Defendants and subscribed to the BillPay Service.  Compl. at ¶¶ 2-3 & 17.  Defendants hold themselves out as being a part of the "Fidelity Investments" umbrella of companies that generally provide investment and banking services and which markets itself as an experienced world-wide leader in the investment industry, with more than fifty years of "tradition" and "experience" at the "forefront" of the investing business and in the banking business.  Fidelity Investments represents that its customers "retain complete control over their money" *("It's your money.  You should be able to manage it on your terms-online, by phone, at a branch or with your wireless device.")  See, e.g.,* Fidelity Investments' internet website, including "www.fidelity.com" and internet pages accessible therefrom.  Compl. at ¶ 6.

Plaintiffs instructed Defendants to make numerous electronic transfers from their personal account under the BillPay Service, some on a recurring basis and some on a one-time basis, to a variety of Plaintiffs' creditors and others to whom they sought to electronically transfer certain funds, including transfers between their own Fidelity accounts.  Compl. at ¶ 18.

For each such transfer, however, Defendants intentionally employed policies and practices that were designed to enable the Defendants to kite or otherwise improperly earn interest or other benefits on the use of Plaintiffs' funds, and/or to avoid paying interest or other benefits to Plaintiffs, under the BillPay Service, all without proper or necessary disclosure.  Defendants debited Plaintiffs' account for the amount of each BillPay payment and immediately transferred ownership and benefit of those funds to an account or accounts that Defendants

---

[2]     Plaintiffs will not attempt to set forth all of the allegations of the Complaint.  The Complaint speaks for itself and the Court is aware of the substantive issues contained therein.

maintained for their own purposes.  Compl. at ¶¶ 19-20.

Moreover, Defendants have represented to this Court, and Plaintiffs have learned from Defendants in discovery, that Plaintiffs' BillPay monies were then transferred to a third party vendor of the Defendants, *without* the knowledge and consent of Plaintiffs, and that it was from this third-party vendor that the Plaintiffs' intended payees were eventually paid.  Attached to the Defendants' Motion to Dismiss and for Summary Judgment is the Affidavit of Camille Zaslau, a Director in Fidelity's Treasury Department and in charge of operations for the BillPay Service.  Ms. Zaslau testified that Fidelity transfers all BillPay Service monies to CheckFree Corporation.  Attached as <u>Exhibit</u> A is a copy of the relevant portions of Ms. Zaslau's January 19, 2005 deposition transcript.  Ms. Zaslau testified, consistent with her affidavit, that since June 2000, when Fidelity began using CheckFree Corporation as a vendor for its BillPay Service, a BillPay Service subscribers' monies are transferred from a Fidelity account at Chase Bank in New York to CheckFree Corporation, which then remits the monies to the subscriber's intended payee either by a check drawn on a CheckFree Corporation corporate account (on average within three to five business days from date of initial transfer from Fidelity's own account to the CheckFree Corporation account) or by electronic transfer (on average within three business days from date of initial transfer from Fidelity's own account to the CheckFree Corporation account).  <u>Exhibit A</u> at 86:10-88:5.  Ms. Zaslau also testified that CheckFree is able to issue drafts upon the subscriber's account, which drafts would essentially function as though the subscriber had cut a check, but that Defendants were not utilizing that option.  *Id*. at 57:15-58:9.

As of December 31, 2004, approximately 44,000 accounts are enrolled in the BillPay Service.  <u>Exhibit</u> A at 116:7-1; 131:11-132:1.  Attached as <u>Exhibit</u> B is a copy of the relevant portions of the deposition transcript of Anne Warren Fagan, a Director of Product Management

4

at Fidelity, who in charge of the BillPay Service on a day-to-day basis. <u>Exhibit</u> B at 13:20-14:5; 20:19-21:9; 24:7-9. Of the 44,000 enrolled accounts, approximately 28,000 are currently active. <u>Exhibit</u> A at 131:11-19. It remains unclear at this time how many additional BillPay Service accounts have been active during the past four years.

Defendants knowingly and willingly misled their customers, including Plaintiffs and the Class members, by failing to inform them that they would not be credited with any interest on the subject funds during the limbo float period between which Defendants debited the funds from a subscriber's account and the time when such funds were actually credited to the designated transferee(s), as would be the case in a regular checking account under standard banking practices and/or under customary EBPS practices.

**III.    ARGUMENT**

    **A.    The Standard of Class Certification Under Rule 23**

The sole issue before the Court is whether Plaintiffs are asserting a claim which, assuming its merit, satisfies the requirements of Rule 23. *Guckenberger v. Boston University*, 957 F. Supp. 306, 325 (D. Mass. 1997); *In re Screws Antitrust Litig.*, 91 F.R.D. 52, 55 (D. Mass. 1981) ("Screws"). The Court "may not evaluate the merits of a case at the class certification stage." *George Lussier Enters., Inc. v. Subaru of New England, Inc.*, 2001 U.S. Dist. LEXIS 12054, *34 (D.N.H. Aug. 3, 2001).[3] "Rule 23(a) should be liberally construed in order not to undermine the policies underlying the class action rule." *Lessard v. Metropolitan Life Ins. Co.*, 103 F.R.D. 608, 610 (D. Me. 1984). Thus, "because of the important role that class actions play in the private enforcement of the antitrust statutes, courts resolve doubts about whether a class

---

[3]    *See also Eisen v. Carlisle & Jacqueline*, 417 U.S. 156,177 (1974); *In re Magnetic Audiotape Antitrust Litig.*, 2001 U.S. Dist. LEXIS 7303 at *5 (S.D.N.Y. 2001); *In re One Bancorp Sec. Litig.*, 136 F.RD. 526, 532 (D. Me. 1991).

should be created in favor of certification." *George Lussier*, 2001 U.S. Dist. LEXIS 12054, *48. *See also Yaffe v. Powers*, 454 F.2d 1362, 1367 (1st Cir. 1972).

To certify a class under Rule 23, Plaintiffs must satisfy the requirements set forth in Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation), as well as at least one of the subsections of Rule 23(b). *See Adair v. Sorenson*, 134 F.R.D. 17 (D. Mass. 1991).

There are compelling reasons for bringing consumer protection class actions. A class-based effort is more effective than an individual consumer in forcing a defendant to modify its conduct. In addition, most individual consumers have claims which are too small to warrant representation by an attorney. Moreover, attorney's fees may be available by statute or under the common fund doctrine, as opposed to having to be borne by an individual client. Alba Conte and Herbert B. Newberg, 6 Newberg on Class Actions, § 21:1 (Consumer Class Actions: Introduction) (4th ed. Updated November 2003) (hereinafter, "Newberg"). As demonstrated below, Rule 23 is fully satisfied here.

    B.    <u>**The Requirements for Rule 23(a) Are Satisfied**</u>

        1.    <u>**Numerosity**</u>

The numerosity requirement need not detain the Court. Under Fed. R Civ. P. 23(a)(1), "[i]mpossibility of joinder is not required. Extreme difficulty or impracticability of joinder is sufficient." *Kaminski v. Shawmut Credit Union*, 416 F. Supp. 1119, 1123 (D. Mass. 1976); *Dale Electronics. Inc. v. R.C.L. Electronics, Inc.*, 53 F.R.D. 531, 534 (D.N.H. 1971) (finding class consisting of thirteen members sufficient).[4] "Exact figures ... of course, are not needed to satisfy

---

[4] A reasonably small number of class members suffices to maintain a class action. *See, e.g., George Lussier*, 2001 U.S. Dist. LEXIS 12054, *48 (class of seventy-five franchisees sufficiently numerous); *Fraser v. Major League Soccer, L.L.C.*, 180 F.R.D. 178 (D. Mass. 1998) (class of approximately 200 soccer players certified).

Rule 23(a)(1)." *Screws*, 91 F.R.D. at 55.[5] Class actions are also particularly appropriate where, as here, the class members are "from disparate geographical areas." *Wilcox v. Petit*, 117 F.R.D. 314, 317 (D. Me. 1987); *see also Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 306 (D. Mass. 1987).

Here, the Class consists of all persons that subscribed to and used the BillPay Service in the last four years. Presently, there are approximately 44,000 BillPay subscribers, of which approximately 28,000 are active BillPay users. Moreover, the BillPay subscribers are from disparate geographical regions. Defendants concede that, as of October 24, 2003, the BillPay Service had customers in all 50 states and at least five international jurisdictions.[6] Because the class in this case is so numerous and widely dispersed that joinder of its members becomes impracticable, the numerosity requirement is satisfied. *Kaminski, supra; Wilcox, supra; Kirby, supra. See also* Newberg at 21:2.

### 2.  **Commonality**

The commonality prerequisite, which is clearly satisfied here, has been aptly characterized as a "'low hurdle' easily surmounted." *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 63 (D. Mass. 1997). Rule 23(a) requires only that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2) (emphasis added).

The rule does not require that all issues of fact and law be common. *Massachusetts Assoc. of Older Americans v. Spirito*, 92 F.R.D. 129, 131 (D. Mass. 1981) ("[a]lthough there may be differences in the facts relating to the alleged delays for individual applicants, the pattern of

---

[5]   A court may draw reasonable inferences to estimate the size of the class. *Westcott v. Califano*, 460 F. Supp. 737, 744 (D. Mass. 1978).
[6]   In support of their Motion to Transfer Venue, Defendants tendered the affidavit of Colleen Hankins, in-house counsel for Defendants' parent corporation, who testified to this in Exhibit A to her Affidavit.

7

conduct of defendant is at issue"); *see also Guckenberger*, 957 F. Supp. at 325. To demonstrate commonality, the plaintiff need only identify a single common issue. *Margaret Hall Foundation, Inc. v. Atlantic Financial Management, Inc.*, 1987 WL 15884, at *2 (D. Mass. 1987).

Here, all Class members must prove - necessarily using the same evidence - the existence of the Defendants' conduct involved in the BillPay Service. Common issues of law and fact are abundant here. Illustrative examples include: (i) the applicable agreements, notices and buckslips for the BillPay Service and whether Fidelity provided proper notice of the operation of the BillPay Service; (ii) whether Fidelity provided proper notice of a third party vendor for the operation of the BillPay Service; (iii) whether Fidelity provided notice that it would actually transfer a BillPay subscriber's monies to a third party vendor, which third party vendor, rather than Fidelity, would then remit payment to the subscriber's intended payee; (iv) whether Fidelity remitted or caused to be remitted the subscriber's intended payment to a BillPay subscriber's intended payee in the most commercially efficient and effective manner; (v) whether Fidelity illegally failed to pay interest or any other value to a BillPay subscriber between the time a BillPay transaction was debited from a subscriber's account and the time the payment was actually made to the subscriber's intended payee; and (vi) whether such conduct constituted a violation of the EFTA, Chapter 93A, common law fiduciary duties, and misrepresentation and, if so, the appropriate measure of damages based upon objective data. In sum, the very nature of consumer protection cases has led courts routinely, and almost uniformly, to find that commonality exists. *E.g.*, Newberg at 21:3. Rule 23 (a)(2) is clearly satisfied here.

8

3.  **Typicality**

Rule 23(a)(3) specifically addresses whether the representative's injuries "arise from the same course of conduct as do the injuries that form the basis of the class claims," and whether "the Plaintiffs claims are based on the same legal theory." *Modell v. Eliot Sav. Bank*, 139 F.R.D. 17, 22 (D. Mass. 1991); *In re Bank of Boston*, 762 F.Supp. 1525, 1532 (D. Mass. 1991). *See also Gorsey v. L M Simon & Co., Inc.*, 121 F.R.D. 135, 138 (D. Mass. 1988). Typicality is generally a requirement with a low threshold. As long as any differences between the class members' claims and the representative's claims "are minor in comparison to the bulk of the claims at issue," the typicality requirement will be satisfied. *Jennings Oil Co. v. Mobil Oil Co.*, 80 F.R.D. 126, 129, n.7 S.D.N.Y. 1978).

Here, all Class members' claims arise out of the same standardized illegal conduct by Defendants that, if true, would have similarly injured each of them. Defendants failed to provide proper notice of its operation of the BillPay Service; failed to pay interest or any other value to the BillPay Service subscribers, thereby raising the cost of the BillPay Service for the subscribers, and failed to provide any notice of a third party vendor and that a subscribers' monies were being transferred out of Fidelity to the third party vendor before the ultimate payment of those monies to the subscriber's intended payee. Thus there can be little question that the typicality requirement is satisfied. *Kaminski, supra*. See also Fed. R. Civ. P. 23(a)(3); Newberg at 21:4.

4.  **Adequacy of Representation**

The final requirement of Rule 23(a)—that the proposed class representatives "fairly and adequately protect the interests of the class"—is also established here. *See* Fed. R. Civ. P. 23(a)(4). This requirement consists of two prongs: (a) the representative's interests must not

conflict with those of the Class members; and (b) counsel for the class must be qualified, experienced and able to prosecute the action vigorously. *Grace v. Perception Technology Corp.*, 128 F.R.D. 165, 169 (D. Mass. 1989); *Kirby*, 116 F.R.D. at 308-309.

### a. Absence of Conflict

There are no actual or potential conflicts here. Each Class member has the same interest in establishing Defendants' liability. Defendants' alleged improper conduct deprived each Class member of the opportunity to make the decision to subscribe to the BillPay Service with full and complete notice and knowledge of the relevant and material facts of the operation of the BillPay Service, and forced each Class member to pay hidden and artificially inflated prices for that service; and Defendants' alleged improper conduct caused each BillPay Service subscriber to place their monies at certain investment risk of which they had no notice or knowledge, namely, the transfer of BillPay Service monies outside of Fidelity to an unknown third party vendor, which, it would appear, holds the subject monies longer than does Fidelity before paying the monies to the subscriber's intended payee. By pursuing this litigation on their behalf, the Plaintiffs will necessarily advance the common interests of the Class. *See Grace*, 128 F.R.D. at 170.

Attached as Exhibit C is the Affidavit of Plaintiff David A. Berenson. Mr. Berenson testifies that the Plaintiffs' reasons for bringing and maintaining this lawsuit are to advance the common interests of the proposed Class. Exhibit C at ¶ 12.

> 1. **The Familial Relationship Between Plaintiffs and Their Son, a Member of One of The Law Firms That Represents Plaintiffs, But Who Is Not Counsel of Record and Upon Whose Advice Plaintiffs Do Not Rely, Does Not Create A Conflict of Interest**

Defendants have cited case law in all of their court filings purporting to support their contention that Plaintiffs are not adequate to represent this Class because a member (but not counsel of record in this case) of one of the law firms representing Plaintiffs and the putative Class members is their son, D.S. Berenson, Esquire. Defendants would have this Court believe that a *per se* rule is applicable under the Rule 23(a)(4) and that under no circumstances is a putative Class representative adequate to represent the Class if any of his/her family members is a member of any law firm representing the Plaintiff. Anticipating that this issue will again be raised in Defendants' Opposition to this motion, it will be addressed here.

First, Plaintiffs submit that the issue is not "a matter of accepting or rejecting a novel bright-line rule. A plaintiff is not disqualified under Rule 23.1 merely because of the existence of interests beyond those of the class he seeks to represent, so long as he shares a common interest in the subject matter of the suit. And purely hypothetical, potential or remote conflicts of interest do not disable him." *Grace*, 128 F.R.D. at 170 (citation omitted).

Moreover, the case law is inconsistent concerning whether a familial relationship between a proposed class representative and class counsel makes the representation inadequate (let alone where the related attorney is neither participating in the case, nor a litigator, and class counsel includes a second and wholly-unrelated law firm). *Compare Malchman v. Davis*, 761 F.2d 893 (2d Cir. 1985), *cert. denied*, --- U.S. ----, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986) (plaintiffs who are brother of class counsel, sister of chauffeur of class counsel, mother-in-law of class counsel are adequate where depositions revealed that the plaintiffs were "zealous" class representatives); *Fischer v. International Tel & Tel Corp.*, 72 F.R.D. 170 (E.D.N.Y. 1976) (plaintiff adequate even though class counsel is his son where there was no indication that the plaintiff would have any financial interest in any fee recovered by son); *Lewis v. Goldsmith*, 95

F.R.D. 15 (D.N.J. 1982) (nephew of class counsel adequate) *with Susman v. Lincoln Am. Corp.*, 561 F.2d 86 (7th Cir. 1977) (brother of class attorney inadequate); *Cohen v. Bloch*, 507 F.Supp. 321 (S.D.N.Y. 1980) (plaintiff inadequate where plaintiff's personal commitment to action doubtful, counsel, who was husband of plaintiffs' stepdaughter, had represented stepdaughter in earlier derivative action, and family relationships indicated that attorney's interest as counsel was real interest in question); *Helfand v. Cenco*, 80 F.R.D. 1 (N.D. Ill. 1977) (plaintiffs who have shown no interest in suit and whose son is class counsel inadequate representatives).

The four critical inquiries in these cases are: (i) whether the Plaintiff is actively and vigorously interested and involved in the litigation itself; (ii) whether the Plaintiff actually relies upon the subject family member for advice; (iii) whether the Plaintiff has a financial interest in the possible attorneys' fees that could inure to the benefit of the subject family member; and (iv) whether the putative class will be prejudiced by the disqualification of the Plaintiff at issue.

Here, Plaintiffs submit, each of these inquiries militates strongly in favor of a determination that there is no conflict of interest. First, the Plaintiffs are actively and vigorously involved and interested in the prosecution of this case. Indeed, the Plaintiffs are extremely well qualified and sophisticated individuals, the very type of consumers jurisprudence desires for actions such as the instant case. Exhibit C (Affidavit of Plaintiff David Berenson).[7]

---

[7] At the risk of repeating his entire biography, Mr. Berenson was formerly Ernst & Young's National Director of Tax Policy and Legislative Services, and previously Partner in Charge of Washington National Services. He has held similar positions as a Regional Director of Ernst & Ernst in New York. Prior thereto he was one of the Managing Executive Partners of the international firm of S.D. Leidesdorf and Co. He is a member of the Bar of the District of Columbia, Virginia, Florida and New York and is a CPA in the District of Columbia, North Carolina, Louisiana and New York. He is a member of the American Bar Association and has served two terms as a member of the Governing Board or Council of the American Institute of CPAs.

Plaintiffs personally uncovered the improprieties that are the subject matter of this case. Indeed, were it not for their expertise in financial matters the Class members may not have become aware of the claims in this case. Plaintiffs are personally interested in prosecuting this case and ensuring that the common interests of the Class members are fulfilled, namely, that Fidelity, and any other financial institution, undertake complete honesty, candor, and provide mutual fund products to its customers with the transparency that is required in the mutual fund industry. *Id*. at ¶ 12.

The Plaintiffs' participation in this case can only be characterized as "zealous" in all respects. They are remarkably informed about every aspect of this case, extremely well-qualified and sophisticated individuals, who have formed their own opinions about this case and the improprieties of Defendants' conduct. They are from a family with a long history of successful lawyers, and they do not rely upon the advice or counsel of any one individual, particularly D.S. Berenson, who is neither involved in the prosecution of this case nor a litigator. Id. at ¶¶ 8-11.

The Plaintiffs have not and will not benefit from any attorneys' fees awarded in this case. There can be no conflict of interest as a result of their representation of the class and any financial benefit which might eventually accrue to their son as a member of one of the law firms representing the Plaintiffs, should an award of attorneys' fees result in this case. *Id*.

---

Mr. Berenson has frequently presented testimony before the House, Senate, Treasury and Joint Congressional Committees with regard to present and proposed legislation. He was the lead witness at the commencement of the reform hearings in Washington leading to the current U.S. tax law, where he was also a Congressional advisor. He has been a member of the Advisory Group to the Commissioner of Internal Revenue and has been a United States National Reporter for the International Fiscal Association (Cahiers du Droit Fiscal Internationale) ("IFA"). On behalf of IFA and International forums, Mr. Berenson has chaired and presented conferences on Treaty Competent Authority Procedures and Transfer Pricing and Multinational Cost Sharing

Finally, any compromise or dismissal of a class action must be approved by this Court and notice of a proposed compromise or dismissal must be given to all class members. The safeguard provided in Rule 23(e) against litigation compromises which are unfair to the class as a whole are adequate to ensure protection of the Class interests under the representation of these named Plaintiffs and their counsel. The authorities suggest that the alleged conflict of interest arising in circumstances of alleged family involvement present far greater concern - and therefore, conflict - to the Class where the attorney's fees are paid from a common fund recovery rather than simply awarded by statute. Newberg, at 3:40. Such is not the case here. The statutes at issue - the EFTA and Chapter 93A - both provide for attorneys' fees. Thus, Plaintiffs' attorneys' fees will come directly from the Defendants when awarded by the Court.[8] There is no conflict between Plaintiffs' interests, the Class interests and counsels' interests. Those interests all merge in unison toward the correction of Defendants' impermissible conduct.

Plaintiffs will continue to fully and faithfully represent the Class.

### b.    **Qualifications of Counsel**

Plaintiffs submit that their counsel are qualified, experienced and able to prosecute this action vigorously. Attached as <u>Exhibits</u> D and E are copies of the firm biographies of the two law firms representing the Plaintiffs, Johanson Berenson LLP and Perkins Smith and Cohen LLP, respectively, as downloaded from their internet websites. Attached as <u>Exhibit</u> F is a copy of the Affidavit of Douglas A. Rubel, Esquire of Johanson Berenson LLP. Attached as <u>Exhibit</u> G is a copy of the Affidavit of Susan E. Stenger, Esquire of Perkins Smith & Cohen LLP.

---

Arrangements. He is currently an officer of the IFA and a member of their operating Executive Committee. He is also a member of the Economic Club of New York.

[8]    This is consistent with Plaintiffs' engagement agreement with counsel, which provides for the payment of attorneys' fees as awarded by the Court.

Plaintiffs' counsel also have the resources necessary to prosecute this action on behalf of the Class members. *Id*.

Plaintiffs respectfully submit that the Class members will be well served by Plaintiffs' counsel, and that the common interests of the Class have been and continue to be the primary focus of this litigation. This Court may take notice of this from the filings and arguments already before the Court.

### C. The Requirements of Rule 23(b)(3) Are Satisfied

Rule 23(b)(3) requires: (1) that the Court find that common questions of law or fact predominate over individual questions; and (2) that a class action is superior to other available methods of adjudication. It is satisfied here.

#### 1. Predominance

The abundant common legal and factual questions here clearly predominate over any conceivable individual issues. *All* Class member claims arise from a core set of alleged acts by Defendants. *All* Class members are BillPay Service subscribers during a defined time period. And, *all* Class members have been deceived and harmed in the same manner by Defendants' alleged improper acts. The predominance requirement, which is readily met in most consumer protection cases of this type, is certainly established here.

Rule 23(b)(3) requires only that the common issues predominate, not that all issues be common. *Bussie v. Allmerica Financial Corp.*, 50 F. Supp. 2d 59, 71 (D. Mass. 1999) (*citing In re School Asbestos Litig.*, 789 F.2d 996, 1010 (3rd Cir. 1986) ("even a few common issues may satisfy predominance requirement if resolution of issues 'will so advance the litigation that they may fairly be said to predominate'")); *see also Smilow v. Southwestern Bell Mobil Systems. Inc.*, 2003 WL 834892, *5 (1st Cir. March 7, 2003) (not all questions need be common to satisfy the

predominance requirement); *Shelter Realty Corp. v. Allied Maintenance Corp.*, 75 F.RD. 34, 37 (S.D.N.Y. 1977) ("[t]he predominance requirement calls only for predominance, not exclusivity, of common questions"); *NASDAQ*, 169 F.R.D. at 517. Moreover, the common questions need not be dispositive of the entire action. See C. Wright & A. Miller, Federal Practice and Procedure § 1778. Courts recognize "that some factual variation among class members' specific grievances will not prevent certification of claims on behalf of a class of plaintiffs." *In re Playmobil Antitrust Litig.*, 35 F.Supp.2d 231, 240 (E.D.N.Y. 1998).

Nevertheless, here, *all* Class members' claims arise from a core set of Defendants' acts and standardized conduct. All Class members are BillPay Service subscribers during the four years immediately preceding the filing of this case, and Defendants' improper acts have caused the same type of harm to all Class members. It is clear that the Class is "seeking to remedy a common legal grievance,"[9] and thus, that common issues predominate.

### a. Legal Standards

Plaintiffs fully briefed the legal standards for each of their claims as part of their Opposition to Defendants' Motion to Dismiss and for Summary Judgment. For the sake of brevity and convenience, they will not be briefed again as the Court is well aware of their claims.

### b. Common Proof of Violation

Each Class member, if pursuing its claims separately, would be faced with proving identical issues pertaining to the violations of the Chapter 93A, the EFTA, breaches of fiduciary duty and misrepresentation. Each Class member would need to introduce precisely the same evidence, and make the exact same arguments, to prove their claim, whether there were several thousand separate trials, or one unified action.

---

[9] *Kaminsk,* 416 F. Supp. at 1123; *Duhaime*, 177 F.R.D. at 64.

### c. Common Proof of Injury

Fact of injury, or impact, will be demonstrated here using evidence and methods that are also entirely of class-wide application. Plaintiffs allege that each Class member was injured in the same way and for the same reasons. To establish predominance, all that need be shown is that the fact of injury, not the quantum of damages, can be proved through common evidence. *Rental Car of New Hampshire, Inc. v. Westinghouse Elec. Corp.*, 496 F. Supp. 373, 382 (D. Mass. 1980); *Screws*, 91 F.R.D. at 56-58.[10]

There are many sources of class-wide evidence: (a) as Defendants themselves contended in their Motion to Dismiss and for Summary Judgment, the same agreements, notices and buckslips for the BillPay Service apply to all Class members[11]; and (b) as Defendants also conceded in that motion and in their depositions, BillPay operates the same for *all* BillPay Service subscribers.[12] From this common evidence, Plaintiffs will be able to show that Defendants' actions were illegal and harmed all Class members. Proving these wrongs will not involve individualized evidence. Rather, it will be accomplished using evidence of almost exclusively class-wide applicability.

### d. Damages

Plaintiffs' burden with respect to showing damages at the class stage is a "limited" one. Indeed, even the theoretical need to determine damages individually would not pose an obstacle

---

[10] *See also Magnetic Audiotape*, 2001 U.S. Dist. LEXIS 7303 at *14; *Panache Broadcasting of Pennsylvania. Inc. v. Richardson Electronics, Ltd.*, No. 90 C 6400, 1999 WL 342392 (N.D. Ill. May 14, 1999) ("the issue in the common impact analysis is the fact, not the amount of injury"); *In re Playmobil*, 35 F. Supp. 2d at 246-47.

[11] *See, e.g.,* Motion to Dismiss and for Summary Judgment at Fagan Affidavit and accompanying exhibits.

[12] Exhibit A at 77:12-14; Exhibit B at 21:10-17.

to class certification. *NASDAQ*, 169 F.R.D. at 524; *Industrial Diamonds*, 167 F.R.D. at 382; *Shelter Realty*, 75 F.R.D. at 37.[13]

Due to, among other things, the availability of detailed (computerized) transactional data reflecting what actually occurred (with regard to the non-payment of interest during the time the BillPay monies were debited from a subscriber's account and placed into the Fidelity limbo float or otherwise transferred to CheckFree Corporation and the time of actual payment to the subscriber's intended payee), it will be feasible to calculate aggregate damages to the Class as a whole using well-established, class-wide and formulaic, methodologies. *See Cardizem*, 200 F.R.D. at 321-24 ("the use of an aggregate approach to measure class-wide damage is appropriate"). In *NASDAQ*, the court upheld the use of an aggregate damages calculation in a highly complicated horizontal price-fixing conspiracy, involving a class of more than one million members, stating that such damages analyses "have been widely used in antitrust, securities and other class actions." 169 F.R.D. at 525 (citing cases). In its extended discussion of aggregate damages (*id*. at 524-526), the *NASDAQ* court explained that such an approach is not only permissible, but has "obvious case management advantages," including eliminating the need for individual damage proofs at trial. Moreover, the same common formulas can be utilized as an alternate means to calculate damages on an individualized basis.

### 2.    <u>Superiority</u>

Certifying this case as a class action is superior to any other method for resolving these issues, as required by Rule 23(b)(3). The superiority provision is "intended to permit class

---

[13] "[I]t has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate." *Bogosian v. Gulf Oil*, 561 F.2d 434, 456 (3d Cir. 1977). *See also Smilow*, 2003 WL 834892, at *6 ("courts generally find the predominance requirement satisfied even if individual damage issues remain").

actions that would 'achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated[.]'" *Duhaime*, 177 F.R.D. at 65. Class treatment of consumer protection suits is inherently appropriate. *Amchem*, 521 U.S. at 625.

The class action device is the superior procedure here. Where the elements of Rule 23 have been met, "individual litigation would be grossly inefficient as the parties, witnesses, and courts would be forced to endure the duplicative litigation." *George Lussier*, 2001 U.S. Dist. LEXIS 12054, *19; *Cumberland Farms v. Browning-Ferris Indus.*, 120 F.R.D. 642, 647-8 (E.D. Pa. 1988). Moreover, if Class members were required to proceed with separate actions, this litigation would be wholly unwieldy and entirely unmanageable as there are at least 28,000 putative members in the Class. *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 189 (N.D. Ill. 1992) ("[w]hat would be unmanageable is the institution of numerous individual lawsuits"). And, absent the class procedure, most Class members would be effectively foreclosed from pursuing their claims. The fact that subscribers may have insufficient economic justification for commencing expensive litigation counsels in favor of class certification.

Further, courts have been unwilling to deny class certification based on vague speculation about manageability; rather, they have been willing to adapt to management problems as they arise. *See Yaffe v. Powers*, 454 F.2d at 1365; *Screws*, 91 F.R.D. at 58; *Shelter Realty*, 75 F.R.D. at 38-39. In any event, this case is eminently manageable.

Finally, liberality with regard to class certification in the consumer protection arena is the rule. Even so, there is no need for liberality here because this is not a difficult case. Rather, this case presents the Court with a paradigmatic example of the type of case for which Rule 23 was created. Class treatment is the clearly superior means of resolving this dispute.

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this action be certified as a class action under Fed. R. Civ. P. 23 on behalf of the Class and that Plaintiffs Joan Berenson and David Berenson be certified as class representatives and that Plaintiffs' counsel be certified as Class counsel.

Dated:  January 25, 2005                                       Respectfully submitted,


                                                               //ss// Douglas A. Rubel
                                                               Douglas A. Rubel, Esquire [*pro hac vice*]
                                                               JOHANSON BERENSON LLP
                                                               201 Shannon Oaks Circle, Suite 200
                                                               Cary, North Carolina 27511
                                                               Tel:  (919) 654-4544
                                                               Fax: (919) 654-4545

                                                               //ss// Kenneth L. McWilliams
                                                               Kenneth L. McWilliams, Esquire
                                                               [*pro hac vice*]
                                                               JOHANSON BERENSON LLP
                                                               1146 Walker Road, Suite C
                                                               Great Falls, Virginia 22066
                                                               Tel:  (703) 759-1055
                                                               Fax: (703) 759-1051

                                                               //ss//  Susan E. Stenger
                                                               Susan E. Stenger, Esquire [BBO 555552]
                                                               PERKINS SMITH & COHEN LLP
                                                               One Beacon Street
                                                               Boston, Massachusetts 02108-3106
                                                               Tel:  (617) 854-4100
                                                               Fax:  (617) 865-4040