UNITED STATES DISTRICT COURT FOR THE
UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOAN BERENSON, individually and on behalf of all others similarly situated, and DAVID BERENSON, individually and on behalf of all others similarly situated, <br><br>  Plaintiffs, <br><br> v. <br><br> NATIONAL FINANCIAL SERVICES LLC, FIDELITY BROKERAGE SERVICES LLC, and DOES 1-50, inclusive, <br><br>  Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  Docket No. 04-CV-11311-WGY |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION
TO MOTION FOR CLASS CERTIFICATION**

Plaintiffs, Joan Berenson and David Berenson, each individually and on behalf of all other similarly situated, reply to Defendants' Opposition to Motion for Class Certification, as follows:

**I.    Introduction**

Defendants have engaged in what can best be described as a "scorched earth defense," having raised every conceivable legal argument they can muster, without regard to validity or veracity.

Moreover, and more importantly, Defendants have engaged in litigation tactics that smack of bad faith and overwhelming arrogance, apparently in an ongoing effort to intimidate the Plaintiffs and mislead the Court. Instead of arguing only the merits of class certification,

Defendants have submitted what is essentially a third motion for summary judgment and in support thereof now:

(i) tender an expert witness report (Appendix at Tab 1) which displays incredible grandiosity and engages in *ad hominem* attacks upon Plaintiffs and their counsel.  Ironically, Defendants' expert witness report actually supports Plaintiffs' very position that Fidelity engages in objectively deceptive practices by failing to advise its BillPay subscribers that Fidelity does not manage and operate the "Fidelity" BillPay Service, but instead secretly outsources that service to CheckFree Corporation ("CheckFree")—an independent corporation of dubious financial stability (if its latest 10-k filing with the Securities and Exchange Commission is to be believed), which has no privity of contract (or any other relationship) with Plaintiffs or the Class member BillPay subscribers—and even then Defendants fail to utilize all of the conceivable payment options CheckFree offers (such as laser drafts) or apprise the BillPay subscribers of the options that could have been available to them;

(ii) tender the affidavit of Tami Rash (Appendix at Tab 4), a Fidelity employee who was not identified in Defendants' Initial Disclosures as a person having knowledge of the material facts of this case, and who now proffers to the Court that Fidelity earns no "float" or interest off of its "overnight" deposit (the monies are allegedly deposited into its account at Chase Manhattan Bank at 10 p.m. of "day one" and wired out of the account to CheckFree at 1 p.m. on "day two")[1]; and

---

[1] From which account CheckFree, not Defendants (as incorrectly set forth in the BillPay Service Agreement), pays the BillPay subscriber's designated payee.  Defendants provide no notice that CheckFree, not Defendants, are operating the BillPay Service.  This is jarringly opposite of the Navy Federal Credit Union (Appendix at Tab 1, Exhibit D), which provides clear and unmistakable notice that it outsources its electronic bill payment services to CheckFree—free for those who engage in only three Checkfree payments per month, unlike Defendants, which require far more, namely, that a subscriber either **(footnote continued)**

(iii) is simply and extensively misleading and false in its recitation of the alleged facts of this case.[2]

It would be incredibly onerous and lengthy to recite and correct each and every of Defendants' blatant misstatements as to the facts of this case. Plaintiffs' counsel will address them at the February 16, 2005 hearing should this Court so desire, and will supply an itemization of same should leave be granted to do so. It would take far more than the 20-page limitation for briefs to correct the misstatements. Moreover, the Defendants' version of the facts is not relevant to this Court's determination of this certification motion; the allegations of the Complaint are.

## II.    Legal Discussion

### A.    Background

Defendants deposed each Plaintiff for seven hours. The full scope of their respective

---

**(footnote continued from previous page)**   make 36 trades in certain Fidelity accounts in a rolling 12-month period, for which it receives brokerage fees, or actually hold more than $100,000 in a mutual fund for which it receives soft money fees. Moreover, Ms. Rash would have this Court believe that Defendants operate BillPay at a loss; such a proposition is dubious.

[2]   Defendants' assertions that Plaintiffs intentionally tendered false affidavits or false answers to interrogatories are absurd and smacks of bad faith. The Berensons each testified faithfully and correctly at their depositions and consistently with their answers to interrogatories. The Berensons invite the Court to review the deposition transcripts. Indeed, the Berensons testimony was far more lucid and more accurate than that of Defendants' employees, who have now submitted additional affidavits correcting their testimony as to the number of BillPay subscribers and accounts (*e.g.*, Appendix at Tab 3), and whose testimony as to the operation of BillPay is now inconsistent with the purported testimony of Defendants' own expert witness.

Defendants also falsely state that D.S. Berenson testified that he "resides rent-free" at a Staunton, Virginia farm owned by the Plaintiffs. Such a contention is absurd. D.S. Berenson never testified to any such thing and the record makes that clear. Moreover, Mrs. Berenson, only hours before D.S. Berenson's deposition, testified that D.S. Berenson does not live there. T9 at pp. 19, 44, 46-47. This is in addition to other blatant misrepresentations and mischaracterizations of the testimony voluntarily provided by D.S. Berenson. Attached as Exhibit 1 is D.S. Berenson's Affidavit.

3

testimony cannot be recited in a paragraph here or there, and it especially cannot be reviewed without setting forth the full context of the testimony.

However, that being said, and as Mr. Berenson testified, the fundamental basis upon which this case rests is the doctrine of transparency that is required in all dealings between a mutual fund manager (Fidelity) and its customer (Plaintiffs), particularly where, as here, the Fund Manager fails to disclose the use of outside vendors of dubious financial stability and fails to expressly provide that the use and benefit of the BillPay subscriber's monies was to become Defendants', at their sole discretion. Defendants did not obtain permission from the Plaintiffs to take ownership of the Plaintiffs money. To that end, Mr. Berenson's initial comments are illustrative:

> I think that somebody in the Fidelity cash reserve mutual fund has a very, very basic right to clearly know what they are paying Fidelity and what Fidelity is receiving. Fidelity doesn't set that out. Certain dollar amount per month or certain amount of assets, but they don't set out, and, I think, that's almost like a basic transparent floor that they are not telling you what you're paying and they are not telling you what you are receiving. I don't think she stated that.
>
> Q.  What you just described as a lack of transparency with regard to the cash reserves mutual funds, that is from the operation of bill paying service?
>
> A.  That is BillPayer. Our BillPayer that we have is only through Fidelity cash reserves money market mutual fund. That's where the service is offered through and rendered through. I think, any time in anything with mutual funds there is the basic right to know what you're paying, what they are receiving. … And when you speak to people, I realize many of those people don't know because each time it's a different person, they lead you to believe that you have the problem of transmission, the mails, which you never have the vaguest idea that you don't have the money. … Well, as far as I know, if you look to set the basic -- the federal definition is and, I guess, state, the definition of a mutual fund, I think investors have the right to know what they are paying and what the manager of the fund is receiving. That's the whole big thing even with the Feds, the 12B1 fees. You have a right to know what you are paying. You also have a right what they are receiving. Anything short of that, whether it's intentionally or otherwise, you start deceiving an investor. I think that's why the mutual funds, that's a lot of

the problems they have now.

Appendix, T11 at pp. 10-13.

Against this background, Defendants' contentions are examined.

### B. Plaintiffs And Their Counsel Are Not Inadequate to Represent The Class

#### 1. Plaintiffs Are Not Inadequate Representatives Because of Their Family Relationship With Counsel

Plaintiffs will not repeat their initial arguments as to Plaintiffs' ability to represent the Class Members, and their vigor in doing so.[3]  However, it must be noted that there simply is <u>no</u> "business relationship" between Plaintiffs' counsel and the Plaintiffs that would bring the Plaintiffs into conflict with the Class.  The circumstances of this case are distinguishable from the cases Defendants cite.  Plaintiffs have additional counsel, upon whom they are relying to provide the appropriate counsel with regard to any settlement of this case in addition to providing other legal services throughout this litigation.[4]

#### 2. The Berensons' Claims Are Not Subject to Unique Infirmities

Defendants contend that there are certain "unique infirmities" in Plaintiffs' case such that there are no common issues that will predominate at the trial of this case.  This, of course, is patently absurd.  There are common issues of fact to be determined at trial under EFTA and c. 93A arising out of Defendants' alleged management and operation of the BillPay Service—indeed, more particularly, their outsourcing of the management and operation to

---

[3]     Plaintiffs, who now legally reside in Florida, have traveled to Boston and the District of Columbia for depositions; have traveled to their former residence in the District of Columbia and their farm in Staunton, Virginia for purposes of producing documents and, of course, will return to Boston for the trial of this case.

[4]     Defendants will contend that Plaintiffs have not produced the written memorialization of the agreement as to the fee structure for Ms. Stenger and her firm.  As of this date, there is no such writing, as Defendants have already been advised of.

CheckFree—which management and operation is the exact same for all BillPay subscribers. This suffices under Rule 23. *Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371, 12378-1379, 39 Fed.R.Serv.2d 139 (11 Cir. 1984) ("[w]here each of 492 class members had received similar truth in lending disclosure statements and the fundamental basis of the class action was that the disclosure statements were deficient, there existed predominant common questions of law and fact as required by the class action rule."). Again, the common issues need not be dispositive of the entire litigation. Contrary to Defendants' contentions, the fact that questions peculiar to each individual member of the class may remain after the common questions have been resolved does not dictate the conclusion that a class action is not permissible. *Id*.

### 3.  Plaintiffs Made A Proper Demand for c. 93A Relief

Defendants also contend that Plaintiffs failed to make a demand for relief on behalf of the class. This, too, is simply incorrect. Generally, a demand letter "must identify the claimant and describer, reasonably, the unfair or deceptive act or practice and the injury caused thereby." *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 704 (1975). To that end, the Supreme Judicial Court held that, in a class action suit,

> "[i]f a proper demand is made by one plaintiff, identifying him as the claimant and reasonably describing the act or practice relied on and the injury suffered by him, we think he and others similarly situated may join in a class action to redress that injury and similar injuries caused by the same act or practice. Multiple demands for relief need not be filed on behalf of all the members of the class. If no reasonable tender of settlement is made in response to the first demand (which must, to be sure, be done in writing, further negating Defendants new assertion that such a settlement offer was actually made by telephone to Plaintiff David Berenson), further demands are not likely to serve any useful purpose and are not required." *Baldassari v. Public Finance Trust*, 369 Mass. 33, 42 (1975); *see also* Michael C. Gilleran, *The Law of Chapter 93A*, § 5.9 (1989) ("[w]here a class action is brought by consumers under § 9(2) the demand letter probably need only state that it seeks relief on behalf of the sender of the letter. Other class members do not need to be mentioned specifically in the demand letter, or to send their own

6

demand letters.").[5]

In short, Mr. Berenson's letter of September 17, 2002 was a proper demand letter under c. 93A. *Baldassari, supra.*

### 4. Plaintiffs' Conduct of Discovery

Defendants dogmatic assertion that Plaintiffs have not conducted any discovery and, therefore, have not obtained any information in this case is misleading and factually incorrect. Plaintiffs have already conducted three separate depositions in this case and have otherwise obtained sufficient factual information upon which to base their motion for class certification. Moreover, Plaintiffs continue to research the advanced nuances of this case in a variety of ways utilizing the services of both law firms representing them.

Furthermore, the somewhat unusual circumstances of this case are that Defendants themselves have been supplying volumes of factual information to the Court and Plaintiffs with their Motion to Dismiss and for Summary Judgment and with their Opposition to this Class Certification Motion. Indeed, the Appendix to Defendants' Opposition appears to set forth all of the discovery activity in this case thus far and provides additional information as well, except for the Plaintiffs' retainer agreements with Johanson Berenson LLP. Plaintiffs' counsel was previously unable to locate the final version of those agreements and provided a copy of the form used. A copy of the signed retainer agreements is attached as Exhibit 2.

Furthermore, Defendants' authorities are misleading. In *Broussard v. Parish of New Orleans*, 2001 WL 881290 (E.D. La. 2001), plaintiff's counsel was a sole practitioner who failed

---

[5] Defendants' citation to *Burstein v. Applied Extrusion Techs., Inc.*, 150 F.R.D. 433, 448 (D. Mass. 1993) is misplaced. *Burstein* did not answer the question whether the subject demand letter sufficed to permit the class to proceed with the claim, but left it open until, if at all, the class was certified. *Id*.

to proffer any evidence of his qualifications and failed to offer any evidence to support any of the six factors that plaintiffs needed to prove to obtain class certification. Such is not the case here.

Plaintiff's counsel in *Conran v. Great Atl. & Pac. Tea Co., Inc.*, 499 F.Supp. 727 (1980) failed to comply with the court's local rules regarding moving for class certification within 45 days and failed to obtain any factual information through discovery. Such is not the case here.

Finally, as to the alleged failure of these Plaintiffs to provide discovery, Defendants do not—indeed, they cannot--contend that Plaintiffs are not extremely knowledgeable of the facts of this case and highly involved herein. Even a casual review of the deposition transcripts demonstrates this. To say that Plaintiffs did not "prepare" for or review any documents in preparation for their deposition is misleading and had no effect on their testimony. They obviously know what this case is about and are the driving force behind it.

Defendants' contention that Plaintiffs somehow admitted that they signed interrogatory answers without knowing the basis for those answers is also patently untrue and representative of the worst type of jurisprudence. This type of mud-slinging against Plaintiffs is only the latest in Defendants' arrogant efforts to continuously intimidate Plaintiffs and mislead this Court. Indeed, it bears repeating that Defendants themselves have now tendered affidavits setting forth that they were inaccurate in providing answers to questions in depositions. Appendix at Tab 3, ¶ 3.

Finally, Mr. Berenson did not falsely sign an affidavit as to his diligence in reviewing records for production to Defendants. Any Fidelity correspondence that Plaintiffs retained was supplied and Defendants assertions to the contrary begin to smack of slander.

### 5. Lead Counsel's Experience

Defendants' suggestion that Ms. Stenger's role in this case has been minimized or that a fee sharing agreement between Johanson Berenson LLP and Perkins Smith & Cohen LLP has

been concealed is simply ludicrous. Presently, there are no documents memorializing the relationship between her firm and Johanson Berenson LLP. Defendants' counsel simply did not inquire into any oral agreements and the terms thereof at deposition and did not propound any interrogatories that sought this information. Defendants seek to shift their failure to properly inquire as to this relationship between the two lead firms representing the Plaintiffs onto the Plaintiffs themselves. Such tactics are dishonorable.

Moreover, Mr. Rubel certainly does have previous class action experience, having defended three class actions in the courts of Maryland and California and prosecuting a class action in Washington, D.C. Ms. Stenger has associated as local counsel in many class actions and Mr. Rubel and Mr. McWilliams have sought further counsel as needed from colleagues with class action experience. Plaintiffs respectfully submit that this is sufficient. *Wells v. Allstate Ins. Co.*, 210 F.R.D. 1 (D.D.C. 2002).

  C. **Common Issues Will Predominate**

    1. **Individual Issues of Fact Do Not Overwhelm Any Common Issues**

Defendants' contention that there are "numerous different factual issues" among the putative class members is misleading. None of the enumerated factual issues were of any moment to Defendants when they filed their Motion to Dismiss and for Summary Judgment, and none of them are of moment to this Court's determination that the common issues will or will not predominate. Moreover, objective standards apply to determine whether a violation of c. 93A occurred. *Grossman v. Waltham Chemical Co.*, 14 Mass. Ct. App. 932, 436 N.E.2d 1243 (1982) ("[a] practice is 'deceptive' if it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted."). Simply put, the alleged different factual issues are a "red herring."

This case examines the sufficiency of the notice Defendants provided (or failed to provide) to their BillPay Service subscribers regarding: (1) the defendants' failure to pay interest or any other benefit to the subscribers during the float period; (2) the defendants' failure to advise the BillPay subscribers that the defendants chose not to utilize the manner of electronic bill payment system that most consumers are familiar with and expect, namely, a draft system that acted as though the subscriber had written a check directly from his/her account and, therefore, continued to receive interest on the funds until the check/draft was presented for payment against the account; and (3) defendants' complete failure to advise its subscribers that it outsources the BillPay Service to CheckFree at all, let alone having advised that it adopted (and explained) CheckFree's alleged "good funds" versus "risk" model.

These are the common issues of fact to be determined at trial under EFTA and c. 93A. This suffices under Rule 23. *Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371, 12378-1379, 39 Fed.R.Serv.2d 139 (11 Cir. 1984) ("[w]here each of 492 class members had received similar truth in lending disclosure statements and the fundamental basis of the class action was that the disclosure statements were deficient, there existed predominant common questions of law and fact as required by the class action rule."). Indeed, the common issues need not be dispositive of the entire litigation. The fact that questions peculiar to each individual member of the class may remain after the common questions have been resolved does not dictate the conclusion that a class action is not permissible. *Id*.

2. **Ultimately Either the EFTA or Massachusetts Law Will Apply**

Here, again, Defendants push the limits of credulity. In their motion to transfer venue, Defendants conceded that Massachusetts law applies to this case. Now, Defendants contend that while the federal law of the EFTA presents common legal issues, "the balance of this case brings

into play the tort and consumer protection laws of the fifty states and even several jurisdictions." Opposition at p. 19.[6]

The simple truth is that only Massachusetts law will apply to Plaintiffs' consumer protection claims. The relevant Fidelity agreements (as Defendants concede) provide that Massachusetts law applies to the BillPay Service. Complaint at ¶¶ 33, 34. Defendants' contentions that the Restatement provides otherwise are incorrect, and the Defendants know this. As even the Defendants themselves previously argued:

> When deciding state law claims under diversity or supplemental jurisdiction, federal courts employ the choice of law rules of the jurisdiction in which they sit. *See Ideal Electronic Security Co. v. International Fidelity Ins. Co.*, 129 F.3d 143 (D.C. Cir. 1997). The District of Columbia "has adopted the general rule 'that parties to a contract may specify the law they wish to govern … as long as there is some reasonable relationship with the state specified.'" *Ekstrom v. Value Health, Inc.*, 68 F.3d 1391, 1394 (D.C. Cir. 1995)(*quoting Norris v. Norris*, 419 A.2d 982, 984 (D.C. 1980). Since Fidelity is based in Boston, such a reasonable relationship exists.

Defendants' Memorandum in Support of Motion to Transfer Venue at p. 7, n. 3.

The Restatement has not changed since the Defendants' previous argument. Moreover, Defendants only partially inform the Court of the language of the applicable Restatement Section. Section 187(2) provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to the issue, unless

---

[6] In addition, the pertinent agreements that govern the Berensons' relationship with Fidelity generally and the BillPay Service specifically both provide that they shall be governed by the laws of the Commonwealth of Massachusetts. Statement of Material Undisputed Facts in Support of Defendants' Motion to Dismiss or for Summary Judgment, ¶¶ 56, 60; Complaint 33, 34. The prevalence of Massachusetts law in this action clearly militates in favor of transfer." Memorandum of Law in Support of Defendants' Motion to Transfer Venue at p. 7, and n. 3. <u>Defendants cannot be permitted to argue both sides of the issue now</u>.

> either
>> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue <u>and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties</u>.

Restatement (Second) of the Conflicts of Laws, § 187(2).

Under any conceivable analysis of the "rule" of Section 188 of the Restatement, no forum other than Massachusetts would be the state of the applicable law. Massachusetts is the place of contracting, the place of performance (according to Defendants), the location of the subject matter of the contract and the Defendants' principal place of business. Moreover, the greatest percentage of BillPay customers reside in Massachusetts and the greatest percentage of BillPay monies are located in Massachusetts. Defendants' Memorandum of Law in Support of Motion to Transfer Venue at Hankins Affidavit, Exhibit A. Indeed, Comment g to Section 187 of the Restatement expressly provides that "[t]he forum will not refrain from applying the chosen law merely because this would lead to a different result than would be obtained under the local law of the state of the otherwise applicable law," which appears to be the sole basis on which Defendants contend that certain "incongruities" exist. Enough already.

Finally, the authorities cited by Defendants simply do not support their position. *Ideal Elec. Sec. Co., supra*, adopted the Restatement position where the contract at issue <u>did not specify what law was to apply</u> (contrary to the facts here). The court in *Bridgestone/Firestone Tire Prods. Liab. Litig.*, 288 F.3d 1012, 1017 (7th Cir. 2002) expressly premised its decision on the fact that the contract at issue (for the sale of automobiles in Indiana) did not contain a choice-

of-law provision, noting that "[a] contract for the sale of a car in Indiana is governed by Indiana law unless it contains a choice of forum clause and plaintiffs do not want to enforce any choice-of-law clause.").

### III.     Conclusion

In sum, Defendants' opposition to Plaintiffs' certification motion is nothing more than a series of arrogant *ad hominem* attacks upon Plaintiffs and their counsel, based upon an intentionally misleading recitation of the alleged "facts" of this case, and a misleading recitation of various authorities. This must not be permitted. It is the Defendants that are engaging in deceptive trade practices and which fail to fully and properly inform Plaintiffs and the BillPay subscribers of the truth of the BillPay Service. Plaintiffs' Motion for Class Certification should be granted.

Dated: February 15, 2005                                    Respectfully submitted,

//ss// Douglas A. Rubel
Douglas A. Rubel, Esquire
Johanson Berenson LLP
201 Shannon Oaks Circle, Suite 200
Cary, North Carolina 27511
(919) 654-4544

//ss// Kenneth L. McWilliams
Kenneth L. McWilliams, Esquire
Johanson Berenson LLP
1146 Walker Road, Suite C
Great Falls, Virginia 22066
(703) 759-1055

//ss//  Susan E. Stenger
Susan E. Stenger
BBO #555552
PERKINS SMITH & COHEN LLP
One Beacon Street
Boston, MA 02108-3106
(617) 854-4000

Attorneys for Plaintiffs

13