IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOAN BERENSON and DAVID BERENSON, individually and on behalf of all others similarly situated,<br><br>                        Plaintiffs,<br><br>         v.<br><br>NATIONAL FINANCIAL SERVICES LLC, FIDELITY BROKERAGE SERVICES LLC, and DOES 1-50, inclusive,<br><br>                        Defendants. | Civil Action No. 04 CV 11311 (WGY) |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'**
**MOTION FOR LEAVE TO FILE REPLY BRIEF**

Defendants National Financial Services LLC and Fidelity Brokerage Services LLC (together, "Fidelity") respectfully submit this memorandum in opposition to the plaintiffs' motion for leave to file a reply brief in support of their motion for class certification.

Leave to file a reply brief should be denied because the plaintiffs failed to confer or seek the defendants' assent pursuant to Local Rule 7.1 and because a reply is unlikely to assist the Court in its adjudication of pertinent matters.  The proposed reply raises new theories and is replete with assertions of supposed "facts" that lack any basis in affidavits or other parts of the record.  The factual record speaks for itself and is already available to the Court in the defendants' previously filed appendices.  Indeed, as set forth briefly below, it is the plaintiffs' proposed reply papers, and not the defendants' opposition papers, that misstate both the law and the facts on particular issues.

**Outsourcing**

The plaintiffs' emphasis on Fidelity's "outsourcing" of the BillPay service to CheckFree Corporation is a red herring unrelated to any allegation in the plaintiffs' complaint. Moreover, the BillPay Service Agreements in effect since at least 1996 expressly state:

> As used in this Agreement . . . "we," "us" or "our" refers to Fidelity Brokerage Services LLC, and any affiliate, subsidiary, agent, independent contractor, designee or assignee we may, in our sole discretion, involve in the provision of the service (collectively "Fidelity").

T13.ExB, F, G, L and Q.[1] The Berensons must therefore rely upon the terms of the contracts they say they reviewed in the 1980s and early 1990s, which neither they nor Fidelity can locate. Even assuming that the outsourcing theory were in the complaint and otherwise viable (must a bank disclose the name of its armored car service?), the Berensons are thus atypical of the proposed class.

**Mutual Fund "Transparency"**

For the first time, the Berensons assert in their proposed reply that Fidelity's disclosures violate unspecified obligations of mutual fund law. Such references bear no relation to any allegation in the complaint. In any event, the Berensons have contracted for BillPay services with Fidelity Brokerage Services LLC, a registered broker-dealer, not a mutual fund company. *Id.*

**Residence of D.S. Berenson**

The plaintiffs assert that Fidelity has misstated the testimony of D.S. Berenson, Esq., son of the plaintiffs and one of two equity partners of plaintiffs' counsel Johanson Berenson LLC, concerning his place of residence. That testimony speaks for itself.

---

[1] This citation format refers to Tab numbers in the Appendix to the Defendants' Opposition to Class Certification, specifically in this case Tab 13, Exhibit B.

- 2 -

>Q. Now, what is your address, Mr. Berenson?
>A. Route 5, Box 279, Staunton, Virginia 24401.
>Q. And is that a farm that your parents also occupy from time to time?
>A. They do. It is.
>….
>Q. Do you pay any rent to your parents to reside at the premise in Staunton?
>….
>THE WITNESS: No.
>BY MR. SHOPE: Do you live there full time?
>A. No.
>Q. Where else do you live?
>A. In McLean, Virginia.

T8.15:19-16:2; 17:10-13. The plaintiffs submitted an errata sheet on February 3, 2005, in which D.S. Berenson changed other parts of his testimony but did not modify or clarify any of the portions quoted above. T24.ExE. The only fair reading of D.S. Berenson's testimony is that he resides at least part of the time at his parents' farm and that he does not pay rent for that privilege.

**D.S. Berenson's Interest in Fees**

The plaintiffs also assert that Fidelity has misstated the testimony of D.S. Berenson concerning his interest in any fees recovered in this case. That testimony similarly speaks for itself.

>MR. COBURN [counsel to D.S. Berenson]: Can we just agree that he has a financial interest in the firm?
>MR. SHOPE: Well, I need to get that from him under oath rather than as a statement from his lawyer on the record.
>THE WITNESS: I have a financial interest in the firm.
>….
>Q. You're an owner of the firm, correct?
>A  Yes.

- 3 -

> Q   Are there other owners of the firm?
> A   Yes.
> ….
> Q.  But you're an equity partner.
> A   I am.
> ….
> Q.  And how many other equity partners are there?
> A   One.
> ….
> Q   Is Mr. Coburn's statement, that you would have a financial interest in any fee that was awarded to your firm in this case correct?
> A   Very likely, yes.
> Q   And would you characterize that interest as any way sort of trivial or de minimis or minor?
> ….
> THE WITNESS:  I would not say it is de minimis vis-a-vis the other interests in the firm.
> ….
> Q   And are there general agreements that relate to division of fees with respect to a matter as to which one lawyer is deemed to be the originating lawyer or the lawyer who sort of brought the case into the firm?
> A   Yes.
> Q   Okay.  And with respect to the present case, would you be deemed to be that lawyer?
> ….
> A   Yes.

T8.44:3-9; 47:13-17; 48:19-21; 49:3-5, 15-20; 50:14-15; 55:13-20; 56:5.

**93A Demand Letter**

David Berenson's letter of September 17, 2002 was not a valid class-wide demand under M.G.L. c. 93A.  In *Baldassari v. Public Finance Trust*, 337 N.E.2d 701, 707 (1975), cited by the Berensons, only one of the three named plaintiffs, Baldassari, had sent a demand letter.  *Id.*  However, this letter expressly claimed relief on behalf of Baldassari *and* others similarly situated.  *Id.*  The court therefore held that the other named plaintiffs did not need to send a demand letter because they and others similarly situated could join the class action to redress

similar injuries caused by the same act or practice — "[m]ultiple demands for relief need not be filed on behalf of all the members of the class." *Id.* Such is not the case here, where no claim for relief on behalf of a class was ever sent.

Due to the fact that a demand under c. 93A, § 9(3) must identify the "claimant," it is standard practice for plaintiffs proposing a class action to make a demand on behalf of the proposed class before binging suit. *See, e.g., Med. Records Assocs., Inc. v. Am. Empire Surplus Lines Ins. Co.*, 142 F.3d 512, 513 (1st Cir. 1998) (noting that the 93A demand letter contained class allegations); *Leardi v. Brown*, 474 N.E.2d 1094, 1098 (1985) (same); *Scofield v. Berman & Sons, Inc.*, 469 N.E.2d 805, 809 n 8 (Mass. 1984) (same); *Hannon v. Original Gunite Aquatech Pools, Inc.*, 434 N.E.2d 611, 615 (Mass. 1982) (same); *Lord v. Commercial Union Ins. Co.*, 801 N.E.2d 303, 308 (Mass. App. Ct. 2004) (same); *Olson v. Energy North, Inc.*, 1999 WL 1332362 (Mass. Super. Ct. 1999) (same).

Acknowledging this practice, in *Burstein v. Applied Extrusion Technologies, Inc.*, 150 F.R.D. 433 (D. Mass. 1993), the district court noted that the adequacy of a 93A demand letter requires two different analyses, for the plaintiff personally and for the class, when used to establish class claims. *See id.* at 448. The plaintiffs' reliance on Michael C. Gilleran, *The Law of Chapter 93A*, § 5.9 (1989), is misplaced because the only cases cited in that treatise are *Baldassari, Leardi, and Olson*, all of which involved demand letters that expressly claimed relief on behalf of the sender *and* others similarly situated.

**Choice of Law**

The plaintiffs also misunderstand the choice of law issues that arise in a class action and that undermine commonality. Fidelity of course acknowledges that the BillPay Service Agreement contains the following choice of law clause:

> This Agreement shall be governed by the laws of the Commonwealth of Massachusetts.

T13.ExB.  And as the plaintiffs point out, Fidelity had argued that the prevalence of Massachusetts law issues in the case — with respect to the contract claims, the claim under the Massachusetts Truth in Savings Law, and all claims of Massachusetts residents, the largest group of BillPay users — was one of several factors militating in favor of transfer of the case to this district.  (The contract and Truth in Savings counts have since been dismissed.)

But assuming that the contractual choice of law provision should be construed to cover tort and consumer protection claims as well as the contract and truth-in-savings claims previously dismissed, a separate choice of law inquiry nevertheless must be conducted to determine whether that contractual choice would be honored.  Section 187 of the Restatement provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied [here, Massachusetts]. . . . unless application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Restatement (Second) of Conflicts of Laws*, § 187(2).

Section 188, in turn, lays out the factors that courts must consider in deciding which state's laws would apply in the absence of the contractual choice of law provision.  *See Restatement (Second) of the Conflicts of Laws* § 188(2); S*pence v. Glock, GmbH*, 227 F.3d. 308, 314 N.9 (5th Cir. 2000); *Grand Kensington, LLC v. Burger King Corp.*, 81 F.Supp.2d 834, 837-8 (E.D. Mich. 2000) (contract's choice of Florida law invalid due to lesser protection of franchisee rights); *Compaq Computers Corp. v. Lapray*, 135 S.W.3d 657, 680-81 (Tex. 2004).

Thus, with respect to the tort and consumer protection claims of each individual class member, the Court will have to compare the law of Massachusetts with the law of the state that would otherwise apply under § 188 in the absence of the contractual choice of law provision. *See id*. The analysis of whether another state's law would apply absent the contractual choice of law will require individualized determinations of such matters as whether the customer dealt with a Fidelity retail location in his own state or exclusively on-line, thus defeating any predominance of common factual issues.

As to the policy inquiry required under § 187 if another state's law would apply, while mere differences in state laws are not necessarily determinative, the Court must ensure that individual class members would receive substantially the same protections under Massachusetts law as they would receive under their own state's law. *See id.* The plaintiffs have failed to undertake a state-by-state analysis to satisfy their burden that incongruities and competing state interests will not overwhelm common issues. "Given the plaintiffs' burden, a court cannot rely on assurances of counsel that any problems with predominance or superiority can be overcome." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996); s*ee also In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 276-88 (D. Mass. 2005) (Young, J.) (citing *Castano* and undertaking extensive choice-of-law analysis).

WHEREFORE, the plaintiffs' motion for leave to file a reply brief should be denied and the proposed reply papers should be stricken from the record.

        Respectfully submitted,

        NATIONAL FINANCIAL SERVICES LLC and
        FIDELITY BROKERAGE SERVICES LLC

        By their attorneys,


           /s/ John A. Shope
        Nicholas C. Theodorou (BBO No. 495730)
        John A. Shope (BBO No. 562056)
        William W. Fick (BBO No. 650562)
        David E. Cole (BBO No. 658705)
        FOLEY HOAG LLP
        155 Seaport Boulevard
        Boston, MA 02210
        (617) 832-1000


Dated: February 16, 2005