UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOAN BERENSON, individually and on behalf of all others similarly situated; and DAVID BERENSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL FINANCIAL SERVICES LLC, FIDELITY BROKERAGE SERVICES LLC, and DOES 1-50, inclusive,<br><br>Defendants. | Docket No. 04-CV-11311-WGY |

**PLAINTIFFS OPPOSITION TO DEFENDANTS'
MOTION FOR (PARTIAL) SUMMARY JUDGMENT
ON PLAINTIFFS' EFTA CLAIMS**

Plaintiffs Joan Berenson and David Berenson, by counsel, oppose the Defendants' motion for partial summary judgment on Count I of the Complaint, namely, on Plaintiffs' claims for violations of the Electronic Funds Transfer Act ("EFTA") as being allegedly barred by the applicable statute of limitations, as follows:

**I.      Introduction**

Defendants once again mislead the Court in their motion papers. They fail to set forth all of the material facts; fail to inform the Court of a genuine dispute as to those material facts; and even cite caselaw that expressly provides that it is <u>not</u> to be cited or used as authority in the judicial circuit in which it was rendered. This is inappropriate

and impermissible. For the reasons set forth herein, Defendants' motion should be denied.

II.     **Legal Discussion**

    A.     **Background: The EFTA**

Congress declared that the purpose of the EFTA is "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems." The EFTA applies to each electronic fund transfer that authorizes a financial institution to debit or credit a consumer's account. 15 U.S.C. § 1693a(6).

An electronic fund transfer is "any transfer of funds that is initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit an account.[1]

The Regulation gives a non-exclusive list of the types of transfers which are included within that definition, including direct deposits or withdrawals of funds, transfers initiated by telephone, and transfers resulting from debit card transactions, whether or not initiated through an electronic terminal. This definition includes not only transfers initiated by means of an access device, such as a debit card, but also transfers which do not involve a card at all, such as direct deposit. Preauthorized electronic transfers are within the EFTA's scope even if the financial institution pays the consumer's bill by means of a composite check it sends to the company designated by the consumer to be paid.[2]

---

[1] Reg. E, 12 C.F.R. § 205.3(b).

[2] FRB Official Staff Interpretation to Reg. E § 205.3(b)-I(iii).

To fall within EFTA's scope, the subject electronic transfer must authorize a debit or credit to a "consumer's account." The financial institution holding the account is required to make certain initial disclosures at the time a consumer contracts for an electronic fund transfer service or before the first electronic fund transfer is made involving the consumer's account. For example, the institution might give the disclosures when the consumer opens a checking account. If the agreement for electronic transfers is directly between the consumer and the financial institution at which the consumer holds the account, the disclosures must be given "in close proximity to the event requiring disclosure, for example, when the consumer contracts for a new service."[3]

The initial disclosures must contain the following:

- A summary of the consumer's liability for unauthorized electronic fund transfers;

- The telephone number and address the consumer can use to report an unauthorized transfer;

- The financial institution's business days;

- The type of electronic fund transfers the consumer is permitted to make and any limitations on the frequency and amount of transfers;

- Fees imposed by the institution for making electronic fund transfers or the right to make them;

- A summary of the consumer's right to receipts and periodic statements, and notices regarding preauthorized transfers;

- A summary of the consumer's right to stop payment of a preauthorized electronic fund transfer;

- A summary of the institution's liability to the consumer for failure to make or stop certain transfers;

---

[3] FRB Official Staff Interpretation to Reg. E § 205.7(a)-l.

The EFTA also contains a detailed procedure for consumers to use to resolve errors related to electronic fund transfers. However, the Regulation defines error only to include: (1) an unauthorized electronic fund transfer; (2) an incorrect electronic fund transfer from or to the consumer's account; (3) the omission of a transfer from a periodic statement; (4) a computational or bookkeeping error made by the financial institution relating to a transfer; (5) the consumer's receipt of an incorrect amount of money from an electronic terminal; (6) a transfer not identified in accordance with the Regulation's rules on receipts at terminals, periodic statements, and preauthorized transfers; (7) the consumer's request for documentation or for additional information or clarification concerning a transfer; or (8) any other error described in the Regulations of the Board.[4]

A consumer may take certain steps to resolve the error, basically by notifying the financial institution within sixty (60) days after the error is first reflected on the statement from the institution. Once the error notice is received, the financial institution is deemed to have been notified and it must investigate and correct the error and then re-credit the consumer's account as necessary.

The financial institution is liable for treble damages under 15 U.S.C. §1693f(e) if it did not provisionally re-credit a consumer's account within ten (10) days after receiving the error notification, and either did not conduct a good faith investigation, or did not have a reasonable basis for believing the consumer's account was not in error.[5] The financial institution also may be liable for treble damages if it knowingly and

---

[4] Reg. E, 12 C.F.R. § 205.11 (a)(1).

[5] 15 U.S.C. § 1693f(e)(1).

willfully concluded that the consumer's account was not in error when it had no reasonable basis for that determination.[6]

The financial institution is also liable to a consumer under 15 U.S.C. §1693h for all damages proximately caused by the institution's conduct in regard to its failure to make an electronic fund transfer in the correct amount or in a timely manner when properly instructed to do so by the consumer.[7]

Finally, any financial institution which fails to comply with an EFTA provision is liable under 15 U.S.C. §1693m for the sum of:

- any actual damage sustained by the consumer;

- statutory damages in an individual case of not less than $100 nor greater than $1000, or in a class action such amount as the court may determine, with a maximum of the lesser of $500,000 or one percent of the defendant's net worth; and

- the costs of the lawsuit together with reasonable attorney fees.[8]

The EFTA lists factors that a court should consider in determining the amount of the statutory damages in an individual case: the frequency and persistence of the person's noncompliance, the nature of that noncompliance, and the extent to which the noncompliance was intentional.[9]

---

[6] 15 U.S.C. § 1693f(e)(2).

[7] 15 U.S.C. § 1693h(a)(1).

[8] 15 U.S.C. § 1693m(a).

[9] 15 U.S.C. § 1693m(b).

In a class action, the court should also consider, in determining statutory damages, the defendant's resources and the number of persons adversely affected.[10] A financial institution is liable for actual damages where it fails to follow transfer instructions, even though its conduct was not intentional and resulted from a bona fide error.

Typically, a consumer must bring his or her action under 15 U.S.C. §1693m "within one year from the date of the occurrence of the violation." The consumer's lawsuit may be brought in any federal district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, such as a state court. The EFTA does not specify a statute of limitations for claims brought under 15 U.S.C. §§ 1693f(e) and 1693h.

### B.  The Material Facts Are In Genuine Dispute

Defendants' recitation of material facts not in genuine dispute omits numerous important facts, namely, that Defendants' practices and procedures concerning BillPay, as applicable to all BillPay subscribers, have continued to the present; that at all times relevant and continuing through the filing of the Complaint to the present, Plaintiffs had numerous (typically, at least five) BillPay transactions per month; that the Defendants' failed and continue to fail to conduct a reasonable investigation into the facts of this matter; that Defendants failed to provisionally re-credit the Berensons' joint account with interest until the investigation was concluded; and that the Defendants failed to provide the Berensons with any relief for the Defendants' illegal practices and their errors.[11]

---

[10]  15 U.S.C. § 1693m(b)(2).

[11]  For the sake of convenience, Plaintiffs will submit under separate cover a representative sampling of their account statements setting **(footnote continued)**

Mr. Berenson wrote to Defendants the letter dated September 17, 2002, a copy of which is in the Appendix to Defendants' Opposition to Motion for Class Certification at Tab 25.

As set forth therein, despite Mr. Berenson's repeated telephone calls to Defendants between the period of January 2002 and September 17, 2002, he had not received any response to his oral inquiries of Defendants as to why monies were being debited from the Berenson's joint account before the payee of the subject BillPay check actually cashed the BillPay check or was credited the funds from the subject BillPay check.  Tab 25.  As a result, Mr. Berenson was obligated to write the letter.  Tab 11 at pp. 65-72.

However, Plaintiffs did not receive any relief as a result of the letter.  Rather, as is set forth in Defendants' Opposition to Motion for Class Certification (at pp. 8-9),

---

**(footnoted continued from previous page)**   forth the continuing nature of the BillPay transactions, although Defendants are unlikely to contest these facts.

Defendants continue to assert that their conduct under the BillPay system does not amount to a "fee" or "charge" under EFTA, and that the non-payment of interest does not correlate to income that Defendants actually receive.  Since any financial benefit received from the use of a customer's money is not an intended gift—the love and affection requirement is obviously lacking—or even somehow gratuitous, then the financial benefit Defendants receive must, by definition, be compensatory; and, being compensatory, must have been reported by the Defendants as income, for to do otherwise would be tantamount to fraud, both in the eyes of the Internal Revenue Service as well as the Securities and Exchange Commission.

Indeed, the invention of income to one party without a corresponding compensatory charge to the other party is specious and Defendants' argument to the contrary challenge logic itself.  Moreover, even if Defendants realized no actual benefit—an argument they cannot genuinely make now, having conceded that their agent, CheckFree Corporation, earns the "float"—be it due to poor investment of the possessed BillPay monies or otherwise, the loss of such benefit still burdens the user/subscriber of the BillPay system.

Defendants eventually spoke with Mr. Berenson, orally advised him that they would not change their procedures and offered to pay him $25.  T11 at pp. 70-73.[12]

### C. EFTA's Putative One-Year Statute of Limitations Does Not Bar Plaintiffs' Claims But Merely Defines the Parameters of the Scope of the Claims

Contrary to Defendants contentions, there are no authorities addressing the EFTA's one-year statute of limitations.  Defendants' reliance upon *Houck v. Local Federal Savings and Loan, Inc.*, 996 F.2d 311 (table) (10th Cir. 1993) is misplaced because that case specifically provides that "[t]his order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3."  *Houck, supra* at **1, n*.

Even so, a fair reading of *Houck* indicates that the court was applying the one year statute of limitation to <u>each</u> occurrence of which that plaintiff complained.  The *Houck* complaint alleged events occurring June 30, 1990, July 7, 1990, and July 23, 1990, and so the limitations period extended from the last of the transactions, and thus did not run until July 23, 1991.

---

[12] Defendants contend that their records indicate that the customer service representative offered to re-credit Mr. Berenson the lost interest.  Defendants' Opposition to Motion for Class Certification at pp. 8-9.  Plaintiffs adamantly deny such an offer was ever made.  Notwithstanding, however, Defendants' records do not indicate that the customer service representative offered to re-credit any interest that was lost in prior or future BillPay transactions or that Defendants would either change their procedures or provide full and adequate notice of the existing procedures to the BillPay subscribers.  Defendants would further have this Court believe that an erroneous and intentional business practice can not be an "error" under EFTA.  Plaintiffs respectfully submit that such an argument is disingenuous on its face.

Here, Plaintiffs seeks to enforce the EFTA for all violations that occurred within one year of the filing of the Complaint on September 26, 2003. Thus, all BillPay transactions that occurred on or after September 26, 2002 are the subject matter of Count I of the Complaint for violations of the EFTA. This is permissible and proper under the authorities cited by Defendants. *Houck, supra*.

### D. Alternatively, Defendants' Violations of the EFTA Constitute a "Continuing Violation" of the EFTA and Plaintiffs' Claims Are Not Barred.

The EFTA requires that any legal action concerning a particular electronic transaction that violates the EFTA be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1693m(g). However, the date of the "occurrence of the violation" is not a defined term of art.

Indeed, here, the application of "continuing violation" theory greatly supports the ongoing vitality of Plaintiffs' EFTA claims. For example, the Fourth Circuit in *Taylor v. Home Insurance Co.*, 777 F.2d 849 (4th Cir. 1985), in confronting continuing violation theory under the federal Age Discrimination in Employment Act—a charge of age discrimination must be filed within 180 days after the alleged unlawful practice occurred—discussed the Supreme Court's view of the theory under the Fair Housing Act as held in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982).

In *Coleman*, the Supreme Court determined that, for purposes of the Fair Housing Act, which requires that an action must be filed within 180 days after the alleged discriminatory housing practice occurred:

> a "continuing violation" of the Fair Housing Act should be treated differently from one discreet act of discrimination. Statutes of limitations such as that contained in § 812(a) are

> intended to keep stale claims out of courts…. Where the challenged violation is a continuing one, the staleness concern disappears. Petitioner's wooden application of § 812(a), which ignores the continuing nature of the alleged violation, only undermines the broad remedial intent of Congress embodied in the Act…. Like the Court of Appeals, we therefore conclude that where a plaintiff challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within 180 days of the <u>last</u> asserted occurrence of that practice.

*Taylor*, *supra* at 856 (emphasis supplied)

Indeed, noting that the principle set forth above is applicable to an action for age discrimination because the Housing Act's limitation is comparable to that imposed by the Age Discrimination in Employment Act, the *Taylor* court held that a claimant is entitled to relief from an unlawful practice, although he did not file within 180 days of the first occurrence, if the evidence satisfies the following requirements: (i) the unlawful practice has continued into the limitation period, such as here; (ii) the claimant has filed a charge within the applicable time (there, 180 days; here, one year) of its last occurrence, and the proof sustains the charge. The proof must establish that the unlawful practice is continuing and that it currently affects the claimant. *Taylor*, *supra* at 856 (*citing Kim v. Coppin State College*, 662 F.2d 1055, 1060-61 (4th Cir. 1981).

Plaintiffs thus submit that, with EFTA, the limitations statute runs from the date of last continuing occurrence of the violation. There is no genuine dispute that Plaintiffs have continued to experience violations during the limitations period and to the present, such that, under the continuing violation theory, their claims should not be time barred. *Id*. That the Housing Act has a 180 day limitations period or the Age Discrimination in

Employment Act has 180/300 day limitations periods (depending upon the state and whether a state agency correlative to the EEOC exists), as opposed to the one-year limitations period under EFTA, is of no moment. The broad remedial nature of all of the Acts are the same. The EFTA provides: "[i]t is the purpose of this subchapter to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems. <u>The primary objective of this subchapter, however, is the provision of individual consumer rights</u>." 15 U.S.C. § 1693(b) (emphasis supplied).

### E. Defendants' Contentions that it Owed No Fiduciary Duty to Plaintiffs or Any Other BillPay Subscriber is Misplaced

Defendants would have this Court believe that, as a matter of law, this case presents the scenario of an ordinary customer-stockbroker relationship in which the broker has no discretionary control and, therefore is not subject to a fiduciary relationship. Defendants are simply mistaken in this assertion, and it challenges faith to understand how an institution such Fidelity could even assert such a position.[13]

First, it bears noting that Plaintiffs' BillPay relationship with Defendants was not a simple customer-stockbroker relationship, but arose out of ownership in one of Defendants' mutual funds (i.e., Fidelity Cash Reserves Money Market Fund). The BillPay service was offered through this mutual fund as a service, for a charge. At all times, Defendants maintained discretionary control of the mutual fund and without question owed a fiduciary duty to the fund and the fund's investors. Plaintiffs submit that

---

[13] The irony of Defendants' position is, of course, that they have contended throughout these proceedings that they have precisely the "discretion" to do with Plaintiffs' monies as they have done under the BillPay Service, as allegedly set forth in the parties' agreements, that they now contend does <u>not</u> exist for them to have a fiduciary obligation to the BillPay subscribers. Enough already.

11

that duty logically and by law extends to any services the Defendants deemed fit to offer through the fund for Defendants' own profit and benefit.  To argue that a mutual find manager has no fiduciary duty to fund investors is a position unhampered by legal knowledge, and epitomizes the arrogance that these Defendants have for the Court and the Plaintiffs.

Moreover, here, Defendants actually obtained control and "ownership" of the Plaintiffs' monies, transferred those monies outside the four corners of the Defendants' financial institution to an unknown third-party "agent" of dubious financial stability, and earned the "float" on Plaintiffs' monies.  In other words, Defendants engaged in self-dealing and acted in their self-interest without the express knowledge and consent of the Plaintiffs or any other BillPay subscriber.  The *Lefkowitz* and *Salois* cases Defednants cite surely do not stand for this proposition.

### III.   Conclusion

Accordingly, for the foregoing reasons, Plaintiffs Joan Berenson and David Berenson, respectfully request this Court to deny Defendants' Motion for Partial Summary Judgment on Count I of the Complaint.

Dated:  February 22, 2005          Respectfully submitted,

//ss//  Douglas A. Rubel
Douglas A. Rubel [pro hac vice]
JOHANSON BERENSON LLP
201 Shannon Oaks Circle, Suite 200
Cary, North Carolina 27519
(919) 654-4544
(919) 654-4545 (Fax)

        //ss//  Kenneth L. McWilliams
        Kenneth L. McWilliams [pro hac vice]
        JOHANSON BERENSON LLP
        1146 Walker Road, Suite C
        Great Falls, Virginia  22066
        (703) 759-1055
        (703) 991-4025 (Fax)

        Attorneys for Plaintiffs