IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOAN BERENSON and DAVID BERENSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL FINANCIAL SERVICES LLC, FIDELITY BROKERAGE SERVICES LLC, and DOES 1-50, inclusive,<br><br>Defendants. | Civil Action No. 04 CV 11311 (WGY) |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT ON EFTA CLAIMS
AS BARRED BY THE STATUTE OF LIMITATIONS**

Pursuant to the Court's order entered February 15, 2005, defendants National Financial Services LLC and Fidelity Brokerage Services LLC (together, "Fidelity") respectfully submit this reply memorandum in support of their motion for summary judgment on Count I of the Complaint as barred by the one-year statute of limitations and the sixty-day error notice period set forth in the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §§ 1693 *et seq*.

### Introduction

The Berensons allege two wrongful acts giving rise to their claims under the EFTA: failure to disclose a "fee" as required at the time of initial contracting, Cmplt. ¶¶ 11 & 61, and failure to follow "error resolution" procedures upon purported notice of an "error." Cmplt. ¶ 62. The Berensons had actual knowledge of these alleged wrongful acts and made a demand more than a year before filing suit. The fact that Fidelity continues to operate the BillPay service in

the same manner is irrelevant. Neither a "continuing violation" theory nor any alleged fiduciary duty can toll the limitations period to salvage the Berensons' EFTA claims.

## I.     THE MATERIAL FACTS ARE UNDISPUTED.

The Berensons do not dispute the material facts underlying this motion, nor is there any basis in the record for them to do so. Specifically, and as set forth in the Statement of Undisputed Facts on pages 2-3 of Fidelity's opening memorandum:

- the Berensons discovered the factual basis of their EFTA claims no later than January of 2002 upon review of account statements (SOF ¶¶ 1-2)[1];

- they drafted a demand letter to Fidelity with the assistance of counsel based upon the previously "discovered" facts on or around September 17, 2002 (SOF ¶¶ 1-4);

- they filed the complaint more than one year later on September 26, 2003 (SOF ¶ 5).

*See* Local R. Civ. P. 56.1 ("Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by the opposing parties.")

The Berensons instead contend, without any citation of affidavits, depositions, or other parts of the record, that Fidelity omitted "numerous" other "important facts." Plaintiffs' Opposition ("Op.") at 6. However, they fail to explain how such other purported "facts" have any bearing on the timeliness of their EFTA claims. It makes no difference, for example, that the Berensons continue to use the BillPay service and that Fidelity has not modified its practices because the EFTA claims are not based on Fidelity's ongoing practices nor on the alleged effects

---

[1] Citations refer to tab numbers in the Appendix filed in connection with the Defendants' Opposition to Class Certification. Pursuant to the Court's earlier orders, Fidelity has now filed all depositions, as redacted in accordance with Local R. Civ. P. 5.3, in unsealed appendix volumes.

of those practices on the Berensons. Rather, the EFTA claims are based on Fidelity's alleged failures to disclose a "fee" or "charge" as required at the time of initial contracting (assertedly in the 1980s), Cmplt. ¶¶ 11 & 61, and to take required action upon notice of an "error." Cmplt. ¶ 62. Because the Berensons had actual knowledge of these alleged EFTA violations for over a year before filing suit, none of the additional "facts" to which they refer are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) ("the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original).

## II.     THE PLAINTIFFS' EFTA CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.

### A.     All Actions Under the EFTA Must Be Brought Within One Year.

The only provision of the EFTA that confers a private right of action also limits the period in which it may be exercised to one year:

> Without regard to the amount in controversy, any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.

15 U.S.C. § 1693m(g). There is therefore no merit to the Berensons' argument, Op. at 6, that a different, unspecified limitations period might apply to violations of sections 1693f and 1693h. Indeed, § 1693f expressly contemplates that an action to enforce the provisions of that section would be brought pursuant to § 1693m. *See* 15 U.S.C. § 1693f(e) ("If, in any action under section 1693m of this title . . . ."). Section 1693h likewise confers no separate right of action but simply lists acts and omissions for which financial institutions may be held liable along with defenses to liability. The Berensons offer no basis in logic or legal authority to suggest that anything other than the one-year limitations period governs their claims. *See Houck v. Local*

*Federal Savings and Loan, Inc.*, 996 F.2d 311, 1993 WL 191818 (10th Cir. 1993) (table) (applying one year statute of limitations of § 1693m(g) to alleged violations of EFTA without regard to specific liability provisions implicated).[2]

### B. The "Continuing Violation" Theory Does Not Apply.

The Berensons do not allege — nor could they — that Fidelity's continuing BillPay procedures, in themselves, violate the EFTA. The statute does not regulate the means, methods, and procedures by which financial institutions may execute funds transfers, for example, whether payments are sent electronically or by check, or whether Fidelity pays the Berensons' designated payees as promptly as is commercially practicable, matters raised in other counts. *See, e.g.,* Cmplt. ¶ 75. Rather, with respect to the EFTA, the Berensons allege only that Fidelity failed to disclose a "charge" or "fee" (*i.e.*, the lost opportunity to earn interest)[3] as required at the time of initial contracting (which Mr. Berenson said was sometime in the 1980s (T11.86-87; T12.138-39)), and that Fidelity failed to follow the EFTA's "error resolution" procedures after they complained. The plaintiffs' reliance on discrimination cases such as *Taylor v. Home Ins. Co.*, 777 F.2d 849 (4th Cir. 1985), Op. at 9-10, is misplaced both because in such cases the actual

---

[2] Contrary to the Berensons' assertions, Op. at 1, 8, rules of both the Tenth Circuit (*Houck's* circuit of origin) and the First Circuit expressly permit citation of unpublished opinions. *See* 10th Cir. R. 36.3(B) ("[A]n unpublished decision may be cited if : (1) it has persuasive value with respect to a material issue that has not been addressed in a published opinion; and (2) it would assist the court in its disposition."); 1st Cir. R. 32.3 (similar criteria). Given the dearth of EFTA authority on point, this standard is easily met. A copy of *Houck* is appended to this memorandum for the Court's convenience.

[3] On November 7, 2003, Fidelity moved to dismiss the EFTA claim under Fed. R. Civ. P. 12(b)(6) on the basis that, as clarified by Federal Reserve Board regulations, foregone interest is not a "fee" or "charge" subject to disclosure, Fidelity lies within a safe harbor provided by form disclosures, and the "error resolution" provisions are not applicable since the plaintiffs allege an intentional practice, not an "error." At the hearing on February 16, 2005, the Court denied the motion but without opinion and without prejudice to repleading in the form of a motion for summary judgment.

prohibited acts — discrimination — are ongoing and because the language of the statutory limitations scheme is completely different.

It makes no sense for the Berensons to say they seek "to enforce the EFTA for all violations that occurred within one year of the filing of the Complaint," Op. at 9, because both the alleged violations themselves, and the Berensons' actual awareness of them, predate the complaint by more than one year. *See Dziura v. United States*, 168 F. 3d 581, 583 (1st Cir. 1999) ("'Continuing violation' . . . doctrine is generally thought to be inapposite when an injury is definite, readily discoverable, and accessible in the sense that nothing impedes the injured party from seeking to redress it . . . . [T]he applicable limitation period ordinarily will begin to run when an injured party knows or should know the critical facts related to his claim."). Indeed, records from Fidelity's "Symphony" database of customer service interactions reflect that Mr. Berenson spoke by telephone with two different Fidelity representatives on February 21, 2002, to complain about the time gap between BillPay debit and payee credit. T2.¶14. Mr. Berenson testified that despite multiple telephone conversations with Fidelity he could not "get any satisfaction," and that is what ultimately prompted him to write his letter dated September 17, 2002. T11.63-67. By the Berensons' own admission, they were aware of their claim and Fidelity was doing nothing to prevent them from asserting it.

The Berensons' "error resolution" claim is also barred on the independent ground that the statute requires a customer to provide notice of an alleged error within sixty (60) days of the account statement that contained the error. *See* 15 U.S.C. § 1693f. Here, the Berensons' letter dated September 17, 2002 — which did not even claim that Fidelity made an "error" — was expressly based upon account statements from the previous January, some nine (9) months

earlier. SOF ¶ 1. In their opposing brief, the Berensons do not even attempt to argue that they satisfied the sixty-day rule or should be excused from having failed to do so.

In *Houck*, the only case of which Fidelity is aware to have addressed the EFTA limitations period in particular, the court expressly rejected application of a "continuing violation" theory. There the plaintiff alleged that his bank had imposed improper charges, closed his account, refused to provide an accounting, and wrongfully attempted to collect a disputed overdraft. *See* 1993 WL 191818 at *1. The plaintiff was indisputably aware of these alleged violations no later than July 23, 1990, when he sent a letter to the bank disputing the charges and requesting an explanation for the bank's actions. *See id*. The court held that the complaint, filed more than two years later, was untimely even though the bank had, among other things, continued attempting to collect the disputed debt through the time when the complaint was filed. *See id*. at *3 ("The contention that a recent collection effort continued the violation has no relevance to the EFTA claim. Plaintiff knew of the alleged electronic transfer errors shortly after they occurred, but to his detriment waited more than two years to file this action.").

The body of law applying the statute of limitations in the federal Truth in Lending Act ("TILA") provides further support for the proposition that an alleged "continuing violation" cannot save an otherwise tardy EFTA claim. Both the EFTA and the TILA involve similar subject matter (both statutes are within Chapter 41 of Title 15 concerning consumer credit protection and financial institution disclosures) and are often interpreted with reference to each other. *See, e.g., Johnson v. W. Suburban Bank*, 225 F.3d 366, 368-69 (3d Cir. 2000) (EFTA and TILA both held not to preclude enforcement of arbitration clauses); *Am. Bankers Assoc. v. Lockyer*, 239 F. Supp. 2d 1000, 1009 (E.D. Cal. 2002) (holding that preemption clauses of EFTA and TILA have similar limitations). Even more important here, the limitations periods of the two

statutes are codified in identical language.  *Compare* 15 U.S.C. § 1693m(g) (EFTA claims must be brought "within one year from the date of the occurrence of the violation") *with* 15 U.S.C. § 1640(e) (same for TILA claims).

It is well settled that "nondisclosure is not a continuing violation" under the TILA.  *Salois v. Dime Sav. Bank of N.Y.*, No. 95-11967-PBS, 1996 WL 33370626 (D. Mass. Nov. 13, 1996), *aff'd*, 128 F.3d 20 (1st Cir. 1997); *see also, e.g., Betancourt v. Countrywide Home Loans, Inc.*, 344 F. Supp. 2d 1253, 1258-59 (D. Colo. 2004);  *Boursiquot v. Citibank F.S.B.*, 323 F. Supp. 2d 350, 354 (D. Conn. 2004); *Cordova v. Banco Bilbao Vizcaya de Puerto Rico*, 73 F. Supp. 2d 133, 136 (D.P.R. 1999).   As Judge Saris further explained in *Salois*:

> Although the one-year period typically runs from the consummation of the transaction, the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action. To clothe himself in the protective garb of the tolling doctrine, a plaintiff must show that the defendant concealed the reprobated conduct and despite the exercise of due diligence, he was unable to discover that conduct.

1996 WL 33370626, at *8 (internal citations and quotation marks omitted).  Here, in other words, Fidelity could argue that the Berensons' EFTA claims had already expired in the 1980s, a year after they began using BillPay, since the Berensons should have, in the exercise of diligence, discovered by then the facts of which they now complain.  But Fidelity need not press that position in the present motion, since it is undisputed that the Berensons also acquired *actual* knowledge of their potential claims more than a year before filing suit.  *See Salois*, 128 F.3d at 27.  Equitable tolling therefore could not save the Berensons' EFTA claim.

### C.    The Limitations Period Is Not Tolled By Fiduciary Principles.

For purposes of this motion, the only relevance of whether the defendants are in a fiduciary relationship with the Berensons is that such a relationship might conceivably provide

another basis for equitable tolling. Notably, however, the Berensons have not made this argument, Op. at 11-12, and even if they did, the argument would fail.

The Berensons contracted for BillPay service with Fidelity Brokerage Services LLC, a registered broker-dealer, not the manager of the money market mutual fund they hold in their brokerage accounts, and therefore the relationship is not fiduciary in nature. *See Lefkowitz v. Smith Barney, Harrris, Upham & Co.*, 804 F.2d 154, 155 (1st Cir. 1986). The fact that the manager of a mutual fund might have fiduciary duties to the fund shareholders is irrelevant since that manager does not and is not alleged to perform any BillPay functions. Here the mutual fund is merely the account the Berensons have directed Fidelity to debit to fund payment of their bills.

Even if the defendants had a fiduciary duty to the Berensons (the Berensons cite no law holding that they do), the limitations period cannot be tolled on the basis of fraudulent concealment once the Berensons have obtained actual knowledge of the facts giving rise to their claim, as they did here more than a year before filing suit. *See Salois,* 128 F.3d at 27 (facts that give rise to a claim cannot be deemed "fraudulently concealed" for tolling purposes where the plaintiffs "possessed the facts themselves"). The EFTA statute of limitations began to run no later than the date — September 17, 2002 — on which the Berensons made demand on Fidelity, and had thus expired when they filed suit over a year later.

**Conclusion**

For the reasons stated above, as well as the reasons stated in Fidelity's opening memorandum in support of its motion, the Court should enter a summary judgment dismissing Count I of the Complaint.

Respectfully submitted,

NATIONAL FINANCIAL SERVICES LLC and
FIDELITY BROKERAGE SERVICES LLC

By their attorneys,

_____/s/ John A. Shope_____
Nicholas C. Theodorou (BBO No. 495730)
John A. Shope (BBO No. 562056)
William W. Fick (BBO No. 650562)
David E. Cole (BBO No. 658705)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Dated: February 28, 2005

FHBOSTON/2768341.1