IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOAN BERENSON and DAVID BERENSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL FINANCIAL SERVICES LLC, FIDELITY BROKERAGE SERVICES LLC, and DOES 1-50, inclusive,<br><br>Defendants. | Civil Action No. 04 CV 11311 (WGY) |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL AND FOR SANCTIONS FOR FAILURE TO PROVIDE DISCOVERY**

Defendants National Financial Services LLC and Fidelity Brokerage Services LLC (together, "Fidelity") submit this memorandum in support of their Motion to Compel and for Sanctions for Failure to Provide Discovery.

**I.     INTRODUCTION**

Fidelity moves this Court to issue an Order (1) <u>compelling</u> the plaintiffs Joan and David Berenson ("the Berensons") to admit or deny the requests for admission numbered 2, 4, and 12 through 25, inclusive, of the Defendants' First Set of Requests for Admission; (2) <u>compelling</u> the Berensons to provide answers to Defendants' Second Set of Interrogatories that have been signed by the persons providing the answers; (3) <u>compelling</u> the Berensons to provide full and complete answers to the interrogatories numbered 12, 13, 14, 20, 22, and 24 of the Defendants' Second Set of Interrogatories; and (4) <u>compelling</u> the Berensons to produce the documents responsive to document request nos. 35 and 36 of Defendants' Second Request for Production of Documents. As more fully set forth below, the discovery sought by Fidelity is highly relevant to, among other

things, the Berensons' allegations of fraud, breach of fiduciary duty, reliance, and damages. Accordingly, the Court should compel the Berensons to supply full and complete responses to the discovery requests at issue.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The Berensons allege that Fidelity failed to disclose that its bill payment service would not credit them with "interest" on their Fidelity money market mutual fund during the period of "float" between the time that amounts were debited from their account and the time that payees were ultimately credited with payments. They further allege that, in order to maximize this "float," Fidelity fails to pay its customers' designated payees as promptly as commercially practicable. In their complaint, originally filed in the United States District Court for the District of Columbia on or about September 26, 2003, the Berensons contended that Fidelity violated the federal Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* ("EFTA") (Count I); the Massachusetts Truth in Savings Law, Mass. Gen. Laws ch. 140E ("Mass. TiSL") (Count V); the Massachusetts Consumer and Business Protection Act, Mass. Gen. Laws ch. 93A ("ch. 93A") (Count VI); and the District of Columbia Consumer Protection Procedures Act, D.C. Code Ann. § 28-3901 *et seq.* ("D.C. Consumer Protection Act") (Count VII). In addition, the complaint asserted common law claims of intentional (Count II) and negligent (Count III) misrepresentation, breach of fiduciary duty (Count IV), and breach of contract (Count IV).[1]

On November 8, 2003, Fidelity filed a Motion to Dismiss and for Summary Judgment, arguing that several counts were legally insufficient on their face and that all must fail because, as a matter of indisputable fact, Fidelity provided full disclosure in customer agreements, BillPay Service Agreements, fund prospectuses, and other documents both provided to investors in hard

---

[1] The plaintiffs erroneously numbered two separate counts as "Count IV."

copy and available on the Fidelity Web site.  Specifically, Fidelity repeatedly disclosed that it debits a customer's account on the date selected by the customer to initiate a bill payment transaction, that the customer stops earning interest (mutual fund dividends) as of the beginning of the next business day on the funds, and that the payee may not be credited until as many as five days later due to such things as postal delays.  (Fidelity undertakes to pay the customer's designated payees in good funds and, like other providers making that promise, does not assume the risk that sufficient funds might not have remained in the customer's account by the time the check to a payee is presented for settlement, as might occur with a conventional checking account.)

Although the complaint alleged that the Berensons had not received these materials, *see* Compl. ¶¶ 28–30 (alleging that BillPay Service Agreement is not directly provided to Fidelity customers), in response to the initial motion for summary judgment, the Berensons admitted that they did (and, indeed, that they relied upon an understanding of the disclosures that Fidelity contends is contrary to their plain language).  *See* Excerpts from Pls.' Opp. to Defs.' Mot. to Dismiss & Summ. J., at 4 (Court's Docket No. 1 (compiled prior filings from District of Columbia).  At his deposition, David Berenson also admitted that, with the exception of one deposition exhibit, "[e]verything you [referring to Fidelity's counsel] say that was sent to us, I will say we would have received."  *See* David Berenson Dep. Tr., at 122–23 (Court's Docket No. 40, Tab 11).  However, at the hearing on March 3, 2005, the Berensons stated an intent to amend their previous response to Fidelity's statement of undisputed facts in support of its initial motion for summery judgment, which the Court had denied without prejudice to renewal following discovery.

Following rulings on Fidelity's initial motion to dismiss and for summary judgment, and its subsequent motion for summary judgment on the statute of limitations, the remaining claims are for intentional and negligent misrepresentation, breach of fiduciary duty, violation of ch. 93A, and violation of the EFTA's "error resolution" procedures. Fidelity intends to move for summary judgment on the remaining claims by May 26, 2005.

### III.    RECENT DISCOVERY DISPUTE

On March 18, 2005, Fidelity served its Second Request for Production of Documents, Second Set of Interrogatories, and First Set of Requests for Admission. *See* Affidavit of Nicholas C. Theodorou ("Theodorou Aff."), ¶ 2 & Exs. 1, 2, 3. The Berensons responded on April 15, 2005. *See id.*, ¶ 3 & Exs. 4, 5, 6. A week later, on April 22, 2005, Fidelity sent a letter via facsimile and mail to the Berensons outlining the deficiencies in their responses, including the absence of their signatures on the interrogatory responses, and further requesting the withdrawal or supplementation of certain of the Berensons' objections and responses. *See id.*, ¶ 4, Ex. 7. The Berensons did not respond in any manner to that letter.

On May 4, 2005, pursuant to Local Rule 37.1, Fidelity requested a discovery conference. *Id.*, ¶ 5 & Ex. 8. Fidelity requested that the conference take place immediately before or after the deposition of Fidelity's expert when counsel would meet in person. *See id.*, ¶¶ 5–6 & Ex. 8. The Berensons eventually conferred with Fidelity by telephone on May 10, 2005. *See id.*, ¶ 7. Attending this conference were Mr. Theodorou and William Fick on behalf of Fidelity, and Mr. Rubel on behalf of the Berensons. *Id.*, ¶ 8. The conference started at approximately 10:00 a.m. and lasted approximately 30 minutes. *Id.* ¶ 9. The issues outlined in Fidelity's April 22 letter were discussed. *Id.* At the end of this conference, Mr. Rubel stated that he would get back to Mr. Theodorou later that same day regarding the Berensons positions on the disputed discovery issues. *Id.*

At approximately 4:30 p.m. on May 10, 2005, Mr. Theodorou, Mr. Fick, and Mr. Rubel discussed issues left open at the end of the earlier conference. *Id.* ¶ 10. This conversation lasted approximately 10 minutes. *Id.* At the end of this follow-up conference, Mr. Rubel agreed by May 16, 2005 to provide Fidelity with revised responses to Fidelity's Interrogatories Nos. 12, 13, 14, 20, and 24, and Fidelity's Requests for Admission Nos. 2, 4, 5, 6, and 12–25. *Id.* However, Mr. Rubel refused to supplement the Berensons' answer to Fidelity's Interrogatory No. 22 or their responses to Fidelity's Requests for Production of Documents Nos. 35 and 36. *Id.* Mr. Theodorou sent a letter later that same day to confirm the agreements during the discovery conference and requesting that the Berensons sign their answers to the interrogatories. *Id.* ¶ 11 & Ex. 9.

By letter dated May 11, 2005, Mr. Rubel responded to Mr. Theodorou's May 10 letter, disputing, in part, his letter of the previous day. *See id.*, ¶ 12 & Ex. 10. Mr. Rubel specifically disputed that he agreed to supplement the Berensons' answers to Fidelity's requests for admission nos. 5 and 6. *See id.* He further promised to get back to Fidelity later that same day as to whether he would supplement the Berensons' answer to Fidelity's interrogatory no. 22. *See id.* Later that same day, Mr. Theodorou wrote a letter responding to Mr. Rubel's letter stating that requests for admission nos. 5 and 6 were specifically discussed, that Mr. Rubel agreed to supplement the Berensons' responses, and again requested that Mr. Rubel do so. *See id.*, ¶ 13 & Ex. 11. The Berensons did not further respond to Fidelity's letters, even as promised. *Id.* ¶ 14.

Then, after all of the effort put into narrowing the disputes over the Berensons' production, the Berensons' agreed May 16th deadline came and went ***without any response.*** *Id.* ¶ 15. As of the time of this filing, Fidelity has still not received the promised supplemental responses from the Berensons. *Id.*

**IV.    DISCOVERY MATTERS AT ISSUE**

Throughout the Berensons have demonstrated a disregard for settled obligations under the Federal Rules of Civil Procedure. Indeed, as set forth below, without tendering any excuse the Berensons have even failed to sign their interrogatory answers despite repeated requests that they do so. Such misconduct is sanctionable.

**A.    *Requests for Admission***

1.    The Berensons' Responses to Request for Admission No. 2

A critical issue in the case is what terms control the Berenson's BillPay Service. At his deposition, plaintiff David Berenson, an attorney, testified that he believed the only contract with respect to the BillPay service that was binding on him was made in the 1980s, though he cannot locate it. *See* David Berenson Dep. Tr., at 138–39 (Court's Docket No. 40, Tab 12). Naturally this would make him atypical of the proposed class. Fidelity sought a request for admission of the Berensons' view of the contracts as not amended since the 1980s. *See* Theodorou Aff., Ex. 3, at Req. No. 2.

The Berensons objected on the grounds that this request calls for a legal conclusion. *See id.*, Ex. 6, at Resp. No. 2. That objection is frivolous. Rule 36(a) expressly permits requests for admission seeking the "application of law to facts." The Court should order the Berensons to withdraw their objections to request for admission no. 2 or supplement their response.

2.    The Berensons' Responses to Requests for Admission Nos. 4, 5, and 6

Another key question in the case is whether the Berensons received any of the numerous disclosures Fidelity sent to its customers concerning of the BillPay Service. These disclosures explained that a customer's brokerage core account (here, a money market mutual fund) would be debited on a transaction date selected by the customer, that the customer would stop earning interest (technically mutual fund dividends) as of the beginning of the next business day, and that

the customer's designated payee might not be credited with the funds until several days later because of, for example, the delay inherent in mail delivery. Mr. Berenson understood that once the money left his account he would no longer earn interest on those funds. In fact, he stated that he first "discovered" that he was losing interest on the "float" by comparing the date of the debit of a BillPay transaction he had authorized and the date of the matching credit to his designated payee. *See* David Berenson Dep. Tr., at 63–64 (Court's Docket No. 40, Tab 11).

Accordingly, Fidelity sought requests for admission as to whether the Berensons' recalled receiving any disclosures from Fidelity since the 1980s and if they recalled the content of those disclosures. *See* Theodorou Aff., Ex. 3, at Reqs. Nos. 4, 5, 6. Admitting receipt renders the Berensons suseptable to summary judgment based on Fidelity's clear disclosure of the material facts. However, denial renders the Berensons atypical of the proposed class. Perhaps it is not surprising that the Berensons therefore refused to admit or deny what they themselves can recall. *See id.*, Ex. 6, at Resps. Nos. 4, 5, 6.

Contrary to the Berensons' contentions in their objection to providing any response, Fidelity's requests for admission nos. 4, 5, and 6 do not assume anything about what Fidelity actually sent to the Berensons. Rather, they seek information only about what the Berensons recall receiving. The Court should accordingly order the Berensons to withdraw their objections to requests for admission nos. 4, 5, and 6 or supplement their answers.

      3.    <u>The Berensons' Responses to Request for Admission No. 12 to 25, Inclusive</u>

Like the requests discussed above, requests for admission nos. 12 to 25, inclusive, seek an admission or denial by the Berensons as to whether they received certain buckslips, letters, guides, agreements, and prospectuses from Fidelity in the years 1996, 1998, 2000, and 2003. *See* Theodorou Aff., Ex. 3, at Reqs. Nos. 12–25.

A critical question is whether the Berensons received these documents. The Berensons admitted receipt of most of these items when they failed to challenge Fidelity's Statement of Undisputed Facts in their Opposition to Fidelity's initial motion for summary judgment. *See* Pls.' Opp. and Defs' Repl. at 3 (Court's Docket No. 1 (compiled prior filings from District of Columbia)); LR 56.1 (D. Mass); LR 56.1 (D.D.C.). David Berenson made a further admission during his deposition. *See* David Berenson Dep. Tr., at 122-23 (Court's Docket No. 40, Tab 11) ("Everything you say that was sent to us, I will say we would have received except that last one that's dated December 31, [2004] New Year's Eve."). Now the Berensons have in bad faith changed course, stating that they lack sufficient information to admit or deny receipt. *See* Theodorou Aff., Ex. 6, at Resps. Nos. 12–25. In light of the Berensons' frivolous objections and response to these interrogatories, the Court should order the Berensons to withdraw their objections to the referenced interrogatories or supplement their answers.

**B.**     ***Interrogatories and Document Requests***

1. <u>The Answers to the Interrogatories Lack the Berensons' Signatures.</u>

Fed. R. Civ. P. 33(b)(2) expressly requires answers to interrogatories must be signed by the persons making them. *See id.* Neither of the Berensons' signatures appear on the Berensons' Answers to Defendants' Second Set of Interrogatories certifying the answers. *See* Theodorou Aff., Ex. 5, at 11. This omission not only calls into question whether the Berensons have actually contributed to or even read their purported answers, but also prevents Fidelity from relying on them as the basis of any subsequent dispositive motion. *See* Fed. R. Civ. P. 11(a), 26(g)(2). Although Fidelity has brought this omission to counsel's attention on multiple occasions, and requested that signed answers be supplied immediately, the Berensons have not done so. *See* Theodorou Aff., Ex. 7, at 1; *id.*, Ex. 9. For these reasons, the Court should require the Berensons to provide signed answers to the interrogatories forthwith.

>    2.    The Berensons' Responses to Interrogatory Nos. 12, 13, 14, and 20

Because the Berensons allege that Fidelity made both intentional and negligent misrepresentations to them in false advertising, Fidelity sought discovery as to (1) what specific advertising the Berensons relied upon, (2) what the Berensons allege is false, misleading, unfair, or deceptive about said advertising, (3) what the Berensons allege is misrepresented or omitted from said advertising, (4) any actions the Berensons took or refrained from in reliance on said advertising, and (5) the Berensons' related damages. *See* Theodorou Aff., Ex. 2, at Interrogs. Nos. 12, 13, 14, 20. The Berensons refused to supply any responsive information, asserting it was all in Fidelity's possession. *See id*., Ex. 5, Answers Nos. 12, 13, 14, 20. Moreover, they declined to describe how certain alleged omissions or statements in Fidelity's promotional material were deceptive or in conflict with a customer's otherwise reasonable expectations of transactions made using the BillPay Service. For these reasons, the Court should order the Berensons to withdraw their objections to the referenced interrogatories or supplement their answers.

>    3.    The Berensons' Response to Interrogatory No. 22

An essential element of the Berensons' tort claims is actual damages. One question is whether the Berensons suffered any damages at all. Their stated theory at deposition was that if they had known the truth about Fidelity's BillPay Service, they would have chosen to pay their bills from other accounts. A key question, therefore, is what rates of interest might have been earned in those other accounts on the supposedly "lost" float (and whether interest on such float would have exceeded the general benefit of higher interest rates for the Fidelity account during the period before the "float"). Indeed, Fidelity believes that the reason the Berensons have continued up to the present to use Fidelity's BillPay Service is that their Fidelity money market mutual fund pays a higher rate of interest than the Berensons' various checking accounts.

The Berensons have refused to answer interrogatory no. 22, which relates to the extent to which the Berensons used checking accounts that bore interest in the relevant period and at what interest rates.  *See* Theodorou Aff., Ex. 2, at Interrog. No. 22; *id.*, Ex. 5, at Answer No. 22.  Because this information is relevant to the Berensons' claim of damages, the Court should order the Berensons to withdraw their objections to interrogatory no. 22 and supplement their answer.

          4.       <u>The Berensons' Responses to Document Request Nos. 35 and 36</u>

Similarly, Fidelity's document requests nos. 35 and 36 sought to uncover information regarding the extent to which the Berensons actually earned interest in the relevant period from their other accounts.  *See* Theodorou Aff., Ex. 1.  This information would be reflected in the banks' forms 1099 INT supplied to the Berensons and the tax returns to which they would be attached.  For the same reasons as noted above, the Court should order the Berensons to withdraw their objections to these document requests or supplement their responses.  The Berensons' objection that producing their own tax returns and forms 1099 INT is "overly burdensome" is, of course, frivolous.  *See* Theodorou Aff., Ex. 4, at Resps. Nos. 35, 36.

Moreover, the tax returns are relevant to determine whether the production of 1099 INT forms is complete and also bear on the determination of the Berensons' actual residences (they have addresses in Florida, Virginia, and the District of Columbia), as to which allegations of the complaint and deposition testimony conflicted.  S*ee* Compl. at 2–3; Joan Berenson Dep. Tr., at 16–21 (Court's Docket No. 40, Tab 9); David Berenson Dep. Tr., at 18–21 (Court's Docket No. 40, Tab 11).  That information bears on choice of law issues, since even though the Fidelity customer agreement chooses Massachusetts law, that choice might not be honored as a matter of public policy.  Of course, the returns could be designated as confidential under the confidentiality order entered on January 31, 2005 (Court's Docket No. 22).

### 5. The Berensons' Response to Interrogatory No. 24

The complaint alleges that Fidelity does "not transfer[] the subject monies to the designated transferees of the plaintiffs … as quickly as possible and in a commercially practicable fashion as required" in order to maximize Fidelity's interest on the float, and that in doing so it breaches a fiduciary duty to the Berensons.  *See* Compl., ¶¶ 75, 76.  Fidelity therefore sought the Berensons' position as to how Fidelity *should* have paid the Berensons' payees—for example, by check or that electronic transfer—especially since the Berensons conceded that some payees are properly paid with checks sent by mail (*see* Joan Berenson Dep. Tr., at 165 (Court's Docket No. 40, Tab 9); David Berenson Dep. Tr., at 66–67 (Court's Docket No. 40, Tab 12).

The Berensons have again refused to answer an interrogatory in a way that puts into question the good faith basis of their complaint.  *See* Theodorou Aff., Ex. 2, at Interrog. No. 24; *id.*, Ex. 5, at Answer No. 24.  The Berensons indicate that they need further information to provide an answer to this interrogatory.  The discovery period has now expired.  The Berensons' failure to seek discovery on certain issues does not excuse their obligation to state a position to which Fidelity may respond on summary judgment or at trial.  For these reasons, the Court should order the Berensons to withdraw their objections to interrogatory no. 24 or supplement their answer.

## V. CONCLUSION

For the all of the foregoing reasons, Fidelity's motion should be granted and the Court should order the requested relief.

Respectfully submitted,

NATIONAL FINANCIAL SERVICES LLC and
FIDELITY BROKERAGE SERVICES LLC

By their attorneys,

/s/ Nicholas C. Theodorou
Nicholas C. Theodorou (BBO No. 495730)
John A. Shope (BBO No. 562056)
William W. Fick (BBO No. 650562)
David E. Cole (BBO No. 658705)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Dated:  May 18, 2005