# Exhibit 6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOAN BERENSON, individually and on behalf of all others similarly situated; and DAVID BERENSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>NATIONAL FINANCIAL SERVICES LLC; FIDELITY BROKERAGE SERVICES LLC; and DOES 1-50, inclusive,<br><br>Defendants | Civil Action 04 CV 11311 WGY |

**PLAINTIFFS' RESPONSES TO DEFENDANTS'
FIRST SET OF REQUESTS FOR ADMISSION**

Plaintiffs, Joan Berenson and David Berenson, individually and on behalf of all others similarly situated, respond to the Defendants' First Set of Requests for Admission of Fact, as follows:

**I. PRELIMINARY STATEMENT**

Plaintiffs have not completed their investigation of all of the facts relating to this case, have not fully completed their discovery in this action and have not completed their preparation for trial. Therefore, the following responses are based only upon such information and documents presently available to and specifically known to Plaintiffs, and said responses disclose only those contentions which presently occur to Plaintiffs. It is anticipated that further discovery, independent

investigation and legal research and analysis will supply additional facts, add meaning to known facts, and establish entirely new factual conclusions and legal contentions herein set forth. The following responses are given without prejudice to Plaintiffs' rights to produce evidence at trial. Plaintiffs accordingly reserves their rights to amend any and all responses herein as additional facts are ascertained, analysis made, legal research is completed and contentions are formulated. The responses contained herein are made in a good faith effort to supply as much factual information and as much specification as is presently known, but should in no way be to the prejudice of Plaintiffs in relation to further discovery, research, analysis or proof.

Moreover, these responses are made solely for the purpose of this action and are subject to objections as to competence, relevance, materiality, propriety, and admissibility, and any other objection or grounds that would require exclusion of any statement made herein if such statement were made by a witness present and testifying in Court, all of which objections and grounds are reserved and may be interposed at time of trial.

No incidental or implied admissions are intended by these responses. The fact that Plaintiffs respond or object to any Request for Admission should not be taken as an admission that Plaintiff accepts or admits the existence of any facts assumed by such Request for Admission, or that such response or objection constitutes admissible evidence as to any such assumed facts. The fact that Plaintiffs respond or object to any Request for Admission should not be taken, and is not intended to act, as a waiver by Plaintiffs of any objection to a Request for Admission.

2

## II. GENERAL OBJECTIONS

Plaintiffs generally object to each Request for Admission as follows:

1. Plaintiffs object to each Request for Admission to the extent that the Request seeks information that is not in Plaintiffs' possession, custody or control.

2. Plaintiffs object to each Request for Admission to the extent that the Request exceeds the scope discovery that is necessary and appropriate under the applicable Rules of Court and/or statutory law.

3. Due to the manner in which the Requests for Admission have been submitted, Plaintiffs objects to each Request for Admission to the extent that the Request is made up of numerous subparts, is vague, ambiguous, compound, and/or assumes the existence of any fact not in evidence.

4. Plaintiffs object to each Request for Admission to the extent that the Request is overbroad, unduly burdensome, and/or is solely designed to harass Plaintiffs.

5. Plaintiffs object to each Request for Admission to the extent that the Request requires disclosure of confidential or internal business trade secret information.

6. Plaintiffs object to each Request for Admission to the extent that the Request requires disclosure of confidential or personal information, the disclosure of which compromises or violates Plaintiffs' rights to confidentiality.

3

7.  Plaintiffs objects to each Request for Admission to the extent that the Request seeks information in violation of the rights of privacy of other individuals as guaranteed by the federal or applicable state Constitutions.

8.  Plaintiffs object to each Request for Admission to the extent that the Request requests documents or information protected by the attorney-client or the work-product privilege.

9.  Plaintiffs object to each Request for Admission to the extent that the Request seeks the disclosure of information that is equally available to Defendants.

### III. RESPONSES TO REQUESTS FOR ADMISSION

Without waiving any of the foregoing objections, Plaintiffs respond to Defendants' Requests for Admission as follows:

Request 1.  You first began to use a bill payment service provided by Fidelity in the 1980s.

Response: Admitted.

Request 2.  Your use of the Fidelity Billpay service continues to be governed by the contractual terms and conditions to which you agreed in the 1980s, without subsequent amendment.

Response: Objection. Request 2 calls for a legal conclusion and is vague and cannot be answered in it present form. What terms were agreed upon in the 1980s, what terms were later added, and what terms were "amended" is not set forth in the Request so as to allow a proper answer. Whether the Plaintiffs' use of the Fidelity BillPay Service is governed by certain terms is a legal conclusion.

4

Request 3. You are unable to locate a copy of the customer agreement or other writing that contains the terms and conditions governing the BillPay service to which you agreed in the 1980s.

Response: Objection. Request 3 cannot be answered in its present form because it falsely assumes a fact that cannot be assumed. That is, to the extent that Request 3 requests the Plaintiffs to answer whether they can "locate" a certain document or documents assumes that Fidelity actually provided the document or documents to the Plaintiffs. Fidelity did not, as is alleged in the Complaint. Plaintiffs cannot respond as to whether they can "locate" something they were not given, as though Plaintiffs somehow "lost" or misplaced" the document or documents. Moreover, Fidelity has represented to the Court that Fidelity cannot "locate" the very same document or documents that it has a responsibility to maintain.

Request 4. You do not recall receiving from Fidelity any disclosures concerning the BillPay service or revised BillPay Service Agreements from the time when you contend that you began using BillPay in the 1980s.

Response. Objection. Fidelity assumes in Request 4 that it actually sent any such "disclosures" to Plaintiffs. This cannot be assumed. To the extent that the alleged "disclosures" were not actually sent, Plaintiffs cannot be asked whether they recall receiving them. To the extent that such "disclosures" were actually sent, Plaintiffs object to Request 4 as being overbroad. Plaintiffs cannot be required to identify certain alleged "disclosures" over a more than twenty-year period and to identify whether they recall receiving them.

Request 5. You do not recall the content of any of Fidelity's disclosures concerning the BillPay service that you received or reviewed between January 1, 1980 and January 1, 2002.

5

Response: Objection. Request 5 assumes that Fidelity actually provided certain (undefined) "disclosures" to Plaintiff between January 1, 1980 and January 1, 2002. Plaintiffs cannot answer whether they recall the content of "disclosures" that were never provided to them. Moreover, Fidelity did not operate a BillPay service on or about January 1, 1980. There could not be any "disclosures" during any period in which Fidelity did not operate a BillPay service. Moreover, Request 5 does not define the term "disclosures." Plaintiffs received statements from Fidelity that contained pertinent information relating to Plaintiffs' actual use of the BillPay Service, but not Fidelity's use of and benefit from Plaintiffs' monies. To the extent that Fidelity actually forwarded certain "disclosures" to Plaintiffs and Plaintiffs actually received them, they do not recall the actual content of the alleged "disclosures."

> Request 6. You do not recall the content of any of Fidelity's disclosures concerning the BillPay service that you received or reviewed between January 1, 1994 and January 1, 2002.

Response: Objection. Request 6 assumes that Fidelity actually provided certain (undefined) "disclosures" to Plaintiff between January 1, 1994 and January 1, 2002. Plaintiffs cannot answer whether they recall the content of "disclosures" that were never provided to them. Moreover, Request 6 does not define the term "disclosures." Plaintiffs received statements from Fidelity that contained pertinent information relating to Plaintiffs' actual use of the BillPay Service, but not Fidelity's use of and benefit from Plaintiffs' monies. To the extent that Fidelity actually forwarded certain "disclosures" to Plaintiffs and Plaintiffs actually received them, they do not recall the actual content of the alleged "disclosures."

Request 7. You do not use the Fidelity website to conduct BillPay transactions.

Response. Objection. Request 7 is vague and cannot be answered without a temporal scope. Request 7 would appear to be limited in scope to the present. To that extent, Plaintiffs admit that they do not use the Fidelity website to conduct BillPay transactions.

> Request 8. You did not schedule your December 2004 bill payment to Barhite & Holzinger for payment until after the December 1, 2004 payment due date.

Response: Objection. Request 8 is vague and misleading. Plaintiffs scheduled all of their payments to Barhite & Holzinger before December 1, 2004. Plaintiffs admit that they actual payment for the December 2004 bill was not to be made until after December 1, 2004. Plaintiffs deny that December 1, 2004 was the payment "due date." The actual "due date" was December 15, 2004.

> Request 9. Barhite & Holzinger refunded, rescinded or waived the late payment fee of $25 that it had assessed for late receipt of your December 2004 payment.

Response; Plaintiffs admit that apparently because of this litigation, Defendants were compelled to contact Barhite & Holzinger and either pay directly the $25 fee or convince Barhite & Holzinger to waive the fee so that the fee was not on the January 2005 invoice Plaintiffs received from Barhite & Holzinger.

> Request 10. If Fidelity is instructed to make a certain payment under the BillPay Service, and a check is mailed to the intended recipient, and the check is not cashed, Fidelity credits the customer for dividends that would have accrued on those monies during the time in which those monies were in limbo, once Fidelity returns the funds to the originating customer's account.

7

Response. Plaintiffs do not have sufficient information to admit or deny Request 10 and, therefore, deny it. Plaintiffs are aware of one instance of similar circumstances in which Fidelity apparently credited the Plaintiffs for dividends that would have accrued on the monies during the time in which the monies were in limbo, once Fidelity returned the funds to Plaintiffs' account. However, one instance does not provide sufficient factual basis for a general admission of the Request. What Fidelity did in that one instance, because of Plaintiffs' complaints over Fidelity's competency in the handling of the situation has no bearing on what Fidelity did or does otherwise. Accordingly, Plaintiffs requested precisely that information from Fidelity in discovery but was not provided the information.

> Request 11. The letter from David Berenson to Fidelity dated September 17, 2002, marked as deposition exhibit 13 and attached hereto at Tab A, is the only document that you contend constitutes a "demand letter" within the meaning of M.G.L. ch 93A, §9(3).

Response: Admitted.

> Request 12. In 1996 you received from Fidelity the Fidelity Interactive Bill Payment Service User's guide for touch-tone telephone, attached hereto at Tab B.

Response: Objection. Request 12 assumes that the specified document was actually provided to Plaintiffs. Plaintiffs lack sufficient information to admit or deny Request 12 and, therefore, deny it.

> Request 13. In 1996 you received from Fidelity the Fidelity Interactive Bill Payment Service User's guide for personal computer, attached hereto at Tab C.

Response: Objection. Request 13 assumes that the specified document was actually

8

provided to Plaintiffs. Plaintiffs lack sufficient information to admit or deny Request 13 and, therefore, deny it.

> Request 14. In 1996 you received from Fidelity the Fidelity Interactive Bill Payment Service License and Disclosure Agreement for personal computer, attached hereto at Tab D.

Response: Objection. Request 14 assumes that the specified document was actually provided to Plaintiffs. Plaintiffs lack sufficient information to admit or deny Request 14 and, therefore, deny it.

> Request 15. In 1996 you received from Fidelity the Fidelity Interactive Bill Payment Service Agreement for touch-tone telephone, attached hereto at Tab E.

Response: Objection. Request 15 assumes that the specified document was actually provided to Plaintiffs. Plaintiffs lack sufficient information to admit or deny Request 15 and, therefore, deny it.

> Request 16. In 1996 you received from Fidelity the prospectus for the Fidelity Daily Income Trust, attached hereto at Tab F.

Response: Objection. Request 16 assumes that the specified document was actually provided to Plaintiffs. Plaintiffs lack sufficient information to admit or deny Request 16 and, therefore, deny it.

Request 17. In 1998 you received from Fidelity one of the three mailings attached hereto at Tab G.

Response: Objection. Request 17 assumes that the specified document was actually provided to Plaintiffs. Plaintiffs lack sufficient information to admit or deny Request 17 and, therefore, deny it.

9

Request 18. In 1998 you received from Fidelity the Fidelity BillPay Service Agreement and User Guide, attached hereto at Tab H.

Response: Objection. Request 18 assumes that the specified document was actually provided to Plaintiffs. Plaintiffs lack sufficient information to admit or deny Request 18 and, therefore, deny it.

Request 19. In 1998 you received from Fidelity the prospectus for the Fidelity Daily Income Trust, attached hereto at Tab I.

Response: Objection. Request 19 assumes that the specified document was actually provided to Plaintiffs. Plaintiffs lack sufficient information to admit or deny Request 19 and, therefore, deny it.

Request 20. In 2000 you received from Fidelity the letter to BillPay customers, attached hereto at Tab J.

Response: Objection. Request 20 assumes that the specified document was actually provided to Plaintiffs. Plaintiffs lack sufficient information to admit or deny Request 20 and, therefore, deny it.

Request 21. In 2000 you received from Fidelity the Buckslip sent to BillPay customers, attached hereto at Tab K.

Response: Objection. Request 21 assumes that the specified document was actually provided to Plaintiffs. Plaintiffs lack sufficient information to admit or deny Request 21 and, therefore, deny it.

Request 22. In 2000 you received from Fidelity the Fidelity BillPay Service Agreement, attached hereto at Tab L.

Response: Objection. Request 22 assumes that the specified document was actually provided to Plaintiffs. Plaintiffs lack sufficient information to admit or deny Request 22 and, therefore, deny it.

Request 23. In 2003 you received from Fidelity the Fidelity Customer Agreement, attached hereto at Tab M.

Response: Objection. Request 23 assumes that the specified document was actually provided to Plaintiffs. Plaintiffs lack sufficient information to admit or deny Request 23 and, therefore, deny it.

Request 24. In 2003 you received from Fidelity the Fidelity BillPay Service Agreement, attached hereto at Tab N.

Response: Objection. Request 24 assumes that the specified document was actually provided to Plaintiffs. Plaintiffs lack sufficient information to admit or deny Request 24 and, therefore, deny it.

Request 25. In 2003 you received from Fidelity the Prospectus for Fidelity Cash Reserves, attached hereto at Tab O.

Response: Objection. Request 25 assumes that the specified document was actually provided to Plaintiffs. Plaintiffs lack sufficient information to admit or deny Request 25 and, therefore, deny it.

11

Dated: April 15, 2005

Respectfully submitted,

*[signature]*

Douglas A. Rubel, Esquire
JOHANSON BERENSON LLP
201 Shannon Oaks Circle, Suite 200
Cary, North Carolina 27519
(919) 654-4544
(919) 654-4545 (Fax)

### Certificate of Service

I hereby certify that, on this 15th day of April 2005, I mailed via overnight mail, postage prepaid, and forwarded via facsimile, a copy of the foregoing to:

John A. Shope, Esquire
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210
(Facsimile: 617 832 7000)

*[signature]*

DOUGLAS A. RUBEL