UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOAN BERENSON, individually and on behalf of all others similarly situated, and DAVID BERENSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL FINANCIAL SERVICES, LLC, a Delaware, Limited Liability Company; FIDELITY BROKERAGE SERVICES, LLC, a Delaware, Limited Liability Company; and DOES 1-50, inclusive,<br><br>Defendants | Civil 04-cv-11311-WGY |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
TO COMPEL AND FOR SANCTIONS**

Plaintiffs, Joan Berenson and David Berenson, individually and on behalf of all others similarly situated, by counsel, hereby respond to the Defendants' motion to compel and for sanctions, as follows:

**I.**

Rather than engage in protracted motions practice (and by no means as a concession that Defendants' counsel's contentions had any merit), Plaintiffs' counsel agreed to supplement certain of Plaintiffs' Answers to Defendants' Second Set of Interrogatories and Responses to Defendants' First Set of Requests for Admissions. Plaintiffs' counsel was already in the process of obtaining Plaintiffs' signatures to the Plaintiffs' Answers to Defendants' Second Set of

Interrogatories. Indeed, Plaintiffs maintain that their initial responses to the discovery requests were wholly proper and appropriate.

Attached hereto as Exhibit 1 is a copy of Plaintiffs' Supplemental Responses to Defendants' First Set of Requests for Admission. As promised, Plaintiffs have supplemented their Responses to Requests 2, 4, and 12-25, inclusive. Plaintiffs have also supplemented their responses to Requests 5 and 6, which supplementation counsel discussed, and, although not the subject matter of this Motion, Defendants' counsel previously insisted upon.

Attached hereto as Exhibit 2 is a signed copy of the Plaintiffs' Answers to Defendants' Second Set of Interrogatories. Defendants' suggestion that Plaintiffs had not participated in answering the interrogatories is absurd and insulting.

Attached as Exhibit 3 is a signed copy of Plaintiffs' Supplemental Answers to Defendants' Second Set of Interrogatories. The Supplemental Answers faithfully and fully respond to Defendants' contentions.

## II.

What is left to discuss with regard to Defendants' Motion is two-fold: (i) Defendants' blatant attempt to intimidate and harass Plaintiffs by insisting that Plaintiffs produce a copy of their tax returns and federal tax forms 1099-INT for the years 1999 to the present; and (ii) Defendants' intentional misrepresentations to this Court to accomplish these ends.

## III.

First, it bears noting that Defendants motion papers are procedurally deficient. This judicial district requires that memoranda in support of motions to compel, themselves, must set forth the subject discovery request, the response thereto and the reasons why the response is

somehow deficient. L.R. 37.1(b)(4) and (5). Defendants did not do this. As such, for this reason alone, the Motion should be denied.

## IV.

**First, Defendants and their counsel have intentionally misrepresented Plaintiffs' deposition testimony to this Court.** For example, in arguing for a compulsion order with regard to Defendants' Interrogatory 22 (requesting a monthly itemization of monies in interest bearing checking accounts)[1], Defendants state that the itemization is somehow necessary in order to ascertain Plaintiffs' actual damages. In support of their assertion, Defendants blatantly misrepresent Plaintiffs' deposition testimony—this is one of the few instances in their Motion that Defendants do not actually cite to the deposition testimony or any other parts of the record—and falsely state that "their [Plaintiffs] stated theory at deposition was that if they had known the truth about Fidelity's BillPay Service, they [Plaintiffs] would have chosen to pay their bills from other accounts." Memorandum in Support of Defendants' Motion to Compel and For Sanctions at p. 9.

Untrue. Both Mrs. Berenson and Mr. Berenson clearly testified at deposition that if they had known the truth about the Fidelity BillPay Service they would have contacted their payees and had them directly debit the Berensons' account so that they Berensons would not lose any interest on their monies. Indeed, Plaintiffs both testified that they were already doing this for certain of their payees.

To that end, Mrs. Berenson testified as follows:

---

[1] "22. Identify, on a month-end basis for each month since January 1, 1999, the amount of money that you held in checking accounts that earn interest, the interest rate on each such account, and the amount of money that you have held in checking accounts that do not earn interest." Exhibits 2 and 3 at Interrogatory 22.

3

> **…And then as we came forward with the bill payer and so forth, we found some things that were not as they should have been. Which is the basis now for this suit, because – well, I won't get into that. But at any rate, that was one of the problems.**
>
> **What I shifted to is debit, so I am letting various businesses that used to be on the bill payer be changed over to where they debit an account for the checks –**

Deposition of Joan Berenson (January 21, 2005) at p. 81:8-17, a copy of which is attached as

Exhibit 4.

    Mr. Berenson testified as follows:

> **BY MR.SHOPE:**
>     **Q  Now, have you ever used any other bill payment services besides Fidelity's?**
>     **A  The answer on a bill payment service is no. What I have used, you can see on your Fidelity statement is when I have told Verizon or Sprint, you know, or USAA, which – that they could, you know, on Day X, 5, on Day 10, whatever, I've chosen, Day 16, that they could charge my account, which I guess is done electronically, and then it goes from me to them on that exact same day…**
>     **Q  Okay. So you don't use any other bill payment service other than Fidelity?**
>     **A  No.**
>     **Q  Okay. The -- now you mentioned that with regard to a few payees, you've authorized them to directly debit your Fidelity account; isn't that fair?**
>     **A  Mm-hmm.**
>         **Right that's correct.**
>     **Q  Again, you've got to say yes or no to the court reporter.**
>     **A  Yes, yes.**

Deposition of David Berenson (January 27, 2005) at pp. 92:8-93:13, a copy of which is attached

as Exhibit 5.

Defendants' counsel should not be rewarded for having misled the Court. Neither the requested itemization (the factual basis for which Defendants already possess), nor, as more fully discussed below, tax returns or federal tax forms 1099-INT are relevant to any issues in this case.

**IV.**

Defendants request for tax returns is equally misleading. Here, again, Defendants falsely contend that the forms 1099-INT and the tax returns are relevant for the purpose of ascertaining Plaintiffs' actual damages because the forms and tax returns would indicate the interest Plaintiffs earned in other accounts. Memorandum in Support of Defendants' Motion to Compel and For Sanctions at p. 10.

So what? The gross amount of interest Plaintiffs earned in other accounts is not the relevant inquiry, even under Defendants' twisted version of what constitutes Plaintiffs' actual damages.

If, as Defendants contend with regard to Interrogatory 22, that Plaintiffs' theory of damages is that "if they had known the truth about Fidelity's BillPay Service, they [Plaintiffs] would have chosen to pay their bills from other accounts," again, as is fully set forth above, this is simply not true. Plaintiffs are simply allowing their creditors (their designated payees) to directly debit their accounts so that Plaintiffs maintain ownership and control over their monies and continue to earn interest until the actual receipt of the monies by their designated payees and Plaintiffs do not have to share their monies or the interest thereon with Fidelity or its unidentified agent (CheckFree Services Corporation ("CheckFree")).

Moreover, even assuming, *arguendo,* that Defendants' theory is correct, the relevant inquiry is not the <u>gross</u> amount of interest that Plaintiffs earned from other accounts, but the <u>rate</u> at which they earned interest so that a calculation can be made as to the interest Plaintiffs would

have earned had they placed their BillPay monies in other accounts and wrote checks from those accounts or used an electronic bill payment service affiliated with those accounts.

However, that information is set forth on the monthly bank statements that have already been produced to Defendants. Thus, Defendants—which already know the amount of each of Plaintiffs' BillPay transactions, when the payment amounts were actually debited from Plaintiffs accounts and placed into Fidelity and CheckFree accounts, and (from CheckFree) when the amounts were actually paid—can easily calculate what they consider to be Plaintiffs' actual damages. Federal tax form 1099-INTs are irrelevant to the inquiry and an unnecessary intrusion into Plaintiffs' private affairs.

Indeed, this case is all about Defendants' failure to properly disclose, among other things, the following:

(i) That Plaintiffs' bills were not being paid "directly" from their account, as Defendants represented;

(ii) That Fidelity was not, and would not be, paying interest on the monies designated for payment until the designated payee actually presented the check for payment or actually received the monies via electronic transfer;

(iii) That Fidelity transferred Plaintiffs' BillPay monies to CheckFree Services Corporation;

(iv) About CheckFree Services Corporation, including the financial stability of the company, in order to allow the subscriber an opportunity to make a reasoned determination about the company, the BillPay Service and whether to use the BillPay Service;

(v) That CheckFree Services Corporation earned interest on Plaintiffs' BillPay

6

>   monies, the rate at which CheckFree Services Corporation earned interest on the monies, and/or the amount earned;
>
> (vi)   That CheckFree Services Corporation does not segregate or hold in trust the monies it receives from Fidelity as part of the BillPay Service and that CheckFree Services Corporation commingles the monies it received from Fidelity as part of the BillPay Service with other monies;
>
> (vii)   That Fidelity could have used laser drafts to make the payments from Plaintiffs' BillPay accounts, rather than permit corporate checks to be drawn on CheckFree Services Corporation's corporate account;
>
> (viii)   That Plaintiffs would lose the ownership and/or lose use of their monies between the transaction date and the time of actual payment to the designated payee; and,
>
> (ix)   That Fidelity and/or its agent, CheckFree Services Corporation, would earn a higher rate of interest on the Plaintiffs' monies than it paid to the Plaintiffs.

Plaintiffs' actual damages are the loss of ownership of its monies and the interest they would have made on those monies <u>at Fidelity</u> had Fidelity properly disclosed the above-referenced, namely, interest that would have been earned until the dates on which Plaintiffs' designated payees actually received the monies and/or made presentment against Plaintiffs' BillPay accounts.

To repeat, nothing on a federal tax form 1099-INT provides any information as to this. Rather, a federal tax form 1099-INT only shows the gross amount of interest earned on a given interest bearing account during the course of a calendar year. The form does not provide any information as to the fluctuating interest rates on the accounts or provide any detailed information as which rates and for what period of time the monies were earning interest.

7

V.

Second, Defendants contend that Plaintiffs' tax returns are necessary to somehow corroborate whether Plaintiffs' production of 1099-INT forms is complete. This, too, is absurd. As set forth above, the 1099-INT forms, themselves are irrelevant. So, too, then are the tax returns. Moreover, the forms 1099-INT are not attached to the tax returns. Accountants and taxpayers simply enter the information onto the appropriate schedule ("B"), which is typically all of the information on a tax return that indicates the interest earned. In other words, only about five percent of any given tax return sets forth the interest earned. Thus, the production of the entire tax return is unnecessary to allegedly corroborate the interest earned as set forth on the form 1099-INTs.

VI.

Third, Defendants contend that there has been differing testimony about the Plaintiffs' residence and that the residence is significant because under a conflict of laws analysis because, although the subject Fidelity agreements all provide for the application of Massachusetts law that, choice, allegedly, may not be honored because of public policy concerns. *Id*.

Fidelity's contentions here are also misplaced. The parties have been litigating this case on the basis that Massachusetts law does apply to the Fidelity agreements. At the initial hearing before this Court, on Defendants' motion to dismiss and for summary judgment, the Court held that Massachusetts law applies and that was the basis for the dismissal of Plaintiffs' claims for Defendants' violations of District of Columbia Consumer Procedures Protection Act. The law of the case is that Massachusetts law applies.

Moreover, Plaintiffs' tax returns are an unnecessary intrusion into Plaintiffs' private financial affairs. The only place that an address is listed on a tax return is the first page.

8

Furthermore, the Defendants again misrepresent the deposition testimony. Plaintiffs testified that they maintained a residence in the District of Columbia until sometime after the commencement of this case in 2003.

In short, Plaintiffs tax returns are irrelevant to any inquiry in this case. Defendants are simply attempting to intimidate and harass Plaintiffs and to delve into their private financial affairs.

**VII.**

WHEREFORE, for the foregoing reasons, Plaintiffs, Joan Berenson and David Berenson, respectfully request this Court to deny Defendants' motion to compel and for sanctions.

Dated: May 24, 2005                                            Respectfully submitted,


//ss// Douglas A. Rubel
Douglas A. Rubel [*pro hac vice*]
JOHANSON BERENSON LLP
201 Shannon Oaks Circle, Suite 200
Cary, North Carolina 27511
(919) 654-4544

Attorneys for Plaintiffs