# Exhibit Three

**(Plaintiffs' Supplemental Answers to Defendants'
Second Set of Interrogatories)**

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOAN BERENSON, individually and on behalf of all others similarly situated; and DAVID BERENSON, individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) | Civil Action 04 CV 11311 WGY |
| NATIONAL FINANCIAL SERVICES LLC; FIDELITY BROKERAGE SERVICES LLC; and DOES 1-50, inclusive, | ) ) ) ) | |
| Defendants | ) ) | |

### PLAINTIFFS' SUPPLEMENTAL ANSWERS TO DEFENDANTS' SECOND SET OF INTERROGATORIES

Plaintiffs, Joan Berenson and David Berenson, each individually and on behalf of all other similarly situated, supplement their answers Defendants' second set of interrogatories, as follows:

## I.   PRELIMINARY STATEMENT

Plaintiffs have not completed their investigation of all of the facts relating to this case, have not fully completed their discovery in this action, and have not completed their preparation for trial. Thus, the following responses are based only upon such information and documents presently available to and specifically known to Plaintiffs, and said responses disclose only those contentions which presently occur to Plaintiffs. Plaintiffs anticipate that further discovery, independent investigation and legal research and analysis will supply additional facts, add meaning to known facts, and establish entirely new factual conclusions and legal contentions

herein set forth. The following responses are given without prejudice to Plaintiffs' rights to produce evidence at trial. Plaintiffs accordingly reserve their right to amend any and all responses herein as additional facts are ascertained, analysis made, legal research is completed and contentions are formulated. These responses contained herein are made in a good faith effort to supply as much factual information and as much specification as is presently known, but should in no way be to the prejudice of Plaintiffs in relation to further discovery, research, analysis or proof.

Moreover, these responses are made solely for the purpose of this action and are subject to objections as to competence, relevance, materiality, propriety, and admissibility, and any other objection or grounds that would require exclusion of any statement made herein if such statement were made by a witness present and testifying in Court, all of which objections and grounds are reserved and may be interposed at time of trial.

No incidental or implied admissions are intended by these responses. The fact that Plaintiffs respond or object to any Interrogatory should not be taken as an admission that Plaintiffs accept or admit the existence of any facts assumed by such Interrogatory, or that such response or objection constitutes admissible evidence as to any such assumed facts. The fact that Plaintiffs respond or object to any Interrogatory should not be taken, and is not intended to act, as a waiver by Plaintiffs of any objection to an Interrogatory.

## II.      **General Objections**

1.      Plaintiffs object to each Interrogatory, and the Definitions and/or Instructions accompanying the Interrogatories, to the extent that they differ from or impose requirements beyond those set forth in the Federal Rules.

2.      Plaintiffs object to each Interrogatory, and the Definitions and/or Instructions accompanying the Interrogatories, to the extent that they seek information or documents protected by the attorney-client privilege, the attorney work product doctrine, or any other rule of privilege, confidentiality, or immunity provided by law.

3.      Plaintiffs object to each Interrogatory, and any Definitions and/or Instructions accompanying the Interrogatories, to the extent that they seek information that is or is embodied in a publicly available pleading, document or other filing.

4.      Plaintiffs do not concede that any information or document they provide in response to any Interrogatory is relevant to this litigation, and specifically reserve the right to object to further discovery in the subject matter of any Interrogatory and to the introduction into evidence of any information or document provided.

5.      The information supplied in these answers is not based solely on the knowledge of the executing party, but includes knowledge of the party, its agent, representatives and attorneys, unless privileged.

6.      Plaintiffs object to each of the Interrogatories to the extent that the Interrogatories seek information that is not in the possession, custody or control of Plaintiffs.

7.      The word usage, sentence structure and syntax may be that of the attorney assisting in the preparation of these answers, and thus, does not necessarily purport to be the precise language of the executing party.

**III.    ANSWERS TO INTERROGATORIES**

12.     Identify all false or misleading advertising upon which you contend that you relied. For each piece of advertising, identify: (i) the medium and content of the advertisement; (ii) what specifically was misleading about the advertisement; (iii) the date(s) upon which you heard or saw the advertisement; (iv) any action(s) you took or refrained from taking in reliance upon the advertisement; (v) any damages you suffered as a result of the action or inaction.

**Answer:** Any and all of Defendants' advertising for the BillPay Service that fails to fully and completely set forth that interest will not be paid on monies between the time that any funds are designated for payment and until such time as the intended designee of the monies actually receives the monies. Specific identification cannot be made until the Plaintiffs have completed their discovery, as the advertising in question is in the possession of the Defendants.

Any and all of Defendants' documents (including media advertising) or other information provided to BillPay customers for the BillPay Service that fails to fully and completely set forth that interest or other value will not be paid on a customer's monies between the time that any

3

funds are designated for payment and until such time as the intended designee of the monies actually receives the monies constitutes a deceptive business practice.

An example of the documentation is included in Plaintiffs' Response to Defendants' Requests for Production of Documents and is identifiable as "Everyday Finances" addressed to "Berenson & Company Intl." Plaintiffs do not have possession of any other such documents, except as may have been provided as part of Defendants' Motion for Summary Judgment some of which was also reproduced to Defendants.

Damages cannot be calculated at this time. The information relating to the cost and damage of the use of the BillPay System by the Plaintiffs is within the possession of the Defendants and not the Plaintiffs, as only Fidelity knows exactly how and when or in what specific manner it effectuated transactions under the BillPay System for the Plaintiffs.

**Supplemental Answer: Plaintiffs had initially subscribed to and were enrolled in an electronic bill payment service provided by Fidelity in the 1980s. That bill payment service was essentially a check-writing service wherein Fidelity, for a certain fee, wrote checks for Plaintiffs to whomever Plaintiffs designated be paid.**

**Plaintiffs have also had a relationship with Fidelity for a considerable period of time, indeed, for about the same tenure of their electronic bill payment relationship with Fidelity.**

**From at least the commencement of Plaintiffs' subscription to the Fidelity electronic bill payment service and relationship with Fidelity to the present, Plaintiffs have been inundated each month with papers, fliers, statements, purported notices, advertising and other documents. After twenty or so years, however, they cannot recall each and every of the numerous documents they received.**

Plaintiffs received documents that purport to describe an electronic bill payment service – BillPay – from which Fidelity purports to pay bills "directly from your account." A copy of some of these documents has been provided to Plaintiffs by Fidelity. If requested, Plaintiffs will send a copy of these documents to Defendants.

What was misleading about the documents was (i) Fidelity's affirmative representations that bills were being paid directly from a BillPay subscriber's account; (ii) Fidelity's failure to apprise Plaintiffs, or any of the other BillPay subscribers or potential subscribers, that Fidelity was not, and would not be, paying interest on the monies designated for payment until the designated payee actually presented the check for payment or actually received the monies via electronic transfer; (iii) Fidelity's failure to apprise Plaintiffs, and any of the other BillPay subscribers or potential subscribers, that Fidelity transferred a BillPay subscriber's monies to CheckFree Services Corporation; (iv) Fidelity's failure to apprise Plaintiffs, or any of the other BillPay subscribers or potential subscribers, about CheckFree Services Corporation, including the financial stability of the company, in order to allow the subscriber an opportunity to make a reasoned determination about the company, the BillPay Service and whether to use the BillPay Service; (v) Fidelity's failure to apprise Plaintiffs, and any of the other BillPay subscribers or potential subscribers, that CheckFree Services Corporation earned interest on Plaintiffs' BillPay monies and/or those of any of the other BillPay subscribers or potential subscribers, the rate at which CheckFree Services Corporation earned interest on the monies, and/or the amount earned; (vi) Fidelity's failure to apprise Plaintiffs, and any of the other BillPay subscribers or potential subscribers, that CheckFree Services Corporation does not segregate or hold in trust the monies it receives from Fidelity as part

5

of the BillPay Service and that CheckFree Services Corporation commingles the monies it received from Fidelity as part of the BillPay Service with other monies; (vii) Fidelity's failure to apprise Plaintiffs, or any of the other BillPay subscribers or potential subscribers, that Fidelity could have used laser drafts to make the payments from the BillPay subscriber's accounts, rather than permit corporate checks to be drawn on CheckFree Services Corporation's corporate account; (viii) Fidelity's failure to apprise Plaintiffs, or any of the other BillPay subscribers or potential subscribers, that Plaintiffs and/or the BillPay subscribers would lose the ownership and/or lose use of their monies between the transaction date and the time of actual payment to the designated payee; and (ix) Fidelity's failure to apprise Plaintiffs, or any of the other BillPay subscribers or potential subscribers, that Fidelity and/or its agent, CheckFree Services Corporation, would earn a higher rate of interest on the Plaintiffs' and/or BillPay subscriber's monies than it paid to the Plaintiffs and/or BillPay subscribers.

Plaintiffs do not presently know the dates on which they received the above-referenced advertising.  The dates of mailing can be obtained from Defendants.

As a result of the advertising, Plaintiffs kept their monies in the Fidelity BillPay Service and did not either (i) contact their designated payees and made arrangements for them to directly debit Plaintiffs' accounts to pay the subject bills or (ii) move their monies to another electronic bill payment service.

Plaintiffs suffered actual damages in the amount of lost interest they would have earned, the amount of which cannot presently be calculated, plus the loss of ownership of the monies.

      13.    Identify all misrepresentations by Fidelity upon which you contend that you relied.  For each, identify specifically:  (i) the particular document or

6

statement alleged to be misleading, its content, its date, and its source; (ii) what specifically was misleading about the document or statement; (iii) the date(s) upon which you saw or heard the document or statement; (iv) any action(s) which you took or refrained from taking in reliance on the alleged omission of material fact; and (v) identify any damages suffered as a result of such action or inaction.

**Answer:** In addition to their general objections, Plaintiffs object to Interrogatory 13 on the grounds that it is overbroad, unduly burdensome and harassing. Interrogatory 13 is a collection of previously propounded interrogatories that Plaintiffs have already answered. Without waiving their objections, Plaintiffs state that all of Fidelity's documentation regarding the BillPay Service fails to disclose the true cost of the use of the Fidelity BillPay Service; fails to disclose that Fidelity does not transfer monies under the BillPay Service to the intended recipient without first taking ownership of, and benefit to, said monies; fails to disclose that Fidelity transfers the BillPay customer's monies to a third party (CheckFree Corporation), which then transfers it to the BillPay customer's designated payee; and fails to disclose that the BillPay Service customer will not have the benefit of their money during the time Fidelity has taken ownership of such monies. Defendants' documentation fails to fully and completely inform Plaintiffs and all other Fidelity BillPay Service subscribers of the foregoing information.

Plaintiffs relied upon each and every document they saw in taking the actions they took in their use of the BillPay Service. It is the entire gestalt, if you will, of the Fidelity BillPay Service and the overall failure of the documentation to provide clear and precise information that is necessary for consumers to make an educated decision as to the operation of the BillPay Service that is at issue in this case. As fully and completely set forth in Answer to Interrogatory 1, any electronic bill payment system which, after having been directed to make a certain payment, transfers said monies to the intended recipient in the most commercially expedient manner available is less expensive than Fidelity's BillPay Service because (i) Fidelity does not

7

always transfer monies under its BillPay service in the most commercially expedient manner and (ii) does not pay interest on the customers' monies, or pay any other value to the customer, after having transferred the customers' monies out of the customers' account and before actually paying the monies to the intended recipient, as directed by the customer.

Plaintiffs' damages cannot be estimated at this time because all of the relevant information is in the possession of Defendants.

**Supplemental Answer: Plaintiffs had initially subscribed to and were enrolled in an electronic bill payment service provided by Fidelity in the 1980s. That bill payment service was essentially a check-writing service wherein Fidelity, for a certain fee, wrote checks for Plaintiffs to whomever Plaintiffs designated be paid.**

**Plaintiffs have also had a relationship with Fidelity for a considerable period of time, indeed, for about the same tenure of their electronic bill payment relationship with Fidelity.**

**From at least the commencement of Plaintiffs' subscription to the Fidelity electronic bill payment service and relationship with Fidelity to the present, Plaintiffs have been inundated each month with papers, fliers, statements, purported notices, advertising and other documents. After twenty or so years, however, they cannot recall each and every of the numerous documents they received.**

**Plaintiffs received documents that purport to describe an electronic bill payment service – BillPay – from which Fidelity purports to pay bills "directly from your account." A copy of some of these documents has been provided to Plaintiffs by Fidelity. If requested, Plaintiffs will send a copy of these documents to Defendants.**

**What was misleading about the documents was (i) Fidelity's affirmative**

8

**representations that bills were being paid directly from a BillPay subscriber's account; (ii) Fidelity's failure to apprise Plaintiffs, or any of the other BillPay subscribers or potential subscribers, that Fidelity was not, and would not be, paying interest on the monies designated for payment until the designated payee actually presented the check for payment or actually received the monies via electronic transfer; (iii) Fidelity's failure to apprise Plaintiffs, and any of the other BillPay subscribers or potential subscribers, that Fidelity transferred a BillPay subscriber's monies to CheckFree Services Corporation; (iv) Fidelity's failure to apprise Plaintiffs, or any of the other BillPay subscribers or potential subscribers, about CheckFree Services Corporation, including the financial stability of the company, in order to allow the subscriber an opportunity to make a reasoned determination about the company, the BillPay Service and whether to use the BillPay Service; (v) Fidelity's failure to apprise Plaintiffs, and any of the other BillPay subscribers or potential subscribers, that CheckFree Services Corporation earned interest on Plaintiffs' BillPay monies and/or those of any of the other BillPay subscribers or potential subscribers, the rate at which CheckFree Services Corporation earned interest on the monies, and/or the amount earned; (vi) Fidelity's failure to apprise Plaintiffs, and any of the other BillPay subscribers or potential subscribers, that CheckFree Services Corporation does not segregate or hold in trust the monies it receives from Fidelity as part of the BillPay Service and that CheckFree Services Corporation commingles the monies it received from Fidelity as part of the BillPay Service with other monies; (vii) Fidelity's failure to apprise Plaintiffs, or any of the other BillPay subscribers or potential subscribers, that Fidelity could have used laser drafts to make the payments from the BillPay subscriber's accounts, rather than permit corporate checks to be drawn on**

9

CheckFree Services Corporation's corporate account; (viii) Fidelity's failure to apprise Plaintiffs, or any of the other BillPay subscribers or potential subscribers, that Plaintiffs and/or the BillPay subscribers would lose the ownership and/or lose use of their monies between the transaction date and the time of actual payment to the designated payee; and (ix) Fidelity's failure to apprise Plaintiffs, or any of the other BillPay subscribers or potential subscribers, that Fidelity and/or its agent, CheckFree Services Corporation, would earn a higher rate of interest on the Plaintiffs' and/or BillPay subscriber's monies than it paid to the Plaintiffs and/or BillPay subscribers.

Moreover, in addition to the advertising and other documents Plaintiffs received from Fidelity, Plaintiffs had numerous telephone calls with Fidelity concerning the BillPay Service. At no time during any of these telephone calls, with one exception in or about October 2002, did any Fidelity representative apprise Plaintiffs that Fidelity was not, and would not be, paying interest on the monies designated for payment until the designated payee actually presented the check for payment or actually received the monies via electronic transfer. None of the Fidelity representatives apprised Plaintiffs (i) that Plaintiffs' bills were not being paid directly from their account; (ii) that Fidelity was not, and would not be, paying interest on the monies designated for payment until the designated payee actually presented the check for payment or actually received the monies via electronic transfer; (iii) that Fidelity transferred a BillPay subscriber's monies to CheckFree Services Corporation; (iv) about CheckFree Services Corporation, including the financial stability of the company, in order to allow the subscriber an opportunity to make a reasoned determination about the company, the BillPay Service and whether to use the BillPay Service; (v) that CheckFree Services Corporation earned interest on Plaintiffs'

10

**BillPay monies, the rate at which CheckFree Services Corporation earned interest on the monies, and/or the amount earned; (vi) that CheckFree Services Corporation does not segregate or hold in trust the monies it receives from Fidelity as part of the BillPay Service and that CheckFree Services Corporation commingles the monies it received from Fidelity as part of the BillPay Service with other monies; (vii) that Fidelity could have used laser drafts to make the payments from the BillPay subscriber's accounts, rather than permit corporate checks to be drawn on CheckFree Services Corporation's corporate account; (viii) that Plaintiffs and/or the BillPay subscribers would lose the ownership and/or lose use of their monies between the transaction date and the time of actual payment to the designated payee; and (ix) that Fidelity and/or its agent, CheckFree Services Corporation, would earn a higher rate of interest on the Plaintiffs' and/or BillPay subscriber's monies than it paid to the Plaintiffs and/or BillPay subscribers.**

**Plaintiffs do not presently know the dates on which they received the above referenced advertising or spoke with the Fidelity representatives. The dates of mailing can be obtained from Defendants. The dates of the telephone calls can be obtained from the Fidelity recordings that Fidelity has already produced in this case. Pursuant to Federal Rule 33(d), Plaintiffs will produce a copy of those recordings to Fidelity, if so requested.**

**As a result of the advertising and the failure of the Fidelity representatives to be truthful about the BillPay Service, Plaintiffs kept their monies in the Fidelity BillPay Service and did not either (i) contact their designated payees and made arrangements for them to directly debit Plaintiffs' accounts to pay the subject bills or (ii) move their monies to another electronic bill payment service.**

**Plaintiffs suffered actual damages in the amount of lost interest they would have**

**earned, the amount of which cannot presently be calculated, and loss of ownership of the monies.**

> 14. Identify all material facts that you contend Fidelity omitted from its disclosures concerning BillPay. For each, (i) identify specifically the fact omitted; (ii) state the basis for your contention that the fact is material; (iii) identify any action(s) which you took or refrained from taking in reliance upon the alleged omission of material fact; and (v) [sic] identify any damages suffered as a result of such action or inaction.

**Answer:** In addition to its general objections, Plaintiffs object to Interrogatory 14 on the ground that it is overbroad, unduly burdensome and harassing. Without waiving their objections, Plaintiffs state that all of Fidelity's documentation regarding the BillPay Service fails to disclose the true cost of the use of the Fidelity BillPay Service; fails to disclose that Fidelity does not transfer monies under the BillPay Service to the intended recipient without first taking ownership of, and benefit to, said monies; fails to disclose that Fidelity transfers the BillPay customer's monies to a third party (CheckFree Corporation), which then transfers it to the BillPay customer's designated payee; and fails to disclose that the BillPay Service customer will not have the benefit of their money during the time Fidelity has taken ownership of such monies. Defendants' documentation fails to fully and completely inform Plaintiffs and all other Fidelity BillPay Service subscribers of the foregoing information.

Plaintiffs relied upon each and every document they saw in taking the actions they took in their use of the BillPay Service. It is the entire "gestalt" of the Fidelity BillPay Service and the overall failure of the documentation to provide clear and precise information that is necessary for consumers to make an educated decision as to the operation of the BillPay Service that is at issue in this case. As fully and completely set forth in Answer to Interrogatory 1, any electronic bill payment system which, after having been directed to make a certain payment, transfers said monies to the intended recipient in the most commercially expedient manner available is less

expensive than Fidelity's BillPay Service because (i) Fidelity does not always transfer monies under its BillPay service in the most commercially expedient manner and (ii) does not pay interest on the customers' monies, or pay any other value to the customer, after having transferred the customers' monies out of the customers' account and before actually paying the monies to the intended recipient, as directed by the customer.

Damages cannot be calculated at this time. The information relating to the cost and damage of the use of the BillPay System by the Plaintiffs is within the possession of the Defendants and not the Plaintiffs, as only Fidelity knows exactly how and when or in what specific manner it effectuated transactions under the BillPay System for the Plaintiffs.

**Supplemental Answer: What was misleading about the documents was (i) Fidelity's affirmative representations that bills were being paid directly from a BillPay subscriber's account; (ii) Fidelity's failure to apprise Plaintiffs, or any of the other BillPay subscribers or potential subscribers, that Fidelity was not, and would not be, paying interest on the monies designated for payment until the designated payee actually presented the check for payment or actually received the monies via electronic transfer; (iii) Fidelity's failure to apprise Plaintiffs, and any of the other BillPay subscribers or potential subscribers, that Fidelity transferred a BillPay subscriber's monies to CheckFree Services Corporation; (iv) Fidelity's failure to apprise Plaintiffs, or any of the other BillPay subscribers or potential subscribers, about CheckFree Services Corporation, including the financial stability of the company, in order to allow the subscriber an opportunity to make a reasoned determination about the company, the BillPay Service and whether to use the BillPay Service; (v) Fidelity's failure to apprise Plaintiffs, and any of the other BillPay subscribers or potential subscribers, that CheckFree Services Corporation earned interest on**

**Plaintiffs' BillPay monies and/or those of any of the other BillPay subscribers or potential subscribers, the rate at which CheckFree Services Corporation earned interest on the monies, and/or the amount earned; (vi) Fidelity's failure to apprise Plaintiffs, and any of the other BillPay subscribers or potential subscribers, that CheckFree Services Corporation does not segregate or hold in trust the monies it receives from Fidelity as part of the BillPay Service and that CheckFree Services Corporation commingles the monies it received from Fidelity as part of the BillPay Service with other monies; (vii) Fidelity's failure to apprise Plaintiffs, or any of the other BillPay subscribers or potential subscribers, that Fidelity could have used laser drafts to make the payments from the BillPay subscriber's accounts, rather than permit corporate checks to be drawn on CheckFree Services Corporation's corporate account; (viii) Fidelity's failure to apprise Plaintiffs, or any of the other BillPay subscribers or potential subscribers, that Plaintiffs and/or the BillPay subscribers would lose the ownership and/or lose use of their monies between the transaction date and the time of actual payment to the designated payee; and (ix) Fidelity's failure to apprise Plaintiffs, or any of the other BillPay subscribers or potential subscribers, that Fidelity and/or its agent, CheckFree Services Corporation, would earn a higher rate of interest on the Plaintiffs' and/or BillPay subscriber's monies than it paid to the Plaintiffs and/or BillPay subscribers.**

> 20. Identify all alleged unfair or deceptive acts or practices by Fidelity in regard to BillPay. For each, identify; (i) the particular act or practice alleged to be unfair or deceptive; (ii) what specifically makes the practice unfair or deceptive; (iii) any action(s) which you took or refrained from talking in reliance on the alleged unfair or deceptive act or practice; (iv) any damages suffered as a result of such action or inaction; (v) any other damages suffered as a result of the alleged unfair act or practice.

**Answer:** See Answers to Interrogatories 12, 13, 14, 15 and 18, above.

**Supplemental Answer:   See Supplemental Answers to Interrogatories 12, 13, and 14, above, and Answers to Interrogatories 15 and 18.**

22. Identify, on a month-end basis for each month since January 1, 1999, the amount of money that you held in checking accounts that earn interest, the interest rate on each such account, and the amount of money that you have held in checking accounts that do not earn interest.

**Answer:** In addition to their general objections, Plaintiffs object to Interrogatory 22 on the grounds that it seeks information that is not relevant to this case and is not reasonably calculated to lead to the discovery of admissible evidence.  Moreover, Plaintiffs object on the grounds that Interrogatory 22 is overbroad, unduly burdensome and harassing.

**Supplemental Answer: In addition to their general objections, Plaintiffs object to Interrogatory 22 on the grounds that it seeks information that is not relevant to this case and is not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving their specific or general objections, Plaintiffs state that, pursuant to Federal Rule 33(d), the Plaintiffs have already produced all documents in their possession, custody and control from which this information may be derived.**

24. With respect to each of the payees to which you have made payment through the BillPay service since September 1, 1999, identify the manner by which you contend Fidelity should have transmitted payment if other than how payment was in fact transmitted, and state the basis for your contention that payment should have been transmitted in this manner.

**Answer:**  Plaintiffs cannot answer this Interrogatory unless and until Defendants provide the necessary predicate information as to exactly how each of the payees was paid.  What is known at this time is that Plaintiffs' accounts should not have been debited unless and until present of payment by the payees.

**Supplemental Answer:   Each of the payees capable of receiving an electronic payment should have received an electronic payment.  This includes financial institutions**

15

**such as Fidelity and First National Bank of Maryland, k/n/a M&T Bank. This may also include large utility companies such as Washington Gas and PEPCO, although Plaintiffs**

**are unaware of how these utilities were actually paid. Each of these payees should presently receive them either on the transaction date or no later than the next day.**

**Each of the payees who are not capable of receiving an electronic payment should have received a laser draft written directly on the Plaintiffs' accounts, not a standard check from CheckFree written on a CheckFree account. This would have allowed the Plaintiffs to earn interest on their monies until the date of presentment against their account by the designated payee. Plaintiffs' payees, such as Barhite & Holzinger, would fit into this category.**

As to Objections:

Dated: May 19, 2005

Respectfully submitted,

_____
Douglas A. Rubel, Esquire
Johanson Berenson LLP
201 Shannon Oaks Circle, Suite 200
Cary, North Carolina 27511
(919) 654-4544

AS TO THE ANSWERS:

Under the pains and penalties of perjury, I hereby swear and affirm that the foregoing facts are true and correct to the best of my knowledge, information and belief.

Dated: May ___, 2005

_____
JOAN BERENSON

Dated: May ___, 2005

_____
DAVID BERENSON

## **Certificate of Service**

I hereby certify that on this 20th day of May 2005, a copy of the foregoing was mailed, via overnight mail, postage prepaid, and forwarded via facsimile to:

Nicholas C. Theodorou, Esquire
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617 832 7000)

_____

Douglas A. Rubel

are unaware of how these utilities were actually paid. Each of these payees should presently receive them either on the transaction date or no later than the next day.

Each of the payees who are not capable of receiving an electronic payment should have received a laser draft written directly on the Plaintiffs' accounts, not a standard check from CheckFree written on a CheckFree account. This would have allowed the Plaintiffs to earn interest on their monies until the date of presentment against their account by the designated payee. Plaintiffs' payees, such as Barhite & Holzinger, would fit into this category.

As to Objections:

Dated: May 19, 2005                    Respectfully submitted,

                                       _____
                                       Douglas A. Rubel, Esquire
                                       Johanson Berenson LLP
                                       201 Shannon Oaks Circle, Suite 200
                                       Cary, North Carolina 27511
                                       (919) 654-4544

AS TO THE ANSWERS:

Under the pains and penalties of perjury, I hereby swear and affirm that the foregoing facts are true and correct to the best of my knowledge, information and belief.

Dated: May 19, 2005                    _____
                                       JOAN BERENSON

Dated: May 19, 2005                    _____
                                       DAVID BERENSON

13