

# FOLEY HOAG LLP
## ATTORNEYS AT LAW

# Fax

Date:    April 8, 2005

To:    Douglas Rubel    Fax #: 309-285-1044    Confirm#:

Client Matter#:    19204-6

From:    John A. Shope    Sender's Number:    617-832-1233    User #:

Total Pages Sent (Including Cover Sheet):    12    Office:    Boston

**Message**

**IMPORTANT — PLEASE READ**
THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENTS NAMED ABOVE. THIS MESSAGE MAY BE AN ATTORNEY-CLIENT COMMUNICATION AND AS SUCH IS PRIVILEGED AND CONFIDENTIAL. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT OR AN AGENT RESPONSIBLE FOR DELIVERING IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT YOU HAVE RECEIVED THIS DOCUMENT IN ERROR, AND THAT ANY REVIEW, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS MESSAGE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US BY MAIL. THANK YOU.

IF THERE ARE ANY PROBLEMS WITH THIS TRANSMISSION PLEASE TELEPHONE THE SENDER.

Seaport World Trade Center West / 155 Seaport Blvd. / Boston, MA 02210-2600 / TEL: 617.832.1000 / FAX: 617.832.7000
Foley Hoag LLP          BOSTON          WASHINGTON, DC          www.foleyhoag.com



# FOLEY HOAG LLP
### ATTORNEYS AT LAW

John A. Shope
Partner
Boston Office
617.832.1233
jshope@foleyhoag.com

April 8, 2005

**By Telecopier (309-285-1044) and First Class Mail**

Douglas A. Rubel, Esquire
Johanson Berenson LLP
201 Shannon Oaks Circle, Suite 200
Cary, NC 27511

> Re: *Re: Berenson et al. v. National Financial Services LLC et al.,*
> **Civil No. 04-11311 (WGY) (D. Mass.)**

Dear Mr. Rubel:

I write this letter in response to your letter dated April 3, 2005 regarding the defendants' discovery responses. Generally, and despite its length (15 pages), I do not believe that your letter comports with the requirements of Local Rules 7.1(A)(2) and 26.2(c) as you have merely repeated your requests without suggesting any means of narrowing disagreement. This is especially so when many of your interrogatories and document requests were of a generic nature not drafted for the particulars of the present case in the first place.

I address the specifics of your requests and our objections below. First, however, I will address two demands that you repeat throughout your letter: (1) "Fidelity must identify any and all information, knowledge or documents that were withheld because of Fidelity's General or Specific Objection"; and (2) "Fidelity must identify any and all information, knowledge or documents that were withheld because of Fidelity's General or Specific Objection." Fidelity is under no obligation to supply this information. The Rules only impose such a duty where "a party withholds information otherwise discoverable ... by claiming that it is privileged or subject to protection as trial preparation material." *See* Fed. R. Civ. P. 26(b)(5). There is no duty to identify irrelevant information, knowledge or documents that were not produced in response to an objectionable discovery request.

B3017186.2

Douglas A. Rubel, Esquire
April 8, 2005
Page 2

## I.    DEFENDANTS' RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

### A.    *General Objections*

#### 1.    General Objection No. 2  (discovery concerning other class members)

Although this case is styled as a proposed class action, no class has been certified. Instead, at the February 16, 2005 motion hearing, Judge Young deferred decision on the plaintiffs' motion for class certification pending a trial on the Berensons' *individual* claims. Judge Young specifically stated that the Berensons' individual claims would be tried as an "exemplar case," noting that if they lose, then class certification will be denied because the Berensons will not be "typical" and the Rule 23(a) class certification prerequisites will not be satisfied. *See* Hearing Tr., at 17–18 (Feb. 16, 2005). At the hearing on March 3, 2005, at which the Court granted summary judgment in favor of the defendants on the disclosure claim under the Federal Electronic Transfer Act, Judge Young further noted that his ruling called into question the feasibility of class certification. *See* Hearing Tr. at 12-13 (March 3, 2005).

Information and documents concerning proposed class members other than the Berensons are irrelevant to trial of the Berensons' individual claims. We believe that, in the absence of an individual settlement as we have proposed (without any response from you), the plaintiffs' individual case will be dismissed before or after trial. It would be unduly burdensome and expensive to collect and produce information at most relevant to other persons at this time. In the unlikely event that the Berensons' prevail on the trial of their individual claims and a class is later certified, we can revisit the proper and necessary scope of class-wide discovery.

#### 2.    General Objection No. 6  (discovery of information or documents not in Fidelity's possession, custody, or control)

This objection relates to any request that, in whole or in part, seeks information or documents *not* within Fidelity's possession, custody or control. Your assertion that information in the possession, custody, or control of CheckFree is necessarily also within Fidelity's control lacks any basis in law or fact. Fidelity has an arms-length commercial purchaser-vendor contractual relationship with CheckFree. Fidelity has no contractual or other legal basis to demand information and documents from CheckFree other than as specified in their contract for circumstances not applicable here.

### B.    *Specific Objections and Answers to Interrogatories*

#### 1.    Interrogatory No. 1 (persons who assisted in answering interrogatories)

Douglas A. Rubel, Esquire
April 8, 2005
Page 3

Fidelity's answer was complete speaks for itself. Your follow-up questions are not contemplated by the original interrogatory text and furthermore seek information protected by the attorney-client privilege and work product doctrine.

### 2. Interrogatory No. 3 (expert witnesses)

I am puzzled by your assertion of "bad faith." Fidelity will comply with the terms of Fed. R. Civ. P. 26(a)(2) and the court's scheduling order, which govern the terms and timing of expert disclosure. Fidelity is under no obligation to disclose consulting experts or work product and has made no final determination about expert testimony at trial.

### 3. Interrogatory Nos. 4 and 5 (basis of claims and defenses)

The plaintiffs are not entitled to discover the evolving mental impressions or legal opinions of Fidelity's counsel regarding what they consider to be Fidelity's available defenses and evidentiary support for them. Moreover, the interrogatories are phrased in an overbroad and open-ended fashion to avoid the limitation on the number of interrogatories in Local R. Civ. P. 26.1(C).

### 4. Interrogatory No. 6 (agreement with CheckFree)

Fidelity's response to this interrogatory is full and complete. Fidelity identified its agreement with CheckFree and is producing it in response to your document requests.

### 5. Interrogatory No. 7 (advertising)

Fidelity's BillPay advertising is irrelevant to the Berensons' claims since they have indicated that they neither saw nor relied on any BillPay advertising. Despite this fact, Fidelity agreed to produce documents concerning BillPay advertising, which is a sufficient answer under the Rule 33(d).

### 6. Interrogatory No. 8 (BillPay fees)

Fidelity's response to this interrogatory is full and complete. The follow-up questions in your letter are not contemplated in the original interrogatory text and require no response. The lost opportunity to earn interest is not a "fee."

### 7. Interrogatory No. 10 (knowledge of other BillPay services)

Fidelity, as an entity, cannot be "aware" of other BillPay services and it would be not only unduly burdensome but also impossible to identify the "awareness" of such services of every Fidelity director, shareholder, partner, joint venturer, officer, employee, agent, proprietor, and independent contractor," as your definitions and instructions would require. Moreover, any "awareness" of other BillPay services developed for purposes of this litigation is protected work product.

Douglas A. Rubel, Esquire
April 8, 2005
Page 4

Notwithstanding these flaws in your request, Fidelity has agreed to produce documents concerning its historical consideration of different BillPay models, which is a sufficient response under Rule 33(d).

### 8. Interrogatory No. 11 (oral statements of plaintiffs)

Fidelity has agreed produce XTRAC entries, Symphony entries, and available recorded telephone conversations for the Berensons' accounts which contain the oral statements requested. This is a sufficient response under Rule 33(d).

### 9. Interrogatory No. 12 (intention to rely on documents or things in support of "positions")

The term "position" is vague and ambiguous in this context. In any event, the plaintiffs are not entitled to discover the evolving mental impressions or legal opinions of Fidelity's counsel regarding possible litigation "positions" and evidence that supports such "positions." Again, the interrogatory is phrased in such an overbroad fashion to evade Local R. Civ. P.26.1(C) and in any event so as to preclude a meaningful response.

### 10. Interrogatory No. 13 (declaration against interest)

The Berensons are not entitled to the mental impressions or legal opinions of Fidelity's counsel regarding what they consider to be an "admission" or a declaration against their pecuniary interests. Every statement by the Berensons may be an "admission of a party opponent" admissible under Fed. R. Evid. 801(d)(2).

### C. *Privilege Log*

Fidelity will produce a privilege log as required by the Federal Rules when it has completed its document production.

### D. *Defendants' Certification*

Your comments regarding the certification are unfounded. The reservations made by Anne Warren Fagan in her certification of the answers on behalf of Fidelity take into account supplementation and correction of Fidelity's responses track the language of Rule 26(e).

## II. DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

### A. *Defendants' Introduction*

#### 1. Fidelity's Responses and the Existence of Documents

Your comments regarding Fidelity's Introduction are unwarranted. Fidelity has simply indicated that, with respect to each document request to which it does not make a

B3017186.2

Douglas A. Rubel, Esquire
April 8, 2005
Page 5

special objection, it will at attempt to gather responsive documents. In undertaking to locate documents, Fidelity cannot assure the Berensons in advance that it necessarily has located or can locate documents that are responsive to a particular request. Further, your assertion that Fidelity has a duty to state whether documents responsive to a particular request exist is not an obligation under the Rules and ignores the logic behind the duty to supplement responses under Rule 26(e).

### 2. Discussion Regarding Document Production

Fed. R. Civ. P. 34 requires a written response to document requests within thirty days and we complied. Under Rule 34 and Local R. Civ. P. 26.6(B) (2), documents may be produced by being made available for inspection and copying at your expense. Our copying and shipment to you at our expense is a courtesy. Furthermore, I note that, in an act of discourtesy, you refused any extension of time notwithstanding the fact that your clients did not produce documents until months after they were due. In any event, you had advised me the week before Easter that you would call me last week to discuss whether you wished to inspect documents at Fidelity's premise, or at Foley Hoag, or would instead prefer to receive copies of the documents at your office on a rolling basis. Since you never called to schedule a visit, we commenced rolling production documents via Federal Express on April 4, 2005.

### B. General Objections to the Document Requests

#### 1. General Objection No. 2 (documents not in Fidelity's possession, custody, or control)

Please see the discussion in Part I.A.2 above concerning documents not in Fidelity's possession, custody or control, including without limitation documents in the possession of CheckFree. Since Fidelity does not in the circumstances have a legal right to documents in the possession of CheckFree, Fidelity has no obligation to seek documents from CheckFree, much less to "identify all efforts to obtain documents from CheckFree."

#### 2. General Objection No. 3 (documents concerning class members other than the Berensons)

Please see my response at Part I.A.1 above.

### C. Specific Objections and Responses to the Document Requests

#### 1. Request No. 2 (communications concerning plaintiffs' accounts)

Fidelity has agreed to produce communications with the Berensons, which are recorded in XTRAC and Symphony entries, concerning the BillPay service specifically and their accounts generally.

B3017186.2

Douglas A. Rubel, Esquire
April 8, 2005
Page 6

    2.    **Request No. 3 (documents concerning the plaintiffs' accounts)**

        Fidelity's response to any reasonable reading of this request is full and complete; your basis to allege a deficiency is not clear. Fidelity has agreed to produce XTRAC and Symphony entries concerning the Berensons' accounts and agreements, prospectuses, account statements, and correspondence concerning the Berensons' Fidelity accounts in which the BillPay service has been used.

    3.    **Request No. 4 ("location" of plaintiffs' monies)**

        This request is vague and ambiguous because it is not clear what you mean by the "location" of the plaintiffs' monies; nor is it possible to provide this information. Fidelity has agreed to produce information about how the BillPay system works. Monies debited from the Berensons' accounts are transferred pursuant to that system.

    4.    **Request No. 5 (accounts used as part of the BillPay service)**

        Fidelity's response to this request is full and complete. If you believe the actual production of documents is deficient, please bring the specific issue to my attention.

    5.    **Request No. 6 (documents concerning other bill payment services)**

        Fidelity's response to this request is full and complete. If you believe the actual production of documents is deficient, please bring the specific issue to my attention.

    6.    **Request No. 7 (complaints concerning late or otherwise errant payments)**

        Fidelity has agreed to produce responsive documents concerning the Berensons' accounts. With respect to other members of the proposed class, please see my response at Part I.A.1 above.

    7.    **Request No. 8 (crediting of moneys to subscribers for late or errant payments)**

        Fidelity has agreed to produce responsive documents concerning the Berensons' accounts. With respect to other members of the proposed class, please see my response at Part I.A.1 above.

    8.    **Request No. 9 (documents concerning other institutions' bill payment services)**

        Fidelity's response speaks for itself. Fidelity has agreed to produce documents concerning comparison of bill payment services and models in response to requests nos. 11 and 12.

Douglas A. Rubel, Esquire
April 8, 2005
Page 7

### 9. Request No. 13 (Berensons' use of Fidelity Website)

Fidelity's response speaks for itself.

### 10. Request No. 14 (documents underlying motion papers)

Fidelity's response speaks for itself.

### 11. Request No. 15 (documents identified in Fidelity's initial disclosures)

Fidelity's response speaks for itself.

### 12. Requests Nos. 16 and 17 (expert reports and materials shown to experts)

Please see my response in Part I.B.2. above.

### 13. Request No. 19 ("files" regarding plaintiffs)

The meaning of "files" is ambiguous in this context. Fidelity's response otherwise speaks for itself.

### 14. Request No. 20 (documents underlying denial of plaintiffs' claims)

Fidelity's response speaks for itself.

## III. DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES

### A. General Objections to the Interrogatories

#### 1. General Objection No. 2 (discovery concerning other class members)

Please see my response at Part I.A.1 above.

#### 2. General Objection No. 5 (information not in Fidelity's possession, custody, or control)

In response to your comments regarding Fidelity's Objections and Answer to Interrogatory No. 2, please see my response at Part I.A.2 above.

### B. Specific Objections and Answers to the Interrogatories

#### 1. Interrogatory No. 1 (identification of customers who used BillPay)

Douglas A. Rubel, Esquire
April 8, 2005
Page 8

Please see my response at Part I.A.1 above.

   2.   **Interrogatory No. 2 (aggregate amounts of each customer's transactions)**

Please see my response at Part I.A.1 above.

   3.   **Interrogatory No. 3 (percentage of payments by check or transfer)**

Fidelity's response speaks for itself. Please see also my response at Part I.A.1 and I.A.2 above.

   4.   **Interrogatory No. 4 (Integrion agreement)**

Fidelity's response speaks for itself. Nevertheless, without waiver of its objections, Fidelity will produce its agreement with Integrion.

   C.   *Defendants' Certification*

Please see my response at Part I.C above.

IV.   **DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

   A.   *Defendants' Introduction*

For my response to plaintiffs' contentions regarding Fidelity's Introduction section, please refer to Part II.A.1 and I.A.2 above.

   B.   *General Objections to the Document Requests*

   1.   **General Objection No. 2 (documents not in Fidelity's possession, custody, or control)**

Please see my response at Part II.B.1 above.

   2.   **General Objection No. 5 (documents concerning class members other than the Berensons)**

Please see my response at Part I.A.1 above.

   C.   *Specific Objections and Responses to the Document Requests*

   1.   **Request No. 1 (statements of every twenty-fifth BillPay customer)**

Douglas A. Rubel, Esquire
April 8, 2005
Page 9

Fidelity's response speaks for itself. Please also see my response at Parts I.A.1 above.

### 2. Request No. 2 (disclosure forms, statements and buckslips provided to BillPay customers)

Fidelity has agreed to produce disclosure forms and buckslips concerning BillPay that were provided to the Berensons. Materials that may have been provided to other customers but not to the Berensons are irrelevant to the Berensons' claims and it would be unduly burdensome to identify and produce them for the reasons discussed above.

### 3. Request No. 3 (training materials)

Fidelity's response speaks for itself. Customer service training materials from outside the statutory limitations period are irrelevant and searching for, identifying, and producing them would be overly broad and unduly burdensome.

### 4. Request No. 4 (documents showing BillPay operates at a loss)

Fidelity's response speaks for itself. Please advise specifically if you believe that Fidelity's production is deficient in some way.

### 5. Request No. 5 (XTRAC Complaints)

Please see my response at Part I.A.1 above.

### 6. Request No. 6 (CheckFree invoices)

Fidelity is producing CheckFree invoices from July 2001 to present only because those are the only responsive documents that Fidelity has been able to locate in its possession, custody, or control.

### 7. Request No. 7 (daily payment files sent to CheckFree)

Fidelity objected to this request both because it seeks information not within Fidelity's possession, custody or control and because it is overly broad, and unduly burdensome.

### 8. Request No. 8 (disputes by subscribers concerning BillPay)

Please see my response at Part I.A.1 above.

### 9. Request No. 9 (decision to offer BillPay and changes in service)

Fidelity's response speaks for itself.

Douglas A. Rubel, Esquire
April 8, 2005
Page 10

### 10. Request No. 10 (BillPay applications)

Fidelity has agreed to produce Berensons' BillPay applications. Any other applications are irrelevant and it would be unduly burdensome to locate, identify, and produce them.

### 11. Request No. 11 (policies governing BillPay)

Fidelity's response speaks for itself.

### 12. Request No. 12 (communications with other BillPay providers)

Fidelity's response speaks for itself.

### 13. Request No. 13 (documents between Fidelity and Chase concerning BillPay)

Fidelity's response speaks for itself.

### 14. Request No. 14 (accounting treatment of monies in BillPay)

Fidelity's response speaks for itself. The request is vague and ambiguous and therefore unintelligible.

### 15. Request No. 15 (advertising on NBC affiliates in Feb. 2004)

Fidelity is not aware of any advertisement of BillPay on NBC affiliates in February 2004. Moreover, this material is not relevant to the Berensons' specific claims since it post-dates commencement of the lawsuit and the Berensons therefore could not have relied upon it to their detriment. Your follow-up questions were not part of a proper document request and therefore require no response.

### 16. Request No. 16 (all advertisements concerning bill payments.

Fidelity has agreed to produce advertisements referencing BillPay from the class period. Fidelity's objections to broader production speak for themselves.

### 17. Request No. 17 (switch of core accounts to cash sweep accounts)

This request is simply a fishing expedition on the part of the Berensons that Fidelity need not entertain. The referenced article does not mention National Financial Services LLC, Fidelity Brokerage Services LLC, electronic bill payment services, the BillPay service, business models, or the "good funds" business model. Further, the act of "switching" accounts of core accounts to cash sweep accounts is not relevant to the Berensons' claims or, indeed, any of the claims asserted in the Complaint.

B3017186.2

Douglas A. Rubel, Esquire
April 8, 2005
Page 11

### 18.    Request No. 19 (reports of errors from inception)

This request is not intelligible because "reports of [ ] errors" is vague and ambiguous. Furthermore, documents concerning reports of errors prior to the class period and from subscribers other than the Berensons are irrelevant to the Berensons' claims.

### 19.    Request No. 20 (reports of errors during class period)

This request is not intelligible because "reports of [ ] errors" is vague and ambiguous. Documents concerning reports of errors from subscribers other than the Berensons are irrelevant to the Berensons' claims.

### 20.    Request No. 21 (regulatory filings concerning BillPay)

This request is not intelligible and Fidelity is unaware of any responsive documents.

### 21.    Request No. 22 (reports of investigations concerning Plaintiffs)

Any documents that would be responsive to this request were prepared at the direction of counsel and would clearly be immune from discovery under the work product doctrine.

Like your absurdly overbroad "demand" for document preservation, which would be unduly burdensome and which would preclude ordinary document and retention practices with respect to documents having no or at best a tangential relationship with the subject matter of the suit (and with which to either extent we will not comply), in many respects the two sets of requests seem calculated more to impose litigation expense than to obtain pertinent information. Please narrow your requests to the case at hand.

Sincerely,

John A. Shope

cc:    Nicholas C. Theodorou, Esquire
       William Fick, Esquire
       David E. Cole, Esquire
       Susan Stenger, Esquire (via telecopier and first class mail)
       Kenneth McWilliams, Esquire (via telecopier and first class mail)