IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOAN BERENSON and DAVID BERENSON, individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>          v.<br><br>NATIONAL FINANCIAL SERVICES LLC, FIDELITY BROKERAGE SERVICES LLC, and DOES 1-50, inclusive,<br><br>            Defendants. | Civil Action No. 04 CV 11311 (WGY) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' CONSOLIDATED MOTIONS TO COMPEL, FOR SANCTIONS, TO EXTEND THE DISCOVERY DEADLINE, AND TO EXTEND THE EXPERT WITNESS DEADLINE**

Defendants National Financial Services LLC and Fidelity Brokerage Services LLC (together, "Fidelity") respectfully submit this memorandum in opposition to the Plaintiffs' Consolidated Motions to Compel and for Sanctions; and to Enlarge Discovery and Expert Witness Deadline (dated April 29, 2005). The motions should be denied because, among other reasons, the plaintiffs disregarded their obligations to confer with Fidelity in advance of the motion; because the requested information is irrelevant to David and Joan Berenson's individual claims, which are likely to be dismissed on summary judgment or after trial; because any discovery relating to other members of the proposed, but uncertified, class is premature; and because the plaintiffs' delay in seeking fact discovery does not justify their failure to serve an expert report by the agreed and ordered deadline.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs David and Joan Berenson allege that Fidelity failed to disclose that its bill payment service would not credit them with "interest" on their Fidelity money market mutual fund during the period of "float" between the time that amounts were debited from their account and the time that their designated payees were ultimately credited with payments.  The Berensons allege that they either did not receive or did not review numerous service agreements and other documents that Fidelity supplied to other BillPay customers disclosing (i) that Fidelity debits its customers' brokerage core accounts for bill payments on a transaction date selected by the customer, (ii) that the customer ceases to earn mutual fund dividends (interest) as of the beginning of the next business day, (iii) that Fidelity transfers the funds from the customer's account to an account Fidelity maintains for its own use in paying bills, and (iv) that the customer's designated payees may not receive payment until several days later due to, for example, delays in the mail.  The Berensons have not identified any misrepresentations by Fidelity concerning its BillPay service, or even any representations on which they contend they relied, but allege that they assumed that they would earn interest up to the date on which their payees were credited with payments, and that Fidelity failed to disabuse them of that preconception.  Their complaint thus rests on the premise that they did not receive or review BillPay service agreements, customer agreements, and prospectuses that Fidelity undisputedly sent to BillPay customers generally and that were available on Fidelity's website.

In their complaint, originally filed in the United States District Court for the District of Columbia on or about September 26, 2003, the Berensons contended that Fidelity violated the federal Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* ("EFTA") (Count I); the Massachusetts Truth in Savings Law, Mass. Gen. Laws ch. 140E ("Mass. TiSL") (Count V); the Massachusetts Consumer and Business Protection Act, Mass. Gen. Laws ch. 93A ("ch. 93A")

(Count VI); and the District of Columbia Consumer Protection Procedures Act, D.C. Code Ann. § 28-3901 *et seq.* ("D.C. Consumer Protection Act") (Count VII).  In addition, the complaint asserted common law claims of intentional (Count II) and negligent (Count III) misrepresentation, breach of fiduciary duty (Count IV), and breach of contract (Count IV).[1]

On November 8, 2003, Fidelity filed a Motion to Dismiss and for Summary Judgment, arguing that several counts were legally insufficient on their face and that all must fail because, as a matter of indisputable fact, Fidelity provided full disclosure in customer agreements, BillPay Service Agreements, fund prospectuses, and other documents both provided to investors in hard copy and available on Fidelity's Web site.  Following transfer to this district, the Court held a hearing on the defendants' motion on October 13, 2004.  The Court granted the motion to dismiss in part from the bench, dismissing Count V (Mass. TiSL, for which there is no private right of action), Count VII (D.C. Consumer Protection Act, which was withdrawn by the plaintiffs), and Count IV (breach of contract, no promise having been identified).  The Court took under advisement possible dismissal of Count I (EFTA), but denied facial dismissal of the other remaining counts.  The Court also took under advisement Fidelity's motion for summary judgment with respect to all of the remaining counts, but later denied it without opinion and expressly without prejudice to renewal following discovery.

On January 25, 2005, the Berensons filed a motion for class certification.  At a February 16, 2005 hearing, the Court stated that it would defer its decision on the plaintiffs' motion until

---

[1] The plaintiffs erroneously numbered two separate counts as "Count IV."

the conclusion of a trial on the Berensons' individual claims, now scheduled for September. *See*

Ex. A, at 17–18.[2]

On February 8, 2005, Fidelity filed a Motion for Partial Summary Judgment on EFTA

Claims as Barred by the Statute of Limitations.  At a hearing on March 3, 2005, the Court

granted summary judgment as to 15 U.S.C. § 1693c, the "disclosure" provision of the EFTA, and

denied summary judgment on the statute of limitations as to 15 U.S.C. § 1693f, the "error

resolution" provision of the EFTA.[3]  The Court specifically noted that its dismissal of the

plaintiffs' claim regarding an alleged failure to disclose a "fee" under the EFTA further called

the certification of any proposed class into question.  *See* Ex. B, at 12–13.

On April 28, 2005, the parties filed a Joint Motion for Extension of Time to permit third

parties to respond to previously issued deposition subpoenas and to extend the deadline for filing

dispositive motions from May 12, 2005 to May 26, 2005.  The Court granted the joint motion but

stated that there would be no further continuances.  This extension permitted the plaintiffs to take

the depositions of Fidelity's expert, Professor David B. Humphrey, and of the Navy Federal

Credit Union, a third party that offers a bill payment service to its customers using a model

---

[2] Citations to exhibits labeled A–M refer to the documents behind the tabs labeled A–M in the Appendix to Defendants' Opposition to Plaintiffs' Consolidated Motions, filed concurrently herewith.

[3] The "error resolution" provision of the EFTA requires a financial institution, after receiving notice of an alleged "error" from a consumer, to investigate the alleged "error," determine whether an error has occurred, and report the results of such investigation to the consumer in writing. *See* 15 U.S.C. § 1693f(a).  Fidelity intends to move for summary judgment on the ground that the plaintiffs have not alleged an "*error*" as defined under the EFTA (see 15 U.S.C. § 1693f(f)), but have merely expressed their dissatisfaction with Fidelity's *intentional actions* taken pursuant to the contract terms—not *mistakes* on the part of Fidelity.  Thus Fidelity's response to the Berensons' letter of complaint by a telephone call rather than a letter was not a statutory violation.

different from Fidelity's.  Fidelity intends to move for summary judgment on the remaining

claims by May 26, 2005.

## II.    FIDELITY'S RESPONSES TO THE PLAINTIFFS' DISCOVERY REQUESTS

The Berensons were free to commence discovery after serving their initial disclosures,

which they served on November 15, 2004.  Two months later, the Berensons took the depositions

of three of Fidelity's affiants in support of the defendants' initial motion for summary judgment.

However, the Berensons did not serve any other discovery requests until February 18, 2005, *after*

the motion for class certification was already briefed and deferred.  At that time they served their

Consolidated First Set of Interrogatories and Requests for Production of Documents to

Defendants.  Ex. C.  Ten days later, on February 28, 2005, the Berensons served a second set of

interrogatories and document requests.  Ex. D.  Because the Berensons refused to agree to any

extension, on March 21 and 30, 2005, Fidelity served its written responses to these discovery

requests within the time required by the Federal Rules.  *See* Exs. E, F, G, H.  At the same time,

Fidelity offered to make the documents that had been gathered immediately available for

copying and inspection pursuant to Rule 34 or, alternatively, to copy and ship the documents to

the plaintiffs' counsel at Fidelity's expense as part of a rolling production.  *See* Pls.' Ex. 2 at pt.

II.A.2.  The Berensons did not respond until April 3, 2005, when they sent a letter demanding the

immediate shipment.  That letter purported to dispute Fidelity's various objections to the

plaintiffs' discovery requests, but only by reiterating the original discovery requests without

suggesting any means by which to narrow potential disagreement or requesting a discovery

conference.  *See* Ex. 1 to Pls.' Mem. (Court's Docket No. 47) ("Pls.' Ex. 1").

The next day, on April 4, 2005, Fidelity started its rolling production by sending 5,318

pages of documents to the plaintiffs' counsel.  Pls.' Ex. 1; Ex. I.  Since then Fidelity sent three

other shipments of documents, on April 6 (537 pages and a compact disk), April 14 (10 pages),

and April 22, 2005 (18 pages). Exs. J, K, L. Fidelity further supplemented its original

production by sending three more shipments on May 2 (15 pages), May 4 (34 pages), and May 5,

2005 (one page in addition to copies of documents produced by a third party pursuant to a

subpoena). Exs. M, N, O.

In general, Fidelity produced all documents arguably related to the Berensons' individual

claims, but did not produce documents relating exclusively to other members of the proposed

class. In Fidelity's view, a class-wide production would be unnecessarily burdensome and

expensive because (1) the parties already briefed class certification; (2) the Court deferred class

certification until the plaintiffs' individual claims are tried; (3) the Court thereafter dismissed the

EFTA claim, the only federal claim and the one on which certification was the most plausible;

and (4) the Berensons' individual claims may be dismissed on summary judgment or after trial,

thus mooting any claim by a class. Obviously, if a class is later certified, the scope of production

could be revisited.

On April 8, 2005, Fidelity's counsel sent a detailed written response to the plaintiffs'

April 3 letter, expressly stating: "Generally, and despite its length (15 pages), I do not believe

that your letter comports with the requirements of Local Rules 7.1(A)(2) and 26.2(c) as you have

merely repeated your requests without suggesting any means of narrowing disagreement." *See*

Pls.' Ex. 2, at 1. But Fidelity agreed to produce its agreement with Integrion, a third-party

vendor that had administered the BillPay service for Fidelity before Fidelity switched to

CheckFree, a request to which it had originally objected. *See id.* at pt. III.B.4; Ex. D, at Interrog.

No. 4; Ex. G, at Objection No. 4. Fidelity's letter further provided general and specific

responses to the statements made in the plaintiffs' letter and ended by requesting that the

plaintiffs' counsel "narrow [the] requests to the case at hand." *See* Pls.' Ex. 2, at 11.  The Berensons made no response.

On the deadline of April 15, 2005 set by the Court's scheduling order for both sides, Fidelity served a twenty-page report of their expert, Professor David Humphrey.  The Berensons, however, sent Fidelity only a two-page letter that named an expert witness whom they "intended" to retain.  Without explanation, the Berensons wrote that "[a]t this time, we do not have a report to provide to you."  Ex. P.

The present motion was filed on April 29, 2005, but without there having been any further communications regarding the matters on which the Berensons are requesting court orders.  Their counsel purported to certify that he "fulfilled the requirements under Local Rule 7.1 and Federal Rule 37.1 [*sic*] to confer with opposing counsel in a good faith attempt to narrow or resolve the issues raised in this motion.  These efforts have proved unsuccessful, as detailed in the accompanying letters exchanged between counsel …," and he attached the April 3 and 8 letters to the memorandum filed in support of the plaintiffs' consolidated motions.  Pls.' Consolidated Mots., at 1–2 (Court's Docket No. 46) ("Pls.' Consol. Mots.").

III.    ARGUMENT

A.    ***The Plaintiffs' Discovery Motion Should be Denied for Failure to Confer Pursuant to Federal Rule 37 and Local Rules 7.1 and 37.1.***

As detailed above, the plaintiffs' April 3 letter did not attempt to engage Fidelity's counsel in any discussion of the issues.  The letter, which appeared to be cut-and-pasted from the original discovery requests, simply and generally asserted that the Berensons were entitled to *all* of the discovery that they had previously requested and made no attempt to narrow any of their discovery requests.  *Compare* Pls.' Ex. 1, *with* Exs. C, *and* D.  It did not request a discovery conference.  Fidelity's counsel expressly pointed out that the plaintiffs' letter did not meet the

requirements of the Federal Rules or of the Local Rules for conferring in good faith. *See* Pls.'

Ex. 2, at 1.  Nonetheless, Fidelity withdrew an objection in part and requested that plaintiffs'

counsel "narrow [the] requests to the case at hand" inviting further communications on the

issues. *See id.* at 11.  The plaintiffs made no response at all to that invitation.

The Federal and Local Rules require more.  Specifically, the moving party must:

1.  Certify that the extensive provisions of LR 37.1 have been complied with,
    including the duty to "confer  in good faith to narrow the areas of disagreement to
    the greatest extent possible" with the moving party having the responsibility to
    arrange for a discovery conference (LR 37.1(A), (B));

2.  "Certif[y] that the movant has in good faith conferred or attempted to confer with
    the party not making the disclosure in an effort to secure the disclosure without
    court action" (Fed. R. Civ. P. 37(2)(A)); and

3.  "[C]ertify that they have conferred and have attempted in good faith to resolve or
    narrow the issue" (LR 7.1).

At least one purpose of Local Rules 7.1 and 37.1 is to avoid premature motions. *See Hasbro,*

*Inc. v. Serafino*, 168 F.R.D. 99, 101 (D. Mass. 1996); *see also* LR 7.1, 37.1.  Where counsel for

the parties have not yet reached an impasse in discussions, the motion is premature and the Rules

are designed to discourage and prevent the filing of such a motion. *See Hasbro*, 168 F.R.D. at

101; *see also Syrjala v. Total Healthcare Solutions, Inc.*, 186 F.R.D. 251, 253–54 (D. Mass.

1999) (movant filed motion without giving opposing counsel sufficient time to respond to

request for a discovery conference).  Further, "the purpose of a full consultation pursuant to Rule

37.1(A) is to enable the parties to attempt to narrow, if not resolve, their dispute" so that it is "not

up to the Court to expend its energies when the parties have not sufficiently expended their

own." *See Hasbro*, 168 F.R.D. at 101.  Indeed, in *Hasbro*, the court found that because the

movant had not bothered to comply with Local Rules 7.1 or 37.1 and attempted to narrow the

issues in dispute, it was impossible to rule on the substance of its motion to compel. *See id.* at

101.

Clearly, the requirements of Federal Rule 37 and Local Rules 7.1 and 37.1 were not satisfied here.  To begin, there was no conference of any kind, nor even a request for one, only a letter and written response.  Second, the parties had not yet reached an impasse—indeed, Fidelity withdrew an objection in part and invited a further response from the Berensons to see whether their requests for documents could be narrowed in a way acceptable to Fidelity.  As for the plaintiffs' counsel's certification that he conferred in "good faith," the mere recitation of the discovery requests that were originally stated in a party's formal document requests and interrogatories is hardly an attempt to confer in good faith.  The parties did not "confer" as envisioned by the Rules.

### B.       *The Motion Should be Denied on Its Merits.*

Procedure aside, the plaintiffs' motion to compel and for sanctions reflects (1) a misguided attempt to obtain discovery as to the entire proposed class for a case that is now under adjudication only on the issues specific to the Berensons, which will likely moot any class issues; (2) the Berensons' apparent regret that they did not seek to obtain third party discovery from CheckFree, the third party vendor that currently administers Fidelity's BillPay service, until April 18, 2005, over five months after the commencement of the discovery period; and (3) a general misunderstanding of the Federal Rules of Civil Procedure.  Each of these will be discussed more in depth below.

1.       <u>The Court should not allow for class-wide discovery for the trial of the Berensons' individual claims.</u>

Although irrelevant to the trial of their individual claims, the plaintiffs are seeking class-wide discovery as to their document requests nos. 4, 7, and 8 (set one), interrogatories nos. 1, 2, and 3 (set two), and document requests nos. 5, 8, 10, 14, 15, 16, 19, and 20 (set two).  *See* Pls.' Mem. at 2–7 ("Class Related Discovery").

The Berensons ignore the fact that, even though this case is styled as a proposed class action, the Court has not certified a class.  At the February 16, 2005 motion hearing, the Court expressly deferred decision on the plaintiffs' motion for class certification pending a trial on the Berensons' *individual* claims.  The Court specifically stated that the Berensons' individual claims would be tried as an "exemplar case," noting that if they lose, then class certification will be denied because the Berensons will not be "typical" and the Rule 23(a) class certification prerequisites will not be satisfied.  *See* Ex. A, at 17–18.  At the subsequent hearing on March 3, 2005, the Court dismissed the Berensons' claim of violation of the EFTA based on alleged failure to disclose a "fee," and specifically noted that this ruling further called into question the certification of the proposed class.  *See* Ex. B, at 12–13.

Now remaining are the Berensons' claims of intentional and negligent misrepresentation, breach of fiduciary duty, violation of the EFTA's "error resolution" procedures, and violation of Mass. Gen. Laws ch. 93A.  Fidelity believes that these claims are likely to be dismissed on summary judgment or after trial because: (1) the Berensons to this day have not identified any claimed misrepresentation on which they relied in subscribing to and using Fidelity's BillPay service; (2) the Berensons have not identified the method, if any, that they contend that Fidelity should have used to pay any of the Berensons' designated payees more promptly so as not to have breached any fiduciary duty (for which supposed duty the plaintiffs have identified no basis and which in any event would be displaced by the contract for bill payment services with which Fidelity complies); (3) Fidelity's *intentional* acts pursuant to its contract terms do not implicate the EFTA's "error resolution" procedures, which concern *mistaken* debits or credits; (4) Fidelity has not engaged in any unfair or deceptive practices (and, in any event, no demand was ever made on behalf of the members of the proposed class); and (5) the plaintiffs' claims are all

untimely because had they read the documents they received and in some instances signed they would have understood exactly how the BillPay service works in respect to interest float.

Information and documents concerning proposed class members other than the Berensons are irrelevant to trial of the Berensons' individual claims, and it would be unduly burdensome and expensive at this time to collect and produce this information.  Of course, as Fidelity stated in its letter of April 8, in the unlikely event that the Berensons prevail at the trial of their individual claims *and* a class is later certified, the proper and necessary scope of class-wide discovery would be revisited.

Under the general rubric of class wide discovery, the plaintiffs seek a gallimaufry of irrelevant information.

### a.      Other Customers' Complaints.

The Berensons assert that they need to "shed light" on how any complaints by other customers about the BillPay service were handled by Fidelity, speculating that "[i]t may very well be that the higher the level of complaint, the greater the defendants' deception."  But the only relevant complaints are those of the Berensons since only their individual claims are being tried.  Further, the only thing on which such discovery could possibly "shed light,"  if indeed the other subscribers' supposed complaints were handled differently than the Berensons, is how the Berensons are not "typical" of other proposed class members, something that is not relevant to the issues for trial.

To these points the Berensons state that they need class-wide discovery because "what is objectively reasonable under the consumer protection laws is a matter of what is being told to everyone, not just the Plaintiffs."  This is incorrect.  Under ch. 93A, § 9(1), an individual may recover only for his or her own injury.  Furthermore, the Berensons must at least show a causal

relationship between any alleged misrepresentation or deceptive practice and their alleged injury. *See Lord v. Commercial Union Ins. Co.*, 801 N.E.2d 303, 314 (Mass. App. Ct.), *review denied*, 805 N.E.2d 45 (Mass. 2004); *Fraser Eng'g Co. v. Desmond*, 524 N.E.2d 110, 113 (Mass. App. Ct. 1988).  Thus, any communications that Fidelity may have made to the remainder of the world but not to the Berensons have no bearing on the Berensons' individual claims.

           b.       <u>Advertising.</u>

The Berensons cannot identify any Fidelity advertising or promotional materials on which they relied to believe that they would earn interest "float" on bill payment funds up until the date any payee was credited.  Their interrogatory answer identifies only a Fidelity pamphlet called "Every Day Expenses," but that pamphlet does not address interest "float," and the Berensons say otherwise that they need discovery from Fidelity to learn what they themselves relied upon.  See Ex. Q at Answer No. 12.

In any event, with respect to television advertising, the Berensons request all advertising that Fidelity ran on NBC and affiliates in February 2004, but none of that advertising even mentions bill payment.  With respect to print advertising, the Berensons' brief recites Fidelity's general objection but deceptively omits Fidelity's commitment (which it has fulfilled) to provide all advertisements referencing the BillPay service since September 26, 1999, the period covered by the longest potentially applicable statute of limitations (four years).

           c.       <u>"Location of Plaintiffs' Monies."</u>

The Berensons claim they need to know "where" funds from their account go in order to pay bills so that they may determine the "lost float."  Fidelity has in fact produced documents showing its ledger entry system and the account from which Fidelity transfers funds to its bill payment vendor, CheckFree.  Fidelity itself receives no "float," since the Berensons continue to

accrue money market mutual fund dividends ("interest") up until the beginning of the day on

which Fidelity makes its transfer to CheckFree (there is no intra-day interest).  Fidelity has no

documents concerning any float CheckFree may receive in connection with bill payments for

Fidelity customers; such documents are the subject of the Berensons' pending subpoena to

CheckFree, which was issued on April 18, 2005, only eleven days before the conclusion of the

originally scheduled discovery period.

>   d.   Recrediting of Lost Payments.

The Berensons alleged in an interrogatory answer that, where a bill payment has been lost

in the mail, Fidelity does not recredit the customer's account as of the initial debit date, but as of

a later date, in order to obtain "float."  Ex. R at Supplemental Answer No. 6.  At deposition Mr.

Berenson admitted he had no basis for the allegation when confronted with statements for his

own account showing that in such circumstances Fidelity recredits the customer as of the date of

the original debit, so the customer loses no interest.  There is no evidence to suggest any

different approach for any other customer.  The Berensons' demand for documentation of any

similar retroactive credits to the tens of thousands of other BillPay users could be absurdly

burdensome to satisfy, and would yield no evidence relevant to their claims.

>   e.   Statistics on Means of Payment.

The complaint alleges that, in order wrongfully to maximize its interest float, Fidelity

deliberately makes bill payments to its customers' payees less promptly than is commercially

practicable.  Compl. ¶¶ 24, 76.  At their depositions, however, the Berensons conceded that it

was appropriate for payees to be paid by check, and many payees are paid by the faster

Automated Clearinghouse (ACH) electronic transfer.  ("Laser draft" checks drawn on the

customer's own account are not used for Fidelity's customer's payees.)  In their interrogatory

answers the Berensons were unable to identify a single payee whom they contend should have

been paid by a payment method other than the one that was used.  Ex. Q at Answer No. 24.  (The

Berensons identified one supposedly late payment that the Berensons had scheduled for payment

after the due date, and on which the late fee had nonetheless been waived.)  Now the Berensons

seek statistics on the frequency of use of different payment methods.  However, Fidelity has no

such statistics, as the determination of how payment is to be made is in the discretion of

CheckFree.  The motion to compel is moot as Fidelity has no responsive documents.  Fidelity's

expert did cite statistics in CheckFree's payment methods for <u>all</u> customers, not just Fidelity, but

these statistics were for CheckFree's website and equally available to the Berensons.

        f.        <u>BillPay "Errors"</u>

      The Berensons contend that Fidelity's entire method of making electronic bill payments

is an "error" such that, upon their complaint about their loss of an opportunity to earn interest,

Fidelity was obligated under the federal Electronic Funds Transfer Act to provide them with a

written response.  (A Fidelity representative called Mr. Berenson and offered as customer

goodwill to reimburse any lost interest, but that proposal was refused in favor of the present suit.)

Since there is no allegation that any one other than the Berensons made any complaint

implicating the error notification procedures of the EFTA, and the Berensons never made any

complaint on behalf of anyone besides themselves before filing suit, the claim is indisputably

unique to them individually.

      As to other kinds of possible payment "errors," for example, misnamed payees, incorrect

account numbers, or incorrect payment addresses, such "errors" are neither implicated by the

complaint, alleged by the Berensons individually, or even conceivably susceptible of litigation

on the basis of a class action.  The Berensons' demand for all documents relating to any "error"

in bill payment on behalf of tens of thousands of Fidelity customers is burdensome in the extreme and not relevant to any issues in the case.

    2. <u>Fidelity cannot provide information that is not within its possession, custody, or control.</u>

The Berensons also seek to have Fidelity conduct third party discovery for them as evidenced by their document requests no. 4 (set one), which relates to documents in the possession of CheckFree Corporation, a third party that administers Fidelity's bill payment service pursuant to a contract with Fidelity. *See* Pls.' Mem. at 2–7 (section entitled, "CheckFree"). While it produced responsive documents in its own files, Fidelity objected to the Berensons' discovery requests to the extent that they sought information or documents *not* within Fidelity's possession, custody, or control.

Such is the case with a large amount of information requested concerning CheckFree. Fidelity has an arms-length, commercial, purchaser-vendor contractual relationship with CheckFree. Fidelity has no contractual or other legal basis to demand information and documents from CheckFree other than as specified in their contract for circumstances not applicable here. Whether Fidelity may provide bill payment services through "agents" is distinct from the question of whether Fidelity has legal control over all documents in the hands of its vendors. It does not. The Berensons are merely regretting the fact that they did not bother to issue a subpoena to CheckFree until April 18, 2005 for a deposition on April 28, 2005—one day before the end of the initial discovery period (which Fidelity thereafter agreed to have extended by two weeks).

    3. <u>The disclosure of Fidelity's use of CheckFree is not at issue in this action.</u>

The plaintiffs assert that the information they seek is relevant to whether Fidelity should have "disclosed" its use of CheckFree. *See* Pls.' Mem. at 7. But relevance is distinct from

- 15 -

whether documents are in a party's legal control.  Such a need for disclosure, moreover, is

unrelated to any allegation in the complaint.  Indeed, the BillPay Service Agreement that Fidelity

provides to subscribers expressly states that Fidelity has "sole discretion" in deciding who is

involved in the provision of the BillPay service.  There is no requirement in law or in the parties'

contract that Fidelity "disclose" each and every vendor that it may use in providing services to its

customers.

4.      The Federal Rules of Civil Procedure do not require Fidelity to
         specifically identify which documents respond to which discovery
         requests.

Without citation to any particular rule, the Berensons purport to rely on the Federal Rules

of Civil Procedure for the proposition that Fidelity must specifically identify "which documents

were being produced in response to which interrogatory or document request."  *See* Pls.' Mem. at

8–9 (referencing the plaintiffs' interrogatory no. 7, of set one and Fidelity's response as an

example).  There is no such categorical rule.  Rather, Rule 34(b) states that "[a] party who

produces documents for inspection shall produce them as they are kept in the usual course of

business *or* shall organize and label them to correspond with categories in the request."  Fed. R.

Civ. P.  34(b) (emphasis added).  Fidelity has chosen to produce documents as they are kept in

the usual course of business, and is therefore under no obligation to organize and label the

documents that it has produced to the plaintiffs by request.  Indeed, in their own production to

Fidelity, the Berensons did not specifically identify any of the documents as responsive to any of

the specific requests made by Fidelity.

5.      Fidelity never refused to produce an appropriate privilege log.

The Berensons further seek an order that Fidelity create a privilege log in response to

their document request no. 18 (of set two) and interrogatory no. 7 (of set one).  *See* Pls.' Mem. at

8–9.  Fidelity has never refused to provide a log.  In fact, in the April 8 letter Fidelity agreed to

"produce a privilege log as required by the Federal Rules when [Fidelity] has completed its document production." There is no need for a motion to compel.

Fidelity's counsel was until recently reviewing documents on an expedited basis for responsiveness and privilege or other immunity in order to produce them to the Berensons before the end of the discovery period, since the Berensons had not served *any* document requests on defendants (both nationwide corporations) until approximately three months into the discovery period. Moreover, because a majority of the documents came from Fidelity's legal department, they required a more focused review for privilege. Fidelity will complete and serve its privilege log by May 17, 2005.

      6.      <u>Production of Initial Disclosures.</u>

Finally, the Berensons seek to compel production of all documents "identified" in Fidelity's initial disclosures. Fidelity objected because this would include documents in the possession, control, or custody of a third party, CheckFree, documents that are not related to the individual claims of the Berensons, and, to the extent that Fidelity's initial disclosures identified categories of documents and not specific documents, the plaintiffs' request was not manageable, since the initial disclosures were (as is common) not phrased within the precision of requests for production and would, if read literally, encompass significant duplicative or irrelevant material. Fidelity never refused to produce <u>all</u> of the documents referenced in their initial disclosures.

      **C.**      ***The Plaintiffs' Motion to Extend the Discovery Deadline Should be Denied.***

The Berensons contend that they have been "prejudiced" by Fidelity's alleged failure to properly respond to discovery and state that "good cause exists for enlarging the discovery deadline to allow plaintiffs to depose defendants." However, except for their conclusory statement that they have been "prejudiced" and that "good cause" exists, they offer the Court no explanation of how or why. Further, even if the Berensons have indeed suffered any prejudice, it

is the result of their own delay of three months in the discovery period before serving *any*

interrogatories or requests for production on the defendants.  Disagreements over the proper

scope of discovery are foreseeable and do not justify additional extensions.

      **D.**       ***The Plaintiffs' Motion to Extend the Already Expired Expert Witness Disclosure Deadline Should be Denied.***

Under the schedule proposed by the Berensons and adopted by the Court, the deadline for

the service of expert reports was April 15, 2005.  Fidelity upheld its obligation.  However, on

that date, the plaintiffs sent Fidelity a two-page letter that purported to identify their "intended"

expert, but acknowledged, without explanation, that "[a]t this time, we do not have a report to

provide to you."

The Berensons now assert that they were held up by the fact that Fidelity had not

"produced" the sources cited by Fidelity's own expert, Professor Humphrey, in his expert report.

But Professor Humphrey's "sources"—such as the cited Federal Reserve reports in the public

domain—reflect his work product and are not documents that were in Fidelity's own files.  *See*

Ex. S.  Furthermore, the Berensons could not have postponed preparing their own report based

on the content of a Fidelity report they would not receive by mail until after the due date.

The Berensons are now seeking to provide their first expert report after being served the

report of Fidelity's expert *and* having deposed him.  Such tactical gamesmanship should not be

rewarded by an extension of deadlines for which there is no justification whatever.

**IV.**    **CONCLUSION**

For the foregoing reasons, Plaintiffs' Consolidated Motions to Compel and for Sanctions;

and to Enlarge Discovery and Expert Witness Deadline should be denied.

Respectfully submitted,

NATIONAL FINANCIAL SERVICES LLC and
FIDELITY BROKERAGE SERVICES LLC

By their attorneys,

/s/ David E. Cole_____
Nicholas C. Theodorou (BBO No. 495730)
John A. Shope (BBO No. 562056)
William W. Fick (BBO No. 650562)
David E. Cole (BBO No. 658705)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Dated:  May 13, 2005