This facsimile message and its contents are legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, copying or other use of this message and its contents is strictly prohibited. If you have received this telecopy in error, please notify us immediately by telephone and return the original message to us at the address shown below via the Postal Service. Thank You.

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
404-881-7000
Fax: 404-881-7777

## TELECOPY
PLEASE DELIVER AS SOON AS POSSIBLE

**Date:** May 26, 2005

**Recipient:** Douglas A. Rubel, Esq.

**Company:** Johanson Berenson LLP

**Fax Number:** 919-654-4545

**Voice Number:** 919-654-4544

**Sender:** Pat Costello

**Message:**

Number of Pages: (including cover page) 14

IF NOT RECEIVED PROPERLY, PLEASE NOTIFY US IMMEDIATELY AT (404) 881-4962.

| USER CODE: | COSTP | REQUESTED BY: | Pat Costello |
|---|---|---|---|
| CLIENT/MATTER: | 041504/242569 | OPERATOR: | |

Alston&Bird

LOCATION:+4048817777        RX TIME  05/26 '05 11:43

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

404-881-7000
Fax: 404-253-8358
www.alston.com

Candace N. Smith                Direct Dial: 404-881-7487            E-mail: csmith@alston.com

May 26, 2005

**VIA FACSIMILE and FIRST CLASS MAIL**

Douglas A. Rubel, Esq.
Johanson Berenson LLP
201 Shannon Oaks Circle, Suite 200
Cary, North Carolina 27511

Re:  *Joan Berenson, et. al. v. National Financial Services LLC, et. al.*
(Case No.: 04 CV 11311 (WGY) (Massachusetts)

Dear Doug:

This letter is sent in response to your letter of May 18, 2005 in connection with the subpoena (the "Subpoena") issued in the above-referenced matter to CheckFree Services Corporation ("CheckFree") and, in part, so that we can clarify where we are.

I am glad that you have confirmed that your clients are not seeking information from CheckFree that does not pertain to the BillPay Service that CheckFree provides to Fidelity. As you are well aware, the gravamen of their Complaint against the Defendants is that the latter wrongfully retained funds earned and accrued under various *bill payment services*. Any information or evidence beyond those services, as I am sure you understand, is simply not relevant to the claims and allegations at issue in the Complaint, and thus not reasonably calculated to lead to the discovery of admissible evidence.

That said, I remain somewhat confused as to why we still cannot agree on what your clients are entitled to discover and what they are not. With regard to the issue of "models," the fact is that Fidelity elected to use a "good funds" model in the operation of its bill payment services through CheckFree. Any models other than the one Fidelity in fact used, including other models Fidelity could have used or were available to it, are irrelevant, as they have no bearing on the matters at issue. While you are entitled to inquire into the Fidelity good funds model itself, evidence of other models is not relevant to this case, and we maintain that the Court will agree. We will continue to stand on our objection to production of any of this information, as well as our objection to the designation of a corporate representative to testify concerning such information.

Bank of America Plaza            90 Park Avenue           3201 Beechleaf Court, Suite 600    601 Pennsylvania Avenue, N.W.
101 South Tryon Street, Suite 4000   New York, NY 10016       Raleigh, NC 27604-1062             North Building, 10th Floor
Charlotte, NC 28280-4000         212-210-9400             919-862-2200                       Washington, DC 20004-2601
704-444-1000                     Fax: 212-210-9444        Fax: 919-862-2260                  202-756-3300
Fax: 704-444-1111                                                                            Fax: 202-756-3333

Douglas A. Rubel, Esq.
May 26, 2005
Page 2

I received Tuesday evening (I was out of the office Monday and during the business day on Tuesday), your clients' Emergency Motions to Shorten Time and to Compel Discovery. We will respond by memorandum to each. However, in furtherance of our attempts to resolve this discovery dispute, and so that you are clear on the particular matters that remain at issue, following is our response to your comments made in the May 18, 2005 letter pertaining to the individually numbered document requests and topics for deposition.

You provided comments in your May 18, 2005 letter only to Request Nos. 2, 7-8, 11-12 and 14-16, and Topic Nos. 4-8. I take that to mean that we now have consensus on Request Nos. 1, 3-6, 9-10 and 13, and Topic Nos. 1-3, and that CheckFree's responses to these requests and topics as referenced in my May 13, 2005 letter to you are acceptable to you and your client. Please confirm.

For ease of reference, I am again repeating herein CheckFree's General Objections and specific responses to Request Nos. 2, 7-8, 11-12 and 14-16, and Topic Nos. 4-8, and incorporate the other objections by reference. In addition, I am also including your responses to those numbered requests and topics, verbatim, as set forth in your May 3, 2005 and May 18, 2005 letters. I remind you that the discussions we have had concerning the Subpoena were without waiver of any objection, and were simply undertaken in an attempt to resolve the discovery issues. Thus, our having discussed the requests in no way is a waiver of CheckFree's objections to a request, original or as narrowed.

For those documents that we have agreed to produce, we will do so at a mutually convenient time and place as and when they become available. In addition, given the proprietary nature of certain of the information you seek, such documents and information will only be produced subject to their protection under protective order approved and entered by the court from which the Subpoena was issued.

************************

CheckFree generally objects to the command to appear for deposition on April 28, 2005 and the inspection and production of certain documents on April 28, 2005 on the following grounds:

### General Objections

(1) CheckFree objects to the Subpoena as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information unrelated to the allegations made in the complaint in this matter and not reasonably likely to lead to information related thereto.

Douglas A. Rubel, Esq.
May 26, 2005
Page 3

(2) CheckFree objects to the individual requests in the Subpoena to the extent that the time period of the documents and information sought for each such request is overbroad or limitless. Further, CheckFree objects to requests in the Subpoena to the extent that the scope of its individual requests is overbroad or limitless.

(3) CheckFree objects to the Subpoena to the extent that the information sought is unreasonably cumulative, duplicative, and may be obtained from other sources that would be more convenient, less burdensome, and/or less expensive.

(4) CheckFree objects to the Subpoena as unduly burdensome to the extent that it seeks or purports to seek information that is in the possession of other parties, third parties, or in the public domain.

(5) CheckFree objects to the Subpoena to the extent the same seeks information which is confidential, proprietary, sensitive customer information or is a trade secret.

(6) CheckFree objects to time and place of the deposition sought through the Subpoena, and further objects to the Subpoena on the grounds that it is unduly burdensome because, among other reasons, it purports to require CheckFree to appear for deposition on April 28, 2005 at 10:00 a.m. CheckFree objects to the Subpoena on the grounds that it does not provide a sufficient or reasonable amount of time and notice for CheckFree to properly respond to Plaintiff's request for Fed. R. Civ. P. Rule 30(b)(6) designees. Moreover, given the breadth and scope of the requested information, CheckFree will require multiple witnesses, from multiple locations, to act as corporate representatives. Even if one were to ignore the apparent irrelevance, overbreadth and objectionable nature of certain the topics about which the Plaintiff seeks testimony, documents and information, and limit the topics to those which can reasonably be construed as reasonably calculated to lead to the discovery of admissible evidence, CheckFree still will need to proffer multiple witnesses, at least one of whom does not work or reside in Georgia. To the extent that the witnesses do not work or reside in Georgia, CheckFree also objects to the place of the deposition(s) Plaintiff seeks through the Subpoena. If witnesses are to be made available for deposition, such deposition(s) shall take place on a date and at time and place that is mutually convenient to the parties.

(7) CheckFree objects to the Subpoena to the extent that service of such Subpoena is improper because, among other things, the Subpoena was delivered without the requisite fees for one day's attendance and the mileage allowed by law, as required by Fed. R. Civ. P. Rule 45(b)(1).

(8) CheckFree objects to the Subpoena on the grounds that it is unduly burdensome because, among other reasons, it purports to require CheckFree to make the requested documents available at 10:00 a.m. on April 28, 2005 at the offices of Offices Suites Plus. The Subpoena, served just over one week prior to the deadline for producing

Douglas A. Rubel, Esq.
May 26, 2005
Page 4

certain documents, purports to require CheckFree to produce voluminous amounts of documentation that simply cannot be located, reviewed and produced within these severe time constraints. Thus, CheckFree objects to the Subpoena on the grounds that it does not provide a sufficient or reasonable amount of time to properly respond to the request for documents and information. If documents are to be produced for inspection and copying, they will be produced on a date and at time and place that is mutually convenient to the parties and CheckFree.

(9) CheckFree objects to the Subpoena on the grounds that it makes no provision for reimbursement of the costs and expenses CheckFree will incur in complying with the Subpoena.

(10) CheckFree objects to the Subpoena on the grounds that it seeks documents that are not discoverable because they contain proprietary, confidential, and/or trade secret information, in the absence of a protective order.

(11) CheckFree objects to the Subpoena to the extent that it seeks production of documents or materials protected by the attorney-client privilege, the work-product doctrine, the joint defense privilege or any other applicable privilege or doctrine.

In addition to the foregoing General Objections, and incorporating the same by reference, CheckFree also responds to the following individually numbered categories of documents sought through the Subpoena.

> 2. All documents evidencing payment from Fidelity to CheckFree during the period of January 1, 1999 to the present, whether part of the Fidelity BillPay Service or not.

Response: In addition to objecting to request no. 2 based upon the General Objections set forth above, CheckFree objects to this request on the grounds that the scope of documents sought to be inspected is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. CheckFree also objects to this request on the grounds that the request is vague and ambiguous, as it is wholly unclear as to what Plaintiff means by "payment."

*Douglas A. Rubel May 3, 2005 Response: I will withdraw the document request as to evidence of payment upon testimony of a designee who can confirm payment of the invoices and in the amount of the invoices.*

CheckFree May 13, 2005 Reply: Subject to and without waiver of any objection, CheckFree will provide a Rule 30(b)(6) witness who can confirm payment as it relates to the BillPay service.

*Douglas A. Rubel May 18, 2005 Response: My clients seek information as to whether CheckFree provides services to Fidelity other than the BillPay services and*

Douglas A. Rubel, Esq.
May 26, 2005
Page 5

whether there are payments from Fidelity to CheckFree relating to services other than BillPay. This, too, needs to be confirmed.

**CheckFree May 25, 2005 Reply:** CheckFree has agreed to provide you with a Rule 30(b)(6) witness who can confirm payment as it relates to the Fidelity BillPay service. It will not provide a witness to give testimony concerning any other services it provides to Fidelity, to the extent that it does, for the reasons set forth in CheckFree's Response. If you plan to pursue documents or testimony pertaining to other services CheckFree provides to Fidelity and any payments associated with those services, CheckFree will maintain its objections, and seek a protective order if necessary.

7. **Any and all bank statements reflecting or concerning monies received from Fidelity as part of the Fidelity BillPay Service.**

   Response:   In addition to objecting to request no. 7 based upon the General Objections set forth above, CheckFree objects to this request on the grounds that the scope of documents sought to be inspected is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, CheckFree objects to request no. 7 on the grounds that the term "received from Fidelity as part of the Fidelity BillPay Service" is vague and ambiguous.

   *Douglas A. Rubel May 3, 2005 Response: I'll need statements that pertain to my clients' monies that CheckFree received from Fidelity.*

   **CheckFree May 13, 2005 Reply:** As there has been no certification of a class, I presume that you are limiting your request to the named plaintiffs. Given that, subject to and without waiver of any objection, CheckFree is in the process of locating records that reflect monies received by CheckFree from Fidelity on behalf of your clients in connection with the Fidelity BillPay Services, and is willing to produce such non-privileged documents as are in its possession, custody or control.

   *Douglas A. Rubel May 18, 2005 Response: With regard to document requests 7 (bank statements) and 8 (accounting records), do I understand that CheckFree does not segregate or otherwise uniquely account for interest specifically earned in connection with the Fidelity BillPay Services because it does not segregate the monies it receives from its customers, such as Fidelity, and therefore, there are no documents that separately set forth the float or interest earned on the Fidelity monies? If so, I can accept your responses to numbers 7 and 8 with the exception of documents indicating the amount of monies in the account(s) and the rate(s) at which interest was and is earned on those monies.*

   **CheckFree May 25, 2005 Reply:** Your understanding is correct — CheckFree does not segregate or otherwise uniquely account for interest specifically earned in connection with the Fidelity BillPay Service because it does not segregate the monies it

Douglas A. Rubel, Esq.
May 26, 2005
Page 6

receives from its customers, including Fidelity. Accordingly, CheckFree does not have any documents that separately set forth the float or interest earned on the Fidelity monies.

8. **Any and all documents evidencing the float or interest earned by CheckFree or Fidelity on monies that were part of the Fidelity BillPay Service.**

Response: In addition to objecting to request no. 8 based upon the General Objections set forth above, CheckFree objects to this request on the grounds that the scope of documents sought to be inspected is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, CheckFree objects to request no. 8 on the grounds that the term "float or interest earned by CheckFree or Fidelity on monies that were part of the Fidelity BillPay Service" is vague and ambiguous.

*Douglas A. Rubel May 3, 2005 Response: I'll need documentation of CheckFree's having earned the "float" or any other interest on monies that went through Fidelity's Billpay [sic] Service, including any CheckFree Accounts. This includes documentation of interest earned by CheckFree from whatever financial institution in which it holds monies that are paid through the BillPay Service.*

CheckFree May 13, 2005 Reply: Subject to and without waiver of any objection, CheckFree does not segregate or otherwise uniquely account for interest specifically earned in connection with Fidelity BillPay Services. Further, Fidelity does not earn any interest on the funds after they come into CheckFree's possession.

*Douglas A. Rubel May 18, 2005 Response: Same response as Request No. 7.*

CheckFree May 25, 2005 Reply: *See reply to Request No. 7.*

11. **Any and all documents concerning or reflecting any benefit to the payor of using the "good funds" model.**

Response: In addition to objecting to request no. 11 based upon the General Objections set forth above, CheckFree objects to this request on the grounds that the scope of documents sought to be inspected is overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, as request no. 11 would require CheckFree to intimate the thoughts and perceptions of third parties concerning the "benefit" of the good funds model, CheckFree objects to request no. 11 as it seeks documents and information outside the scope of the Federal Rules of Civil Procedure.

*Douglas A. Rubel May 3, 2005 Response: I need documents relating to the benefits, if any, to the BillPay service subscriber or customer – what I call the "payor" [sic] in the request – of the good funds model, as opposed to the risk model or the risk with guaranteed funds model.*

Douglas A. Rubel, Esq.
May 26, 2005
Page 7

*CheckFree May 13, 2005 Reply*: Subject to and without waiver of any objection, CheckFree is in the process of searching for information concerning the "good funds" model utilized by the Fidelity BillPay Services, and is willing to produce such non-privileged documents as are in its possession, custody or control.

*Douglas A. Rubel May 18, 2005 Response*: *The requested documents apply to the "Fidelity good funds model" and any other "good funds model."*

*CheckFree May 25, 2005 Reply*: CheckFree has agreed to provide you with non-privileged documents as are in its possession, custody or control concerning the "good funds" model utilized by the Fidelity BillPay Services. If you plan to pursue documents pertaining to other "good funds" models, CheckFree will maintain its objections, and seek a protective order if necessary.

12. **Any and all documents concerning a "good funds" model and/or any other models utilized or considered by CheckFree.**

*Response*: In addition to objecting to request no. 12 based upon the General Objections set forth above, CheckFree objects to this request on the grounds that the scope of documents sought to be inspected is overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, CheckFree objects to request no. 12 on the grounds that the term "documents concerning a "good funds" model and/or any other models utilized or considered by CheckFree" is vague and ambiguous.

*Douglas A. Rubel May 3, 2005 Response:* *We agree. I need documents that explain the good funds model and how it works and documents that explain any other electronic bill payment models used by CheckFree or others and how those work.*

*CheckFree May 13, 2005 Reply*: Subject to and without waiver of any objection, CheckFree is in the process of searching for documents concerning the "good funds" model utilized by the Fidelity BillPay Services, and is willing to produce such non-privileged documents as are in its possession, custody or control.

*Douglas A. Rubel May 18, 2005 Response:* *As noted above, my clients believe the other models to be relevant. First, of necessity, any discussion and definition of the "Fidelity good funds model" and what makes it a "good funds" model can only be made in the context of what the model is and is not, and what other models were and are available. Second, my clients are entitled to know what features the "Fidelity goods [sic] funds model" has or does not have compared to other "good funds" models. Third, my clients are allowed to compare the other models with Fidelity's descriptions of what its own BillPay Service [sic].*

*CheckFree May 25, 2005 Reply*: CheckFree has agreed to provide you with non-privileged documents as are in its possession, custody or control concerning the "good funds" model utilized by the Fidelity BillPay Services. You will thus have the

Douglas A. Rubel, Esq.
May 26, 2005
Page 8

information concerning what it is (and thus, by definition, what it is not). If you plan to pursue documents pertaining to other "good funds" models or other bill pay models, CheckFree will maintain its objections, and seek a protective order if necessary.

14. **Any and all "white papers" or "technology papers" during the period of January 1, 1999 to the present.**

Response:   In addition to objecting to request no. 14 based upon the General Objections set forth above, CheckFree objects to this request on the grounds that the documents sought to be inspected is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. In addition, CheckFree objects to this request on the grounds that it seeks documents that contain proprietary, confidential, or trade secret information.

*Douglas A. Rubel May 3, 2005 Response: My narrowing of this Request appears to have reduced it [to] Request 12 above.*

**CheckFree May 13, 2005 Reply**: *See response to Request No. 12.*

*Douglas A. Rubel May 18, 2005 Response: Same response as Request No. 12.*

**CheckFree May 25, 2005 Reply**: *See reply to Request No. 12.*

15. **Any and all marketing (or other) documents concerning return on investment and payback period for both free and fee-based electronic bill payment services.**

Response:   In addition to objecting to request no. 15 based upon the General Objections set forth above, CheckFree objects to this request on the grounds that the documents sought to be inspected is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, CheckFree objects to request no. 15 on the grounds that said request is vague and ambiguous.

*Douglas A. Rubel May 3, 2005 Response: I'll withdraw this Request given that the 10K reports are publicly available on the CheckFree internet website.*

**CheckFree May 13, 2005 Reply**: We acknowledge your withdrawal of Request No. 15.

*Douglas A. Rubel May 18, 2005 Response: Although I typed number 15 on the itemization, I obviously skipped number fifteen in making my response. My response to number 15 related to 10k reports which, obviously, was the subject matter of number 16. My clients do not agree to limit this request.*

Douglas A. Rubel, Esq.
May 26, 2005
Page 9

**CheckFree May 25, 2005 Reply:** CheckFree maintains its objections, and will seek a protective order if necessary.

16. **All 10k reports filed with the Securities and Exchange Commission since January 1, 1999.**

Response: In addition to objecting to request no. 16 based upon the General Objections set forth above, CheckFree objects to this request as unduly burdensome, overbroad, and not reasonably calculated to lead to the discovery of admissible evidence. CheckFree further objects to request no. 16, as it seeks or purports to seek information in the public domain which can easily be obtained by Plaintiff from sources other than CheckFree.

*Douglas A. Rubel May 3, 2005 Response: See Response to Request No. 15.*

**CheckFree May 13, 2005 Reply:** We acknowledge your withdrawal of Request No. 16.

*Douglas A. Rubel May 18, 2005 Response: With regard to document request 16, your letter purports to set forth a response from me that was not contained in my letter. My clients will withdraw this request, however, if the 10k are [sic] publicly available on your client's website.*

**CheckFree May 25, 2005 Reply:** We acknowledge your withdrawal of Request No. 16.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

In addition to the foregoing General Objections, which CheckFree incorporates by reference, CheckFree also responds to the following specific categories of testimony sought in the Subpoena.

4. **All services that CheckFree provided to anyone else.**

Response: In addition to objecting to request no. 4 based upon the General Objections set forth above, CheckFree objects to this request on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

*Douglas A. Rubel May 3, 2005 Response: I agreed to narrow this Request to other BillPay service models CheckFree uses with its other clients, except to the extent that CheckFree provides some services to Fidelity other than electronic bill payment services, than as to those "other services provided to others as well.*

Douglas A. Rubel, Esq.
May 26, 2005
Page 10

**CheckFree May 13, 2005 Reply**: CheckFree has agreed to provide a Rule 30(b)(6) designee at a mutually convenient time and place who can provide testimony concerning the extent of CheckFree's BillPay Services relationship with Fidelity and the "goods funds" model used by CheckFree in connection with the BillPay Services relationship with Fidelity. If you plan to pursue testimony concerning services CheckFree provides to other customers, testimony concerning other "models" CheckFree uses either in connection with its BillPay Service to Fidelity or services to other customers, or testimony concerning the "good funds model" as it pertains to CheckFree customers other than Fidelity, CheckFree will maintain its objection, and seek an appropriate protective order if necessary.

*Douglas A. Rubel May 18, 2005 Response: Per the above discussion, my clients require some testimony as to other models.*

**CheckFree May 25, 2005 Reply**: Subject to and without waiver of any objection, CheckFree will provide a Rule 30(b)(6) designee at a mutually convenient time and place who can provide testimony concerning the extent of CheckFree's BillPay Services relationship with Fidelity. If you plan to pursue testimony pertaining to other "good funds" models or other bill pay models, CheckFree will maintain its objections, and seek a protective order if necessary.

5.  **Any and all float or interest earned by CheckFree or Fidelity on monies that are part of the Fidelity BillPay Service.**

Response: In addition to objecting to request no. 5 based upon the General Objections set forth above, CheckFree objects to this request as it is overbroad.

*Douglas A. Rubel May 3, 2005 Response: I did not say that I would narrow this at all. This is a very important issue to my clients, as you well know.*

CheckFree May 13, 2005 Reply: Subject to and without waiver of any objection, CheckFree does not account for any interest specifically earned through Fidelity BillPay Services. Further, Fidelity does not earn any interest on the funds after they come into CheckFree's possession. Nevertheless, CheckFree will provide a Rule 30(b)(6) designee at a mutually convenient time and place who will testify concerning Fidelity BillPay Services.

*Douglas A. Rubel May 18, 2005 Response: Please advise as to whether this includes interest earned.*

**CheckFree May 25, 2005 Reply**: I informed you in my May 13, 2005 letter that CheckFree does not account for interest specifically earned through Fidelity BillPay Services. Therefore, the testimony that the Rule 30(b)(6) designee will provide will not include "interest earned."

Douglas A. Rubel, Esq.
May 26, 2005
Page 11

    6.    All forms of marketing, customer agreements, white papers, technology papers and the like provided to or that could been provided to CheckFree's customers, such as Fidelity.

    Response:    In addition to objecting to request no. 6 based upon the General Objections set forth above, CheckFree objects to this request on the grounds that it is overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Further, CheckFree objects to this request on the grounds that it seeks information that is proprietary, confidential, and/or a trade secret.

    *Douglas A. Rubel May 3, 2005 Response:* I said that I need the requested documents to the extent that CheckFree provides such documents to its clients or potential clients.

    CheckFree May 13, 2005 Reply: CheckFree maintains its objection to Request No. 6.

    *Douglas A. Rubel May 18, 2005 Response:* My clients require testimony as to what was provided to Fidelity.

    **CheckFree May 25, 2005 Reply:** Subject to and without waiver of any objection, CheckFree is in the process of determining whether it has any such responsive information to which a Rule 30(b)(6) designee can testify pertaining to the good funds model that was provided to Fidelity. However, CheckFree will not provide testimony concerning information which "could have" been provided to Fidelity, or which was or could have been provided to other CheckFree customers, as the disclosure of such information is objectionable for the reasons set forth in the Response above. Should you seek such testimony, CheckFree will maintain its objection, and seek an appropriate protective order if necessary.

    7.    The identity of any and all financial institutions or other customers of CheckFree for which payment services are provided and the types of services provided. For example, Fidelity apparently provides monies directly to CheckFree from which designated payments are made, whereas other such customers of CheckFree (such as Navy Federal Credit Union) apparently do not and the monies are remitted directly to the designated payee from the Navy Federal Credit Union account holder's account.

    Response:    In addition to objecting to request no. 7 based upon the General Objections set forth above, CheckFree objects to this request on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Further, CheckFree objects to this request on the grounds that it seeks information that is proprietary, confidential, and/or a trade secret.

Douglas A. Rubel, Esq.
May 26, 2005
Page 12

*Douglas A. Rubel May 3, 2005 Response: The time frame is January 1, 1999 to the present. Yes, I need the names of CheckFree's clients and what models they use. At the very minimum, I need the monthly numbers of CheckFree's clients using each of the models available from the period of January 1, 1999 to the present.*

CheckFree May 13, 2005 Reply: Subject to and without waiver of any objection, CheckFree will provide a Rule 30(b)(6) designee at a mutually convenient time and place who can provide testimony concerning CheckFree's BillPay Services relationship with Fidelity.

*Douglas A. Rubel May 18, 2005 Response: Is there any way we can agree on this testimony under a proposed protective order?.*

**CheckFree May 25, 2005 Reply**: CheckFree remains willing to provide a witness as per its May 13, 2005 Reply. Should you seek testimony beyond the scope of those parameters, however, CheckFree will maintain its objection to the same, and seek a protective order if necessary.

8. **The "good funds" model utilized by CheckFree and any other models under which CheckFree (or its customers) provides electronic bill payment services (such as a "risk" model).**

Response: CheckFree objects to request no. 8 based upon the General Objections set forth above.

*Douglas A. Rubel May 3, 2005 Response: I will need detailed information as to the models utilized by CheckFree.*

CheckFree May 13, 2005 Reply: Subject to and without waiver of any objection, CheckFree will provide a Rule 30(b)(6) designee at a mutually convenient time and place who can provide testimony concerning the Fidelity BillPay Services "good funds" model.

*Douglas A. Rubel May 18, 2005 Response: Again, my clients require testimony as to other models. First, of necessity, any discussion and definition of the "Fidelity good funds model" and what makes it a "good funds" model can only be made in the context of what the model is and is not, and what other models were and are available. Second, my clients are entitled to know what features the "Fidelity goods [sic] funds model" has or does not have compared to other "good funds" models. Third, my clients are allowed to compare the other models with Fidelity's descriptions of what its own BillPay Service [sic].*

**CheckFree May 25, 2005 Reply**: CheckFree has agreed to provide a Rule 30(b)(6) designee at a mutually convenient time and place who can provide testimony concerning the Fidelity BillPay Services "good funds" model. If you plan to pursue

FILE No.543 05/26 '05 16:59  ID:DouglasARubel  FAX:9196344545  PAGE 14/ 15
Case 1:04-cv-11311-WGY   Document 65-3   Filed 05/26/2005   Page 14 of 15

May-26-2005 12:22pm  From-ALSTON & BIRD  +4048817777  T-487  P.014/014  F-481

Douglas A. Rubel, Esq.
May 26, 2005
Page 13

testimony concerning other "models" CheckFree uses either in connection with its BillPay Service to Fidelity or services to other customers, or testimony concerning the "good funds model" as it pertains to CheckFree customers other than Fidelity, CheckFree will maintain its objection, and seek a protective order if necessary.

*************************

CheckFree expressly reserves the right to amend, modify, or expand its Responses and Objections to the Subpoena in accordance with the Federal Rules of Civil Procedure and any other applicable law.

My client is now in the process of collecting the documents that we have agreed to produce. As soon as they are available, and as soon as a protective order governing the confidentiality of those documents has been signed by the Court, I will gladly transmit them to you. At that time we can discuss potential dates for the Rule 30(b)(6) deposition.

Notwithstanding the filing your Motions, I remain hopeful that we can resolve the issues at stake in this matter consensually and that court involvement will not be necessary. Be advised, however, that if we are unable to agree on the scope of the document requests and deposition topics as referenced in the context of CheckFree's replies in this letter, and you do not withdraw your Motions, then we will seek a protective order from the Northern District of Georgia, and will also seek reimbursement of our attorneys' fees and costs incurred in having to do so.

Please do not hesitate to contact me if you have any questions.

Sincerely,

Candace N. Smith

CNS:prc

ATL01/11948899v5

*** TRANSMISSION REPORT ***

PRINT TIME  05/26 '05 16:32  ID:DouglasARubel       FAX:9196544545

TIMER=--:--                                                    U*****2AN 181  G

| FILE | START | MODE | LOCATION | STORE | TX/RX | TOTAL | CODE |
| No. | TIME | | | PAGE | PAGE | TIME | |
| 541 | 05/26 16:22 | TX | DAR-EFAX | 13 | 13/ 0 | 09'13" | OK |

ERROR PAGE=

May-26-2005  12:18pm   From-ALSTON & BIRD          +4048817777      T-487   P.001   F-481

This facsimile message and its contents are legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, copying or other use of this message and its contents is strictly prohibited. If you have received this telecopy in error, please notify us immediately by telephone and return the original message to us at the address shown below via the Postal Service. Thank You.

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
404-881-7000
Fax: 404-881-7777

## TELECOPY
### PLEASE DELIVER AS SOON AS POSSIBLE

Date:
May 26, 2005

| Recipient: | Company: |
| Douglas A. Rubel, Esq. | Johanson Berenson LLP |
| Fax Number: | Voice Number: |
| 919-654-4545 | 919-654-4544 |

Sender:
Pat Costello

Message:

Number of Pages: (including cover page)  14

**IF NOT RECEIVED PROPERLY, PLEASE NOTIFY US IMMEDIATELY AT (404) 881-4962.**

| USER CODE: | COSTP | REQUESTED BY: | Pat Costello |
| CLIENT/MATTER: | 041504/242569 | OPERATOR: | |