IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOAN BERENSON and DAVID BERENSON, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>NATIONAL FINANCIAL SERVICES LLC, FIDELITY BROKERAGE SERVICES LLC, and DOES 1-50, inclusive,<br><br>　　　　　　　　Defendants. | Civil Action No. 04 CV 11311 (WGY) |

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS

Defendants Fidelity Brokerage Services LLC and National Financial Services LLC (together, "Fidelity") respectfully submit this memorandum in support of their Motion to Compel Arbitration and to Dismiss.

### Introduction

Fidelity hereby seeks to exercise its right to compel arbitration of the plaintiffs' individual claims, which vested on July 13, 2005, when the Court denied class certification. Plaintiffs David and Joan Berenson are parties to a pre-dispute agreement to arbitrate "all controversies that may arise" between themselves and Fidelity. Specifically, the brokerage Customer Agreement governing the Plaintiffs' relationship with Fidelity provides that "all controversies that may arise" shall be "determined by arbitration." The Customer Agreement further provides that the arbitration agreement may be invoked against plaintiffs in a proposed class action only after "class certification is denied" and that "forbearance to enforce an

agreement to arbitrate" pending denial of class certification "shall not constitute a waiver of any rights under this agreement."

Now that the Court has denied class certification, the agreement to arbitrate must be enforced as a matter of federal law. Since all of the plaintiffs' claims are arbitrable, the case should be dismissed.

## Background

### A.   Pertinent Facts

On or about August 26, 1991, plaintiffs David and Joan Berenson signed an application for their joint brokerage account at Fidelity. T9.Ex.A.[1] In doing so, they acknowledged that the "account is governed by a pre-dispute arbitration clause which is found in the Customer Agreement in paragraph 18." *Id.* They also acknowledged "receipt of the pre-dispute arbitration clause." *Id.*

The referenced arbitration clause in the Customer Agreement attached to the Berensons' 1991 application provided:

> **18. PRE-DISPUTE ARBITRATION AGREEMENT.** THIS ACCOUNT IS SUBJECT TO THE ARBITRATION RULES OF THE NEW YORK STOCK EXCHANGE, INC. OR NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.  ARBITRATION IS USED TO RESOLVE A DISPUTE BETWEEN TWO PARTIES.  BECAUSE CONTROVERSIES INVOLVING BROKERAGE FIRMS OFTEN INVOLVE COMPLICATED ISSUES, ARBITRATION FORUMS WERE CONCEIVED BY THE SECURITIES AND EXCHANGE COMMISSION, THE NEW YORK STOCK EXCHANGE, INC. AND THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. TO PROVIDE AN ALTERNATIVE DISPUTE RESOLUTION MECHANISM FOR INVESTORS WHICH IS USUALLY MORE EFFICIENT AND LESS COSTLY THAN COURT LITIGATION.  I AM AWARE OF THE FOLLOWING:

---

[1] Citations refer to numbered tabs in the Appendix to the Defendant's Motion for Summary Judgment on All Remaining Claims, filed on May 26, 2005 [dkt ## 66, 67, 68]. For example, this citation refers to Tab 9, Exhibit A, which is the Fidelity joint brokerage account application of David and Joan Berenson dated August 26, 1991 appended to the affidavit of Daniel Stickney.

      a.      ARBITRATION IS FINAL AND BINDING ON THE PARTIES.

      b.      THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO A JURY TRIAL.

      c.      PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.

      d.      THE ARBITRATORS' AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING, AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED.

      e.      THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

I AGREE THAT ALL CONTROVERSIES THAT MAY ARISE BETWEEN US CONCERNING ANY ORDER OR TRANSACTION, OR THE CONTINUATION, PERFORMANCE OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN US, WHETHER ENTERED INTO BEFORE, ON, OR AFTER THE DATE THIS ACCOUNT IS OPENED, SHALL BE DETERMINED BY ARBITRATION BEFORE A PANEL OF INDEPENDENT ARBITRATORS SET UP BY EITHER THE NEW YORK STOCK EXCHANGE, INC. OR NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. AS I MAY DESIGNATE.  IF I DO NOT NOTIFY YOU IN WRITING OF MY DESIGNATION WITHIN FIVE (5) DAYS AFTER I RECEIVE FROM YOU A WRITTEN DEMAND FOR ARBITRATION, THEN I AUTHORIZE YOU TO MAKE SUCH DESIGNATION ON MY BEHALF.  I UNDERSTAND THAT JUDGEMENT UPON ANY ARBITRATION AWARD MAY BE ENTERED IN ANY COURT OF COMPETENT JURISDICTION.

*Id.*

      In signing their application, the Berensons further "represent[ed] that [they] have read the terms and conditions concerning this account and agree to be bound by such terms and conditions as currently in effect and *as may be amended from time to time." Id.* (emphasis added).

It is undisputed that as a matter of standard business practice, when Fidelity makes material changes to documents such as the Customer Agreement, it notifies customers by mail or electronically and posts those agreements on its website. T7.¶¶5-6. Asked whether he had received agreements from Fidelity over the years, Mr. Berenson testified:

> Everything you say that was sent to us, I will say we would have received except that last one that's dated December 31st [a letter regarding a particular bill payment], New Year's Eve. If you're talking about the ones from earlier years, I would say, okay, whether I find them or not, I'm going to say, yes, what you showed me we would have received, but not the last one that somebody is talking about on December 31st.

T4.123.

The brokerage Customer Agreement governing the Berensons' relationship with Fidelity in effect at the time this lawsuit was filed in 2003, T7.¶4, contains the following pre-dispute arbitration provision:

> **18. Pre-Dispute Arbitration Clause.** I agree that all controversies that may arise between us (including but not limited to controversies concerning this or any other account maintained with you), whether arising before, on or after the date this account is opened, shall be determined by arbitration in accordance with the rules then prevailing of either the New York Stock Exchange, Inc., or National Association of Securities Dealers, Inc. as I may designate. If I do not notify you in writing of my designation within five (5) days after I receive from you a written demand for arbitration, then I authorize you to make such designation on my behalf. I understand that judgment upon any arbitration award may be entered in any court of competent jurisdiction.
>
> I am aware of the following:
>
>> a.   Arbitration is final and binding on the parties.
>>
>> b.   The parties are waiving their right to seek remedies in court, including the right to a jury trial.
>>
>> c.   Pre-arbitration discovery is generally more limited than and different from court proceedings.

        d.        The arbitrators' award is not required to include factual findings or legal reasoning, and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.

        e.        The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

> No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until:  (a) the class certification is denied; (b) the class is decertified; or (c) the customer is excluded from the class by the court.  Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

T7.Ex.A.  There can be no doubt that the Berensons were aware of this language prior to commencing litigation, because it is part of the "Supplemental Information" package from Fidelity that they quoted extensively in their Complaint and that they produced in discovery. Cmplt. ¶¶ 27, 28, 33; BERENSON 000011 - BERENSON 000012 (attached as Exhibit 1).

    **B.**    **Procedural History**

The Berensons' complaint, filed on September 26, 2003, alleged that Fidelity violated the federal Electronic Funds Transfer Act, 15 U.S.C. §§ 1693 *et seq.* ("EFTA") (Count I); the Massachusetts Truth in Savings Law, M.G.L. c. 140E ("Mass. TiSL") (Count V); the Massachusetts Consumer and Business Protection Act, M.G.L. c. 93A ("c. 93A") (Count VI); and the District of Columbia Consumer Protection Procedures Act, D.C. Code Ann. § 28-3901 *et seq.* ("D.C. Consumer Protection Act") (Count VII).  In addition, the complaint asserted common law claims of intentional (Count II) and negligent (Count III) misrepresentation, breach of fiduciary duty (Count IV), and breach of contract (Count IV).[2]

---

[2] The plaintiffs erroneously numbered two separate counts as "Count IV."

On November 8, 2003, Fidelity filed a Motion to Dismiss and for Summary Judgment, arguing that several counts were legally insufficient on their face and that all must fail because Fidelity provided full disclosure in customer agreements, BillPay Service Agreements, fund prospectuses, and other documents both provided to investors in hard copy and available on Fidelity's website. In its memorandum in support of the motion, Fidelity expressly reserved its right to compel arbitration if and when class certification were denied:

> Fidelity's current Customer Agreement with the plaintiffs provides that disputes must be arbitrated but that Fidelity cannot compel arbitration of putative class actions before certification is denied. Statement of Undisputed Facts ("SOF") ¶ 61. Fidelity reserves the right to compel arbitration if this Court denies class certification, as it should if the case will proceed.

Defendants' Memorandum in Support of their Motion to Dismiss and for Summary Judgment at 2 n.1 (excerpt attached as Exhibit 2).

At a hearing on October 13, 2004, the Court granted the motion to dismiss in part from the bench, dismissing Count V (Mass. TiSL, for which there is no private right of action), Count VII (D.C. Consumer Protection Act, which was withdrawn by the plaintiffs), and Count IV (breach of contract, which was dismissed due to the absence of any relevant promise). The Court then took under advisement possible dismissal of Count I (EFTA), but denied facial dismissal of the other remaining counts. The Court at that time also took under advisement the defendants' motion for summary judgment with respect to all of the remaining counts.

On January 25, 2005, the plaintiffs filed a motion for class certification. At a hearing on February 16, 2005, the Court stated that it would defer decision on the plaintiffs' motion until the conclusion of a trial on the Berensons' individual claims (scheduled for September).

On March 3, 2005, the Court granted summary judgment for Fidelity as to the plaintiffs' claim under 15 U.S.C. § 1693c, the "disclosure" provision of the EFTA, due to the expiration of the statute of limitations, but denied summary judgment as to the claim under 15 U.S.C. § 1693f,

the "error resolution" provision of the EFTA. The Court further clarified that the balance of the motion to dismiss and for summary judgment filed on November 8, 2003 had been denied, but without prejudice to renewal following discovery.

On July 13, 2005, the Court issued an order granting summary judgment for Fidelity as to the plaintiffs' misrepresentation (Counts II and III) and fiduciary duty (Count IV) claims (a corresponding opinion is expected shortly). The order also dismissed the plaintiffs' class claims.

Pursuant to the July 13 order, the Court terminated the plaintiffs' motion for class certification as well the defendants' motion for summary judgment by electronic docket order entered on July 18, 2005. The only claims remaining in the case, therefore, are the Berensons' individual EFTA "error resolution" claim (Count I) and their individual M.G.L. c. 93A claim (Count VI).

On Tuesday, August 2, 2005, undersigned counsel held a telephonic conference pursuant to Local Rule 7.1 with plaintiffs' counsel, Douglas Rubel, in which undersigned counsel informed Mr. Rubel of Fidelity's intention to move to compel arbitration if the plaintiffs did not agree to refer the dispute to arbitration voluntarily. Mr. Rubel indicated that he would respond with the plaintiffs' position by Thursday, August 4. On Thursday, August 4, pursuant to the parties' arbitration agreement, undersigned counsel sent a formal written demand that the plaintiffs designate, within five days, whether they wish to proceed under the arbitration rules of the New York Stock Exchange or the National Association of Securities Dealers (copy attached as Exhibit 3).

On Thursday, August 4, 2005, Mr. Rubel stated that he had not reached his clients. The following day, Friday, August 5, 2005, Mr. Rubel stated that he would oppose a motion to compel arbitration.

**Argument**

A.  **The Arbitration Agreement Should Be Enforced Under the Federal Arbitration Act**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, governs the validity, enforceability, and interpretation of all arbitration agreements involving interstate commerce. *See* 9 U.S.C. § 1; *KKW Enterprises, Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42, 49 (1st Cir. 1999). There can be no doubt that the parties' arbitration agreement in this case implicates interstate commerce. Plaintiffs David and Joan Berenson, residents at various times of the District of Columbia and Florida, entered into a brokerage relationship with Fidelity, which has a principal place of business in Boston, Massachusetts. Their complaint involves Fidelity's provision of a service that effects bill payments nationwide by electronic funds transfer and checks sent through the mails.

Under the FAA, agreements to arbitrate are "valid, irrevocable, and enforceable" to the same extent as any contract. 9 U.S.C. § 2. The Berensons' arbitration agreement with Fidelity is valid and enforceable. When a party brings suit to compel arbitration, "the Act leaves no room for the exercise of discretion" and the agreement to arbitrate must be enforced. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4).

B.  **Both of the Plaintiffs' Surviving Claims are Arbitrable**

The scope of the arbitration agreement in this case reaches "all controversies" that may arise between the plaintiffs and Fidelity. It has long been settled that, under the "national policy favoring arbitration" embodied by the FAA, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or like

defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1982).

As a general matter, the Supreme Court has held that statutory claims are arbitrable unless Congress has demonstrated a clear contrary intention. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*. 473 U.S. 614, 628 (1985) ("We must assume that if Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history"). Congress has shown no such intention with respect to the EFTA or M.G.L. c. 93A. *Id*.

Indeed, courts have routinely compelled arbitration of claims under the EFTA. *See, e.g., Johnson v. West Suburban Bank*, 225 F.3d 366, 379 (3d Cir. 2000) (holding EFTA claims arbitrable even if the plaintiff is thereby precluded from bringing a class action); *Boulet v. Bangor Securities Incorporated*, 324 F. Supp. 2d 120, 123 (D. Me. 2004) (compelling arbitration of statutory claims including alleged EFTA violation).

The Berensons' c. 93A claim is likewise arbitrable. While Massachusetts state courts have held that M.G.L. c. 93A, § 9(6) precludes mandatory arbitration of individual consumer protection claims under the statute, *see Hannon v. Gunite Aquatech Pools, Inc.*, 385 Mass. 813, 826 (1982), such state law limitations on arbitration are pre-empted by the Federal Arbitration Act. *See Southland Corp. v. Keating*, 465 U.S. 1, 15-16 (1984). The Berensons' c. 93A claim is therefore subject to mandatory arbitration in this case pursuant to the FAA. *See Wolff v. Fidelity Brokerage Services LLC*, No. 012690-BLS, 2002 WL 31382606 (Mass. Super. Sep. 5, 2002) (holding that plaintiffs' 93A claim "must be resolved in the binding arbitration called for in the Fidelity agreements") (copy attached at Exhibit 4).

### C. Fidelity Did Not Waive Its Right to Compel Arbitration

The Berensons cannot plausibly argue that Fidelity has implicitly waived its right to arbitration where, as here, Fidelity's contractual right to compel arbitration did not even vest until July 13, 2005, when the class action claims were dismissed. Indeed, the language of the parties' arbitration agreement expressly provides that "forbearance to enforce an agreement to arbitrate" pending a decision on class certification "shall not constitute a waiver." In addition, Fidelity provided express notice to the defendants that it reserved the right to compel arbitration upon denial of class certification when it filed its first responsive pleading — the Motion to Dismiss and for Summary Judgment dated November 8, 2003. Ex. 2. Fidelity also informed Mr. Rubel of its intention to compel arbitration a week before the first pretrial disclosure deadline of August 8, 2005. There was no waiver here or prejudice to the plaintiffs. *See, e.g., Hurlbut v. Gantshar*, 674 F. Supp. 385, 388-89 (D. Mass. 1987) (Young, J.) (noting that "a court should not be overready to find a waiver" and finding none where defendants expressly stated their intention to preserve and defend their right to arbitration and did not compromise that right with "inexecusable and calculated dilatory conduct") (internal citations and quotation marks omitted); *see also Grandon v. Merrill Lynch & Co.*, 2005 WL 823922, No. 95-CV-10742-SWK (S.D.N.Y. Apr. 7, 2005) (granting motion to compel arbitration where proposed class action was filed in 1995 and class certification was denied in 2003).

### D. This Action Should Be Dismissed

Because arbitration would dispose of all remaining claims in the case, the appropriate disposition is dismissal. *See Bercovitch v. Baldwin School, Inc.*, 133 F.3d 141, 156 n.2 (1st Cir. 1998); *Boulet*, 324 F. Supp. 2d at 127 (describing judicial economy benefits of dismissal).

**Conclusion**

For the foregoing reasons, defendants National Financial Services LLC and Fidelity Brokerage Services LLC respectfully request that the Court enter an order compelling the plaintiffs to proceed to arbitration and dismissing this action.

    Respectfully submitted,

    NATIONAL FINANCIAL SERVICES LLC and
    FIDELITY BROKERAGE SERVICES LLC

    By their attorneys,

    /s/ John A. Shope
    Nicholas C. Theodorou (BBO No. 495730)
    John A. Shope (BBO No. 562056)
    William W. Fick (BBO No. 650562)
    David E. Cole (BBO No. 658705)
    FOLEY HOAG LLP
    155 Seaport Boulevard
    Boston, MA 02210
    (617) 832-1000

Dated: August 5, 2005