## Settlement

**9. Payment of Items** I understand that all debit items, including checks, debit or check or charge card charges, bill payments, securities account purchases, and electronic funds transfers, will be accumulated daily (or monthly in the case of card charges), and that you will promptly pay each on my behalf to the extent sufficient funds are available. I will maintain sufficient assets in my account to satisfy all obligations as they become due. I understand that payment of any debit items in my account will be made first from amounts contributed by me or on my behalf and available that day, or from the proceeds of redemption of transaction fund shares and second, should this source prove insufficient, and I have selected the margin option, from margin loans made by Fidelity within the available margin loan value of my securities account; and third, should these sources prove insufficient or not applicable and at Fidelity's discretion, from other Fidelity money market mutual funds in my account, which you are hereby authorized to redeem to pay such items. As used in this agreement the total of cash and margin loan value shall be the "collected balance." Any such amount will be a loan by Fidelity to me and will be secured by the securities in my account. If Fidelity extends credit to me, interest will be charged from the date credit is extended, and is subject to the terms of the Margin Account Agreement.

Fidelity shall not be responsible for the dishonor of any transaction due to insufficient collected balance. Other transactions that I initiate or to which I have consented may also reduce my collected balance.

I understand that if the collected balance in my account is insufficient to pay any item, subject to the issuing bank electing to advance funds on my behalf as described above in connection with card charges, such items will not be honored. I will promptly return to you any assets that you distribute to me but to which I am not entitled.

**10. Settlement of Transactions** In the absence of a specific demand, all transactions in any of my accounts are to be paid for, securities delivered, or required margin deposited, no later than 2 p.m. Eastern time on the settlement date. Fidelity reserves the right to cancel or liquidate, at my risk, any transaction not timely settled. Margin calls are due on or before the date indicated regardless of the settlement date of the transactions.

**11. Security Interest** Any credit balances, securities, assets, or related contracts, and all other property in which I may have an interest, held by you or carried for my accounts shall be subject to a general lien for the discharge of my obligations to you, and you may sell, transfer, or assign any such assets or property to satisfy a margin deficiency or other obligation whether or not you have made advances with respect to such property. Shares of any investment company in which I have an interest, and for which Fidelity Management & Research Company serves as investment adviser and which are custodied, recordkept, or otherwise administered by an affiliate of FBS or NSF, also are subject to a general lien for the discharge of my obligation to FBS and NFS, and FBS and NFS may redeem any such shares to satisfy my obligation without further notice or demand. No provision of this agreement concerning liens or security interests shall apply to any account to the extent such application would be in conflict with any provision of the Employee Retirement Income Account of 1974, as amended, "ERISA," or the Internal Revenue Code of 1986, as amended, relating to retirement accounts.

**12. Liability for Costs of Collection** I am liable for payment upon demand of any debit balance or other obligation owed in any of my accounts or any deficiencies following a whole or partial liquidation, and I agree to satisfy any such demand or obligation. I agree to reimburse FBS and NFS for all reasonable costs and expenses incurred in the collection of any debit balance or unpaid deficiency in any of my accounts, including, but not limited to, attorneys' fees.

## Reporting

**13. Periodic Reports** I will receive a statement of all transactions quarterly, and monthly in the months in which there is activity in my account. If I elect to establish cash management features or qualify for Active Trader Services, I will receive a transaction statement monthly. The brokerage statement will detail: securities bought or sold in my securities account, whether on margin or on a fully paid basis; all purchases of merchandise, services, and cash advances made with the check or charge card; redemption checks, margin loans and repayments and interest charges, if any; the number of fund shares that were purchased or redeemed for me; and electronic funds transfers and monthly fees assessed.

**14. Receipt of Communications** Communications by mail, electronic means, messenger, telegraph, or otherwise, sent to me at the U.S. postal or electronic mail address of record listed on the application, or any other address I may give FBS, are presumed to be delivered to and received by me whether actually received or not. I understand that I should promptly and carefully review the transaction confirmations and statements and notify you of any errors. Information contained on transaction confirmations and account statements is conclusive unless I object in writing within five and ten days, respectively, after transmittal to me.

options transactions, may result in losses in my account. I may not assign this or any related agreement without the prior written consent of Fidelity.

I acknowledge that this Agreement constitutes the entire agreement between Fidelity and me with respect to its subject matter. This Agreement and its enforcement shall be governed by the laws of the Commonwealth of Massachusetts, except with respect to conflict of law, shall cover individually and collectively all accounts that I may open or reopen with Fidelity; and shall inure to the benefit of Fidelity's successors and assigns, whether by merger, consolidation, or otherwise. If a court of competent jurisdiction shall deem any provision unenforceable, that provision will be enforced to the maximum extent permissible, and the remaining provisions will remain in full force and effect.

## Arbitration

**18. Pre-Dispute Arbitration Clause** I agree that all controversies that may arise between us (including but not limited to controversies concerning this or any other account maintained with you), whether arising before, on or after the date this account is opened, shall be determined by arbitration in accordance with the rules then prevailing of either the New York Stock Exchange, Inc. or National Association of Securities Dealers, Inc. as I may designate. If I do not notify you in writing of my designation within five (5) days after I receive from you a written demand for arbitration, then I authorize you to make such designation on my behalf. I understand that judgment upon any arbitration award may be entered in any court of competent jurisdiction.

I am aware of the following:

a. Arbitration is final and binding on the parties.

b. The parties are waiving their right to seek remedies in court, including the right to jury trial.

c. Pre-arbitration discovery is generally more limited than and different from court proceedings.

d. The arbitrators' award is not required to include factual findings or legal reasoning, and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.

e. The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action

## Other

**15. Extraordinary Events** Fidelity shall not be liable for any losses caused directly or indirectly by governmental restrictions, exchange or market rulings, suspension of trading, war, strikes, or other conditions beyond its control, including, but not limited to, extreme market volatility or trading volumes.

**16. Termination of Account** My account may be terminated by me or Fidelity at any time. This agreement will remain in effect until its termination is acknowledged in writing by an authorized representative of FBS. I will remain responsible for all charges, debit items, or other transactions initiated or authorized by me, whether arising before or after termination.

If my Fidelity Account is terminated either by me or you, I will promptly return all unused checks and cards to you. I understand that failure to return such checks and cards may result in a delay in complying with my instructions as to the disposition of assets in my account. FBS reserves the right to charge a service fee or close any account that fails to maintain minimum activity or balance requirements, and further reserves the right to close an account or remit credit balances because of insufficient investment-related activity. FBS may periodically review my account activity, and reserves the right to charge reasonable inactivity fees or to close or change the optional account features, fees, and services or to cease paying interest on account credit balances for any reason including, but not limited to, insufficient investment activity in accordance with the regulations of the New York Stock Exchange and Securities Investor Protection Corporation. FBS will notify me if any changes or charges are imposed. Termination will result in the cancellation of my account and other features or privileges.

**17. Modification and Miscellaneous** No provision of this agreement can be amended or waived except in writing by an authorized representative of FBS. If any provision of this agreement becomes inconsistent with any present or future law or regulation of any entity having regulatory jurisdiction over it, that provision will be superseded or amended to conform with such law or regulation, but the remainder of this agreement remains in force and effect.

The failure of Fidelity at any time to require performance by me of any provision of these terms and conditions will not limit the right to require such performance at any time thereafter. Fidelity reserves the right, at its sole discretion and without prior notice, to restrict or limit any transaction or series of transactions in any investment company advised or managed by Fidelity or its affiliates that Fidelity determines may adversely affect the investment company or its shareholders. Any failure to provide accurate trading or allocation instruction, including

BERENSON 000011

## Margin Account Agreement

**To: Fidelity Brokerage Services LLC ("FBS"), and National Financial Services LLC ("NFS") (collectively "Fidelity" or "you").**

My margin account will be established with the Automatic Repayment option. The settlement of securities purchased and other debit items (including without limitation Fidelity American Express Card(s), the Fidelity Check Card, checks and balances transfer transactions) in the Fidelity Account comes first from the available core balance and second from any margin availability. Any cash or money market fund balance in my core account will be automatically applied to my margin debit balance.

I may select the optional repayment option if I enhance my margin feature with Fidelity Accessline®. The margin availability is accessed for trade settlement in margin accounts prior to the core account. This method allows the purchase of securities to settle using margin availability while keeping a balance in the core account at the same time. I understand that the difference between interest earned on cash balances or the dividend rate earned on core money market fund balances and interest charged on Accessline balances may result in higher net costs to me. Debit items such as Fidelity Check Card transactions, checks and balance transfer transactions come first from available core balances or money market account(s) and second from any margin availability. Regardless of which payment method I select, cash dividends paid on margin-eligible securities posted to my account automatically pay down my outstanding margin balance.

Further, I have carefully examined my financial resources, investment objectives, and tolerance for risk, along with the terms of the Margin Account Agreement, and have determined that margin financing is appropriate for me. I understand that investing on margin involves the extension of credit to me and that my financial exposure could exceed the value of my securities.

If my account is approved for margin, all marginable assets will be held in a margin account, unless I instruct you to the contrary.

**1.** In consideration of your accepting one or more accounts, I acknowledge that I have read, understand and agree to the terms set forth in this customer agreement. I agree to notify you of any material changes in my financial circumstances or investment objectives. Any information I give you on this account agreement will be subject to verification, and I authorize you to obtain a credit report about me at any time. Upon written request, you will provide the name and address of the credit reporting agency used. You may also tape record conversations with me in order to verify data about any transactions I request, and I consent to such recording. I also understand that my account is carried by NFS, an affiliate of FBS.

**2. Security Interest: Loan of Margin Securities** Any and all credit balances, securities, or contracts relating thereto, and all other property of whatsoever kind belonging to me or in which I may have an interest held by you or carried for my accounts, shall be subject to a general lien for the discharge of my obligations to you (including unmatured and contingent obligations), however arising and without regard to whether or not you have made advances with respect to such property and without notice to me, may be carried in your general loans, and all securities may be pledged, re-pledged, hypothecated or re-hypothecated, separately or in common with other securities or any other property, for the sum due to you thereon or for a greater sum and without retaining in your possession and control for delivery a like amount of similar securities or other property. At any time and from time to time you may, at your discretion, without notice to me, apply and/or transfer any securities, contracts relating thereto, cash or any other property therein, interchangeably between any of my accounts, whether individual or joint, from any of my accounts to any account guaranteed by me. You are specifically authorized to transfer to my cash account, on the settlement day following a purchase made in that account, excess funds available in any of my other accounts, including, but not limited to, any free balances in my margin account, sufficient to make full payment of this cash purchase. I agree that any debit occurring in any of my accounts may be transferred by you at your option to my margin account

Shares of any investment company in which I have an interest and for which Fidelity Management & Research Company serves as investment advisor and which are custodied, record kept or otherwise administered by an affiliate of FBS or NFS, also are subject to a general lien for the discharge of my obligations to FBS and NFS, and FBS and NFS may redeem any such shares to satisfy my obligation without further notice or demand. However, no provision of this agreement can be amended or waived except in writing signed by an authorized representative of Fidelity and that this agreement shall continue in force until its termination by me is acknowledged in writing by an authorized representative of Fidelity, or until written notice or termination by you shall have been mailed to me at my address last given.

In return for your extension or maintenance of credit in connection with my account, I acknowledge that the securities in my margin account, together with all attendant rights of ownership, may be lent to you or lent out to others. In connection with such loans and in connection with securities loans made to me to facilitate short sales, you may receive and retain certain benefits to which I will not be entitled. In certain circumstances, such loans may limit, in whole or in part, my ability to exercise voting rights of the securities lent.

**3. Payment Upon Demand** I will maintain such margins as you may in your discretion require from time to time and will pay on demand any debit balance owing with respect to any of my accounts. I will be liable to you for any deficiencies in such account in the event of the liquidation of such accounts, in whole or in part, by you or me. Whenever in your sole discretion you deem it desirable for your protection (and without the necessity of a margin call or any other form of notice), you may, without prior demand, tender, and without any notice of the time or place of sale, al of which are expressly waived, sell any or all securities or contracts relating thereto that may be in your possession, or that you may be carrying for me, or buy any securities, or contracts relating thereto, of which my account or accounts may be short, in order to close out in whole or in part any commitment on my behalf, or you may place stop orders with respect to such securities and any of the foregoing sales or purchases may be made at your discretion on any stock exchange, before or after hours market, or other market where such business is then transacted, or at public auction or private sale, with or without advertising, no demands, calls, representations, assurances, tenders or notices that you may make or give nor any prior course of conduct or dealings between us shall invalidate or modify your rights as set out above to take such actions as you deem desirable for your protection. You shall have the right to purchase for your own account any or all of the aforesaid property at such sale, discharged of any right of redemption which is hereby waived. I understand that my financial exposure could exceed the value of securities in my account. I am liable for payment upon demand of any debit balance or other obligation owed in any of my accounts or any deficiencies following a whole or partial liquidation, and I agree to satisfy any such deficiency at prevailing margin rates until paid. I agree to reimburse FBS and NFS for all reasonable costs and expenses incurred in the collection of any debit balance or unpaid deficiency in any of my accounts, including, but not limited to, attorneys' fees. I understand that no provision of this agreement can be amended or waived except in writing signed by an authorized representative of Fidelity and that this agreement shall continue in force until its termination by me is acknowledged in writing by an authorized representative of Fidelity, or until written notice or termination by you shall have been mailed to me at my address last given.

**4. Settlement of Transactions** In the absence of a specific demand, all transactions in any of my accounts are to be paid for, securities delivered or required margin deposited no later than 2 p.m. Eastern time on the settlement date. Fidelity reserves the right to cancel or liquidate, at my risk, any transaction not timely settled. Margin calls are due on or before the date indicated regardless of the settlement date of the transaction.

**5. Receipt of Communications** Communications by mail, electronic means, messenger, telegraph or otherwise, sent to me at the U.S. postal or electronic mail address of record listed on the application, or any other address I may give FBS, are presumed to be delivered to and received by me whether actually received or not. I understand that I should promptly and carefully review the transaction confirmations and statements and notify you of any errors. Information contained on transaction confirmations and account statements is conclusive unless I object in writing within five and ten days respectively, after transmitted to me.

**6. Rate of Interest** I agree to be charged interest on any credit extended to or maintained for me by you for the purpose of purchasing, carrying, or trading in any security. The annual rate of interest that will be charged on average debit balances will be calculated by means of a formula based on Fidelity's base rate. The base rate is set at your discretion, with reference to commercially recognized interest rates, industry conditions regarding the extension of margin credit, and general credit conditions. The annual rate of interest is subject to change without prior notice in accordance with changes in the base rate. With the exception of credit balances in the short account and income account, all other balances in all of my accounts are combined to determine the daily balance and interest is charged to the margin account based on the average of any resulting daily debit balance. Interest is computed monthly on the average debit balances during the month. If, during the month, there is a change in interest rates, separate charges will be shown for each interest period under the different rate. The combining of balances is done by computer, but interest is arrived at by multiplying the average debit balance by the effective rate of interest divided by 360, times the number of days a daily debit balance was maintained during the interest period.

**7. Maintenance of Margin Requirements** In the event there is a decline in the market value of the securities in the margin account, you may have to request additional collateral. You retain the right to require additional margin at any time, without notice, you deem it necessary or advisable in your sole discretion. Any such call for additional collateral may be met by



BERENSON 000012